UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II) | |
| This document relates to: | MDL No. 2925 |
| Civ. No. 20-00790 (BAH) | Misc. No. 20-00008 (BAH) |
| NIPPON YUSEN KABUSHIKI KAISHA and NYK LINE (NORTH AMERICA) INC., | Chief Judge Beryl A. Howell |
| Plaintiffs, | |
| v. | |
| BNSF RAILWAY COMPANY and UNION PACIFIC RAILROAD COMPANY, | |
| Defendants. | |

**MEMORANDUM AND ORDER**

Plaintiffs Nippon Yusen Kabushiki Kaisha and NYK Line (North America) Inc. (together, "NYK plaintiffs") have moved for clarification or reconsideration of this Court's unambiguous conclusion in its decision on defendants' Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, Motion to Strike, ECF No. 196, that "NYK plaintiffs' allegations about the 2009–2013 contract [between NYK plaintiffs and defendants] are time-barred." *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)* ("*Dismissal Decision*"), No. 20-mc-00008 (BAH), MDL No. 2925, 2020 WL 5016922, at *27 (D.D.C. Aug. 25, 2020); *see* NYK Pls.' Mot. Clarification or, in the Alternative, Recons. ("Pls.' Mot."), at 1, ECF No. 414. In their view, this

1

conclusion did not "consider[] and reject[] NYK's lingering effects theory with respect to post-2008 contracts," Pls.' Mot. at 4; NYK Pls.' Reply Supp. Mot. Clarification or, in the Alternative, Recons. ("Pls.' Reply") at 2–3, ECF No. 426, presumably so that discovery on such a lingering effects theory may proceed.

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (internal quotation omitted). Though NYK plaintiffs style their motion as a request for clarification, they in fact ask the Court to revisit the straight-forward conclusion that their allegations regarding contracts entered after 2008 are time-barred. As defendants observe, the *Dismissal Decision* noted that "NYK plaintiffs frame [their allegation related to the 2009 contract] as just another part of its post-2008 damages claim, such that any requisite discovery and expanded liability do not defeat tolling." Defs. BNSF Ry. Co. & Union Pac. R.R. Co.'s Opp'n NYK Pls.' Mot. Clarification or, in the Alternative, Recons. ("Defs.' Opp'n") at 3, ECF No. 424 (emphasis omitted) (quoting *Dismissal Decision*, 2020 WL 5016922, at *27). This *Decision* explicitly rejected NYK plaintiffs' efforts to construe their allegation that the 2009 contract included "the same [inflated rate-based fuel surcharge] argument which applied in the contracts during 2000 to 2008" as a "lingering effects" allegation. *Dismissal Decision*, 2020 WL 5016922, at *27 (alteration in original) (internal quotation omitted). Further, contrary to NYK plaintiffs' characterization, *see* Pls.' Reply at 3–4, the Court plainly stated that this allegation would impose an impermissible burden to defendants as a result of *both* the "unfair surprise [to] defendants" that would result from allowing NYK plaintiffs to pursue allegations stemming from a contract entered after December 31, 2008 *and* the "new discovery

[that] would be required." *Dismissal Decision*, 2020 WL 5016922, at *27.  No ambiguity necessitating any clarification exists.

NYK plaintiffs' alternative motion for reconsideration fares no better.  Motions to reconsider interlocutory orders may be granted before the entry of a final judgment, pursuant to Federal Rule of Civil Procedure 54(b), "as justice requires."  *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.)); *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (noting that Rule 54(b) "recognizes [a court's] inherent power to reconsider an interlocutory order 'as justice requires'" (quoting *Greene*, 764 F.2d at 22)). Several circumstances have been identified as warranting Rule 54(b) reconsideration, including "where the court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, erred not in reasoning but in apprehension of the relevant issues, or failed to consider a significant change in the law or facts since its decision."  *Hispanic Affs. Project v. Perez*, 319 F.R.D. 3, 6 (D.D.C. 2016) (quoting *Liff v. Off. of the Inspector Gen. for the U.S. Dep't of Labor*, No. 14-cv-1162 (JEB), 2016 WL 6584473, at *4 (D.D.C. Nov. 7, 2016)); *see also Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).  Although this list may not exhaust the potential justifications for reconsideration, exercise of the discretion granted under Rule 54(b) to revisit earlier rulings in the same case is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (quoting *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)); *see also Nat. Res. Def. Council, Inc. v. EPA*, Civ. No. 16-1861 (JDB), 2020 WL 5632410, at *3 (D.D.C. Sept. 21, 2020)

(same); *Jordan v. U.S. Dep't of Justice*, Civ. No. 17-2702 (RC), 2019 WL 2028399, at *2 (D.D.C. May 8, 2019) (same).

