**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II) | |
| | MDL Docket No. 2925 |
| This document relates to: | Misc. No. 20-8 |
| Case No.: 1:21-cv-00349 | Honorable Beryl A. Howell |
| AMERICAN ZINC RECYCLING CORP. | |
| Plaintiff, | |
| v. | |
| UNION PACIFIC RAILROAD COMPANY, BNSF RAILWAY COMPANY, CSX TRANSPORTATION, INC., and NORFOLK SOUTHERN RAILWAY COMPANY, | |
| Defendants. | |

**DEFENDANT BNSF RAILWAY COMPANY'S RESPONSE TO**
**PLAINTIFF'S COMPLAINT**

Defendant BNSF Railway Company ("BNSF") hereby answers the Complaint ("Complaint") of American Zinc Recycling Corp. ("Plaintiff"), filed effective December 23, 2020. BNSF denies the allegations in the Complaint except as specifically admitted, denies any allegations as to which there is no specific response, denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs, including the introductory paragraph, and denies that it violated the antitrust laws in any way.

BNSF states at the outset: BNSF did not participate in any conspiracy. Plaintiff's claim that BNSF conspired with three other Class I railroads in violation of Section 1 of the Sherman Act to establish a "new," "uniform" fuel surcharge ("FSC") that applied "across-the-board" to shippers from mid-2003 through 2008 (the "Relevant Period") is based on fiction, not fact. The

fact is that rate-based FSCs have a long history in the rail industry, and BNSF never agreed to adopt or apply an industry-standard FSC.  Instead, BNSF unilaterally refined its own longstanding FSC formulas to address the fuel needs of its particular traffic and the increasing and increasingly volatile cost of fuel.

In fact, BNSF published nearly a handful of distinct FSC formulas during the Relevant Period—a time during which BNSF and all consumers of fuel faced skyrocketing fuel expenses.  BNSF had a published formula for intermodal traffic—which accounted for a significant portion of all of its traffic during the Relevant Period—that was *different* from the other railroads' intermodal FSCs, that became effective in *September 2001*, and remained entirely *unchanged* during the alleged conspiracy.  It had a published formula for carload traffic that was nearly identical to the carload formula it adopted in 2001, except for the reduction in trigger price from $1.30 HDF to $1.25 HDF (which had no impact on shippers that paid this FSC during the Relevant Period).  In July 2004, while the alleged conspiracy was underway, BNSF became the first railroad to develop and publish a FSC for coal traffic.  And BNSF announced the industry's first mileage-based fuel surcharge in March 2005—in the middle of the supposed conspiracy.  Plaintiff's use of terms like "lockstep" or "synchronization," Complaint ¶¶ 36, 46, 55, 57, from 2003 through 2008 cannot mask the fact that BNSF was different.  Nor does Plaintiff ever suggest how any FSC program would ever effectively enable a price fixing conspiracy when railroads do not control the price of fuel.

Plaintiff nonetheless surmises that there must have been an FSC conspiracy because BNSF and the other Defendants engaged in a series of in-person meetings during which they discussed fuel surcharges. *Id*. ¶ 35.  But federal law requires BNSF to participate in interline movements with other carriers because each railroad's business is generally limited by the location of its tracks,

and no one railroad has tracks that cover the entire country.  Shipping consumer products via rail from California to New York, for example, necessarily requires the service of two or more railroads.  And federal law makes it lawful for the railroads to discuss and agree upon the freight rate applicable to this type of "interline" business—including any fuel surcharges that will be applied and divided by the carriers.  Because cooperation between railroads is not only a practical necessity, it is legally compelled, federal law makes clear that evidence of interline discussions and agreements cannot be used as a basis for drawing an inference of conspiracy.  49 U.S.C. §§ 10703, 10706.  So Plaintiff's supposed "evidence" of a conspiracy is, in fact, no evidence at all.

**BNSF'S RESPONSES IN ANSWER TO PLAINTIFF'S SPECIFIC ALLEGATIONS**

1.       BNSF admits that Plaintiff purports to bring an action as described in Paragraph 1, but denies that it engaged in any violations of the law.

