**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br><br>This document relates to:<br><br>*Ascend Performance Materials Operations LLC, et al., v. CSX Transportation, Inc.,* et al., 1:21-cv-00355 |

MDL Docket No. 2925
Misc. No. 20-8 (BAH)

## DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Norfolk Southern Railway Company ("NS") by its attorneys, answers as follows the allegations of the Complaint filed on December 23, 2020 (the "Complaint"), by Ascend Performance Materials Operations LLC, ("Plaintiff"). Plaintiff's Complaint was originally filed in the District Court for the Southern District of Texas but was transferred to this Court on February 12, 2021, after the Judicial Panel on Multidistrict Litigation ("JPML") consolidated this action with related actions into MDL No. 2925. Except for those allegations expressly admitted herein, NS denies each and every allegation in the Complaint. NS expressly denies that Plaintiff is entitled to the relief requested or any other relief. NS reserves the right to amend this Answer.

## PRELIMINARY STATEMENT

In 2007, putative classes of shipper-plaintiffs brought these same allegations against these same Defendants in class action complaints. After 12 years of litigation before Judge Paul Friedman in the District Court for the District of Columbia, Defendants defeated class certification and class plaintiffs declined to appeal. Now, like the class plaintiffs in 2007,

Plaintiff here alleges that in May 2003 Defendants conspired to achieve an across-the-board rate increase by imposing a coordinated rail fuel surcharge ("FSC") across customers.  Compl. ¶ 32. Nothing could be further from the truth.

First and foremost, NS's primary competitor, CSX, announced a modified FSC mechanism in March 2003.  Instead of following, NS engaged in three separate internal reviews over nine months on whether to change its own existing FSC mechanism.  During that period, NS competed head-to-head with CSX.  NS entered into many contracts in those nine months, some of which did not include any FSC mechanism at all, some of which included NS's existing 2000 FSC mechanism, and some of which included one of many unique FSCs.  NS finally modified its FSC mechanism, effective March 2004.  All of this conduct was unilateral.

Second, most of NS's traffic is under contract, and during the alleged conspiracy period, shippers negotiated many contract terms including the base rates and the FSC mechanisms. Many customers could ship their products by truck as an alternative to rail, and NS's all-in rates had to be competitive.

Third, contrary to Plaintiff's allegation that Defendants could not secure broad FSC coverage unless the FSC was widely applied on a coordinated basis, Compl. ¶ 33, NS regularly included FSC mechanisms in its contracts with shippers for three years prior to the start of alleged conspiracy and collected revenues consistent with those FSC provisions.

Fourth, NS is an interline partner of each of the three other Defendant railroads and lawfully sets joint rates, including FSC rates, with them.  Interline partners interchange traffic to each other's tracks to allow cargo to move seamlessly from origin to destination when one railroad's track does not cover the entire route.  A large portion of rail traffic is interlined, whether it be cross-country movements that must be exchanged between NS and one of the two

Western railroads, or regional movements in the East, where NS and CSX both operate, but where an interchange between the two railroads may be required to complete a particular route. Plaintiff's claims are impermissibly built upon ordinary and lawful conduct between individual interline partners.

From 2000 forward, NS independently set and implemented its own, unilateral FSC strategy.  It did not conspire with any of the other Defendants, and its conduct before, during and after the alleged conspiracy is inconsistent with Plaintiff's theory.

## SPECIFIC RESPONSES TO PLAINTIFF'S ALLEGATIONS

### NATURE OF THE ACTION[1]

Response to Paragraph No. 1:

NS denies that it engaged in the alleged conspiracy.  NS denies the remaining allegations.

Response to Paragraph No. 2:

NS denies the alleged conspiracy and denies the remaining allegations, including those that purport to define a "rail fuel surcharge."

