**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br><br><br>This document relates to:<br><br>ALL CASES | MDL Docket No. 2925<br>Misc. No. 20-8 (BAH) |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF**
**POST-2008 TRANSACTION DATA AND PRICE AUTHORITIES**

Plaintiffs in these consolidated cases hereby move, pursuant to Federal Rule of Civil Procedure 37(a), for an order compelling Defendants to:

(a) produce the same fields of transaction data for 2009 that they produced in *In re Rail Freight Fuel Surcharge Antitrust Litigation,* MDL No. 1869, for all Plaintiffs, and to search the data for entity names and spellings provided by Plaintiffs;

(b) produce data from 2010 to 2012 for Plaintiffs who identify a price authority entered into or in effect on or before December 31, 2008 that they reasonably believe continued beyond 2009 within 30 days of presentment of the price authority; and

(c) substantially complete the production of price authorities applicable to the Plaintiffs by May 1, 2021.

The reasons this motion should be granted are set forth in the accompanying memorandum of points and authorities and the Declaration of Daniel M. Jaffe.

Plaintiffs state that before filing this motion, they complied with the Court's instructions set forth in its Order dated May 22, 2020 (Dkt. 102). In addition, Plaintiffs state, pursuant to that Order, the Court's instructions at the status conference on February 4, 2021 and Local Civil Rule

- 1 -

7(m), that they have met and conferred with Defendants on several occasions to try to resolve this dispute but have been unable to reach agreement.

Dated: March 17, 2021

Respectfully submitted,

/s/ Alden L. Atkins
Craig P. Seebald (D.C. Bar No. 438968)
Alden L. Atkins (D.C. Bar No. 00393922)
Lindsey R. Vaala (D.C. Bar No. 974770)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

/s/ John H. LeSeur
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854)
Daniel M. Jaffe (D.C. Bar No. 461185)
SLOVER & LOFTUS LLP 1224
Seventeenth Street NW Washington, D.C.
20036 (202) 347-7170 (202) 347-3619
(Facsimile) jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel Corporation; Bel-Ray Company, LLC; Calumet Branded Products, LLC; Calumet Cotton Valley Refining, LLC; Calumet Dickinson Refining, LLC; Calumet Karns City Refining, LLC; Calumet Montana Refining, LLC; Calumet Operating, LLC; Calumet Princeton Refining; LLC; Calumet Refining, LLC; Calumet Shreveport Refining, LLC; Calumet Specialty Products*

Partners, L.P.; CF Industries, Inc.; Dairyland Power Cooperative; Dyno Nobel, Inc.; Entergy Arkansas, LLC; Entergy Louisiana, LLC; Exelon Generation Company, LLC; Kurlin Company, LLC; NorFalco LLC; NorFalco Sales; North Star BlueScope Steel LLC; Steelscape, LLC; Wisconsin Electric Power Company

s/ Michael D. Hausfeld
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo
Halli E. Spraggins
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com
hspraggins@hausfeld.com

Seth R. Gassman
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
sgassman@hausfeld.com

Attorneys for BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C. CONSOL Energy, Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R.

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
Sami H. Rashid
Viola Trebicka
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
violatrebicka@quinnemanuel.com

Attorneys for Plaintiffs Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa World Alumina, LLC; Alumax Mill Products, Inc.; The Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird Incorporated' CertainTeed Canada, Inc.;

*Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Newell Recycling Southeast, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc.; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation; CertainTeed Gypsum and Ceilings USA, Inc.; Coffeyville Resources Nitrogen Fertilizers, LLC; Coffeyville Resources Refining & Marketing, LLC; Wynnewood Refining Company, LLC; East Dubuque Nitrogen Fertilizers, LLC; ConAgra Brands, Inc. f/k/a ConAgra Foods, Inc.; Virginia Electric and Power Company,; Dominion Energy Fuel Services, Inc.; Dominion Energy South Carolina, Inc.; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Progress, LLC; Duke Energy Indiana, LLC; Duke Energy Kentucky, LLC; Duke Energy Ohio, LLC; Progress Fuels, LLC; DEGS of Narrows, LLC; Duke Energy Generation Services, Inc.; Eastman Chemical Company; Solutia Inc.; Taminco Corporation; Exxon Mobil Corporation; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; Imperial Oil; Imperial Oil Limited; Canada Imperial Oil Limited; Grain Craft, Inc.; Southeastern Mills, Inc.; Hyundai Motor America, Inc.; IPSCO Tubulars Inc.; IPSCO Koppel Tubulars, LLC; IPSCO Tubulars (KY), LLC; TMK NSG, LLC; Keystone Fuels, LLC; Conemaugh Fuels, LLC; Kia Motors America, Inc.; Lafarge North America, Inc., Holcim (US) Inc.; Aggregate Industries Management, Inc.; Aggregate Industries - SWR, Inc.; Aggregate Industries - WCR, Inc.; Aggregate Industries Northeast Region, Inc.; Aggregate Industries - MWR, Inc.; Bardon, Inc. (dba Aggregate Industries Mid-Atlantic Region); Cement Transport, LTD; Geocycle LLC; Systech Environmental Corporation; Lafarge PNW, Inc.; Lattimore Materials Corp.; Mercedes-Benz USA, LLC; Motiva Enterprises LLC; NLMK USA, Inc.; NLMK Pennsylvania, LLC; Sharon Coating, LLC; Northdown Industries, Inc.; Normerica Inc.; NOVA*

- 4 -

*/s/ William J. Blechman*
Robert D. W. Landon, III
Richard Alan Arnold**
William J. Blechman**
Douglas H. Patton**
Samuel J. Randall**
Michael A. Ponzoli**
Joshua B. Gray**
Brandon S. Floch**
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail:
rlandon@knpa.com
raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com
jgray@knpa.com
bfloch@knpa.com
*(*Pro hac vice* forthcoming)

*Attorneys for Plaintiffs Cemex, Inc.,
Clearwater Paper Corporation, The Goodyear
Tire & Rubber Company, Kraft Heinz Foods
Company, Lehigh Hanson, Inc., PotlatchDeltic
Corporation, Rayonier Advanced Materials
Inc., Sterling Steel Company LLC., UPM-
Kymmene, Inc., and Unilever ASCC AG*

*Chemicals, Inc.; NOVA Chemicals
Corporation; NOVA Chemicals (Canada)
Ltd.; Old World Industries, LLC; PCS Sales
(USA), Inc.; Agrium (U.S.), Inc.; PCS
Phosphate Company, Inc.; White Springs
Agricultural Chemicals, Inc; PCS Nitrogen,
Inc.; Phillips 66 Company; Shell Chemical
LP, Shell Chemicals Canada (f/k/a Shell
Chemicals Canada Ltd.) by its managing
partner Shell Canada Ltd.; Pennzoil-Quaker
State Company (formerly d/b/a SOPUS
Products); Shell Trading (US) Company;
Equilon Enterprises LLC (d/b/a Shell Oil
Products US or SOPUS); Talen Energy
Supply, LLC f/k/a PPL Energy Supply, LLC,
on behalf of itself and its subsidiaries and
affiliates; Talen Energy Marketing, LLC f/k/a
PPL EnergyPlus, LLC; Talen Generation,
LLC f/k/a PPL Generation, LLC (successor
in interest to PPL Coal Supply, LLC); Talen
Montana, LLC f/k/a PPL Montana, LLC;
Martins Creek, LLC f/k/a PPL Martins
Creek, LLC; Brunner Island, LLC f/k/a PPL
Brunner Island, LLC; Montour, LLC f/k/a
PPL Montour, LLC; United Parcel Service,
Inc., an Ohio Corporation; UPS Ground
Freight, Inc.; Vulcan Materials Company;
Legacy Vulcan, LLC; Florida Rock
Industries, Inc.; Atlantic Granite LLC;
CalMat Co.; Vulcan Aggregates Company,
LLC; Vulcan Construction Materials, LLC;
Fulton Concrete Company, LLC; McCartney
Construction Company, Inc.; Calhoun
Asphalt Company, Inc.; Harper Brothers,
LLC; Virginia Concrete Company, LLC;
Azusa Rock, LLC; Triangle Rock Products,
LLC; Aggregates USA, LLC; Chem-Marine
Corporation of South Carolina; DMG
Equipment Company, LLC; R. C. Smith
Companies, LLC; Aggregates USA (Macon),
LLC; Aggregates USA (Savannah), LLC;
Aggregates USA (Sparta), LLC; WestRock
Company; WestRock Coated Board, LLC;
WestRock Virginia, LLC; WestRock Texas,
L.P.; WestRock CP, LLC; WestRock –Rex,
LLC; WestRock Southeast, LLC; WestRock
Northwest, LLC; WestRock Mill Company,*