Instead of demonstrating any of the recognized circumstances when justice may require reconsideration, NYK plaintiffs raise two arguments already addressed at length in the *Dismissal Decision*, in an effort to compel a conclusion more to their liking.  First, they argue that no discovery of post-class-period conduct, beyond that allowed by the *Dismissal Decision*'s provision for certain lingering effects damages, would be required to pursue their allegation that "supracompetitive pricing persisted in [the] 2009 contract . . . based on Defendants' conspiratorial conduct ending in 2008."  Pls.' Mot. at 5; *see also* Pls.' Reply at 5–6.  As defendants point out, *see* Defs.' Opp'n at 6, and as explained in the *Dismissal Decision*, 2020 WL 5016922, at *27, at a minimum, post-2008 discovery related to defendants' conduct and motivations in negotiating the 2009 contract, not just the allegedly supracompetitive prices paid by NYK plaintiffs over the post-2008 life of that contract, would be required to litigate NYK plaintiffs' allegation.  Even if this additional discovery did not independently impose burdens on defendants, the "unfair surprise" to defendants of allegations related to the 2009 contract remains.

Second, NYK plaintiffs argue that there is no "principled legal or economic basis for distinguishing lingering effects damages flowing from contracts entered into during, but extending beyond, a conspiracy period (which this Court held are permissible) from those resulting from contracts concluded immediately after a conspiracy's termination."  Pls.' Mot. at 6; *see also* Pls.' Reply at 6–8.  In the context of this multidistrict litigation and specifically of NYK plaintiffs' complaint, which consists entirely of claims brought outside the Clayton Act's statute of limitations, 15 U.S.C. § 15b, by former putative class members in *In re Rail Freight*

4

*Fuel Surcharge Antitrust Litigation* ("*MDL I*"), No. 07-mc-00489-PLF-GMH, MDL No. 1869 (D.D.C.), the distinction is apparent.  As the *Dismissal Decision* explained in detail, the claims of former putative class members in *MDL I*, including NYK plaintiffs, are untimely unless tolled under the exception to the statute of limitations set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).  *American Pipe* tolls the claims of former putative class members that are "predicated on the same acts" as the conduct challenged in the original class action, "such that 'there can be no doubt that the defendants have received sufficient notice of the contours of potential claims.'"  *Dismissal Decision*, 2020 WL 5016922, at *11 (quoting *McCarthy v. Kleindienst*, 562 F.2d 1269, 1275 (D.C. Cir. 1977)).

The putative class in *MDL I* alleged a 2003–2008 class period, asserting that supracompetitive fuel surcharge formulas were inserted in contracts entered during that time.  *Id.* at *3–4.  Unlike allegations concerning supracompetitive fuel surcharges paid under contracts entered between 2003 and 2008, which were litigated by the putative class in *MDL I*, as the *Dismissal Decision* explained, allegations concerning a supracompetitive fuel surcharge formula in a 2009 contract do not satisfy the criteria for tolling because they are "factually separate from the 2003–2008 conspiracy pursued by the putative class" in *MDL I* and defendants therefore did not have fair notice that the contract was at issue.  *Id.* at *27.  This reasoning also distinguishes NYK plaintiffs' allegations related to the 2009 contract from allegations brought by other plaintiffs related to multiyear contracts entered during the class period, *see* Pls.' Reply at 4, which, though they may have resulted in lingering effects damages after the class period ended, were fairly encompassed by the putative *MDL I* class's claims, *see Dismissal Decision*, 2020 WL 5016922, at *27.  Finally, NYK plaintiffs' reliance on *In re Domestic Drywall Litigation*, No. 15-cv-1712, MDL No. 2437, 2016 WL 3453147 (E.D. Pa. June 22, 2016), is misplaced.  *See*

5

Pls.' Mot. at 6–7; Pls.' Reply at 6–7.  That case did not concern *American Pipe* tolling, and stands only for the limited proposition that the time period for damages calculations may extend past the alleged conspiracy period.  *In re Domestic Drywall Litig.*, 2016 WL 3453147, at *3; *see also* Defs.' Opp'n at 7–8.

None of this analysis breaks new ground, because NYK plaintiffs simply recycle arguments already rejected in an attempt to relitigate the merits of the determination made in the *Dismissal Decision*.  Their Motion for Clarification or, in the Alternative, for Reconsideration, is therefore **DENIED**.

**SO ORDERED.**

Date: October 22, 2020

_____
BERYL A. HOWELL
Chief Judge