2.       BNSF denies the allegations in Paragraph 2.

3.       BNSF admits that Paragraph 3 partially quotes from the district court decision, *In re Rail Freight Fuel Surcharge Antitrust Litigation* (*Rail Freight*), 292 F. Supp. 3d 14 (D.D.C. 2017) ("*Rail Freight*"). The district court decision is the best evidence of its contents and BNSF denies the Plaintiff's characterization of that decision.  BNSF denies the remaining allegations in Paragraph 3 and specifically denies that it participated in any conspiracy.

4.       BNSF admits that it has on occasion entered into private freight transportation contracts that included cost escalation provisions tied to indexes such as the All Inclusive Index ("AII") that included fuel costs as a factor and weighted a number of other cost factors.  BNSF denies the remaining allegations of Paragraph 4 and specifically denies that AII allowed for full recovery of fuel costs.

5.        BNSF admits that its CEO and those of the other three Defendants are board members of the Association of American Railroads ("AAR") and that the AAR Board meets from time to time.  BNSF also admits that the AAR published the All Inclusive Index ("AII") and adopted an All-Inclusive Index Less Fuel ("AIILF").  BNSF further admits that the AIILF did not include a fuel component.  BNSF specifically denies that AII permitted the recovery of all of its fuel costs and denies the remaining allegations in Paragraph 5.

6.        BNSF admits that Paragraph 6 partially quotes from the district court decision, *Rail Freight*.  The district court decision is the best evidence of its contents and BNSF denies the Plaintiff's characterization of that decision.  BNSF denies the remaining allegations in Paragraph 6 and specifically denies that it participated in any unlawful collective action with the other Defendants.

7.        BNSF admits that during the period from 2003 to 2008, Plaintiff may have purchased rail freight transportation not then subject to regulation or otherwise exempt from regulation directly from BNSF and that some customers agreed to pay Rail Fuel Surcharges in connection with that rail freight transportation.  BNSF does not have sufficient information to affirm or deny the allegations relating to the other Defendants in Paragraph 7.  BNSF denies the remaining allegations of Paragraph 7 and denies that it engaged in any price-fixing conspiracy. BNSF further denies that Plaintiff suffered any antitrust injury.

8.        BNSF admits that Plaintiff purports to seek damages for rail fuel surcharges imposed on shipments made under private contracts and through other means exempt from rate regulation under federal law, and that it does not seek relief arising from fuel surcharges imposed on regulated freight transportation.  BNSF denies that Plaintiff was damaged or is entitled to any

relief, and further denies any remaining allegations in Paragraph 8.  BNSF specifically denies that it engaged in any conspiracy.

9.      BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 9 to the extent they relate to the corporate background of Plaintiff American Zinc Recycling Corp. and, as such, they are denied.  BNSF acknowledges that during the period from 2003 to 2008 Plaintiff and/or its predecessors and/or affiliates may have purchased rail freight transportation not then subject to regulation or otherwise exempt from regulation directly from BNSF and that some customers agreed to pay FSC in connection with that rail freight transportation.   BNSF does not have sufficient knowledge or information sufficient to affirm or deny the allegations relating to the other Defendants in Paragraph 9, and, as such, they are denied. BNSF denies that Plaintiff suffered any antitrust injury.  BNSF denies the remaining allegations of Paragraph 9 and specifically denies that it engaged in a conspiracy or antitrust violation.

10.      BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 10 to the extent that they relate to the background of another Defendant and, as such, they are denied.

11.      BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 11 to the extent that they relate to the background of another Defendant and, as such, they are denied.

12.      BNSF admits the allegations regarding its principal place of business.  BNSF admits that it has rail lines throughout the western United States.  BNSF admits that it interchanges traffic with other railroads that originates or terminates in the District in which this case was originally filed.

13.     BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 13 to the extent that they relate to the background of another Defendant and, as such, they are denied.

14.     Paragraph 14 states legal conclusions to which no response is required.  To the extent a response is required, BNSF admits that Plaintiff purports to bring an action as described in Paragraph 14, but denies that it engaged in any violations of law, and further denies that Plaintiff has suffered any antitrust injury.