Response to Paragraph No. 3:

Paragraph 3 states legal conclusions to which no response is required.  To the extent a response is required, NS affirmatively states that a class action lawsuit was filed in 2007.  The District Court for the District of Columbia (the "D.C. District Court") denied class certification in 2017 and the Court of Appeals for the District of Columbia Circuit upheld the denial of class certification in 2019.  NS admits that the quoted language in Paragraph 3 appears in the D.C. District Court's Opinion, but NS denies the characterization of the quoted language and denies

---

[1] For ease of reference, NS's Answer replicates the headings in the Complaint.  Although NS believes no response is required to such headings, to the extent a response is deemed required and to the extent those headings and titles could be construed to contain factual allegations, those allegations are denied.

the characterization of the D.C. District Court's Opinion.  NS respectfully refers the Court to the full opinion for a complete understanding of its contents.

Response to Paragraph No. 4:

NS denies the existence of a conspiracy.  NS admits that some of its rail freight transportation contracts as of 2003 included rate escalation provisions based on the RCAF, which is a cost index derived from the All Inclusive Index ("AII").  NS affirmatively states that the RCAF and AII were created pursuant to federal statute, 49 U.S.C. § 10708, and are calculated quarterly by the Association of American Railroads ("AAR") and then submitted to and approved by the STB.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 5:

Paragraph 5 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations, including the existence of a conspiracy.  NS admits that it is a board member of the AAR.  NS admits that, in December 2003, the AAR publication *AAR Railroad Cost Indexes* announced the creation of a cost index, the "All Inclusive Index Less Fuel" or "AIILF," that was derived from another AAR cost index, the "All Inclusive Index" or "AII".  The AIILF includes the same cost components of the AII with the exception that the fuel component of the AII is excluded.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 6:

Paragraph 6 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations, including the existence of a conspiracy.  NS admits that the quoted passage appears in the D.C. District Court's Opinion, but denies the characterization of the quoted language and of the D.C. District Court's Opinion.  NS

respectfully refers the Court to the full opinion for a complete understanding of its contents. NS otherwise denies the remaining allegations.

Response to Paragraph No. 7:

Paragraph 7 states legal conclusions to which no response is required.  To the extent Paragraph 7 states allegations of fact, those allegations are denied.

Response to Paragraph No. 8:

NS admits that Plaintiff purports to seek damages for shipments made under private transportation contracts, but NS denies that Plaintiff is entitled to the relief requested.  NS admits that Plaintiff does not bring this action for rates assessed on rate-regulated transportation.

**PARTIES**

Response to Paragraph No. 9:

NS is without information or knowledge sufficient to form a belief as to the location of the principal place of business for Ascend Performance Materials Operations LLC, ("Ascend Performance") and denies the allegations on that basis.  NS is without knowledge or information sufficient to form a belief as to the allegations regarding Plaintiff's purported predecessor-in-interest and denies the allegations on that basis.  NS is without knowledge or information sufficient to form a belief as to the allegations regarding Plaintiff's purported purchased of unregulated rail freight transportation services during the relevant time period and denies the allegations on that basis.  NS denies the remaining allegations.

Response to Paragraph No. 10:

NS admits that CSX provides rail freight transportation services and that CSX's principal place of business is located in Jacksonville, Florida.  NS is without knowledge or information sufficient to form a belief as to the remaining allegations and denies the allegations on that basis.

Response to Paragraph No. 11:

NS admits the allegations in the first and second sentences.  NS otherwise denies the

remaining allegations, including the characterization that its schedules are "coordinated."

Response to Paragraph No. 12:

NS admits that BNSF provides rail freight transportation services and that BNSF's

principal place of business is located in Fort Worth, Texas.  NS is without knowledge or

information sufficient to form a belief as to the remaining allegations and denies the allegations

on that basis.

Response to Paragraph No. 13:

NS admits that UP provides rail freight transportation services and that UP's principal

place of business is located in Omaha, Nebraska.  NS is without knowledge or information

sufficient to form a belief as to the remaining allegations and denies the allegations on that basis.

## JURISDICTION AND VENUE

Response to Paragraph No. 14:

NS admits that Plaintiff purports to bring this action under Section 4 of the Clayton Act

to recover damages for alleged injuries under Section 1 of the Sherman Act.  NS denies that it is

liable as alleged in the Complaint and denies that Plaintiff is entitled to the requested relief.