*LLC; WestRock – Solvay, LLC; WestRock Minnesota Corporation; WestRock Kraft Paper, LLC; WestRock Container, LLC; and WestRock Longview, LLC; Smurfit-Stone Container Canada Inc.*

/s/ *David C. Eddy*
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
Chase C. Keibler (admitted *pro hac vice*)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
ddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com
ckeibler@nexsenpruet.com

*Attorneys for Plaintiffs Domtar Corporation; Ford Motor Company; and South Carolina Public Service Authority*


/s/ *Adam Carlis*
Geoffrey L. Harrison
Shawn Raymond
Adam Carlis
Matt Wood
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
mwood@susmangodfrey.com

Catriona Lavery
SUSMAN GODFREY, L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
clavery@susmangodfrey.com

*Attorneys for Boise Cascade Company; CONSOL Energy, Inc.; Crowley Maritime*

/s/ *Joseph M. Vanek*
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin V. Sinclair, Jr. (admitted *pro hac vice*)
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: jvanek@sperling-law.com
dgermaine@sperling-law.com
msinclair@sperling-law.com

*Attorneys for Plaintiff Kellogg Company*


/s/ *Sandra L. Brown*
Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP 1919 M Street
N.W. Suite 700
Washington, D.C. 20036 Tel: (202)
331-8800 Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
rob.ware@thompsonhine.com

*Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc.; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

jennifer.roach@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power Company, Georgia Power Company and Mississippi Power Company; Northern Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

/s/ *David B. Helms*
David B. Helms
GERMAN MAY PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@germanmay.com

Kirk T. May
William D. Beil
GERMAN MAY PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@germanmay.com
Email: billb@germanmay.com

*Attorneys for Plaintiffs Brady McCasland, Inc.*


/s/ *Kirk T. May*
Kirk T. May
William D. Beil
GERMAN MAY PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@germanmay.com
Email: billb@germanmay.com

David B. Helms
GERMAN MAY PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@germanmay.com

*Attorneys for Plaintiffs Lansing Ethanol
Services, LLC, et al.*

*/s/ Benjamin D. Brown*
Benjamin D. Brown (DC Bar. No. 495836)

/s/ *Eric S. Hochstadt*
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac
vice*) Luna Barrington (admitted *pro
hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com
luna.barrington@weil.com
sarah.ryu@weil.com

Carrie C. Mahan (D.C. Bar No. 459802)
WEIL, GOTSHAL & MANGES LLP
2001 M. Street NW #600
Washington, DC 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
carrie.mahan@weil.com

*Attorneys for Plaintiffs ArcelorMittal
USA LLC and ArcelorMittal Dofasco
G.P.*

/s/ *Edward D. Hassi*
Edward D. Hassi (D.C. Bar No. 1026776)

Robert A. Braun (DC Bar. No. 1023352)
Leonardo Chingcuanco
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
lchingcuanco@cohenmilstein.com

*Attorneys for Plaintiffs Kawasaki Kisen
Kaisha, Ltd., "K" Line America, Inc., Yang
Ming Marine Transport Corp., Yang Ming
(America) Corp., Nippon Yusen Kabushiki
Kaisha, and NYK Line (North America) Inc.*

/s/ *Gregory W. Langsdale*
Brian D. Wallach (D.C. Bar No. 432349)
Gregory W. Langsdale (D.C. Bar No. 500716)
CADWALADER, WICKERSHAM & TAFT
LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
Tel: (202) 862-2200
E-mail:
brian.wallach@cwt.com
greg.langsdale@cwt.com

/s/ *Brandon J.B. Boulware*
Brandon J.B. Boulware
Jeremy M. Suhr
BOULWARE LAW LLC
1600 Genessee Street
Suite 416
Kansas City, Missouri 64102
Tel: (816) 492-2826
E-mail: brandon@boulware-law.com
jeremy@boulware-law.com

Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper, Esquire
Brooke J. Willig, Esquire
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909 6000
Fax: (212) 909 6836
E-mail: mschaper@debevoise.com
bwillig@debevoise.com

*Attorneys for Plaintiffs Toyota Motor
Sales, U.S.A., Inc. and Toyota Canada Inc.*

/s/ *Nathan P. Eimer*
Nathan P. Eimer (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
srazzano@eimerstahl.com
bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs Anheuser-Busch, LLC and Anheuser-Busch Companies, LLC*

/s/ *Brandon J.B. Boulware*
Brandon J.B. Boulware
Jeremy M. Suhr
BOULWARE LAW LLC
1600 Genessee Street
Suite 416
Kansas City, Missouri 64102
Tel: (816) 492-2826
E-mail: brandon@boulware-law.com
jeremy@boulware-law.com

*Attorneys for Plaintiff The J.M. Smucker Company*

/s/ *James P. Denvir*
James P. Denvir
(D.C. Bar No.  284554)
Scott E. Gant
(D.C. Bar No. 455392
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131
jdenvir@bsfllp.com
sgant@bsfllp.com

Stuart H. Singer (pro hac vice)
James Grippando (pro hac vice)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida  33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc., E.I. du Pont Nemours and Company, and The General Electric Company*

*Attorneys for Plaintiffs The Dow Chemical Company, Union Carbide Corporation, Amerchol Corporation, Umetco Minerals Corporation, Gerdau Ameristeel Corporation, Gerdau Ameristeel US Inc., Gerdau Ameristeel Perth Amboy Inc., Gerdau Ameristeel Sayreville Inc., Chaparral Steel Company, Chaparral Steel Midlothian, LP, Chaparral (Virginia) Inc., Sheffield Steel Corporation, and Gerdau Macsteel, Inc., International Paper Company, GenOn Energy Management, LLC, GenOn Power Midwest LP, GenOn REMA, LLC*

/s/ *Daniel B. Goldman*
Daniel B. Goldman
Steven S. Sparling
Daniel Lennard
Zachary C. Naidich
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com
ssparling@kramerlevin.com
dlennard@kramerlevin.com
znaidich@kramerlevin.com

D. Jeffrey Ireland
Erin E. Rhinehart
FARUKI PLL
201 E. Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (937) 227-3714
Telecopier: (937) 227-3717
erhinehart@ficlaw.com
djireland@ficlaw.com

*Attorneys for Plaintiffs The Procter & Gamble Company, The Procter & Gamble*

*/s/ Frank M. Lowrey IV*
Frank M. Lowrey IV (pro hac vice)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (pro hac vice)
mykkeltvedt@bmelaw.com
Amanda D. Bradley (pro hac vice)
bradley@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E.
Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for Plaintiff The General Electric Company*

/s/ *Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

*/s/ Michael C. Dell'Angelo*
Michael C. Dell'Angelo
Michael J. Kane
H. Laddie Montague, Jr.
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
hlmontague@bm.net
mwallin@bm.net

*Distributing LLC, The Procter & Gamble Manufacturing Company, and The Procter & Gamble Paper Products Company*

*/s/Ronald J. Aranoff*
Ronald J. Aranoff
Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

*Attorneys for Plaintiff Air Products and Chemicals, Inc.*

*/s/ Daniel B. Goldman*
Daniel B. Goldman
Steven S. Sparling
Daniel Lennard
Zachary C. Naidich
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com
ssparling@kramerlevin.com
dlennard@kramerlevin.com

- 12 -

znaidich@kramerlevin.com

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
(202) 559-9745
dwalker@bm.net

*Attorneys for Tronox Inc. and Tronox US Holdings Inc.*

*Attorneys for Plaintiffs High Level Management Venturers, Century Aluminum Company, Century Aluminum of Kentucky, GP, NSA, GP, Century Aluminum of West Virginia, Inc, and Century Aluminum Of South Carolina, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE: RAIL FREIGHT FUEL SURCHARGE
ANTITRUST LITIGATION (NO. II)

MDL Docket No. 2925
Misc. No. 20-8 (BAH)

This document relates to:

ALL CASES

**PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL
PRODUCTION OF POST-2008 TRANSACTION DATA
AND PRICE AUTHORITIES**