15.     Paragraph 15 states legal conclusions to which no response is required.  To the extent a response is required, BNSF admits that Plaintiff purports to invoke the jurisdiction of the Court as described in Paragraph 15.

16.     Paragraph 16 states legal conclusions to which no response is required.  To the extent a response is required, BNSF admits that Plaintiff claims that venue is proper in the District in which the case was originally filed.  BNSF denies the remaining allegations of Paragraph 16 and specifically denies that it engaged in any conspiracy.

17.     Paragraph 17 states legal conclusions to which no response is required.  To the extent a response is required, BNSF does not have sufficient information to affirm or deny the allegations regarding the other Defendants but BNSF states it does not intend to challenge that it is subject to the personal jurisdiction of the Court in which the case was originally filed.  BNSF specifically denies the allegations that it engaged in an illegal price fixing conspiracy.

18.     BNSF denies the allegations in Paragraph 18 and specifically denies that it participated in any unlawful activity.

19.     BNSF denies the allegations in Paragraph 19 and specifically denies that it participated in any conspiracy.

20.    BNSF admits that it sold and carried out rail shipments in the flow of interstate commerce to shippers and customers throughout the United States during the Relevant Period. BNSF denies the remaining allegations of Paragraph 20.  BNSF specifically denies that it engaged in any conspiracy or had any co-conspirators.

21.    With respect to the first sentence of Paragraph 21, BNSF admits that Congress partially deregulated the railroad industry with passage of the Staggers Rail Act of 1980.   The remaining allegations in Paragraph 21 state legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.

22.    BNSF admits the allegations in Paragraph 22.

23.    Paragraph 23 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations of Paragraph 23.

24.    BNSF does not have sufficient information to affirm or deny the allegations in the first sentence of Paragraph 24 and, as such, they are denied.  BNSF denies the remaining allegations of Paragraph 24.

25.    BNSF denies the allegations of Paragraph 25.

26.    BNSF denies the allegations in the first sentence of Paragraph 26.  The second and third sentences of Paragraph 26 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.

27.    Paragraph 27 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.

28.    BNSF denies the first sentence of Paragraph 28.  BNSF admits that Paragraph 28 partially quotes from the district court decision, *Rail Freight*.  The district court decision is the best evidence of its contents and BNSF denies Plaintiff's characterization of the decision.  BNSF

admits that Paragraph 28 partially quotes from a 2002 BNSF document and 2003 BNSF document. BNSF states that the source document is the best evidence of the contents and BNSF denies the Plaintiff's characterization of the document.   BNSF denies the remaining allegations in Paragraph 28.

29.     BNSF denies the allegations of the first sentence of Paragraph 29.  BNSF admits there are barriers to entry in the railroad industry but denies the remaining allegations of Paragraph 29.

30.     BNSF denies the allegations of Paragraph 30.

31.     BNSF admits that it has on occasion entered into private freight transportation contracts that included cost escalations provisions tied to the All Inclusive Index ("AII") or the Rail Cost Adjustment Factor ("RCAF").  BNSF further admits that the AII and the RCAF were published by the AAR, that both indexes included fuel costs as a factor, and that both indexes weighted a number of other cost factors.  BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 31 regarding the practices of other railroads. BNSF denies the remaining allegations in Paragraph 31 and specifically denies that RCAF and AII permitted the recovery of all of its fuel costs.

32.     BNSF denies the allegations of Paragraph 32.

33.     BNSF admits that on occasion prior to 2003, it charged fuel surcharges on private rail freight transportation.  BNSF does not have sufficient information to affirm or deny the allegations regarding the practices of other Defendant railroads.   BNSF denies the remaining allegations of Paragraph 33.

34.     BNSF denies the allegations of Paragraph 34.

35.     BNSF admits that its executives attended meetings of the AAR and the National Freight Transportation Association ("NFTA").  BNSF further states that NFTA is an organization of shippers as well as transportation providers.  Indeed, 60 percent of NFTA members are shippers and 40 percent are transportation providers, which includes not only railroads but motor carriers, water carriers, and rail car leasing companies. BNSF denies the remaining allegations of Paragraph 35.