Response to Paragraph No. 15:

Paragraph 15 states legal conclusions to which no response is required.  To the extent a

response is required, NS admits that this Court has subject matter jurisdiction over this action.

Response to Paragraph No. 16:

Paragraph 16 states legal conclusions to which no response is required.  To the extent a

response is required, NS admits that venue is proper in this District, but denies the remaining

allegations.

Response to Paragraph No. 17:

Paragraph 17 states legal conclusions to which no response is required.  To the extent Paragraph 17 contains allegations of fact, NS does not challenge the jurisdiction of this Court over NS in this matter, but NS otherwise denies the remaining allegations.

## INTERSTATE TRADE AND COMMERCE

Response to Paragraph No. 18:

Paragraph 18 states legal conclusions to which no response is required.  To the extent Paragraph 18 states allegations of fact, NS denies the allegations, including the existence of a conspiracy.

Response to Paragraph No. 19:

NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the remaining allegations and denies the remaining allegations on that basis.

Response to Paragraph No. 20:

Paragraph 20 states legal conclusions to which no response is required.  To the extent Paragraph 20 states allegations of fact, those allegations are denied including the existence of a conspiracy.

## DEREGULATION OF THE RAILROAD INDUSTRY

Response to Paragraph No. 21:

Paragraph 21 states legal conclusions to which no response is required.  To the extent Paragraph 21 states allegations of fact, NS admits that the Staggers Act partially deregulated the railroad industry.  NS otherwise denies the remaining allegations, including the existence of a conspiracy.

Response to Paragraph No. 22:

Paragraph 22 states legal conclusions to which no response is required.  To the extent Paragraph 22 states allegations of fact, NS denies the allegations.

Response to Paragraph No. 23:

Paragraph 23 states legal conclusions to which no response is required.  To the extent a response is required, NS is without knowledge or information sufficient to form a belief as to the allegations and denies the allegations on that basis.

Response to Paragraph No. 24:

NS denies the existence of a conspiracy. NS denies the characterization that the railroad industry is "highly concentrated" with "high fixed costs" and "significant barriers to entry."  NS denies the remaining allegations.

Response to Paragraph No. 25:

Paragraph 25 states legal conclusions to which no response is required.  To the extent Paragraph 25 states allegations of fact, NS denies the existence of a conspiracy and denies the remaining allegations.

**DEFENDANTS INTRODUCE FUEL SURCHARGES**

Response to Paragraph No. 26:

Paragraph 26 states legal conclusions to which no response is required.  To the extent a response is required, NS is without knowledge or information sufficient to form a belief as to the allegations and denies the allegations on that basis..

Response to Paragraph No. 27:

Paragraph 27 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations.

Response to Paragraph No. 28:

Paragraph 28 states legal conclusions to which no response is required.  To the extent Paragraph 28 states allegations of fact, NS denies the existence of a conspiracy.  NS admits that the quoted language appears in the D.C. District Court Opinion, but NS denies the characterization of the quoted language.  NS respectfully refers the Court to the full opinion for a complete understanding of its contents.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 29:

Paragraph 29 states legal conclusions to which no response is required.  To the extent Paragraph 29 states allegations of fact, NS denies the allegations, including the existence of a conspiracy.  NS further denies the characterization of the railroad industry as being protected by "significant barriers to entry" and with "high fixed costs."

Response to Paragraph No. 30:

Paragraph 30 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations including the existence of a conspiracy.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 31:

NS denies the existence of a conspiracy.  NS admits that some of its rail freight transportation contracts as of 2003 included rate escalation provisions based on the RCAF, which is a cost index derived from the AII.  NS affirmatively states that the RCAF and AII were created pursuant to Federal Statute 49 U.S.C. § 10708, and are calculated quarterly by the AAR and then submitted to and approved by the STB.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 32:

NS denies the existence of a conspiracy.  NS admits that in December 2003, the AAR publication, *AAR Railroad Cost Indexes*, announced the creation of a cost index, the "All

Inclusive Index Less Fuel" or "AIILF," that was derived from another AAR cost index, "the All Inclusive Index" or "AII."  The AIILF includes the same cost components of the AII with the exception that the fuel component of the AII is excluded.  NS denies the remaining allegations.