US 7839302v.1 AKS555/63000

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 4

ARGUMENT ......................................................................................................................... 7

  A.  The Requested Transactional Data Is Relevant. ...................................................... 7

  B.  Plaintiffs Request for 2009 Data Is Narrowly Tailored and Does Not Pose an Undue Burden on Defendants. ........................................................................... 10

    1.  Defendants Do Not Contend that Their Proposed Procedure Is Less Burdensome than Plaintiffs' Request........................................................... 12

    2.  Defendants' "Show Me the Price Authority First" Approach Requires That They Be Ordered to Substantially Complete Production of Price Authorities by May 1, 2021. .................................... 14

  C.  The Parties' Relative Access to Information. ........................................................ 16

  D.  The Other Rule 26(b) Factors Favor Producing the Data. .................................... 16

CONCLUSION..................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Cases**

*Caruso v. Coleman Co.*,
  157 F.R.D. 344 (E.D. Pa. 1994).................................................................................................... 8

*Elkins v. Dist. of Columbia*,
  250 F.R.D. 20 (D.D.C. 2008)........................................................................................................ 8

*FTC v. Lukens Steel Co.*,
  444 F. Supp. 803 (D.D.C. 1977) ................................................................................................. 7

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
  425 U.S. 738 (1976)...................................................................................................................... 7

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  219 F.R.D. 12 (D.D.C. 2003)........................................................................................................ 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................................. 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  292 F. Supp. 3d 14 (2017), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019) ............................................. 4

*In re: Rail Freight Fuel Surcharge Antitrust Litigation* (MDL No. 1869),
  No. 18-7010 (D.C. Cir. May 9, 2018)........................................................................................ 15

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) .............................................................................................. 7

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R.*,
  322 F.R.D. 1 (D.D.C. 2017)................................................................................................... 7, 16

*Peskoff v. Faber*,
  No. 04-526, 2006 WL 1933483 (D.D.C. July 11, 2006) ............................................................ 7

*Pleasants v. Allbaugh*,
  208 F.R.D. 7 (D.D.C. 2002).......................................................................................................... 7

*Poulson v. Beez Bugeez, Inc.*,
  No. 84 Civ. 7035, 1986 WL 11457, (S.D.N.Y. Oct. 3, 1986) .................................................... 9

**Statutes**

49 U.S.C. § 10706............................................................................................................................ 4

**Rules**

Ass'n of Am. R.Rs.,
  Railroad Accounting Rules (Jan. 25, 2021) ............................................................................... 1

Fed. R. Civ. P. 26(b)(1).................................................................................................................. 16

Fed. R. Civ. P. 54(c) ........................................................................................................................ 9

**INTRODUCTION**

In its Memorandum Opinion dated August 25, 2020 (Dkt. 358), the Court held that Plaintiffs can seek to recover damages for the "lingering effects" of "harm caused by effects of the July 1, 2003-December 31, 2008 conspiracy that extended beyond December 31, 2008." (*Id.* at 53-54.)  The Court ruled further that "[w]hether plaintiffs can prove that their alleged  post-2008 harms in fact resulted from defendants' pre-2008 conduct is an issue for future stages of litigation." (*Id.*)  In an effort to prove and calculate those damages, Plaintiffs originally asked Defendants for their transaction data for all Plaintiffs for the period 2009-2012.  Defendants refused and instead made—and continue to insist upon—a counterproposal that places Plaintiffs in an impossible Catch-22.

Defendants said they would agree to produce transaction data only if a Plaintiff can prove, to Defendants' satisfaction, that a specific price authority[1] (1) was entered into during the conspiracy period, (2) contained the type of fuel surcharges that Defendants have deemed recoverable, and (3) continued after December 31, 2008.  Defendants' procedure to adjudicate each Plaintiff's right to obtain the data one-by-one for each price authority would be burdensome to all parties and time-consuming, threatening the schedule.  However, because of the passage of time, many Plaintiffs are unable to provide a complete set of price authorities.  Many are unable to provide any price authorities at all.  Thus, under Defendants' proposal, Plaintiffs must first get

---

[1] A "price authority" is a term commonly used in the rail industry to describe the document that sets prices and terms of service for a particular rail shipment.  Price authorities can take many forms, including a "contract, quote, circular or tariff containing rates and rules governing their application."  (Ass'n of Am. R.Rs., Railroad Accounting Rules 59 (Jan. 25, 2021), (emphasis omitted), submitted as Ex. 2.)  Defendants produced transaction data in MDL I for all forms of price authorities, not just bilateral contracts, and Plaintiffs seek comparable data here.  (*See* Declaration of Daniel M. Jaffe, sworn to on March 17, 2021 ("Jaffe Decl.") ¶¶ 4-7.  Citations to Exhibits 1-11 as used herein refer to the same-numbered exhibits attached to the Jaffe Declaration.)

the price authorities in effect during the conspiracy period from the Defendants in order for Plaintiffs to get the data they need to prove the damages to which this Court has said they are entitled.

Plaintiffs were willing to consider Defendants' "show me your price authority first" approach and even took steps to provide Defendants with the price authorities Plaintiffs have in their possession. (Ex. 7.) In exchange, Plaintiffs requested that Defendants promptly produce their price authorities. (*Id.*) Defendants refused.

Although BNSF began producing price authorities in January, and CSX and NS began producing them in February, none of these Defendants will say how close they are to completing their productions or commit to a substantial completion date. To make matters worse, and to further delay the production of post-2008 data, one Defendant—UP—has claimed it cannot run targeted searches for those price authorities and has thus refused to produce any price authorities until the parties complete negotiations over all document production search terms because UP's contracts are in custodial, rather than centralized, files. UP maintains its position despite the fact that the parties have already agreed on which custodians UP will search. While UP refuses to search its custodial files, many of the Plaintiffs searched their custodial files to produce price authorities in response to Defendants' demands. (*See* Jaffe Decl. ¶ 17.)

After the February 4, 2021 conference with the Court, and in an effort to resolve the dilemma in which Defendants have placed Plaintiffs, Plaintiffs told Defendants they were willing to narrow the scope of their request significantly by dropping three years to seek only 2009 data and limiting the production to data about Plaintiffs (not all shippers). This proposal was conditioned on the understanding that Defendants would produce data after 2009 if a Plaintiff can identify a price authority that was entered into or in effect during the conspiracy period and

2

continued beyond 2009.  Plaintiffs are willing to make this concession because many Defendants had one-year term contracts and thus a large number of MDL II Plaintiffs are likely to have price authorities entered into before the end of 2008 that extended into 2009.  This compromise seeks to maximize the number of Plaintiffs for which lingering effects transactional data is promptly produced while reducing the burden on Defendants to producing just one year's worth of data only across all Plaintiffs.

While the production of 2009 transactional data will be sufficient for many Plaintiffs, there are a subset of Plaintiffs that entered into price authorities subject to damages claims during the conspiracy period that continued past 2009, and some of these Plaintiffs will have significant lingering effects damages as a result.  These Plaintiffs are entitled to the discovery they need to prove their claims, and Plaintiffs are willing to agree to Defendants' "show me your price authority first" proposal for this subset of conspiracy period price authorities that Plaintiffs identify that continued beyond 2009.  Given the limited number of price authorities that are likely at issue and the critical relevance of the materials requested, the minimal burden on Defendants of producing this data is justified.   To be able to comply with Defendants' proposed approach, however, Defendants must produce their price authorities expeditiously.

Therefore, as explained below, Plaintiffs respectfully move this Court to order Defendants (1) to substantially complete the production by May 1, 2021 of the price authorities requested by Plaintiffs; (2) to produce the same fields of transaction data for 2009 that they produced in MDL I for all Plaintiffs and to search entity names and spellings provided by Plaintiffs; and (3) to produce the same fields of transaction data from 2010 to 2012 for Plaintiffs who identify a price authority entered into or in effect on or before December 31, 2008 that a Plaintiff reasonably believes continued beyond 2009 within 30 days of presentment of the price authority.