36.     BNSF denies the first sentence of Paragraph 36.  With respect to the third sentence of Paragraph 36, BNSF admits that by 2003 it had fuel surcharges that were based on the HDF index.  With respect to the second and fourth sentences of Paragraph 36, BNSF does not have sufficient information to affirm or deny the allegations regarding UP fuel surcharges and, as such those allegations are denied, except that it admits that UP publicly announced carload fuel surcharges based on the WTI index prior to June 2003 and that UP publicly announced that it would utilize the HDF index effective June 2003.  BNSF denies the remaining allegations of Paragraph 36 and specifically denies that it moved in lockstep or in any way agreed or conspired with UP regarding fuel surcharges.

37.     BNSF denies the allegations of the first sentence of Paragraph 37.  With respect to the remainder of Paragraph 37, BNSF does not have sufficient information to affirm or deny the allegations regarding UP, except that it admits that UP publicly announced carload fuel surcharges as described in Paragraph 37.  BNSF does not have sufficient knowledge to affirm or deny whether UP made the announced change.  Insofar as the allegations are directed at BNSF, BNSF admits that it had a fuel surcharge that was applied in the manner described in the second and third sentences of Paragraph 37.  BNSF denies the remaining allegations in Paragraph 37.

38.     BNSF denies the allegations of Paragraph 38.

39.     BNSF denies the allegations of Paragraph 39.

40.     With respect to the second sentence in Paragraph 40, BNSF admits that UP publicly announced modifications to its carload fuel surcharges in April 2003 but did not announce a change in the index it employed.  BNSF denies the remaining allegations in Paragraph 40 and specifically denies any concerted activity with UP regarding FSC.

41.     BNSF denies the allegations of Paragraph 41.

42.     BNSF denies the allegations of Paragraph 42.

43.     BNSF admits that the All Inclusive Index Less Fuel ("AIILF") was similar to the All Inclusive Index except that it did not include fuel costs as a component and that it specified the fourth quarter of 2002 as its base period.  The AAR announcement referred to in Paragraph 43 is the best evidence of its contents. BNSF denies the remaining allegations of Paragraph 43 and specifically denies that it took collective action with regard to FSC or was part of any conspiracy.

44.     BNSF denies the allegations of Paragraph 44.

45.     BNSF does not have sufficient information to either affirm or deny the allegations of Paragraph 45.

46.     BNSF denies the allegations of Paragraph 46.

47.     BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 47 attributed to other Defendants and, as such, the allegations are denied.

48.     BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 48 attributed to other Defendants and, as such, the allegations are denied.  BNSF denies the last sentence of Paragraph 48 and specifically denies that it engaged in cartel pricing.

49.     BNSF denies the allegations of Paragraph 49.

50.     BNSF denies the allegations of Paragraph 50.

51.     BNSF denies the allegations of Paragraph 51, except that BNSF admits that the RCAF and AII both included a fuel component.  BNSF specifically denies that RCAF or AII allowed for full recovery of fuel cost increases, denies any collective action with the other Defendants on FSC, and denies any system-wide over-recovery for fuel costs.

52.     The allegation as to whether publication of a cost escalation index without a fuel component was required by a regulatory body is a legal conclusion to which no response is required.  To the extent a response is required, the allegation is admitted.  BNSF denies the remaining allegations of Paragraph 52.

53.     BNSF denies the allegations of Paragraph 53 and specifically denies that it was part of any concerted action or conspiracy.

54.     BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 54 regarding the practices of other Defendants.  Insofar as the allegations in Paragraph 54 are directed at BNSF, BNSF admits that it applied fuel surcharges as a percentage of the transportation rate in some private contracts and on some other traffic not subject to rate regulation.  BNSF denies the remaining allegations of Paragraph 54.