Response to Paragraph No. 33:

NS denies the existence of a conspiracy.  NS affirmatively states that, effective on or about June 28, 2000, it published a separate fuel surcharge that was calculated as a percentage of the base rate which was applied to traffic moving pursuant to a regulated rate authority that could be applied to other traffic, and that was triggered by certain events as follows:

In the event the price of West Texas Intermediate Crude Oil, as published in *The Wall Street Journal*, exceeds $28.00 per barrel for thirty (30) consecutive days, NS retains the option to apply a fuel surcharge to the rate charge(s) in effect on the date the fuel surcharge is applied, hereinafter referred to as the "Base Freight Charge(s)."  If this option is exercised, the fuel surcharge shall be applied according to the following Schedule.

Texas Intermediate Cumulative Crude Oil Fuel Surcharge

| Price per Barrel | Percentage |
|---|---|
| $28.01 | 2% |
| $33.01 | 4% |
| $38.01 | 6% |
| $43.01 | 8% |

Each $5.00 per barrel increases an additional 2% thereafter.

At times, the application of this fuel surcharge mechanism resulted in no surcharge because the volatility of the price of oil prevented the price from staying above the designated threshold levels for 30 consecutive days.  NS modified this fuel surcharge mechanism effective March 1,

2004. As was the case prior to 2003, negotiations with shippers may have resulted in the application of fuel surcharge mechanisms different from those published and intended for traffic moving pursuant to regulated rate authorities and may have resulted in the application of no fuel surcharge mechanism. Similarly, negotiations may have resulted in the application of rate escalation provisions, using a number of different cost indices or other escalation mechanisms. NS denies the remaining allegations.

## **DEFENDANTS' FIRST STEPS OF PRICE COLLUSION**

Response to Paragraph No. 34:

Paragraph 34 states legal conclusions to which no response is required. To the extent a response is required, NS denies the allegations including the existence of a conspiracy. NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge calculated as a percentage of the base rate that was a modification of its published fuel surcharge mechanism initiated in June 2000 that was applied to traffic moving pursuant to a regulated rate authority, that could be applied to other traffic, and that was triggered by certain events as follows:

The formula for determining the fuel surcharge is based on the monthly average price of West Texas Intermediate Crude Oil (WTI Average Price), an industry standard for tracking oil prices. The WTI Average Price for a given calendar month is determined by adding the daily WTI prices published in *The Wall Street Journal* during a calendar month, and dividing the result by the number of days so published. The result is rounded to the nearest cent. The fuel surcharge will be 0.4% of the linehaul freight charge for every $1 per barrel, or portion thereof, by which the WTI Average Price exceeds $23, starting at a WTI Average Price of $23.01. The following schedule prices the fuel surcharge within the noted WTI Average Price ranges:

11

| WTI Average Price Per Barrel | Fuel Surcharge Percentage |
|---|---|
| $23.00 and Below | No Surcharge |
| $23.01–$24.00 | 0.4% |
| $24.01–$25.00 | 0.8% |
| $25.01–$26.00 | 1.2% |
| … | |
| $84.01–$85.00 | 24.8% |

Negotiations with shippers may have resulted in the application of fuel surcharge mechanisms different from those published and applied to traffic moving, pursuant to regulated rate authorities and may have resulted in the application of no fuel surcharge mechanism.  Similarly, negotiations may have resulted in the application of rate escalation provisions, using a number of different cost indices or other escalation mechanisms.  NS affirmatively states that, effective July 1, 2006, it published a separate fuel surcharge calculated as a percentage of the base rate that was a modification of its published fuel surcharge mechanism initiated in March 2004.  Furthermore, effective April 1, 2007, NS discontinued assessing a fuel surcharge on its local traffic moving, pursuant to a regulated rate authority.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 35:

Paragraph 35 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations including the existence of a conspiracy.  NS admits that it sits on the board of AAR and that there are board meetings.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 36:

NS denies the existence of a conspiracy.  NS is without information or knowledge sufficient to form a belief as to the allegations related to BNSF or UP and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 37:

NS denies the existence of a conspiracy.  NS is without information or knowledge sufficient to form a belief as to the allegations related to BNSF or UP and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 38:

NS denies the existence of a conspiracy.  NS is without information or knowledge sufficient to form a belief as to the allegations related to BNSF or UP and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 39:

NS denies the existence of a conspiracy.  NS is without information or knowledge sufficient to form a belief as to the allegations related to BNSF or UP and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 40:

Paragraph 40 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy.  NS is without information or knowledge sufficient to form a belief as to the allegations related to BNSF or UP and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 41:

NS denies the existence of a conspiracy.  NS admits that, in December 2003, the AAR publication *AAR Railroad Cost Indexes* announced the creation of a cost index, the "All

Inclusive Index Less Fuel" or "AIILF," that was derived from another AAR cost index, the "All Inclusive Index" or "AII."  The AIILF includes the same cost components of the AII with the exception that the fuel component of the AII is excluded.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 42:

NS denies the allegations, including the existence of a conspiracy.

Response to Paragraph No. 43:

Paragraph 43 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations including the existence of a conspiracy.  NS admits that it is a board member of AAR.  NS admits that, in December 2003, the AAR publication *AAR Railroad Cost Indexes* announced the creation of a cost index, the "All Inclusive Index Less Fuel" or "AIILF," that was derived from another AAR cost index, the "All Inclusive Index" or "AII."  The AIILF includes the same cost components of the AII with the exception that the fuel component of the AII is excluded.  NS denies the remaining allegations.

Response to Paragraph No. 44:

Paragraph 44 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations including the existence of a conspiracy.

Response to Paragraph No. 45:

NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the remaining allegations, and NS denies the allegations on that basis.

Response to Paragraph No. 46:

NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to CSX and denies the allegations on that

basis.  NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge consistent with the response to Paragraph 34.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 47:

NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to CSX and denies the allegations on that basis.  NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge consistent with the response to Paragraph 34.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 48:

NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to CSX and denies the allegations on that basis.  NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge consistent with the response to Paragraph 34.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 49:

Paragraph 49 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations including the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to CSX and denies the allegations on that basis.  NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge consistent with the response to Paragraph 34.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 50:

      NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to CSX, BNSF, or UP and denies the allegations on that basis.  NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge consistent with the response to Paragraph 34.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 51:

      Paragraph 51 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations, including the existence of a conspiracy.

Response to Paragraph No. 52:

      Paragraph 52 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations, including the existence of a conspiracy.

Response to Paragraph No. 53:

      Paragraph 53 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the allegations, including the existence of a conspiracy.

## THE RAIL FUEL SURCHARGE SCHEME

Response to Paragraph No. 54:

      NS denies the allegations including the existence of a conspiracy.

Response to Paragraph No. 55:

      NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to BNSF or UP and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 56:

NS denies the existence of a conspiracy and denies the remaining allegations.  NS admits that the fuel surcharge percentages listed in the chart attributable to NS are a correct transcription of fuel surcharge percentages found on NS's website (http://www.norfolksouthern.com) related to NS's fuel surcharge mechanism that was applied to carload traffic moving pursuant to regulated rate authorities, that was effective March 1, 2004, through June 30, 2006, and that could be applied to other traffic.  NS denies that the chart accurately represents the fuel surcharges that were actually charged to each and every shipper of unregulated (exempt and contract) traffic.  NS also denies that the chart is an accurate representation of the published fuel surcharge mechanism for carload traffic moving, pursuant to regulated rates after June 30, 2006. NS affirmatively states that, effective July 1, 2006, it published a separate fuel surcharge calculated as a percentage of the base rate that was a modification of its published fuel surcharge mechanism initiated in March 2004, as set forth in response to Paragraph 34.  Furthermore, effective April 1, 2007, NS discontinued assessing a fuel surcharge on its local traffic moving, pursuant to a regulated rate authority.  NS is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to CSX's fuel surcharge and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 57:

Paragraph 57 states legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied including the existence of a conspiracy.