**BACKGROUND**

Plaintiffs allege that Defendants BNSF Railway Company ("BNSF"), CSX Transportation, Inc. ("CSX"), Norfolk Southern Railway Company ("NS") and Union Pacific Railroad Company ("UP") conspired to use rate-based fuel surcharges ("FSCs") as a means to elevate rates. Several shippers brought claims in 2007, which were consolidated as *In re Rail Freight Fuel Surcharge Antitrust Litigation* before Judge Friedman ("MDL I"). In MDL I, the district court said "the documentary evidence is strong evidence of conspiracy." *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 292 F. Supp. 3d 14, 32 (2017), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019).[2] After the district court denied class certification in MDL I and the court of appeals affirmed, approximately 100 cases have been filed on behalf of approximately 300 plaintiffs, which have been consolidated in this case ("MDL II").

Plaintiffs allege that the conspiracy continued from July 2003 through at least December 2008. (*E.g.*, Compl. ¶ 1, *AK Steel Corp. et al. v. BNSF Railway Co. et al.*, No. 1:19-cv-02970 (Oct. 2, 2019).) In its Memorandum Opinion dated August 25, 2020 (Dkt. 358), the Court denied Defendants' motion to dismiss certain complaints in this MDL and held that Plaintiffs can recover damages for the "lingering effects" of the conspiracy after December 31, 2008. (*Id.* at 53-54.) The Court said: "Whether plaintiffs can prove that their alleged post-2008 harms in fact resulted from defendants' pre-2008 conduct is an issue for future stages of litigation." (*Id.* at 54.)[3] Plaintiffs now seek evidence to prove those damages.

---

[2] Recently, the Court in MDL I denied Defendants' motion under 49 U.S.C. § 10706 to exclude additional evidence of their conspiracy. (*See* Opinion, Feb. 19, 2021, MDL I (Dkt. 1008).) Defendants have moved the district court to certify that decision for interlocutory appeal.

[3] Certain Plaintiffs moved for clarification or reconsideration of the Court's August 25, 2020 order, which the Court denied. (Dkt. 428.) Defendants did not seek reconsideration of the August 25, 2020 order.

4

To prove lingering effects damages, Plaintiffs' Request for Production No. 1 sought the same categories of data that Defendants had produced in MDL I for all shippers for four years after the alleged conspiracy period from January 1, 2009 to December 31, 2012.[4]  (*See* Plaintiffs' Joint First Request for Production of Documents to All Defendants, June 15, 2020, attached as Ex. 1.)  In addition, because many Plaintiffs no longer have a complete set of contracts or other price authorities for rail freight transportation services they purchased from Defendants years ago, Plaintiffs requested for the period May 1, 2001 to December 31, 2008 "[a]ll contracts, price quotes, circulars, rate authorities, or other Documents and Communications that set forth the terms of Plaintiff's purchase of Rail Freight Transportation Services from You."  (*Id.* (Request No. 1 on behalf of each plaintiff individually).)

Defendants initially refused to produce any of the transaction data.  (*E.g.*, Ex 5 at 14-15.)  After further discussions, Defendants agreed to produce post-2008 data, but only for Plaintiffs who they determined (a) alleged post-2008 damages in their complaint or (b) could demonstrate to their satisfaction that the Plaintiff had paid rate-based FSCs in 2009 or later under a price authority entered on or before December 31, 2008.  (*See, e.g.*, Ex. 8.)[5]  But when they made that offer, they had not produced the price authorities, even though BNSF, CSX and UP had said that they would produce the price authorities, and NS said it would meet and confer with Plaintiffs.  (Ex. 3 at 17, Ex. 4 at 27, Ex. 5 at 25, Ex. 6 at 20.)[6]  Accordingly, Defendants' proposal was impossible for many

---

[4] In MDL I, Defendants produced transaction data for the period January 2000 to December 2008 for all shippers, and that data has been produced in MDL II.  CSX's transaction data did not begin until 2001.  (Jaffe Decl. ¶ 6.)

[5] Defendants' offer was that they would produce data only "through the month and year the Plaintiff has shown it was paying a rate-based fuel surcharge."  (Ex. 8.)

[6] Although Defendants had produced price authorities in MDL I for the plaintiffs in that case and for some other shippers, they did not produce a full set of price authorities for the plaintiff shippers in MDL II.  (Ex. 7 at 2.)

Plaintiffs because those Plaintiffs did not (and still do not) have sufficient information to determine whether they had a price authority during the conspiracy period that continued into the post-conspiracy period or the duration of their payments.

Despite Defendants' failure to prioritize the search for price authorities, and in an effort to advance the discussion and work within Defendants' proposal, Plaintiffs prioritized the search for and production of price authorities they could locate in their own files (even if those Plaintiffs did not have centralized contract files). (Ex. 7.) Plaintiffs sent Defendants a list of the Plaintiffs seeking lingering effects damages and identified the price authorities they could locate. (*Id.*)[7] They wrote: "In exchange, Plaintiffs expect Defendants to produce promptly all rail contracts, rate authorities, and negotiation files applicable to all Plaintiffs for the relevant period." (*Id.* at 2.) Defendants refused. (Jaffe Decl. ¶¶ 13-15.)

Upon receipt of Plaintiffs' November 30 letter, Defendants undertook their own review of the price authorities Plaintiffs submitted and rejected most of them by applying their own subjective criteria. (Exs. 8, 9, 10, 11.) As discussed during the February 4 hearing, however, many of Defendants' decisions are demonstrably wrong, and Defendants' approach of conducting a price-authority-by-price-authority review and then unilaterally rejecting Plaintiffs' requests for data will lead to endless disputes over whether the authority supports a claim for lingering effects data and would likely require frequent Court intervention. (*See* Status Conf. Tr. 18-19, 48 (Feb. 4, 2021) (Dkt. 516).) Moreover, even for those price authorities where Defendants have agreed to produce data, they still have not yet done so and have instead indicated that they intend to ask this Court to reconsider its order on lingering effects, yet again.

---

[7] Plaintiffs stated that the list was non-exhaustive and should not be considered a complete list of all price authorities on which Plaintiffs may rely to prove lingering effects damages. (Ex. 7.) Plaintiffs began producing copies of their price authorities in December 2020. (Jaffe Decl. ¶ 18.)

## ARGUMENT

There is a "broad presumption in favor of discovery of relevant information embodied in Federal Rule of Civil Procedure 26." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 6 (D.D.C. 2017). The "discovery rules should normally be liberally construed to permit discovery in antitrust cases." *FTC v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977) (collecting cases). "'[W]here the proof is largely in the hands of alleged conspirators,' antitrust plaintiffs must be given 'ample opportunity' for discovery." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (quoting *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976)).

On a motion to compel, the movant bears the initial burden of showing the opposing party's production is incomplete, and "explaining how the requested information is relevant." *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007). Once the relevance is shown, the burden then shifts to the non-movant "to explain why discovery should not be permitted." *Oxbow Carbon*, 322 F.R.D. at 6 (quoting *Jewish War Veterans*, 506 F. Supp. 2d at 42). The "party opposing discovery based on burden 'must make a specific showing . . . as to why the production sought would be unreasonably burdensome.'" *Peskoff v. Faber*, No. 04-526, 2006 WL 1933483, at *2 (D.D.C. July 11, 2006) (quoting *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) (additional citation omitted)). The transaction data Plaintiffs request is plainly relevant, and Defendants cannot make a showing of undue burden for the three sets of information Plaintiffs are moving to compel.

### A.    The Requested Transactional Data Is Relevant.

The "law is well settled that information regarding damages is as discoverable as information which pertains to liability." *Caruso v. Coleman Co.*, 157 F.R.D. 344, 348 (E.D. Pa.

7

1994); *cf. Elkins v. Dist. of Columbia*, 250 F.R.D. 20, 22-24 (D.D.C. 2008) (granting motion to compel in part where the only issues remaining were plaintiffs' entitlement to compensatory and punitive damages).  Here, the post-2008 transaction "data showing what [plaintiffs] actually paid is not merely relevant; it is the very heart of the damages portion of the case." *In re Lorazepam & Clorazepate Antitrust Litig.*, 219 F.R.D. 12, 16 (D.D.C. 2003) (granting motion to compel transaction detail information).