55.     BNSF denies the allegations in the first sentence of Paragraph 55.  With respect to the second sentence of Paragraph 55 and table, BNSF does not have sufficient information to affirm or deny those allegations regarding UP.  Insofar as the allegations in the second sentence of Paragraph 55 and table are directed at BNSF, BNSF admits that the monthly percentages for BNSF's carload fuel surcharge from June 2002 through June 2007 are reflected in the Table in Paragraph 55.  BNSF denies any implication in Paragraph 55 that the same fuel surcharge has been applied to all BNSF traffic.

56.     BNSF does not have sufficient information to affirm or deny the allegations in

Paragraph 56 regarding other Defendants and, as such, those allegations are denied.

57.     BNSF denies the allegations of Paragraph 57.

58.     BNSF denies the allegations of Paragraph 58 and specifically denies any collective

action with the other Defendants on FSC or any system-wide over-recovery for fuel costs.

59.     BNSF denies the allegations of Paragraph 59 and specifically denies that it ever

deflected attention from its fuel savings efforts.

60.     BNSF denies the allegations in Paragraph 60.

61.     BNSF denies the allegations in Paragraph 61.

62.     BNSF denies the allegations in Paragraph 62.

63.     BNSF does not have sufficient information to affirm or deny the allegations in

Paragraph 63 regarding the practices of other Defendants and, as such, they are denied.  Insofar as

the allegations are directed at BNSF, BNSF denies the allegations in Paragraph 63.

64.     BNSF does not have sufficient information to affirm or deny the allegations of

Paragraph 64 regarding the practices of other Defendants or the preferences of "most shippers"

and, as such, they are denied.  Insofar as they are directed at BNSF, BNSF denies the allegations

in Paragraph 64.

65.     BNSF does not have sufficient information to affirm or deny the allegations

regarding the practices of other Defendants and, as such, they are denied.  The allegations in the

second sentence of Paragraph 65 are too vague and non-specific to permit a response.  With respect

to the allegations in third through seven sentences of Paragraph 65, BNSF admits that they partially

quote from or cite to the district court decision, *Rail Freight*.  The district court decision is the best

evidence of its contents and BNSF denies Plaintiff's characterization of the decision.  BNSF does

not have sufficient information to affirm or deny the allegations relating to the quotes which are attributed to other Defendants and, as such, they are denied.   BNSF denies the remaining allegations in Paragraph 65.

66.      BNSF admits that Paragraph 66 partially quotes from the district court decision, *Rail Freight.*   The district court decision is the best evidence of its contents and BNSF denies Plaintiff's characterization of the decision.   BNSF does not have sufficient information to affirm or deny the allegations relating to the quotes which are attributed to other Defendants and, as such, they are denied.   BNSF admits that the third sentence of Paragraph 66 partially quotes from a BNSF document.   BNSF states that the source document is the best evidence of its contents and BNSF denies Plaintiff's characterization of that document. BNSF denies the remaining allegations made in Paragraph 66 and specifically denies that it was part of any collusive agreement and denies that it had any co-conspirators.

67.      BNSF does not have sufficient information to affirm or deny the allegations in Paragraph 67 regarding the practices of other Defendants.   Insofar as the allegations in Paragraph 67 are directed at BNSF, BNSF denies the allegations in the second sentence of Paragraph 67, although it admits that in some situations customers with shipments requiring movements on more than one railroad were billed separately by each railroad.   BNSF denies the remaining allegations in Paragraph 67 and specifically denies that it was part of any conspiracy.

68.      BNSF denies the allegations in Paragraph 68.

69.      BNSF does not have sufficient information to affirm or deny the allegations of Paragraph 69 that relate to other Defendants and, as such, they are denied.   BNSF denies that it was part of any conspiracy and denies any system-wide over-recovery for fuel costs.   BNSF denies the remaining allegations of Plaintiff's Paragraph 69.

70.     BNSF does not have sufficient information to affirm or deny the allegations of Paragraph 70 that relate to other Defendants and, as such, they are denied.   Insofar as the allegations are directed at BNSF, BNSF admits that some of its public filings between 2003 through 2008 reported increased fuel surcharge revenues.   BNSF denies the remaining allegations in Paragraph 70 and specifically denies that it was part of any conspiracy.

71.     BNSF does not have sufficient information to affirm or deny the allegation regarding other railroads' market capitalization and, as such, it is denied.   BNSF denies the remaining allegations in Paragraph 71.