Response to Paragraph No. 58:

Paragraph 58 states legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied including the existence of a conspiracy.

Response to Paragraph No. 59:

NS denies the allegations including the existence of a conspiracy.

Response to Paragraph No. 60:

Paragraph 60 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy and denies the remaining allegations.

Response to Paragraph No. 61:

Paragraph 61 states legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied including the existence of a conspiracy.

**OTHER ELEMENTS OF THE CONSPIRACY**

Response to Paragraph No. 62:

NS denies the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis. NS admits that fuel surcharges for carload traffic moving pursuant to regulated rate authorities were published on its website.  NS denies that the fuel surcharges on its website accurately represents the fuel surcharges that were actually charged to each and every shipper of unregulated (exempt and contract) traffic.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 63:

NS denies the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis. To the extent the allegations are directed at NS, NS denies the allegations.

Response to Paragraph No. 64:

NS denies the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis. To the extent the allegations are directed at NS, NS denies the allegations.

Response to Paragraph No. 65:

NS denies the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis. To the extent the allegations are directed at NS, NS denies the allegations.  NS admits that the quoted language appears in the D.C. District Court Opinion, but NS denies the characterization of the quoted language.  NS respectfully refers the Court to the full opinion for a complete understanding of its contents.

Response to Paragraph No. 66:

NS denies the existence of a conspiracy.  NS admits that the quoted language appears in the D.C. District Court Opinion, but NS denies the characterization of the quoted language.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to CSX and BNSF and denies the allegations on that basis.  To the extent the allegations are directed at NS, NS denies the allegations.

Response to Paragraph No. 67:

Paragraph 67 states legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied, including the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis.  To the extent the allegations are directed at NS, NS denies the allegations.

Response to Paragraph No. 68:

Paragraph 68 states legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied, including the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis.  To the extent the allegations are directed at NS, NS denies the allegations.

## DEFENDANTS' SUPRACOMPETITIVE PROFITS

Response to Paragraph No. 69:

NS denies the existence of a conspiracy.  NS is without information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis. To the extent the allegations are directed at NS, NS denies the allegations.

Response to Paragraph No. 70:

NS denies the existence of a conspiracy. NS is without knowledge or information sufficient to form a belief as to the allegations relating CSX, UP, or BNSF and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 71:

NS denies the existence of a conspiracy.  NS is without knowledge or information sufficient to form a belief as to the allegations relating to BNSF, UP, or CSX and denies the allegations on that basis.  NS otherwise denies the remaining allegations.

Response to Paragraph No. 72:

Paragraph 72 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy ad denies the remaining allegations.

Response to Paragraph No. 73:

Paragraph 73 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy ad denies the remaining allegations.

## COUNT 1

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT AND SECTION 4 OF THE CLAYTON ACT

Response to Paragraph No. 74:

NS incorporates by reference all responses to the preceding paragraphs of the Complaint as if fully set forth herein.

Response to Paragraph No. 75:

Paragraph 75 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy and denies the remaining allegations.

Response to Paragraph No. 76:

Paragraph 76 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy and denies the remaining allegations.

Response to Paragraph No. 77:

Paragraph 77 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy and denies the remaining allegations.

Response to Paragraph No. 78:

Paragraph 78, including the subparts, states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy and denies the remaining allegations.

Response to Paragraph No. 79:

Paragraph 79 states legal conclusions to which no response is required.  To the extent a response is required, NS denies the existence of a conspiracy and denies the remaining allegations.


With respect to the Prayer Paragraph and its subparts, NS denies the allegations set forth therein and denies it is liable for the relief required therein.

NS denies each and every allegation of Plaintiff's Complaint not hereinabove specifically admitted, explained, or modified.

## AFFIRMATIVE AND OTHER DEFENSES

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing, including, but not limited to, Article III standing, to bring these claims.