The 2009 data is relevant to a large number of Plaintiffs because many price authorities that were entered into or issued at the end of the conspiracy period in 2008 would have continued in effect into 2009.  The requested transaction data, which typically shows both the price authority under which a shipment was made and any fuel surcharge the shipper paid, will enable Plaintiffs to determine whether there were any lingering effects of Defendants' conspiracy.  Data beyond the year 2009 is relevant to those Plaintiffs that can identify a price authority entered or in effect during the conspiracy period that continued in effect after 2009—a subset that Plaintiffs anticipate will be rather small.  Indeed, Defendants have already offered to produce transaction data "through the month and year the Plaintiff has shown it was paying a rate-based fuel surcharge" for certain Plaintiffs that have been able to identify relevant contracts without the benefit of complete productions from Defendants.  (*See, e.g.*, Ex. 8 at 3.)

Although Defendants have argued that they should not have to produce data for all Plaintiffs because only "two" Plaintiffs alleged lingering effects damages (*see* Parties' email to the Court, Feb. 2, 2021), Defendants are wrong.  At present, at least 93 complaints allege damages from the conspiracy that continued beyond 2008, and potentially more Plaintiffs are entitled to

these damages once they receive Defendants' price authorities.[8]  A number of Plaintiffs have expressly alleged the "Continuing Effects of [Defendants'] Conspiracy."  (*E.g.*, Compl. ¶¶ 83-84, *The Dow Chemical Co. v. Union Pac. R.R. et al.*, No. 1:19-cv-03516.)  And most Plaintiffs alleged that the effects of the conspiracy continued "through at least December 31, 2008" or used similar language, which sufficiently alleged lingering effects damages.  (*E.g.*, Compl. ¶ 1, *AK Steel, et al. v. BNSF Railway Co. et al.*, No. 1:19-02970; *see also* Ex. A.)   In its Memorandum Opinion, the Court said that the "Omnibus Plaintiffs" (six of the Plaintiffs whose complaints were at issue on the motion to dismiss) "alleged conspiracy *and its effects* beyond the period alleged in the Class Complaint, until at least December 31, 2008 and through the present," and it held that those allegations were sufficient for those Plaintiffs to seek lingering effects damages.  (Mem. Op. 15, 52-53, Aug. 25, 2020 (Dkt. 358) (emphasis added; internal quotation marks omitted).)  At that time, the Court observed that "defendants' challenge to plaintiffs' allegations outside the class period is, at its core, a barely-concealed attempt to limit their potential liability for plaintiffs' 'post-2008 damages claims' for the alleged continuing effects of defendants' conspiracy at the outset of this litigation."  (*Id.* at 53.)  That is just as true of Defendants' challenge to Plaintiffs' allegations here.[9]

---

[8] Attached as Exhibit A is a chart which summarizes the formulation used by the different Plaintiffs in this MDL in their complaints.

[9] Further, Plaintiffs are not required to plead lingering effects damages.  *See* Fed. R. Civ. P. 54(c) ("Every other final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *see Poulson v. Beez Bugeez, Inc.*, No. 84 Civ. 7035, 1986 WL 11457, at *1-2 (S.D.N.Y. Oct. 3, 1986) ("judgments under Rule 54(c) are not bound by the relief prayed for in the pleadings. . . . Damages are proved at the trial, not in the pleadings.").  In any event, Plaintiffs could amend their complaints, but the Court has already declined to order Plaintiffs to do so because it "would have the practical effect of prolonging pretrial proceedings."  (Mem. Op. 26, Aug. 25, 2020 (Dkt. 358).)

B.      **Plaintiffs Request for 2009 Data Is Narrowly Tailored and Does Not Pose an Undue Burden on Defendants.**

Plaintiffs initially requested transactional data for *all shippers* for the period of 2009 to 2012. Plaintiffs proposed this period because many Plaintiffs had conspiracy-period price authorities that continued beyond the end of 2008, and some continued for several years. But because Defendants had not produced their price authorities, Plaintiffs could not (and still cannot) determine exactly how long each price authority continued after 2008. Plaintiffs sought data for all shippers because they anticipated it would be less burdensome for Defendants to simply produce all data rather than searching for data on a Plaintiff-by-Plaintiff or even price-authority-by-price-authority basis. In addition, Plaintiffs knew from the data produced in MDL I that there were thousands of transactions with unidentified shippers and multiple spellings of Plaintiffs' names, so a production of data for less than all shippers might miss some of Plaintiffs' transactions. (*See* Jaffe Decl. ¶ 20.)

As a result of the Court's concerns raised at the February 4, 2021 status conference,[10] however, Plaintiffs significantly narrowed their request and explained to Defendants that they now seek only data for the Plaintiffs[11] (and not all other shippers) for 2009, with the understanding that

_____

[10]At the status conference, the Court asked whether Plaintiffs' requests are consistent with their representations to the Judicial Panel for Multidistrict Litigation ("JPML") about the anticipated scope of discovery. (*See* Status Conf. Tr. 28-29 (Feb. 4, 2021) (Dkt. 516).) At that time, approximately 40 cases had been filed. Plaintiffs in a subset of those cases submitted a joint brief to the JPML which said the parties "must still complete individualized damages discovery" and they "anticipate that further discovery will be focused on the facts for each of their claims." (Related Plaintiffs' Response to Defendants' Motion for Transfer, Consolidation, and/or Coordination of Rail Freight Fuel Surcharge Antitrust Actions at 9-10, MDL No. 2925 (JPML Dec. 12, 2019 (Dkt. 87).) They continued: "Once Related Plaintiffs have had the opportunity to review the record [from MDL I], they will be able to identify what they anticipate to be limited additional discovery necessary for their claims." (*Id.* at 10.) That is precisely what Plaintiffs seek here—non-duplicative discovery necessary to prove their individual damages.

[11] Plaintiffs also request that Defendants search the transaction data for entity names and spellings proposed by Plaintiffs. This is to ensure that the search covers the names of entities recently

Defendants would produce post-2009 data for Plaintiffs who identify a conspiracy period price authority that continued beyond 2009.[12]  Despite this narrowing, Defendants refused Plaintiffs' proposal and continued to insist that the same unilateral, price-authority-by-price-authority review that they originally proposed must apply across the board, even though the Court acknowledged that such a process would be unworkable and lead to a flood of discovery disputes. (*See* Status Conf. Tr. 48 (Feb. 4, 2021) (Dkt. 516).)  Alternatively, Defendants offered to produce data for all Plaintiffs only for 2009, but only if Plaintiffs waived any right to request data after 2009.  That would effectively mean that Plaintiffs with long term contracts could be waiving their ability to prove some of their post-2008 damages at the discovery stage of this case.  Defendants' insistence on that waiver is untenable.

Requiring Defendants to produce one additional year of data for all Plaintiffs is a much lower burden than the Plaintiff-by-Plaintiff or contract-by-contract process outlined by Defendants.  In addition, Plaintiffs believe that many of the price authorities did not continue beyond 2009, so the production of the 2009 data will permit a large number of Plaintiffs to determine whether they have price authorities that may give rise to any lingering effects damages. If that data clearly shows that the lingering effects for particular Plaintiffs stopped in 2009, then those Plaintiffs will have no need to seek additional data.  As to any post-2009 data, the least burdensome solution would be for Defendants to produce all of the data through 2012, but

---

identified by Plaintiffs in Interrogatory responses and the different spellings of Plaintiffs' names found in the MDL I data.  Defendants have not objected to that request during the meet and confers.

[12] Some Plaintiffs have determined that their conspiracy period price authorities continued beyond 2012.  Plaintiffs do not, however, ask the Court to order the production of data beyond 2012. Plaintiffs proposed to Defendants that the parties reserve all rights and objections with respect to data after 2012, but Defendants refused, essentially insisting that those Plaintiffs waive any right to data to prove lingering effects damages beyond 2012.  Plaintiffs could not agree to such a waiver.

Plaintiffs are willing to work within Defendants' proposed framework with respect to this data.[13]

Once Defendants produce the relevant price authorities as requested, Plaintiffs ask the Court to

order Defendants to produce transactional data for any Plaintiff who has a price authority entered

into or in effect during the conspiracy that extends past 2009 within 30 days of presentment to the

Defendants of such price authority.  This will save time and resources.  For the smaller number of

Plaintiff that can establish lingering effects damages beyond 2009, those requests will be narrowly

tailored to the specific Plaintiff and price authority.

> **1.    Defendants Do Not Contend that Their Proposed Procedure Is Less Burdensome than Plaintiffs' Request.**

Usually, a party objecting to a request argues that the burden outweighs the likely benefits.