72.     BNSF denies the allegations of Paragraph 72 and specifically denies that it was part of any conspiracy.

73.     Paragraph 73 states legal conclusions to which no response is required.   To the extent a response is required, BNSF denies the allegations in Paragraph 73.   BNSF specifically denies that Plaintiff has suffered any antitrust injury and denies that it was part of any illegal contract, combination, or conspiracy to restrain trade.

74.     BNSF incorporates by reference its responses to the allegations in the paragraphs above as if fully set forth herein.

75.     BNSF denies the allegations of Paragraph 75 and specifically denies that it was part of any conspiracy.

76.     BNSF denies the allegations of Paragraph 76.

77.     BNSF denies the allegations of Paragraph 77.

78.     BNSF denies the allegations of Paragraph 78.

79.     BNSF denies the allegations of Paragraph 79. BNSF denies that Plaintiff has suffered any antitrust injury and denies that Plaintiff is entitled to any of the requested relief.

## AFFIRMATIVE DEFENSES AND CERTAIN OTHER DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff did not suffer antitrust injury.

3.      Plaintiff lacks standing.

4.      To the extent that Plaintiff alleges or infers a conspiracy by virtue of meetings, discussions or agreements relating to interline movements, rates or related matters, Plaintiff's claims are foreclosed by 49 U.S.C. § 10706(a)(3)(B)(ii).

5.      Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches.

6.      Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

7.       BNSF had legitimate business justifications for all of its conduct at issue in this matter.

8.      BNSF's conduct did not adversely affect competition in any relevant market.

9.      Plaintiff did not suffer any injury or damage caused by BNSF.

10.     Plaintiff's damages, if any, are speculative.

11.     Plaintiff's claims are barred in whole or in part to the extent based on conduct that is subject to the jurisdiction of the STB.

12.     BNSF specifically reserves the right to assert any additional defenses that become apparent during the course of the case.  Additional facts may become known during the course of discovery and investigation which will support affirmative defenses that currently are unknown to BNSF.  To preserve such affirmative defenses, BNSF hereby reserves the right to assert additional affirmative defenses as discovery proceeds.

## .PRAYER FOR RELIEF

WHEREFORE, BNSF respectfully prays for relief as follows:

1.      That the Court dismiss the Complaint with prejudice and enter judgment in favor

of BNSF and against Plaintiff;

2.      That the Plaintiff recovers nothing;

3.      That the Court award BNSF its reasonable costs incurred in defending this action,

including reasonable attorneys' fees; and

4.      That the Court grant BNSF such other and further relief as the Court deems just and

proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant demands a jury

trial as to all issues triable by jury.

Dated:  February 16, 2021              Respectfully submitted,

                                       */s/ Linda S. Stein*
                                       Linda S. Stein (D.C. Bar No. 376217)
                                       Molly Bruder Fox (D.C. Bar No. 981619)
                                       STEPTOE & JOHNSON LLP
                                       1330 Connecticut Avenue, NW
                                       Washington, D.C. 20036
                                       Phone:  (202) 429-3000
                                       lstein@steptoe.com
                                       mbfox@steptoe.com

Glenn D. Pomerantz
E. Martin Estrada
Kuruvilla J. Olasa
Anne K. Conley
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Phone:  (213) 683-9100
Glenn.Pomerantz@mto.com
Martin.Estrada@mto.com
Kuruvilla.Olasa@mto.com
Anne.Conley@mto.com

Benjamin J. Horwich
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Phone: (415) 512-4000
Ben.Horwich@mto.com

Jacobus P. van der Ven (D.C. Bar No. 1644774)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001-5369
Phone: (202) 220-1100
Jacobus.vanderven@mto.com

*Attorneys for Defendant BNSF Railway Company*

## CERTIFICATE OF SERVICE

The undersigned attorney for Defendant BNSF Railway Company hereby certifies that on this 16th day of February, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and/or counsel of record.

 */s/ Linda S. Stein*
Linda S. Stein

*Attorney for Defendant BNSF Railway Company*