### Third Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to plead its allegations with particularity and specificity required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, because NS's conduct has been reasonable, based on independent, legitimate business and economic justifications, without any purpose or intent to injure competition.

### Fifth Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join indispensable parties.

### Sixth Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has agreed to arbitrate claims related to its relevant contracts with NS.

### Seventh Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has agreed to resolve claims related to its relevant contracts with NS in an agreed-to venue.

### Eighth Defense

Plaintiff's claims are preempted and precluded by the Supremacy Clause of the Constitution of the United States and by federal law, including, but not limited to, the Interstate Commerce Commission Termination Act, the Railroad Safety Act of 1970 and other regulations, statutes and laws governing railroad operations.  Therefore, the Plaintiff cannot recover against NS for its claims, and the Complaint should be dismissed.

### Ninth Defense

Plaintiff's claims are barred, in whole or in part, because they improperly infer conspiracy based on interline communications in contravention of 49 U.S.C. § 10706.

### Tenth Defense

Plaintiff is barred from recovery, in whole or in part, because the alleged damages, if any, are speculative, uncertain and not recoverable.

### Eleventh Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff directly or indirectly authorized, consented to, acquiesced in or ratified some or all of the actions and omissions of which it complains.

### Twelfth Defense

Plaintiff has failed to exercise reasonable care and diligence to mitigate its alleged damages.

### Thirteenth Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches.

<u>Fourteenth Defense</u>

The injuries alleged by Plaintiff was caused in whole or in part by the allegations relating to third parties for whom NS was not responsible, through forces in the marketplace over which NS had no control, or through acts or omissions on the part of the Plaintiff, including failure to mitigate damages.

<u>Fifteenth Defense</u>

Plaintiff is barred from recovery, in whole or in part, because the alleged injuries and damages claimed, which NS denies, were not legally or proximately caused by any act or omission by NS.

<u>Sixteenth Defense</u>

Plaintiff's claims are barred, in whole or in part, because they improperly infer conspiracy based on NS's common carrier obligation to disclose rates and provide shippers with advance notice of rate changes pursuant to 49 U.S.C. § 11101.

<u>Seventeenth Defense</u>

Plaintiff's claims are barred, in whole or in part, to the extent based on conduct that is subject to the jurisdiction of the STB.

<u>Eighteenth Defense</u>

Any affirmative defenses pleaded by other Defendants and not pleaded by NS are incorporated herein to the extent they do not conflict with NS's affirmative defenses.

<u>Reservation of Rights</u>

NS reserves the right to raise such additional defenses as may be established during discovery and by the evidence in this case and hereby reserves its right to amend its Answer. NS, by virtue of pleading a defense above, does not admit that said defense is an affirmative defense within the meaning of applicable law, and NS does not thereby assume a burden of proof

or production not otherwise imposed upon it as a matter of law.  In addition, in asserting any of the above defenses, NS does not admit any fault, responsibility, liability or damage but, to the contrary, expressly denies the same.  NS reserves the right to seek leave of this Court to amend its Answer to Plaintiff's Complaint as it deems appropriate.

## PRAYER

**WHEREFORE**, NS respectfully prays for judgment as follows:

1.    That judgment be entered in favor of NS and against Plaintiff on all of its claims;

2.    That Plaintiff recover nothing by its Complaint;

3.    That the Complaint be dismissed with prejudice;

4.    That NS recovers all attorney's fees, costs, and expenses incurred in defense of this action; and

5.    That the Court grant NS such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Defendant Norfolk Southern Railway Company hereby demands trial by jury on all issues so triable.

Dated: February 16, 2021

/s/ *Tara L. Reinhart*
Tara L. Reinhart (D.C. Bar. No. 462106)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com

*Attorney for Defendant Norfolk Southern Railway Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, I caused a true and correct copy of Defendant Norfolk Southern Railway Company's Answer to Plaintiff's Complaint to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel for Plaintiff.

*/s/ Tara L. Reinhart*
Tara L. Reinhart

*Attorney for Defendant*
*Norfolk Southern Railway Company*