Not so here.  In Defendants' email statement to the Court on February 4, Defendants did not claim

that Plaintiffs' request was more burdensome than their own proposal.  That would be a difficult

claim to make. Defendants have proposed a price-authority-by-price-authority review process

where Defendants would separately analyze each contract and then make unilateral determinations

of the price authorities for which they will produce data.  This procedure would impose far greater

burdens on them than the one Plaintiffs are proposing.  In their own words, Defendants describe

the burden of their proposed procedure as "extraordinary" and "significant" (Ex. 8; Ex. 10), and

"substantial" (Ex. 11).

Moreover, the parties tried this method already and it proved unworkable.  Defendants

made their determinations without having the price authorities in hand.  (*See* Status Conf. Tr. 46

(Feb. 4, 2021) (Dkt. 516) (counsel for UP stating that they did not review contracts).)  UP has not

---

[13] As an alternative to the remedies requested herein, Plaintiffs remain willing to accept an order requiring Defendants to produce all of the data requested for Plaintiffs and unidentified shippers from 2009 through 2012, which would dramatically reduce the burden on Plaintiffs, Defendants, and the Court.

collected its price authorities, and many of NS's are in a warehouse in Roanoke.  Indeed, NS had the audacity to reject an entire group of Plaintiffs' requests where  it has "thus far been unable to locate" its own price authorities.  (Ex. 10 at 3.)  If Defendants cannot accurately determine whether a particular price authority continued beyond 2008 due to their failure to produce the price authorities, then it is certainly unreasonable for them to place the burden on Plaintiffs to identify every price authority and persuade them it gives rise to lingering effects.

The burden of Defendants' price authority-by-price authority procedure would not end with Defendants' unilateral determinations.  As discussed at the status conference, many of the Defendants' determinations are wrong.  (Status Conf. Tr. 18-19 (Feb. 4, 2021) (Dkt. 516).)  The parties would likely dispute whether a particular price authority could give rise to lingering effects damages, such as how long the price authority continued, whether it contained a rate-based FSC, or whether it was rebased, "evergreen" or whether other forms of price authorities could create lingering effects damages.  That discussion and negotiation process would have to be conducted for each price authority, and would consume weeks of valuable time.  Any unresolved disputes would then have to be raised with the Court, potentially requiring it to resolve dozens of disputes. That piecemeal process would drag on for months, frustrating the progress of the case, and Defendants may delay producing any data until every dispute is resolved.  Indeed, it has already caused delay because after Plaintiffs engaged in the laborious exercise of identifying price authorities, Defendants said they would produce data containing transactions for those shippers "through the month and year the Plaintiff has shown it was paying a rate-based fuel surcharge." (Ex. 8 at 3.)  But they have not produced any of that data.

With respect to the transaction data for 2010-2012, while Plaintiffs' proposal could lead to some disagreements about whether particular price authorities continued beyond 2009, these

disputes will be much more manageable than under Defendants' proposal. *First*, Plaintiffs think it likely that a large number of conspiracy-period price authorities did not continue beyond 2009, so the prompt production of 2009 data should significantly reduce the number of potential disputes. *Second*, under Plaintiffs' proposal, a Plaintiff would only need to show that it reasonably believes[14] a price authority continued after 2009 without requiring Defendants' agreement that the price authority could give rise to lingering effects damages. This would avoid disputes at this early discovery stage about whether a Plaintiff can claim lingering effects damages for certain types of price authorities, such as "evergreen" contracts, open price authorities or rebased contracts, thus significantly streamlining the review procedure and limiting the number of disputes that would need to be resolved by the Court. *Third*, Defendants can easily consult their transaction data to determine if that price authority continued beyond 2009. To the extent there are any legitimate disputes about whether a Plaintiff is entitled to this discovery, those can be submitted to the Court for resolution at a later date after the contractual record is complete. Thus, the potential for disputes and delay should be significantly less than for Defendants' proposed procedure.

> **2.      Defendants' "Show Me the Price Authority First" Approach Requires That They Be Ordered to Substantially Complete Production of Price Authorities by May 1, 2021.**

Because many Plaintiffs do not have complete sets of their price authorities, and because Plaintiffs need the price authorities under either the Defendants' "show me the price authority first" framework or Plaintiffs' proposal for data after 2009, Plaintiffs also seek an order requiring Defendants to substantially complete the production of price authorities by May 1, 2021.

---

[14] For many, this showing would be made simply by referring to the stated termination date of a particular price authority. It is also possible, however, that a price authority may not say on its face whether it continued into 2010. In that situation, transactions late in 2009 would create a reasonable inference that freight continued to move under that price authority beyond the end of the year.

The price authorities for Plaintiffs' shipments during the conspiracy period are essential to prove the effects of the conspiracy and Plaintiffs' claims for damages. Thus, Plaintiffs requested "[a]ll contracts, price quotes, circulars, rate authorities, or other Documents and Communications that set forth the terms of Plaintiff's purchase of Rail Freight Transportation Services from You." (Ex. 1 (Req. No. 1 on behalf of each Plaintiff individually).)  Plaintiffs requested the price authorities from May 1, 2001 to December 31, 2008 (*id.*, Definition No. 15.); they do not seek price authorities that went into effect after 2008. Defendants do not dispute their relevance; indeed, BNSF, CSX and UP all agreed to produce the price authorities, and NS asked to meet and confer. (Ex. 3 at 17, Ex. 4 at 27, Ex. 5 at 25, Ex. 6 at 20.)  Defendants have been under a document preservation obligation since MDL I began in 2007, so they should have the relevant price authorities. *See* Appellee Brief at 54, *In re: Rail Freight Fuel Surcharge Antitrust Litigation* (MDL No. 1869), No. 18-7010 (D.C. Cir. May 9, 2018) (representing that Defendants readily possess "contracts, negotiating history, and transaction data for thousands of shippers").

Plaintiffs make this request because Defendants have delayed producing the price authorities Plaintiffs need to make Defendants' own proposal workable. With deadlines rapidly approaching, Plaintiffs' experts cannot conduct their analyses to prove damages during the conspiracy period or lingering effects damages without the price authorities and data Defendants hold. Plaintiffs ask the Court to order Defendants to substantially complete their production by May 1, 2021. That date is reasonable because it is ten months after Plaintiffs served their discovery requests, more than six months after Plaintiffs asked Defendants to prioritize the production of the price authorities and six months before expert reports are due.

### C.    The Parties' Relative Access to Information.

Rule 26(b)(1) requires the Court to consider "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). This factor weighs strongly in favor of Plaintiffs' request because of the information asymmetry. *See Oxbow Carbon*, 322 F.R.D. at 8 ("courts look for 'information asymmetry'—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information. . . . In such a case, the burden of responding to discovery lies heavier on the party who has more information, and properly so.") (quotation cleaned up). Defendants have the price authorities, but three Defendants are still producing them and UP has not started. And, Defendants have the transaction data which shows whether a price authority continued beyond 2008 and whether a Plaintiff paid rate-based FSCs after 2008. Indeed, UP's counsel said they consulted their transaction data to prepare their answers to Plaintiffs' requests for this very same transactional data. (Status Conf. Tr. at 46 (Feb. 4, 2021) (Dkt. 516).) Plaintiffs, on the other hand, do not all have their applicable price authorities, and for many their transaction data is incomplete or does not contain the detail of Defendants' data. Defendants seek to place the burden on Plaintiffs to demonstrate that a price authority continued, despite having access to the best sources of the information needed to make that determination.

### D.    The Other Rule 26(b) Factors Favor Producing the Data.

Rule 26(b)(1) also requires the Court to consider "the importance of the issues at stake in the action, the amount in controversy . . . the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). The amount of damages to which Plaintiffs are entitled is one of the central issues in this litigation, and the transaction data is important to resolve those issues because the data is necessary for many Plaintiffs to prove

lingering effects damages. As for the parties' resources, Defendants have devoted significant resources to defending these claims over the last 14 years, so they cannot claim to lack the resources to collect their data.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants (a) to produce transaction data for 2009 for all Plaintiffs, and to search the data for entities and spellings identified by Plaintiffs, (b) to produce data from 2010 to 2012 for Plaintiffs who identify a conspiracy period price authority that they reasonably believe continued beyond 2009 within 30 days of presentment of such price authority to a Defendant, and (c) to substantially complete the production of price authorities requested by Request No. 1 of Plaintiffs' Request for Documents on behalf of each Plaintiffs individually by May 1, 2021.

March 17, 2021

Respectfully submitted,

*/s/ Alden L. Atkins*
Craig P. Seebald (D.C. Bar No. 438968)
Alden L. Atkins (D.C. Bar No. 00393922)
Lindsey R. Vaala (D.C. Bar No. 974770)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*/s/ John H. LeSeur*
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854)
Daniel M. Jaffe (D.C. Bar No. 461185)
SLOVER & LOFTUS LLP 1224

17

Seventeenth Street NW Washington, D.C. 20036 (202) 347-7170 (202) 347-3619 (Facsimile) jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel Corporation; Bel-Ray Company, LLC; Calumet Branded Products, LLC; Calumet Cotton Valley Refining, LLC; Calumet Dickinson Refining, LLC; Calumet Karns City Refining, LLC; Calumet Montana Refining, LLC; Calumet Operating, LLC; Calumet Princeton Refining; LLC; Calumet Refining, LLC; Calumet Shreveport Refining, LLC; Calumet Specialty Products Partners, L.P.; CF Industries, Inc.; Dairyland Power Cooperative; Dyno Nobel, Inc.; Entergy Arkansas, LLC; Entergy Louisiana, LLC; Exelon Generation Company, LLC; Kurlin Company, LLC; NorFalco LLC; NorFalco Sales; North Star BlueScope Steel LLC; Steelscape, LLC; Wisconsin Electric Power Company*

 */s/ Michael D. Hausfeld*
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo
Halli E. Spraggins
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com
hspraggins@hausfeld.com

*/s/ Stephen R. Neuwirth*
Stephen R. Neuwirth
Sami H. Rashid
Viola Trebicka
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Plaintiffs Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa World Alumina, LLC; Alumax Mill Products, Inc.; The*

18

Seth R. Gassman
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
sgassman@hausfeld.com

*Attorneys for BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C. CONSOL Energy, Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Newell Recycling Southeast, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc.,*

*Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird Incorporated' CertainTeed Canada, Inc.; CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation; CertainTeed Gypsum and Ceilings USA, Inc.; Coffeyville Resources Nitrogen Fertilizers, LLC; Coffeyville Resources Refining & Marketing, LLC; Wynnewood Refining Company, LLC; East Dubuque Nitrogen Fertilizers, LLC; ConAgra Brands, Inc. f/k/a/ ConAgra Foods, Inc.; Virginia Electric and Power Company,; Dominion Energy Fuel Services, Inc.; Dominion Energy South Carolina, Inc.; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Progress, LLC; Duke Energy Indiana, LLC; Duke Energy Kentucky, LLC; Duke Energy Ohio, LLC; Progress Fuels, LLC; DEGS of Narrows, LLC; Duke Energy Generation Services, Inc.; Eastman Chemical Company; Solutia Inc.; Taminco Corporation; Exxon Mobil Corporation; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; Imperial Oil; Imperial Oil Limited; Canada Imperial Oil Limited; Grain Craft, Inc.; Southeastern Mills, Inc.; Hyundai*

19

*Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc.; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*/s/ William J. Blechman*
Robert D. W. Landon, III
Richard Alan Arnold**\***
William J. Blechman**\***
Douglas H. Patton**\***
Samuel J. Randall**\***
Michael A. Ponzoli**\***
Joshua B. Gray**\***
Brandon S. Floch**\***
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail:
rlandon@knpa.com
raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com
jgray@knpa.com
bfloch@knpa.com
*(Pro hac vice forthcoming)

*Motor America, Inc.; IPSCO Tubulars Inc.; IPSCO Koppel Tubulars, LLC; IPSCO Tubulars (KY), LLC; TMK NSG, LLC; Keystone Fuels, LLC; Conemaugh Fuels, LLC; Kia Motors America, Inc.; Lafarge North America, Inc., Holcim (US) Inc.; Aggregate Industries Management, Inc.; Aggregate Industries - SWR, Inc.; Aggregate Industries - WCR, Inc.; Aggregate Industries Northeast Region, Inc.; Aggregate Industries - MWR, Inc.; Bardon, Inc. (dba Aggregate Industries Mid-Atlantic Region); Cement Transport, LTD; Geocycle LLC; Systech Environmental Corporation; Lafarge PNW, Inc.; Lattimore Materials Corp.; Mercedes-Benz USA, LLC; Motiva Enterprises LLC; NLMK USA, Inc.; NLMK Pennsylvania, LLC; Sharon Coating, LLC; Northdown Industries, Inc.; Normerica Inc.; NOVA Chemicals, Inc.; NOVA Chemicals Corporation; NOVA Chemicals (Canada) Ltd.; Old World Industries, LLC; PCS Sales (USA), Inc.; Agrium (U.S.), Inc.; PCS Phosphate Company, Inc.; White Springs Agricultural Chemicals, Inc; PCS Nitrogen, Inc.; Phillips 66 Company; Shell Chemical LP, Shell Chemicals Canada (f/k/a Shell Chemicals Canada Ltd.) by its managing partner Shell Canada Ltd.; Pennzoil-Quaker State Company (formerly d/b/a SOPUS Products); Shell Trading (US) Company; Equilon Enterprises LLC (d/b/a Shell Oil Products US or SOPUS); Talen Energy Supply, LLC f/k/a PPL Energy Supply, LLC, on behalf of itself and its subsidiaries and affiliates; Talen Energy Marketing, LLC f/k/a PPL EnergyPlus, LLC; Talen Generation, LLC f/k/a PPL Generation, LLC (successor in interest to PPL Coal Supply, LLC); Talen Montana, LLC f/k/a PPL Montana, LLC; Martins Creek, LLC f/k/a PPL Martins Creek, LLC; Brunner Island, LLC f/k/a PPL Brunner Island, LLC; Montour, LLC f/k/a PPL Montour, LLC; United Parcel Service, Inc., an Ohio Corporation; UPS Ground Freight, Inc.; Vulcan Materials Company;*

20

*Attorneys for Plaintiffs Cemex, Inc., Clearwater Paper Corporation, The Goodyear Tire & Rubber Company, Kraft Heinz Foods Company, Lehigh Hanson, Inc., PotlatchDeltic Corporation, Rayonier Advanced Materials Inc., Sterling Steel Company LLC., UPM-Kymmene, Inc., and Unilever ASCC AG*

*Legacy Vulcan, LLC; Florida Rock Industries, Inc.; Atlantic Granite LLC; CalMat Co.; Vulcan Aggregates Company, LLC; Vulcan Construction Materials, LLC; Fulton Concrete Company, LLC; McCartney Construction Company, Inc.; Calhoun Asphalt Company, Inc.; Harper Brothers, LLC; Virginia Concrete Company, LLC; Azusa Rock, LLC; Triangle Rock Products, LLC; Aggregates USA, LLC; Chem-Marine Corporation of South Carolina; DMG Equipment Company, LLC; R. C. Smith Companies, LLC; Aggregates USA (Macon), LLC; Aggregates USA (Savannah), LLC; Aggregates USA (Sparta), LLC; WestRock Company; WestRock Coated Board, LLC; WestRock Virginia, LLC; WestRock Texas, L.P.; WestRock CP, LLC; WestRock –Rex, LLC; WestRock Southeast, LLC; WestRock Northwest, LLC; WestRock Mill Company, LLC; WestRock – Solvay, LLC; WestRock Minnesota Corporation; WestRock Kraft Paper, LLC; WestRock Container, LLC; and WestRock Longview, LLC; Smurfit-Stone Container Canada Inc.*

/s/ *David C. Eddy*
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
Chase C. Keibler (admitted *pro hac vice*)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
ddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com
ckeibler@nexsenpruet.com

*Attorneys for Plaintiffs Domtar Corporation; Ford Motor Company; and South Carolina Public Service Authority*

*/s/ Adam Carlis*
Geoffrey L. Harrison

*/s/ Joseph M. Vanek*
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin V. Sinclair, Jr. (admitted *pro hac vice*)
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: jvanek@sperling-law.com
dgermaine@sperling-law.com
msinclair@sperling-law.com

*Attorneys for Plaintiff Kellogg Company*

*/s/ Sandra L. Brown*

21

Shawn Raymond
Adam Carlis
Matt Wood
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
mwood@susmangodfrey.com

Catriona Lavery
SUSMAN GODFREY, L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
clavery@susmangodfrey.com

*Attorneys for Boise Cascade Company;
CONSOL Energy, Inc.; Crowley Maritime
Corporation, Crowley Logistics, Inc., and
Crowley Liner Services, Inc.; Grand River Dam
Authority; J.R. Simplot Co.; Lansing Board of
Water & Light; Lotte Global Logistics (North
America), Inc.; Lyondell Chemical Company;
LyondellBasell Acetyls, LLC; Equistar
Chemicals, LP; MillerCoors, LLC; Peabody
Investments Corporation, Peabody Energy
Corporation, Peabody Natural Resources
Company, Peabody Midwest Mining LLC,
Peabody Powder River Mining LLC, Peabody
Coulterville Mining, LLC, Peabody Coalsales,
LLC f/k/a Coalsales, LLC, Coalsales II, LLC
f/k/a Peabody Coalsales Company, Peabody
Coaltrade, LLC f/k/a Coaltrade, LLC and
Peabody Coaltrade, Inc., Twentymile Coal,
LLC f/k/a Twentymile Coal Company;
Roseburg Forest Products Co.; Sims Group
USA Holdings Corporation (f/k/a Sims Hugo
Neu Corporation), Metal Management, Inc.,
Simsmetal East LLC (f/k/a Sims Hugo Neu East
LLC and Hugo Neu Schnitzer East), Metal
Management Northeast, Inc., Metal
Management Pittsburgh, Inc., SMM New
England Corporation (f/k/a Metal Management*

Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP 1919 M Street
N.W. Suite 700
Washington, D.C. 20036 Tel: (202)
331-8800 Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
rob.ware@thompsonhine.com
jennifer.roach@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power
Company, Georgia Power Company and
Mississippi Power Company; Northern
Indiana Public Service Company LLC; and
Union Electric Company d/b/a Ameren
Missouri and Ameren Development
Company*

22

*Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc.; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

/s/ *David B. Helms*
David B. Helms
GERMAN MAY PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@germanmay.com

Kirk T. May
William D. Beil
GERMAN MAY PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@germanmay.com
Email: billb@germanmay.com

*Attorneys for Plaintiffs Brady McCasland, Inc.*

/s/ *Kirk T. May*
Kirk T. May
William D. Beil
GERMAN MAY PC
1201 Walnut, Suite 2000

/s/ *Eric S. Hochstadt*
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*) Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com
luna.barrington@weil.com
sarah.ryu@weil.com

Carrie C. Mahan (D.C. Bar No. 459802)
WEIL, GOTSHAL & MANGES LLP
2001 M. Street NW #600
Washington, DC 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
carrie.mahan@weil.com

*Attorneys for Plaintiffs ArcelorMittal USA LLC and ArcelorMittal Dofasco G.P.*

23

Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@germanmay.com
Email: billb@germanmay.com

David B. Helms
GERMAN MAY PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@germanmay.com

*Attorneys for Plaintiffs Lansing Ethanol
Services, LLC, et al.*

/s/ *Benjamin D. Brown*
Benjamin D. Brown (DC Bar. No. 495836)
Robert A. Braun (DC Bar. No. 1023352)
Leonardo Chingcuanco
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
lchingcuanco@cohenmilstein.com

*Attorneys for Plaintiffs Kawasaki Kisen
Kaisha, Ltd., "K" Line America, Inc., Yang
Ming Marine Transport Corp., Yang Ming
(America) Corp., Nippon Yusen Kabushiki
Kaisha, and NYK Line (North America) Inc.*

/s/ *Edward D. Hassi*
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper, Esquire
Brooke J. Willig, Esquire
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909 6000
Fax: (212) 909 6836
E-mail: mschaper@debevoise.com
bwillig@debevoise.com

*Attorneys for Plaintiffs Toyota Motor
Sales, U.S.A., Inc. and Toyota Canada Inc.*

/s/ *Gregory W. Langsdale*
Brian D. Wallach (D.C. Bar No. 432349)
Gregory W. Langsdale (D.C. Bar No. 500716)
CADWALADER, WICKERSHAM & TAFT
LLP

/s/ *Nathan P. Eimer*
Nathan P. Eimer (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP

24

700 Sixth Street, N.W.
Washington, D.C. 20001
Tel: (202) 862-2200
E-mail:
brian.wallach@cwt.com
greg.langsdale@cwt.com

/s/ *Brandon J.B. Boulware*
Brandon J.B. Boulware
Jeremy M. Suhr
BOULWARE LAW LLC
1600 Genessee Street
Suite 416
Kansas City, Missouri 64102
Tel: (816) 492-2826
E-mail: brandon@boulware-law.com
jeremy@boulware-law.com

*Attorneys for Plaintiffs Anheuser-Busch, LLC
and Anheuser-Busch Companies, LLC*

/s/ *Brandon J.B. Boulware*
Brandon J.B. Boulware
Jeremy M. Suhr
BOULWARE LAW LLC
1600 Genessee Street
Suite 416
Kansas City, Missouri 64102
Tel: (816) 492-2826
E-mail: brandon@boulware-law.com
jeremy@boulware-law.com

*Attorneys for Plaintiff The J.M. Smucker
Company*

/s/ *James P. Denvir*
James P. Denvir
(D.C. Bar No.  284554)
Scott E. Gant
(D.C. Bar No. 455392
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131

224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
srazzano@eimerstahl.com
bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical
Company, Union Carbide Corporation,
Amerchol Corporation, Umetco Minerals
Corporation, Gerdau Ameristeel
Corporation, Gerdau Ameristeel US Inc.,
Gerdau Ameristeel Perth Amboy Inc.,
Gerdau Ameristeel Sayreville Inc.,
Chaparral Steel Company, Chaparral Steel
Midlothian, LP, Chaparral (Virginia) Inc.,
Sheffield Steel Corporation, and Gerdau
Macsteel, Inc., International Paper
Company, GenOn Energy Management,
LLC, GenOn Power Midwest LP, GenOn
REMA, LLC*

/s/ *Daniel B. Goldman*
Daniel B. Goldman
Steven S. Sparling
Daniel Lennard
Zachary C. Naidich
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

25

jdenvir@bsfllp.com
sgant@bsfllp.com

Stuart H. Singer (pro hac vice)
James Grippando (pro hac vice)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida  33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc.,*
*E.I. du Pont Nemours and Company, and*
*The General Electric Company*


*/s/ Frank M. Lowrey IV*
Frank M. Lowrey IV (pro hac vice)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (pro hac vice)
mykkeltvedt@bmelaw.com
Amanda D. Bradley (pro hac vice)
bradley@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E.
Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for Plaintiff The General Electric*
*Company*


/s/ *Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

Fax: (212) 715-8000
dgoldman@kramerlevin.com
ssparling@kramerlevin.com
dlennard@kramerlevin.com
znaidich@kramerlevin.com

D. Jeffrey Ireland
Erin E. Rhinehart
FARUKI PLL
201 E. Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (937) 227-3714
Telecopier: (937) 227-3717
erhinehart@ficlaw.com
djireland@ficlaw.com

*Attorneys for Plaintiffs The Procter &*
*Gamble Company, The Procter & Gamble*
*Distributing LLC, The Procter & Gamble*
*Manufacturing Company, and The Procter*
*& Gamble Paper Products Company*


*/s / Ronald J. Aranoff*
Ronald J. Aranoff
Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

26

*Attorneys for Plaintiff Air Products
and Chemicals, Inc.*

*/s/ Michael C. Dell'Angelo*
Michael C. Dell'Angelo
Michael J. Kane
H. Laddie Montague, Jr.
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
hlmontague@bm.net
mwallin@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
(202) 559-9745
dwalker@bm.net

*Attorneys for Plaintiffs High Level
Management Venturers, Century Aluminum
Company, Century Aluminum of Kentucky,
GP, NSA, GP, Century Aluminum of West
Virginia, Inc, and Century Aluminum Of South
Carolina, Inc.*

*/s/ Daniel B. Goldman*
Daniel B. Goldman
Steven S. Sparling
Daniel Lennard
Zachary C. Naidich
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com
ssparling@kramerlevin.com
dlennard@kramerlevin.com
znaidich@kramerlevin.com

*Attorneys for Tronox Inc. and Tronox US
Holdings Inc.*

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2021 I electronically filed the foregoing document using the Court's CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system.


March 17, 2021                                      */s/ Alden L. Atkins*
                                                   Alden L. Atkins