**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br>This document relates to:<br><br>ALL CASES | MDL Docket No. 2925<br>Misc. No. 20-008 (BAH) |

**JOINT STATUS REPORT**

At the May 6, 2021, Status Conference, the Court directed the parties to submit a status report by June 14, 2021, addressing the extension of the current fact discovery deadline, a proposed date for the submission of the next joint status report, a proposed date for the next status conference, and any other issues that the parties believe need to be raised with the Court. Hr'g Tr. at 12:16-25 (May 6, 2021). Plaintiffs and Defendants have met and conferred for the past five weeks, but have been unable to agree on a joint proposal for extending the fact discovery deadline. The parties have set forth below their respective positions on this issue.

The parties propose that the next status conference be held at the Court's earliest convenience. The parties do not believe that another status report is necessary before that status conference, but, if the Court believes there are additional issues the parties should address, the parties propose submitting a joint status report 3 days before the status conference.

I.   **PLAINTIFFS' STATEMENT**

   A.   **Plaintiffs' Statement on Status of Discovery**

The Parties are each proposing to the Court an adjustment to the fact discovery schedule, which, in turn, will materially affect the balance of the MDL schedule. Plaintiffs' proposal is that the end of fact discovery be extended by 3 months, to December 31, 2021, Defendants' proposal

is an extension of <u>14 months,</u> to December 2, 2022.  Defendants' proposed extension is not only more than four times longer than Plaintiffs' proposal, it is also nearly double the amount of time that Defendants originally told this Court they would need to take depositions when they first proposed a schedule for these cases.

There are two major reasons for the Parties' significantly different views on the amount of time needed to conclude fact discovery.

First, Plaintiffs have embraced the Court's message at hearings to separate discovery "needs" from "wants," and have focused on the discovery that is truly necessary.  Plaintiffs are also mindful that this action began over 14 years ago and that it is important for this MDL II to proceed in an efficient manner.  As a result, despite the variety of Plaintiffs involved, they have collaborated to identify a list of around 50 defense fact witnesses whom Plaintiffs would depose,[1] plus 30(b)(6) depositions of each Defendant.  Additionally, to allow the Parties to focus on the depositions they need while protecting them from possible surprises later, Plaintiffs proposed that *all* Parties reserve the right to depose anyone who submits a declaration supporting any Party's summary judgment papers or shows up on any Party's witness list for trial.[2]

In contrast, Defendants identified 662 witness depositions, plus Rule 30(b)(6) depositions of each Plaintiff.  Defendants told the Court that they "are looking at anywhere from 600 to 1,000 depositions in this case."  Status Conf. May 6, 2021, Hrg. Tr. at 6:25 to 7:1, Ex. A.  On the eve of the May 6, 2021 Status Conference, Defendants served this list on Plaintiffs and demanded dates

---

[1]       To determine this list, the Plaintiff Group engaged in detailed internal discussions to identify proposed Defendant deponents who, based on Plaintiffs' current knowledge, should be able to address issues specific to Plaintiffs in this MDL. Plaintiffs have, of course, not seen Defendants' MDL II document productions, which are not expected to be substantially complete for several weeks. The individuals on Plaintiffs' list may change, including based on those productions or the availability of witnesses.

[2]       *See* Plaintiffs' letter to Defendants dated May 17, 2021, at 2, Ex. B.

for each proposed deponent.  Shortly after the status conference, Defendants promptly backtracked and said that they were not actually asking to depose all of the listed witnesses. Despite subsequent requests from Plaintiffs, however, Defendants have not articulated a more reasonable final list of witnesses they believe they actually need.[3]

Defendants still maintain that they likely need around 600 Plaintiff depositions. Defendants justify the number of Plaintiff witnesses based on Defendants' count of more than 300 Plaintiffs in this MDL.  (This number itself is misleading in the context of identifying deponents, because it is composed of nearly 100 corporate families, many of whom have the same rail freight purchasing personnel who would testify on behalf of all corporate family members.)  However, Defendants have known the rough number of Plaintiffs since the start of this MDL and, at that time, proposed half as many depositions to be taken over roughly eight months.  *See* E.C.F. 78 at 10 (Parties' May 8, 2020 Preliminary Status Report).  Defendants now contend that they will need at least 14 months or possibly more to take fact depositions.  That some new cases have been filed since last year in no way justifies Defendants' attempt to nearly *double* the amount of time that they claim is needed for fact depositions.[4]  Defendants may be taking this extreme position in the hope that the Court will split the difference between proposals and grant Defendants a lengthy extension.

---

[3]     *See* Plaintiffs' letter to Defendants dated June 2, 2021, at 2, Ex. C.  Plaintiffs have since learned that, to come up with their list, Defendants simply included all individuals listed in Plaintiffs' initial disclosures, virtually every document custodian, and some other individuals – without regard to information previously provided to them by Plaintiffs during previous negotiations.  Indeed, Defendants' "list" includes people who Plaintiffs informed Defendants were not involved in rail freight procurement, no longer worked for a Plaintiff, or are deceased.

[4]     Plaintiffs filed just over 20 new Complaints in this MDL since the initial Status Conference.

This, then, leads to the second major reason for the Parties' disagreement regarding the fact discovery schedule – each side's commitment to devote the resources necessary to complete fact discovery on a reasonably prompt timetable.  This case needs to get resolved.  Defendants' conspiracy started nearly 20 years ago.  Plaintiff shippers victimized by Defendants' conspiracy have been waiting for justice for a very, very long time – during which Defendants have had the benefit of the overcharge payments they received because of the conspiracy.

Under the circumstances, each Plaintiff law firm is committed to taking and defending the depositions that the Parties reasonably require on the timetable that Plaintiffs propose.  To that end, despite serious disagreement with Defendants' numbers and proposed deponents (outlined in further detail below), Plaintiffs accepted Defendants' framework to proceed with depositions in pre-determined groupings (though Plaintiffs have adjusted the proposed groupings so that all depositions can be completed this year).  Several Plaintiff law firms have already proposed specific deposition dates, and other Plaintiff laws firms are working with their clients to determine when witnesses can be available for deposition.  Plaintiffs have communicated to Defendants multiple times that Plaintiffs will devote the resources necessary to complete the depositions of their clients, and those of Defendants' witnesses, on the timetable that Plaintiffs propose.

Defendants, by contrast, appear unwilling to commit the resources necessary to complete discovery on a timetable that they themselves previously told the Court they could meet.  *See* Preliminary Report of the Parties, ECF No. 78 at 10 (committing to 8-month deposition timetable for approximately 300 Plaintiffs, ending by September 30, 2021).[5]  Despite being represented by some of the largest law firms in the United States or in the world, and each Defendant having at

---

[5]     Nothing has changed in this MDL to warrant Defendants' doubling (or more) of the time they claim to need to take depositions.

least *two* separate law firms representing it in this MDL, **Defendants claim that they can only take ten depositions a week.**

Plaintiffs acknowledge the challenge that litigation presents for Defendants (and Plaintiffs). But it is unacceptable to delay the discovery schedule so much by refusing to devote resources to completing the discovery Defendants claim they need. Defendants must acknowledge that the need to litigate multiple individual actions simultaneously is the foreseeable and inevitable consequence of their long-held – and ultimately successful – strategy to oppose class certification and atomize Plaintiffs' claims. Plaintiffs acknowledge that Defendants' deposition plan will require more resources of Defendants than of Plaintiffs. But Plaintiffs respectfully submit that this is inherent in the type of non-Class litigation that Defendants themselves sought. No doubt the attorneys on all sides of this case will be busy, but that is necessary to move these longstanding cases to a conclusion on a reasonable schedule.

Extending the fact discovery deadline until December 31, 2021, as Plaintiffs propose, will incentivize counsel on both sides to separate needs from wants and depose only those fact witnesses whose testimony is truly needed. Deadlines focus the Parties and counsel on what truly needs to be done, while long delays encourage unnecessary discovery and even more delays. Defendants and their law firms will adapt to the schedule, as will Plaintiffs and their counsel. Once the Court adjusts the fact (and expert discovery) milestones, all of the considerable time and resources that have been expended by the Parties' counsel for months in navigating the current dispute can be re-directed to doing the hard work necessary to complete this case on the timetable set by the Court.

As discussed in more detail below, Plaintiffs, therefore, request that any discovery extension be limited in nature and that fact discovery conclude no later than December 31, 2021.

1.      Plaintiffs' Efforts to Progress Discovery Through Cooperation and
        Compromise

Since the Court set the discovery deadline in May 2020, Plaintiffs have worked hard to move discovery forward.  Plaintiffs began trying to engage Defendants on document custodians and search terms in July 2020, but were met with immediate resistance from Defendants.  To try to complete promptly the process of negotiating objections to discovery requests, custodians and search terms, Plaintiffs asked for two standing meet and confers per week, but Defendants would agree to only one per week.  To ensure discovery would not stall, Plaintiffs proposed interim deadlines for all Parties for custodian and search term discussions to conclude, and also proposed a substantial completion deadline for document production of March 1, 2021.  While Defendants finally agreed to interim deadlines on the former items, they would not agree to commit to any date for substantial completion of document production until recently.[6]

Over the next several months, Plaintiffs repeatedly narrowed their custodian and search term requests and did a significant amount of internal work to try to focus their custodial requests to Defendants including working together in teams by commodity groups (*e.g.*, shippers of coal, automotive or forest and paper who purchased rail freight shipping services from Defendants) to narrow their list of custodians to a manageable list of *necessary* custodians.[7]

Across all Plaintiffs, the Parties ultimately agreed to 186 custodians for Defendants – 74 from MDL I, and 112 new custodians in MDL II.  Notably, only 17 of those custodians are "global custodians" for whom Defendants will have to run search terms for all Plaintiffs.  The remaining

---

[6]      Plaintiffs have been working very hard to meet the June 30 deadline for substantial completion so depositions can be completed without a lengthy extension.

[7]      The railroads explained that they organize their businesses by commodity group. To facilitate the meet and confer discussions, Plaintiffs likewise organized themselves by commodity group to ensure that they were coordinating the custodians they sought for each Defendant in each of their commodity groups.

169 custodians are either commodity group-specific, in which Defendants needed to run search terms only for those Plaintiffs within that commodity group (for some commodity groups, like automotive, less than ten Plaintiffs), or specific to certain Plaintiffs – and 45 of these custodians are limited to a single Plaintiff.  Thus, while Defendants point to the *overall* number of custodians, the reality reflects not only a much more manageable burden but significant coordination and work on the part of Plaintiffs across shippers to focus on the discovery actually needed.

Plaintiffs' desire to avoid motion practice and to expedite discovery resulted in significant compromises throughout the meet and confer process, including foregoing all MDL I liability search terms for the pre-May 14, 2007 time period for new custodians, and foregoing all but one MDL I liability search term[8] for the May 14, 2007-December 31, 2008 period.  Plaintiffs agreed to these significant limitations despite the fact that Plaintiffs are running the search terms that Defendants demanded for the entire relevant time period.

Plaintiffs granted these concessions on search terms in order to keep the discovery schedule on track.  At no point during the meet and confer process did Defendants raise any concerns about the discovery deadline.  It was not until the March 26, 2021 discovery conference that Defendants first raised an issue with the October 1 discovery deadline, though they did not convey any suggestion then about the magnitude of the extension that they would be requesting.  Plaintiffs certainly did not understand at that conference that Defendants were proposing adding *years* – not months – to their cases.

---

[8]     Even that single search string **(surcharge\* or FSC or FSCs or "s/c")** will be run only on new MDL II custodians who were not MDL I custodians, and only for the May 14, 2007 - December 31, 2008 period.  Plaintiffs requested that period for this single liability search term because in MDL I, Defendants ended their search for documents as of May 14, 2007, which means that there has been no discovery of liability for the remainder of the conspiracy period.

2.      Defendants' List of Plaintiff Depositions

On April 30, 2021, just a few days before the May 6 Status Conference, Defendants sent

Plaintiffs a list of 780 depositions – 662 fact witnesses and 118 30(b)(6) depositions.  Defendants

requested that "Plaintiffs propose workable dates for the depositions," and included a spreadsheet

with a column labeled "Proposed Deposition Date" for Plaintiffs to populate.  4/30/21, E-mail

from Bryan Kelsey (Jones Day) to all Plaintiffs, Ex. D.  A few days later, at the May 6 Status

Conference, Defendants used the number of depositions in their spreadsheet to inform the Court

that they would be seeking a discovery extension.

It became apparent to Plaintiffs, however, that Defendants' deposition list was prepared

with little thought and primarily for the purpose of trying to justify a lengthy schedule extension.

Plaintiffs have individually sent a series of letters identifying obvious examples of over-inclusion

of witnesses – including witnesses Plaintiffs had already told Defendants never dealt with rail

freight, were not employed by the company during the relevant time period, or, in some instances

were deceased.  *See* Sample of letters from Plaintiffs, Composite Ex. E.  Defendants clearly made

little effort to synthesize the vast amounts of information that they have already received through

the custodian meet and confer process to tailor their list of potential deponents, and they continue

to refuse to narrow their list of proposed deponents as Plaintiffs meet and confer to explain why

many witnesses are inappropriate.  Instead, Defendants prefer to use the inflated number of

deponents as a basis to increase the time necessary to complete fact discovery.

Once the Status Conference was over, and as Plaintiffs had already begun contacting

potential deponents to schedule depositions (per Defendants' explicit instructions), Defendants

said that they did not want dates for these deponents after all.  *See* Sample of Defendants letters

saying do not schedule the depositions, Composite Ex. F; *see also* Letter dated 6/2/21 from

Plaintiffs to Defendants re Defendant Depositions, with chronology of discovery disputes, Ex. C.

Defendants' list of potential deponents is not a useful or appropriate tool to determine how long an extension should be.  Defendants' list proposes an average of 5.5 fact depositions per case – *double* the 2-3 depositions per case that Defendants stated would probably suffice in their Preliminary Report of the Parties.  *See* ECF No. 78 at 10.  Indeed, their list includes only 28 cases in which Defendants requested between one and three 30(b)(1) depositions.  For another 30 cases, Defendants have requested *eight or more* 30(b)(1) depositions – and as high as *23 for a single Plaintiff*.

Despite the difficulties caused by Defendants' changing position about deposition numbers, Plaintiffs are moving forward.  They are meeting and conferring with Defendants to discuss deponents and are scheduling depositions for relevant witnesses included on Defendants' proposed list (and, unfortunately, continuing to face Defendants' refusal to even schedule depositions they had previously requested).

3.    <u>Plaintiffs' Efforts to Streamline Depositions</u>

Plaintiffs have worked diligently to streamline discovery in these cases.  Plaintiffs organized themselves into teams by commodity groups to agree among themselves which witnesses in each of Defendants' commodity groups should be deposed.  Rather than use Defendants' approach and simply compile every potential witness name Plaintiffs had and merge them into a single list and demanded dates, Plaintiffs have sought to present a single focused list of defense witnesses whom they actually need to depose.  As a result of this process, Plaintiffs provided Defendants with a list of around 50 potential deponents, which averages to fewer than one per Plaintiff and approximately 2 per commodity group, per Defendant.  Plaintiffs will also request 30(b)(6) depositions focused on facts relating to individual Plaintiffs and commodity groups.

Plaintiffs have also made several sensible proposals that would further streamline deposition discovery.

First, Plaintiffs have committed to working with Defendants to identify exactly *who* Defendants should depose (*i.e.*, those individuals with substantial relevant knowledge) so Defendants can avoid wasting resources on individuals who have little or no information.

Second, Plaintiffs have proposed that the Parties stipulate that, to the extent any Party produces either: (i) a declarant at summary judgment, or (ii) a trial witness who was not deposed during discovery, the opposing Party reserves the right to take that declarant's or trial witness's deposition.  This is not an unrealistic concern because, in MDL I, Defendants submitted a number of declarations of witnesses opposing class certification who were not previously deposed.  The depositions of those declarants proved crucial to Judge Freidman's determination that the self-serving affidavits were "unpersuasive" – "the most damning portions of almost every single declaration on which Defendants rely are contradicted by the declarant's subsequent deposition testimony."  MDL I Class Certification Opinion, July 13, 2012 (ECF No. 550) at 89.  Plaintiffs understandably want to protect themselves from similar tactics in this case, and their focused list of deponents has been prepared with the expectation that they would not have to depose everyone who conceivably might later offer testimony.  If Plaintiffs' proposed stipulation is accepted by Defendants, then the Parties will be able to communicate who should be deposed now (knowing the other side's deposition rights are protected), and neither Party has to seek unnecessary defensive discovery for fear of missing a declarant or a witness.

Third, Plaintiffs have proposed a stipulation addressing the authentication and admissibility of documents as business records, so neither side needs to waste deposition time for that purpose.[9]

### 4.   Defendants' Unwillingness to Take More Than Ten Depositions a Week

Defendants' proposed schedule, at least as presented to Plaintiffs over the last several weeks, is built first, on the inflated number of proposed depositions, and second, on Defendants' insistence that the Parties are able to and should, take only 10 depositions per week.

From Plaintiffs' perspective, the schedule should not be driven by an arbitrary number of depositions per week. Rather, as in most cases with a firm discovery deadline, the Parties should devote the resources necessary to meet the Court's deadline. Plaintiffs are committed to doing just that.

Defendants clearly have the resources necessary to participate in and complete the fact deposition campaign on the timetable proposed by Plaintiffs. Defendants are each represented by at least two law firms, which include some of the largest law firms in the U.S. and the world. Their law firms have more 10,000 attorneys, and they promote the substantial resources their firms can bring to bear on major litigation on short notice. Plaintiffs have also made clear that they anticipate that the vast majority, if not all, of the depositions will be by videoconference, which would require no travel time. Plaintiffs have repeatedly suggested that Defendants work together to assign a specific attorney to a certain Plaintiff or a particular case to minimize the need for global letters to liaison counsel and work directly with the lawyer on the other side who is responsible for a

---

[9]     Defendants are considering the stipulation on authentication and admissibility. Although they rejected the proposed stipulation that Parties could depose witnesses who submit declarations, as this Status Report due date grew near, they said they would consider proposing alternatives.

particular Plaintiff.  In our experience, this works in other complex cases, and it will work here if the Court makes clear that it expects nothing less.  Even accepting Defendants' inflated list of deponents, and even without Defendants accepting several of the devices that would streamline discovery, Defendants have the resources to get fact discovery completed in the time the Court determines.

5.     Defendants' Deposition Scheduling Proposal

Defendants have proposed organizing the cases into groups for completing depositions. They would unilaterally assign nine to ten cases per group, and depositions for the cases in each group would be held during a six week window.  This proposal had two important implications. First, at a pace of ten cases per group, this means there would be ten or more groups of cases, which implies that the schedule would be extended for approximately 15 months to late 2022 or even later.  Second, it means that cases assigned to later groups essentially would be stayed for a year or more, and those Plaintiffs would be unable to progress their cases.

Plaintiffs have offered a compromise, working within the framework for deposition discovery that Defendants suggested.  *See* Letter dated 6/9/21 from Plaintiffs to Defendants re Deposition Proposal, Ex. G.  Defendants proposed a grouping of Plaintiffs in phases of depositions, and Plaintiffs accepted Defendants' suggestion to use phasing and counter-proposed the following phasing schedule:

**Group 1 July 19 - September 10, 2021**

**Group 2 September 13 – November 5, 2021**

**Group 3 November 8 – December 31, 2021**

Thus, according to Plaintiffs' groupings, fact discovery could be completed by the end of this year.  In short, Plaintiffs accepted the form of Defendant's proposal and presented a workable schedule to complete fact discovery within a reasonable extension of time.

By contrast, under Defendants' proposal, less than a quarter of the cases in this MDL will complete fact depositions by November 19, 2021.  Extrapolating Defendants' proposal across all Plaintiffs, some Plaintiffs would not have their first depositions scheduled for another year.

While Plaintiffs would prefer simply to schedule depositions at the convenience of the Parties as it is done in virtually every other case, Plaintiffs made a good faith effort with their counter-proposal.  Unfortunately, Defendants rejected Plaintiffs' proposal and are proceeding to schedule only those depositions that fall within their own pre-approved groupings, despite Plaintiffs' efforts to get more depositions scheduled.

6.    Further Reporting to the Court

Finally, Plaintiffs understand that Defendants will propose regular reports to the Court about the Parties' progress toward completing depositions.  Plaintiffs have asked, but Defendants have not said exactly what reports they will request, the timeframes for such reports, or how they might differ from the discovery updates the Parties have been providing in these joint status reports.  Plaintiffs will provide as much detail and address as many specific subjects as the Court would find useful in whatever time frame the Court instructs.  That said, Plaintiffs do not understand the purpose or utility of the detailed reporting that Defendants apparently plan to propose.  Plaintiffs believe that both sides want to avoid burdening the Court with discovery disputes unless absolutely necessary.

13

7.      Dispute Regarding Defendants' Production of Their MDL I Expert
        Reports

Plaintiffs served Defendants with a Rule 34 Request for the expert reports that Defendants

served in MDL I.  Defendants made only boilerplate, perfunctory objections to those requests,

though they had previously told Judge Friedman that they would provide the MDL I record to

MDL II Plaintiffs.  However, to date they have refused to produce the reports they submitted in

MDL I earlier this spring.  Unless this issue is resolved soon, Plaintiffs will seek relief from the

Court in the near future.

### B.      Conclusion

For all of the foregoing reasons, Plaintiffs respectfully submit that an extension of fact

discovery through the end of 2021 is reasonable and sufficient to accommodate necessary

deposition discovery – and this is all the more so if combined with a reservation of rights for any

party to take later the deposition of any previously not-deposed individual that an opposing party

may use as a summary judgment motion declarant or identify as a trial witness.

## II.     DEFENDANTS' STATEMENT

### A.      Defendants' Proposal

As Defendants outlined in the April 22, 2021, Joint Status Report, the parties face a

daunting task: scheduling and conducting depositions in over one hundred individual cases,

involving a few hundred Plaintiffs and several hundred potential deponents (most of whom are

former employees).  *See* Joint Status Report at 10-12, 14-15, ECF No. 617 (Apr. 22, 2021).  The

Plaintiff-specific discovery that Defendants seek from each Plaintiff is not duplicative of the

discovery conducted in *MDL I* and was not available in that case.  *See id.* at 10-12.  Plaintiffs have

brought more than one hundred individual actions, each of which seeks significant damages for an

alleged conspiracy that lasted for many years.  Plaintiffs are proceeding on an individual basis

precisely because issues common to their claims do not predominate over questions affecting individual Plaintiffs. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 32 (D.D.C. 2017), *aff'd* 934 F.3d 619 (D.C. Cir. 2019). Accordingly, Defendants should be afforded reasonable time to conduct the discovery needed to address the respective claims and allegations of each Plaintiff at summary judgment and, if necessary, at trial.

As detailed below, Defendants have proposed a plan that would allow both sides to conduct the discovery necessary in this large and complex MDL in an orderly and efficient manner. In sharp contrast, Plaintiffs counter-proposed an unreasonable and unrealistic plan: the completion of all written discovery and depositions of hundreds of individuals having relevant knowledge within five months. Such a proposal ignores the time needed to prepare witnesses for Rule 30(b)(1) and 30(b)(6) depositions, as well as the time needed to prepare to take such depositions. And, it certainly does not take into account the logistical challenges of scheduling depositions of hundreds of former employees, which, as the parties' experience to date has shown, will be considerable. These depositions are particularly important in this litigation because many Plaintiffs have preserved no or very few documents. The practical effect, if not intent, of Plaintiffs' proposal would be to deprive Defendants of their substantive rights by materially impairing their ability to conduct the critical depositions they need to defend against the claims in the more than one hundred cases in this MDL.

At the May 6, 2021, status conference, the Court indicated that Defendants did not "have to press on" regarding the significant challenges of completing fact discovery by the current October 1, 2021, deadline because the Court had "done [the] math" regarding depositions. Hr'g Tr. 10:3-4 (May 6. 2021). Moreover, the Court noted that the challenges identified by Defendants did not come as "a big surprise" because the Court "thought the original discovery schedule in this

case was quite aggressive." *Id*. at 10:5-17.  Accordingly, the Court instructed the parties to meet and confer on "how much time [they] are going to need to complete discovery, and postponement of the October 1, 2021 deadline," and thereafter report back. *Id*. at 12:11-13.

After meeting and conferring with Plaintiffs, Defendants have developed a responsible and efficient plan for completing fact discovery and depositions.  Defendants propose grouping Plaintiffs into several Groups, and conducting the depositions for all Plaintiffs within each Group in separate six-week periods.[10]  *See* Ex. H, Letter from Defendants to Plaintiffs' Liaison Counsel (June 1, 2021).  Under Defendants' proposal:

- The parties will sort Plaintiffs into 12 Groups each consisting of 9-10 actions. Actions involving multiple, entirely unrelated Plaintiffs would be treated as multiple actions for the purpose of this grouping.[11]  As discussed below, there presently are 103 individual cases,[12] with at least 117 sets of unrelated Plaintiffs in this MDL.  Defendants understand that Plaintiffs are open to the concept of grouping, but seek to add dramatically more Plaintiffs into each group.  *See* Ex. G, Letter from Plaintiffs to Defendants (June 9, 2021).

---

[10]    Defendants understand that scheduling conflicts for some deponents may result in some depositions being taken outside the six-week period.  The expectation, however, is that the vast majority, if not all, deponents in each Plaintiff grouping would be completed within the six-week window.

[11]    For example, *AK Steel Corp. et al. v. BNSF Railway Co. et al.*, No. 1:19-cv-02970-BAH, involves eight separate, unrelated Plaintiff entity groups: AK Steel Corporation, BlueScope Plaintiffs, CF Industries, Dairyland Power, Dyno Nobel, Entergy Plaintiffs, Exelon, and Wisconsin Electric Power.  And *Cemex, Inc. et al. v. BNSF Railway Co. et al.*, No. 1:20-cv-00269, likewise involves eight separate, unrelated Plaintiffs: Cemex, Clearwater Paper, Goodyear Tire, Kraft Heinz, PotlatchDeltic, Rayonier, UPM-Kymmene, and Unilever.

[12]    This number will likely increase to 105 in the coming weeks because two new related cases were recently filed.  *See General Motors LLC v. BNSF Railway Co. et al.*, No. 4:21-cv-11340-SDD-KGA (E.D. Mich.); *Nestlé Purina Petcare Co. et al. v. BNSF Railway Co. et al.*, 1:21-cv-01503 (D.D.C.).

- Defendants plan to complete depositions for each Group over a separate, consecutive six-week period.[13]  For example, depositions of Plaintiffs in Group 1, which includes nine separate actions, would begin on Monday, July 19, 2021 – soon after the June 30 substantial completion of document production – and proceed through Friday, August 27.  Depositions of Plaintiffs in Group 2 would begin on Monday, August 30.

- Fact discovery would be completed by Friday, December 2, 2022, which reflects twelve, six-week periods – one for each Group – starting on July 19.  During this fact discovery period, in addition to Defendants' depositions of Plaintiffs, the parties would also complete written discovery and Plaintiffs' depositions of Defendants.[14]

- The parties would appear before the Court every 12 weeks to report on the progress of depositions, whether any issues have arisen in scheduling and taking these depositions, and whether the Court's assistance is required.

---

[13]     As noted below, Defendants already reached out to Plaintiffs to schedule depositions in several cases for which it appeared that document production might be completed early.  If a deposition is already scheduled for a particular deponent for a date that does not coincide with the grouping laid out below, Defendants have proposed moving forward with the agreed upon date for the convenience of the deponent.  In addition, the first deposition is scheduled to take place on July 14 in an action not included in Group 1 because Defendants agreed to this date in order to accommodate that particular deponent's schedule.

[14]     Although Plaintiffs' depositions of Defendants would not be divided into groups, Defendants expect that Plaintiffs would reasonably spread those depositions out over the entire discovery period.  To date, Plaintiffs have indicated that they intend to depose 51 Defendant witnesses but have expressly reserved the right to seek additional depositions as they continue reviewing their documents and Defendants' productions.  In addition, Plaintiffs have indicated that they plan on taking numerous 30(b)(6) depositions of each Defendant but, despite multiple requests, have not provided an estimate of how many such depositions they intend to take.

To illustrate how this proposal would work, Defendants proposed three initial groupings to Plaintiffs, which include the cases that Defendants had identified in April and May as candidates for early depositions.  *See* Ex. H, Letter from Defendants to Plaintiffs' Liaison Counsel (June 1, 2021).

| Group 1<br>July 19 – August 27 | Group 2<br>August 30 – October 8 | Group 3<br>October 11 – November 19 |
|---|---|---|
| Boise Cascade Company v. CSX Transportation, Inc., et al. | American Rock Salt Company LLC v. BNSF Railway Company, et al. | AK Steel Corporation, et al. v. BNSF Railway Company, et al. – **Dyno Nobel Plaintiff Only** |
| Century Aluminum Company, et al. v. BNSF Railway Company, et al. | BMW Manufacturing Co., LLC and BMW of North America, LLC v. CSX Transportation, Inc., et al. | American Honda Motor Co., Inc. v. CSX Transportation, Inc., et al. |
| CONSOL Energy Inc. v. CSX Transportation, Inc., et al. | Crowley Maritime Corp., et al. v. CSX Transportation, Inc., et al. | CalPortland Company v. BNSF Railway Company, et al. |
| Domino Foods, Inc. v. CSX Transportation, Inc., et al. | Grain Craft, Inc. v. BNSF Railway Company, et al. | Campbell Soup Company, et al. v. BNSF Railway Company, et al. |
| GenOn Energy Management, LLC, et al. v. Union Pacific Railroad Company, et al. | Grand River Dam Authority v. CSXT Transportation, Inc., et al. | Domtar Corporation v. BNSF Railway Company, et al. |
| Linde AG and Praxair, Inc. v. CSX Transportation, Inc., et al. | Keystone Fuels, LLC and Conemaugh Fuels, LLC v. BNSF Railway Company, et al. | Lansing Board of Water and Light v. CSX Transportation, Inc., et al. |
| Mercedes-Benz USA, LLC v. BNSF Railway Company, et al. | Kia Motors America, Inc. v. BNSF Railway Company, et al. | NLMK USA, Inc., et al. v. BNSF Railway Company, et al. |
| Suzuki Motor of America, Inc. v. CSX Transportation, Inc., et al. | Hyundai Motor America, Inc. v. BNSF Railway Company, et al. | Norfalco LLC and Norfalco Sales v. BNSF Railway Company, et al. |
| Talen Energy Supply, LLC v. BNSF Railway Company, et al. | Northern Indiana Public Service Company LLC v. Union Pacific Railroad Company, et al. | Sims Group USA Holdings Corporation, et al. v. CSX Transportation Inc., et al. |
| | Tronox US Holding Inc. and Tronox Inc. v. BNSF Railway Company, et al. | The Procter & Gamble Company, et al. v. BNSF Railway Company, et al. |

### B.      Defendants Have Proposed an Aggressive But Realistic Plan

Defendants will need to complete Plaintiff-specific discovery for each of the 103 separate actions in this MDL, involving over 300 Plaintiff entities.  Although many of these actions involve related entities that purchased rail services together, other actions involve unrelated Plaintiffs or Plaintiffs that are related but purchased rail freight services separately.[15]  Therefore, the true number of unique Plaintiffs or Plaintiff groups from which Defendants must seek discovery is greater than 103.  For example, disaggregating the unrelated Plaintiffs on the *AK Steel* and *Cemex* complaints alone results in sixteen cases rather than two, thereby increasing the number of unique Plaintiffs or Plaintiff groups to at least 117.  In addition, because most Plaintiffs transacted business with multiple Defendants, more than one Defendant needs to identify and review relevant materials for those Plaintiffs' depositions.

A six week schedule for depositions in an antitrust or commercial litigation case is exceptionally aggressive.  For example, the *Oxbow* matter (No. 11-cv-1049-PLF) involved a single-shipper fuel surcharge price-fixing claim against BNSF and UP as well as now-dismissed market allocation and monopolization claims.  In that case, fact witness and 30(b)(6) depositions of the plaintiff were taken over more than five months.  Although many of the shippers in this MDL are much larger than Oxbow and transacted significantly more business with Defendants, Defendants' proposal here would result in taking depositions for about ten times as many shippers in far less than half the time.

Defendants' proposal also permits all parties to efficiently prepare for depositions by providing advance notice of when depositions for particular Plaintiffs should occur and by clustering the depositions for a particular Plaintiff together in a reasonable window of time.  This

---

[15]      As noted above, *AK Steel*, No. 1:19-cv-02970, involves eight separate Plaintiffs, as does *Cemex*, No. 1:20-cv-00269.

approach would allow counsel for both sides to familiarize themselves with the record for a particular Plaintiff just a single time in the weeks leading up to the depositions for that Plaintiff. Defendants believe that this clustering will allow the parties to prepare for and complete depositions faster and more efficiently than if the depositions for each Plaintiff were dispersed across the fact-discovery period.

Critically, Defendants' approach will avoid an inefficient free-for-all, in which dates are set simultaneously for all cases without regard to the overall schedule and without regard to other depositions that are being concurrently discussed.  That free-for-all approach will likely result in dead weeks in which no depositions are scheduled, weeks in which very large numbers of depositions are scheduled, and endless scheduling discussions to resolve these issues.  Defendants' proposal will instead allow depositions to be scheduled in twelve manageable waves, with each wave scheduled independently from every other wave and each wave scheduled while the depositions in earlier waves go forward.

Defendants' proposal also requires the parties to regularly report to the Court regarding their progress.  Defendants anticipate that these recurring appearances will keep the parties on track, minimize scheduling disputes, and allow for the early identification and resolution of any issues that threaten to impede the parties' discovery efforts.  Based on Defendants' experience over the last several weeks, Defendants are concerned that, despite good faith and best efforts, it may be difficult for the parties to set dates in a timely manner in advance of each six-week period without some judicial supervision.

C.     **Plaintiffs Have Proposed a Wholly Unrealistic Schedule That Would Materially Impair Defendants' Substantive Rights to Prepare for Summary Judgment and Trial**

Plaintiffs have indicated that they are open to Defendants' grouping concept.  But they have proposed only *3 groups* of *roughly 40 actions* each, that all Plaintiff depositions in each group

be completed over an eight-week period, and that all depositions and other remaining fact discovery be completed in slightly over five months.  *See* Ex. G.  That pace is not realistic for Defendants or Plaintiffs.  Because there are only 40 week days in each eight-week period, Plaintiffs' proposal would require Defendants to complete roughly *one case's worth of depositions* of Plaintiffs on every single week day.  And within this same five-month time period, the parties would also need to complete depositions of the minimum of 51 individual deponents of Defendant witnesses that Plaintiffs have already indicated they plan to take, along with an unknown number of 30(b)(6) depositions of Defendants.[16]  The number of depositions of Defendant witnesses appears likely to increase because Plaintiffs have expressly reserved the right to seek additional depositions based on their review of their documents and Defendants' productions.

The unreasonableness of Plaintiffs' proposal is further demonstrated by the fact that their third grouping would require Defendants to complete all depositions in *41 separate actions* during the end-of-the-year holiday season (November 8 to December 31, 2021) when most witnesses, especially former employees, are unlikely to be available for many weeks.  *See* Ex. G.  Moreover, dividing Plaintiffs into only three groups risks the free-for-all scheduling chaos that should be avoided.[17]

---

[16]     Despite repeated requests, Plaintiffs have not provided an estimate of how many 30(b)(6) depositions, or hours of such depositions, they plan to take, except to indicate that each Plaintiff is unlikely to take a separate 30(b)(6) deposition of each Defendant.

[17]     Defendants' recent experience in working with Plaintiffs to schedule certain early depositions suggests that the parties will not, in fact, be able to efficiently schedule the depositions for 30 to 40 cases during an eight-week period.  In late April and early May, Defendants contacted Plaintiffs' counsel in multiple cases where it appeared that document production could be completed prior to the agreed-upon June 30 substantial completion date.  Defendants requested that the parties work together to find deposition dates in June, but the few Plaintiffs that responded to this effort offered dates in late July, August, and September, not June.

Plaintiffs' proposal is plainly not a realistic schedule for preparing for and completing hundreds of depositions in an orderly and efficient manner. While Plaintiffs frame this dispute as a simple staffing or scheduling issue, their proposal is actually a thinly veiled attempt to prevent Defendants from developing the factual record that will contradict Plaintiffs' allegations. By creating a chaotic free-for-all and attempting to compress all depositions into a narrow window, Plaintiffs' proposal would effectively limit Defendants' ability to properly defend themselves and obtain critical discovery in these complex cases. Having pushed *American Pipe* tolling to its farthest reaches, and with many Plaintiffs having disposed of their relevant documents along the way, witness deposition testimony will be even more critical in these cases. Plaintiffs each had their own unique contract negotiation history with Defendants. Defendants are entitled to "a full opportunity to conduct discovery," which includes reasonable time to complete the hundreds of depositions necessary in these cases to develop the record of those negotiations. *Breen v. Peters*, 474 F. Supp. 2d 1, 7 (D.D.C. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Plaintiffs should not now be able to wield the discovery schedule as a sword to limit Defendants' ability and substantive right to develop that factual record.

**D.** **The Relevant Circumstances Support Defendants' Proposal and Show Why Plaintiffs' Proposal is Unreasonable**

Defendants request that the Court adopt Defendants' proposal for the reasons set forth below.

1. Number of Depositions

(a) *This MDL Involves Hundreds of Plaintiffs, Which Will Require Hundreds of Depositions*

Defendants have no interest in taking unnecessary depositions; that approach would simply run up Defendants' own costs and distract Defendants from focusing on the key witnesses and facts for each Plaintiff. Defendants are therefore working with Plaintiffs to identify the right set

22

of deponents for each case, and the parties have been exchanging correspondence on this issue as well as scheduling meet and confers.[18]  Document production is not complete and both sides have recognized that they may need to add or drop deponents after reviewing these productions.

Nevertheless, even in the best case scenario, hundreds of depositions will be necessary in this MDL,[19] and that stark reality has informed Defendants' scheduling proposal.  Plaintiffs themselves admitted as much at the initial status conference:  As Plaintiffs explained, in their view, Olin, "[o]ne of the named plaintiffs [in *MDL I*] ... is very comparable to the types of companies that we have now" in *MDL II*, and Defendants took "four depositions of Olin witnesses."  Hr'g Tr. 27:10-22 (May 22, 2020).   In fact, many Plaintiffs, like Maersk, Ford, the Dow Chemical Company, and UPS, are very significantly larger than Olin and are among the largest consumers of domestic freight transportation.  But even if, as Plaintiffs' counsel suggested, Defendants take an average of just 4 depositions per complaint, then they will need to take over 400 depositions.

---

[18]    Defendants' proposal will assist the parties in working cooperatively to eliminate unnecessary depositions.  For example, Plaintiffs have claimed that certain depositions Defendants tentatively plan to take are unnecessary and have asked Defendants to defer taking those depositions until after deposing other witnesses for those Plaintiffs.  But under Plaintiffs' proposal, it is unlikely the parties will have the time or organization to sequence depositions in this way across over 100 actions in a five-month period.

[19]    Plaintiffs have suggested in recent correspondence that Defendants previously advised the Court that an eight-month period for depositions and two to three depositions per case could be sufficient.  Ex. G at 2 n.1 (citing Preliminary Report of the Parties, ECF No. 78 (May 8, 2020)).  To the extent Plaintiffs are suggesting that Defendants' statements in the Preliminary Report are inconsistent with their current proposal, that is incorrect.  In the Preliminary Report, Defendants noted that there were "300 individual shippers" in this litigation, and that assuming two to three depositions for "*each Plaintiff*" (not *each case*) "the number of potential depositions of the Plaintiffs alone are *in the hundreds*."  Prelim. Rep. at 10, ECF No. 78 (emphasis added).  And, although Defendants did previously suggest an eight-month period for depositions, that proposal was (a) before Defendants had received Plaintiffs' initial disclosures or conferred with Plaintiffs regarding custodians, and (b) before the number of cases in this MDL increased from approximately 84 to approximately 103 (a nearly 25% increase).  In fact, Defendants noted at the time that the parties would be in a better position to assess the deposition schedule once document discovery was complete and that "issues regarding the scope of deposition discovery can be more efficiently addressed once the parties have the benefit of each other's documents."  *Id.* at 9.

And, if Defendants take, on average, 4 depositions per Plaintiff – recognizing that some Plaintiffs are large entities with significant traffic that will require more than 4 depositions, and other Plaintiffs are small entities or affiliates of other Plaintiffs that will require fewer than 4 depositions – they will need to take over 1,200 depositions.

As another data point, on April 30, 2021, Defendants provided Plaintiffs with a list that tentatively identified depositions that Defendants may need to take.  This list was primarily based on individuals identified in Plaintiffs' own initial disclosures and agreed-upon custodians, and it was supplemented with additional names identified by Defendants.  Defendants' list identified approximately 660 depositions, not including depositions under Rule 30(b)(6).  Defendants expressly acknowledged that some names would likely come off the list and other names would be added, but this list provided a rough approximation of the number of depositions that Defendants will likely need to take.

Plaintiffs have raised various complaints about some of the names on Defendants' April 30 list, but they have not shown that this list is an unreasonable approximation of the number of Plaintiff depositions that will be necessary.[20]  To the contrary, and despite repeated express requests, Plaintiffs have declined to provide even a rough estimate of the total number of depositions they believe would be appropriate in this litigation.  Defendants do not understand how

---

[20]     For example, in recent correspondence Plaintiffs complained that Defendants identified 24 potential depositions for one Plaintiff group.  Ex. G at 2 n.1.  Defendants presume that Plaintiffs are referring to the Lansing Ethanol Plaintiffs.  The Lansing Ethanol Plaintiffs are a group of *6* Plaintiffs that collectively identified *22* witnesses on their initial disclosures.  Moreover, because the Lansing Ethanol Plaintiffs generally did not retain custodial documents and because Lansing's counsel was unable to join meet and confer calls regarding custodians due to personal circumstances, Defendants lack the clarity necessary to further refine their list at this time.  Plaintiffs' reference to one unique outlier does not suggest that Defendants have not identified a reasonable approximation of the number of depositions that will be necessary in this proceeding.

Plaintiffs determined that December 2021 would be the appropriate fact discovery cut-off without even a rough sense of the number of depositions that will be necessary.

Defendants' proposal to complete these depositions – along with other fact discovery – by December 2, 2022, would require depositions to be completed at a rapid clip and on multiple tracks.  Assuming that Defendants take 660 depositions, they would need to take approximately 10 depositions a week, on average, between July 19, 2021, and December 2, 2022, not accounting for any holidays or depositions under Rule 30(b)(6).  Even if Defendants end up taking just 4 depositions for each complaint, Defendants will need to take almost six depositions a week from July 19 until next December.

(b)    *Plaintiffs' Proposal to Defer Depositions is Unworkable*

Plaintiffs have suggested that the parties can reduce the number of depositions necessary by deferring depositions until *during* or *after* summary judgment.  Under Plaintiffs' proposal, the parties could take the deposition of any witness who submits a declaration in connection with summary judgment or appears on a trial list, if the witness was not previously deposed.  This proposal does not truly reduce necessary discovery.  Instead, it simply defers it until later and invites a procedural morass after expert reports are prepared and summary judgment motions are filed.  In any event, Plaintiffs' proposal would not significantly reduce the number of necessary depositions.

***First***, Defendants are taking this Plaintiff-specific discovery precisely so that they can identify the facts that will support motions for summary judgment or their trial defenses.  This discovery is particularly important in this MDL because, given the passage of time, many Plaintiffs have indicated that they have retained no or very limited materials from the relevant period.  Defendants therefore need to take depositions to develop the factual record.  Once Defendants have already filed their motions, it will be too late to learn those facts from Plaintiffs' witnesses.

Moreover, Plaintiffs' proposal to conduct depositions during or after summary judgment will likely result in the Court having to adjudicate less focused and informed motions, thereby adding to the Court's burden.

*Second*, Plaintiffs' proposal simply kicks the can down the road.  Defendants do not think that it will be logistically simpler to take depositions in the midst of summary judgment or trial preparation.  Instead, those depositions will distract the parties from the work at hand.  Moreover, given the passage of time, Defendants are interested in preserving testimony now rather than risking further degradation of memories and unavailability of witnesses as a result of retirement or health problems.

> 2.   Deposition Scheduling

The parties' ability to schedule these depositions is further complicated by the fact that many, if not most, of the depositions that defendants will need to take are of Plaintiffs' former employees.  For example, there are three Plaintiffs on the complaint for *GenOn Energy Management, LLC et al. v. Union Pacific Railroad Co. et al.*, No. 1:20-cv-00328, and Defendants tentatively proposed four deponents.  Only one of these deponents is a current employee.  Defendants anticipate that scheduling these former-employee depositions will require substantial effort by the parties to coordinate with these witnesses.  Plaintiffs have indicated that, in general, while they hope to represent these former employees, that decision will need to be made on a case-by-case basis.

Defendants also asked Plaintiffs how much lead time they need to make witnesses available for depositions after the deposition is noticed (*e.g.*, 30 days from the noticing date).  *See* Ex. I, May 12, 2021 Email from A. Conley to S. Bojedla et al.  Plaintiffs declined to commit to any particular time period, including because many of the potential deponents are former employees.

Defendants are concerned that, although Plaintiffs claim that they will be able to rapidly make hundreds of deponents available for depositions, they will not actually be able to do so.

Indeed, as noted above, Defendants' experience in attempting to schedule depositions in June confirms that Plaintiffs' optimism is unfounded. Although, in late April and early May, Defendants requested June deposition dates for certain Plaintiffs, those Plaintiffs ultimately offered dates in late July, August, and September.

Similarly, during a June 10, 2021, meet and confer, Quinn Emanuel, which serves as one of Plaintiffs' liaison counsel, initially indicated that they were uncertain as to whether they would represent the former employees of one of their clients or facilitate their depositions and that Defendants would have to first track down and subpoena these witnesses. Although counsel has since indicated that they may attempt to reach out to these former employees, the need for such coordination and back-and-forth discussions on a witness-by-witness basis makes Plaintiffs' proposed December 31, 2021, discovery deadline all the more unrealistic and unreasonable.

3. Other Discovery

In addition to hundreds of depositions of Plaintiffs, the parties will also need to complete other fact discovery. Most significantly, Plaintiffs have indicated that they intend to take at least approximately 51 Rule 30(b)(1) depositions of Defendants and an as-yet unspecified number of Rule 30(b)(6) depositions by various Plaintiffs or Plaintiff groups. Many of the depositions proposed for Defendants are of former employees, which, as with depositions of Plaintiffs' former employees, raises scheduling complications. And Plaintiffs have indicated that they may request additional depositions of Defendants after reviewing the parties' document productions. Beyond depositions, the parties will also need to propound and respond to any written discovery during this period.

Any suggestion by Plaintiffs that this dispute is simply a resource issue and that Defendants should just add dozens of additional lawyers to each of their case teams is disingenuous. Defendants have been devoting enormous resources to move these cases forward in an expeditious and professionally responsible manner.  For example, while document review is still ongoing, Union Pacific alone has already produced more documents (well ahead of the June 30 substantial completion target date) than the hundreds of Plaintiffs combined.  And, Defendants have expended significant time and resources prioritizing the production of large numbers of contracts and price authorities because many Plaintiffs failed to preserve such business records.

Plaintiffs' proposed five-month schedule does not come close to providing adequate time for all these tasks and, as noted, would substantively impede Defendants' rights to develop the discovery record to prepare these cases for summary judgment or, if necessary, trial.  In fact, in Defendants' view, it will be a very daunting effort to complete these tasks even under the timeframe proposed by Defendants.  However, Defendants are mindful of the Court's desire to move these cases forward promptly and are prepared to make every reasonable effort to complete fact discovery in the more than one hundred individual cases in this MDL by the end of next year.

*     *     *

Defendants respectfully request that the Court extend the fact discovery deadline to December 2, 2022, for the reasons described above, and instruct the parties to jointly submit a deposition protocol that is consistent with Defendants' proposal.

Dated: June 14, 2021                                      Respectfully submitted,

s/ *Alden L. Atkins*
Craig P. Seebald (D.C. Bar No. 438968)
Alden L. Atkins (D.C. Bar No. 00393922)
Lindsey R. Vaala (D.C. Bar No. 974770)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C.  20037
Tel:  (202) 639-6500
Fax:  (202) 639-6604
E-mail:  cseebald@velaw.com
           aatkins@velaw.com
           lvaala@velaw.com

s/ *John H. LeSeur*
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854)
Daniel M. Jaffe (D.C. Bar No. 461185)
SLOVER & LOFTUS LLP
1224 Seventeenth Street, N.W.
Washington, D.C.  20036
Tel:  (202) 347-7170
Fax:  (202) 347-3619
E-mail:  jhl@sloverandloftus.com
           fjp@sloverandloftus.com
           pap@sloverandloftus.com
           dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel Corporation;*
*Bel-Ray Company, LLC; Calumet Branded*
*Products, LLC; Calumet Cotton Valley*
*Refining, LLC; Calumet Dickinson Refining,*
*LLC; Calumet Karns City Refining, LLC;*
*Calumet Montana Refining, LLC; Calumet*
*Operating, LLC; Calumet Princeton Refining;*
*LLC; Calumet Refining, LLC; Calumet*
*Shreveport Refining, LLC; Calumet Specialty*
*Products Partners, L.P.; CF Industries, Inc.;*
*Dairyland Power Cooperative; Dyno Nobel,*
*Inc.; Entergy Arkansas, LLC; Entergy*
*Louisiana, LLC; Exelon Generation Company,*
*LLC; Kurlin Company, LLC; NorFalco LLC;*
*NorFalco Sales; North Star BlueScope Steel*
*LLC; Steelscape, LLC; and Wisconsin Electric*
*Power Company*

s/ *Michael D. Hausfeld*
Michael D. Hausfeld, Esquire
Brian A. Ratner, Esquire
Sathya S. Gosselin, Esquire
Melinda R. Coolidge, Esquire
Swathi Bojedla, Esquire
Theodore F. DiSalvo, Esquire
Halli E. Spraggins, Esquire
HAUSFELD LLP
888 16th Street, N.W.
Suite 300
Washington, D.C.  20006
Tel:  (202) 540-7200
E-mail:  mhausfeld@hausfeld.com
           bratner@hausfeld.com
           sgosselin@hausfeld.com
           mcoolidge@hausfeld.com
           sbojedla@hausfeld.com
           tdisalvo@hausfeld.com
           hspraggins@hausfeld.com


Seth R. Gassman, Esquire
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA  94111
Tel:  (415) 633-1908
E-mail:  sgassman@hausfeld.com


*Attorneys for American Honda Motor Co.,
Inc.*; *BMW Manufacturing Co., LLC and BMW
of North America, LLC; Boise Cascade
Company; Central Transport International,
Inc., Central Transport, Inc.,
Logistics Insight Corp., and Transport
Communications Systems II, L.L.C. CONSOL
Energy, Inc.; CRH Americas, Inc., Preferred
Materials, Inc., Ash Grove Cement Company,
The Shelly Company, Big River Industries, Inc.,
Oldcastle APG West, Inc., and Pennsy Supply
Inc.; Crowley Maritime Corporation, Crowley
Logistics, Inc., and Crowley Liner Services,
Inc.; Grand River Dam Authority; J.R. Simplot
Co.; Lansing Board of Water & Light; Linde
AG; Praxair, Inc.; Lotte Global Logistics
(North America), Inc.; Louisiana-Pacific*

s/ *Stephen R. Neuwirth*
Stephen R. Neuwirth, Esquire
Sami H. Rashid, Esquire
Viola Trebicka, Esquire
QUINN EMANUEL URGUHART & SULLIVAN
51 Madison Avenue
22nd Floor
New York, N.Y.  10010
Tel:  (212) 849-7000
Fax:  (212) 849-7100
E-mail: stephenneuwirth@quinnemanuel.com
           samirashid@quinnemanuel.com
           violatrebicka@quinnemanuel.com

*Attorneys for Plaintiffs Alcoa Corporation,
Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power
Generating, Inc.; Eastalco Aluminum Company;
Intalco Aluminum, LLC; Reynolds Metal
Company; Alcoa World Alumina, LLC; Alumax
Mill Products, Inc.; The Amalgamated Sugar
Company, LLC; American Rock Salt Company
LLC; AP Møller – Mærsk A/S; Mærsk Inc.;
Maersk Line UK Limited; Axiall Corporation;
Axiall, LLC; Westlake Styrene LLC; Westlake
Petrochemicals LLC; Westlake Polymers LLC;
Westlake Vinyls Inc.; Westlake Vinyls Company
LP; WPT LLC; Westlake Longview
Corporation; Westlake Management Services,
Inc.; BASF Corporation; BASF Catalysts LLC;
Cognis USA LLC; ProCat Testing LLC;
California Steel Industries, Inc.; Campbell Soup
Supply Company L.L.C.; Campbell Company of
Canada; Campbell FoodService Company;
Joseph Campbell Company; CertainTeed LLC;
Saint-Gobain Ceramics & Plastics, Inc.; Bird
Incorporated' CertainTeed Canada, Inc.;
CertainTeed Gypsum & Ceiling Manufacturing,
Inc.; CertainTeed Gypsum Manufacturing, Inc.;
CertainTeed Gypsum NC, Inc.; CertainTeed
Gypsum West Virginia, Inc.; CertainTeed
Gypsum, Inc.; CertainTeed Ceilings
Corporation; CertainTeed Gypsum and Ceilings
USA, Inc.; Coffeyville Resources Nitrogen
Fertilizers, LLC; Coffeyville Resources Refining
& Marketing, LLC; Wynnewood Refining
Company, LLC; East Dubuque Nitrogen*

*Corporation; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Newell Recycling Southeast, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc.; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*Fertilizers, LLC; ConAgra Brands, Inc. f/k/a/ ConAgra Foods, Inc.; Virginia Electric and Power Company,; Dominion Energy Fuel Services, Inc.; Dominion Energy South Carolina, Inc.; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Progress, LLC; Duke Energy Indiana, LLC; Duke Energy Kentucky, LLC; Duke Energy Ohio, LLC; Progress Fuels, LLC; DEGS of Narrows, LLC; Duke Energy Generation Services, Inc.; Eastman Chemical Company; Solutia Inc.; Taminco Corporation; Exxon Mobil Corporation; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; Imperial Oil; Imperial Oil Limited; Canada Imperial Oil Limited; Grain Craft, Inc.; Southeastern Mills, Inc.; Hyundai Motor America, Inc.; IPSCO Tubulars Inc.; IPSCO Koppel Tubulars, LLC; IPSCO Tubulars (KY), LLC; TMK NSG, LLC; Keystone Fuels, LLC; Conemaugh Fuels, LLC; Kia Motors America, Inc.; Lafarge North America, Inc., Holcim (US) Inc.; Aggregate Industries Management, Inc.; Aggregate Industries - SWR, Inc.; Aggregate Industries - WCR, Inc.; Aggregate Industries Northeast Region, Inc.; Aggregate Industries - MWR, Inc.; Bardon, Inc. (dba Aggregate Industries Mid-Atlantic Region); Cement Transport, LTD; Geocycle LLC; Systech Environmental Corporation; Lafarge PNW, Inc.; Lattimore Materials Corp.; Mercedes-Benz USA, LLC; Motiva Enterprises LLC; NLMK USA, Inc.; NLMK Pennsylvania, LLC; Sharon Coating, LLC; Northdown Industries, Inc.; Normerica Inc.; NOVA Chemicals, Inc.; NOVA Chemicals Corporation; NOVA Chemicals (Canada) Ltd.; Old World Industries, LLC; PCS Sales (USA), Inc.; Agrium (U.S.), Inc.; PCS Phosphate Company, Inc.; White Springs Agricultural Chemicals, Inc; PCS Nitrogen, Inc.; Phillips 66 Company; Shell Chemical LP, Shell Chemicals Canada (f/k/a Shell Chemicals Canada Ltd.) by its managing partner Shell Canada Ltd.; Pennzoil-Quaker State Company (formerly d/b/a SOPUS Products); Shell Trading (US) Company; Equilon Enterprises*

s/ William J. Blechman
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Douglas H. Patton, Esquire
Michael A. Ponzoli, Esquire
Joshua B. Gray, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel:  (305) 373-1000
E-mail:  raa@knpa.com
           wblechman@knpa.com
           dpatton@knpa.com
           mponzoli@knpa.com
           jgray@knpa.com

Attorneys for Plaintiffs Cemex, Inc.,
Clearwater Paper Corporation, The Goodyear
Tire & Rubber Company, Kraft Heinz Foods
Company, Lehigh Hanson, Inc., PotlatchDeltic
Corporation, Rayonier Advanced Materials
Inc., Sterling Steel Company LLC., UPM-
Kymmene, Inc., and Unilever ASCC AG

s/ David C. Eddy
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted pro hac vice)
Travis C. Wheeler (DC Bar No. 484023)
Chase C. Keibler (admitted pro hac vice)
NEXSEN PRUET, LLC
1230 Main Street
Suite 700
Columbia, S.C.  29201
Tel:  (803) 771-8900
E-mail:  deddy@nexsenpruet.com
           dlynch@nexsenpruet.com
           twheeler@nexsenpruet.com
           ckeibler@nexsenpruet.com

Attorneys for Plaintiffs Domtar Corporation;
Ford Motor Company; South Carolina Public
Service Authority; Anheuser-Busch, LLC; and
Anheuser-Busch Companies, LLC

LLC (d/b/a Shell Oil Products US or SOPUS);
Talen Energy Supply, LLC f/k/a PPL Energy
Supply, LLC, on behalf of itself and its
subsidiaries and affiliates; Talen Energy
Marketing, LLC f/k/a PPL EnergyPlus, LLC;
Talen Generation, LLC f/k/a PPL Generation,
LLC (successor in interest to PPL Coal Supply,
LLC); Talen Montana, LLC f/k/a PPL Montana,
LLC; Martins Creek, LLC f/k/a PPL Martins
Creek, LLC; Brunner Island, LLC f/k/a PPL
Brunner Island, LLC; Montour, LLC f/k/a PPL
Montour, LLC; United Parcel Service, Inc., an
Ohio Corporation; UPS Ground Freight, Inc.;
Vulcan Materials Company; Legacy Vulcan,
LLC; Florida Rock Industries, Inc.; Atlantic
Granite LLC; CalMat Co.; Vulcan Aggregates
Company, LLC; Vulcan Construction Materials,
LLC; Fulton Concrete Company, LLC;
McCartney Construction Company, Inc.;
Calhoun Asphalt Company, Inc.; Harper
Brothers, LLC; Virginia Concrete Company,
LLC; Azusa Rock, LLC; Triangle Rock
Products, LLC; Aggregates USA, LLC; Chem-
Marine Corporation of South Carolina; DMG
Equipment Company, LLC; R. C. Smith
Companies, LLC; Aggregates USA (Macon),
LLC; Aggregates USA (Savannah), LLC;
Aggregates USA (Sparta), LLC; WestRock
Company; WestRock Coated Board, LLC;
WestRock Virginia, LLC; WestRock Texas, L.P.;
WestRock CP, LLC; WestRock –Rex, LLC;
WestRock Southeast, LLC; WestRock Northwest,
LLC; WestRock Mill Company, LLC; WestRock
– Solvay, LLC; WestRock Minnesota
Corporation; WestRock Kraft Paper, LLC;
WestRock Container, LLC; WestRock Longview,
LLC; Smurfit-Stone Container Canada Inc.; .;
ETC Sunoco Holdings LLC (f/k/a Sunoco, Inc.);
Sunoco (R&M), LLC (f/k/a Sunoco, Inc.
(R&M)); The J.M. Smucker Company; and
General Motors LLC

s/ Adam Carlis
Geoffrey L. Harrison, Esquire
Shawn Raymond, Esquire
Adam Carlis, Esquire
Matt Wood, Esquire
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, Texas  77002
Tel:  (713) 651-9366
E-mail:  gharrison@susmangodfrey.com
         sraymond@susmangodfrey.com
         acarlis@susmangodfrey.com
         mwood@susmangodfrey.com

Raj Mathur, Esquire
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, N.Y.  10019
Tel:  (212) 729-2051
E-mail:  rmathur@susmangodfrey.com

*Attorneys for Arkema Inc.; ArrMaz Products Inc.; Boise Cascade Company; CONSOL Energy, Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; Roseburg Forest Products Co.; Sims Group, USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc.,*

s/ Joseph M. Vanek
Joseph M. Vanek, Esquire
David P. Germaine (admitted *pro hac vice*)
Martin Amaro (*pro hac vice* forthcoming)
SPERLING & SLATER, P.C.
55 West Monroe Street
32nd Floor
Chicago, Illinois  60603
Tel:  (312) 641-3200
Fax:  (312) 641-6492
E-mail:  jvanek@sperling-law.com
         dgermaine@sperling-law.com
         mamaro@sperling-law.com

*Attorneys for Plaintiffs Kellogg Company and Mitsubishi Motors North America, Inc.*

s/ Sandra L. Brown
Sandra L.(D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP
1919 M Street N.W., Suite 700
Washington, D.C.  20036
Tel:  (202) 331-8800
Fax:  (202) 331-8330
E-mail:  sandra.brown@thompsonhine.com
         david.wilson@thompsonhine.com
         david.benz@thompsonhine.com
         joe.smith@thompsonhine.com

Robert F. Ware, Esquire
Jennifer S. Roach, Esquire
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel:  (216) 566-5500
Fax:  (216) 566-5800
E-mail:  rob.ware@thompsonhine.com
         jennifer.roach@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power Company, Georgia Power Company and Mississippi Power Company; Northern*

*Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc.; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

s/ *David B. Helms*
David B. Helms, Esquire
GM LAW PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri  63105
Tel:  (314) 474-1750
Fax: (816) 471-2221
E-mail:  davidh@gmlawpc.com

s/ *Kirk T. May*
Kirk T. May, Esquire
William D. Beil, Esquire
GM LAW PC
1201 Walnut, Suite 2000
Kansas City, Missouri  64106
Tel:  (816) 471-7700
Fax: (816) 471-2221
E-mail:  kirkm@ gmlawpc.com
        billb@ gmlawpc.com

*Attorneys for Plaintiff Brady McCasland, Inc. and Lansing Ethanol Services, LLC, et al.*

*Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

s/ *Kristopher S. Davis*
Kristopher S. Davis (CA #193452)
George T. Caplan (CA #043821)
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East
Suite 1500
Los Angeles, California  90067
Tel:  (310) 203-4000
Fax:  (310) 229-1285
E-mail:  kristopher.davis@faegredrinker.com
        george.caplan@faegredrinker.com

William L. Roberts (MN # 0212763)
Jonathan W. Dettmann (MN # 0265032)
Craig S. Coleman (MN # 0325491)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Tel:  (612) 766-7000
Fax:  (612) 766-1600
E-mail:  william.roberts@faegredrinker.com
        jon.dettmann@faegredrinker.com
        craig.coleman@faegredrinker.com

*Attorneys for Plaintiffs American Zinc Recycling Corp., Ascend Performance Materials Operations LLC, Ingredion Incorporated, The Heritage Group dba Asphalt Refining Company, Asphalt Materials, Inc., Bituminous Materials and Supply, L.P., Emulsicoat, Inc., Laketon Refining Corporation, Heritage Environmental Services, LLC, Rineco Chemical Industries, LLC, Heritage Transport, LLC, and Pizo Operating Company, LLC*

s/ *Benjamin D. Brown*
Benjamin D. Brown (DC Bar. No. 495836)
Robert A. Braun (DC Bar. No. 1023352)
Leonardo Chingcuanco (DC Bar No. 1719708)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue
N.W. Fifth Floor
Washington, D.C.  20005
Tel:  (202) 408-4600
E-mail:  bbrown@cohenmilstein.com
        rbraun@cohenmilstein.com
        lchingcuanco@cohenmilstein.com

*Attorneys for Plaintiffs Kawasaki Kisen
Kaisha, Ltd., "K" Line America, Inc., Yang
Ming Marine Transport Corp., Yang Ming
(America) Corp., Nippon Yusen Kabushiki
Kaisha, NYK Line (North America) Inc., Mitsui
O.S.K. Lines, Ltd. and MOLAM Legacy, Inc.*

s/ *James P. Denvir*
James P. Denvir (D.C. Bar No.  284554)
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, D.C.  20005
Tel:  (202) 237-2727
Fax:  (202) 237-6131
E-mail:  jdenvir@bsfllp.com
        sgant@bsfllp.com

Stuart H. Singer (*pro hac vice*)
James Grippando (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL  33301
Tel:  (954) 356-0011
E-mail:  ssinger@bsfllp.com
        jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc.,
E.I. du Pont de Nemours and Company, and
The General Electric Company*

s/ *Eric S. Hochstadt*
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MENGES LLP
767 Fifth Avenue
New York, N.Y.  10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
E-mail:  david.lender@weil.com
        eric.hochstadt@weil.com
        luna.barrington@weil.com
        sarah.ryu@weil.com

Carrie C. Mahan (D.C. Bar No. 459802)
WEIL, GOTSHAL & MENGES LLP
2001 M. Street, N.W., Suite 600
Washington, D.C.  20036
Tel:  (202) 682-7000
Fax:  (202) 857-0940
E-mail:  carrie.mahan@weil.com

*Attorneys for Plaintiffs Cleveland-Cliffs
Steel LLC (f/k/a ArcelorMittal USA LLC)
and ArcelorMittal Dofasco G.P.*

s/ *Edward D. Hassi*
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  (202) 383-8000
Fax:  (202) 383 8118
E-mail:  thassi@debevoise.com
        lmartin@debevoise.com

s/ *Frank M. Lowrey IV*
Frank M. Lowrey IV (*pro hac vice*)
Tiana S. Mykkeltvedt (*pro hac vice*)
Amanda D. Bradley (*pro hac vice*)
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E., Suite 3900
Atlanta, Georgia  30309
Tel:  (404) 881-4100
Fax:  (404) 881-4111
E-mail:  lowrey@bmelaw.com
              mykkeltvedt@bmelaw.com
              bradley@bmelaw.com

*Attorneys for Plaintiff The General Electric Company*

s/ *Michael C. Dell'Angelo*
Michael C. Dell'Angelo, Esquire
Michael J. Kane, Esquire
H. Laddie Montague, Jr., Esquire
Michaela L. Wallin, Esquire
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Tel:  (215) 875-3000
E-mail:  mdellangelo@bm.net
              mkane@bm.net
              hlmontague@bm.net
              mwallin@bm.net

Daniel J. Walker, Esquire
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C.  20006
Tel:  (202) 559-9745
E-mail:  dwalker@bm.net

*Attorneys for Plaintiffs High Level Management Venturers, Century Aluminum Company, Century Aluminum of Kentucky, GP, NSA, GP, Century Aluminum of West Virginia, Inc., Century Aluminum of South Carolina, Inc., Andre M. Toffel, Trustee, on behalf of New Wei, Inc., et al., jointly administered bankruptcy estates, and ABF Freight System Inc.*

Michael Schaper, Esquire
Tristan M. Ellis, Esquire
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, N.Y.  10022
Tel:   (212) 909 6000
Fax:   (212) 909 6836
E-mail:  mschaper@debevoise.com
              tmellis@debevoise.com

*Attorneys for Plaintiffs Toyota Motor Sales, U.S.A., Inc. and Toyota Canada Inc.*

s/ *Nathan P. Eimer*
Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, Illinois  60604
Tel:   (312) 660-7600
Fax:   (312) 692-1718
E-mail:  neimer@eimerstahl.com
              dbirk@eimerstahl.com
              srazzano@eimerstahl.com
              bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, Wisconsin  53703
Tel:   (608) 441-5798
Fax:   (608) 441-5707
E-mail: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical Company, Union Carbide Corporation, Amerchol Corporation, Umetco Minerals Corporation, Gerdau Ameristeel Corporation, Gerdau Ameristeel US Inc., Gerdau Ameristeel Perth Amboy Inc., Gerdau Ameristeel Sayreville Inc., Chaparral Steel Company, Chaparral Steel*

s/ *Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER & HAMPTON
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C.  20006-6801
Tel:  (202) 747-1925
Fax:  (202) 747-1901
E-mail:  lcaseria@sheppardmullin.com

Helen C. Eckert, Esquire
Joy O. Siu, Esquire
SHEPPARD, MULLIN, RICHTER & HAMPTON
Four Embarcadero Center
17th Floor
San Francisco, CA  94111-4109
Tel:  (415) 434-9100
Fax:  (415) 434-3947
E-mail:  heckert@sheppardmullin.com
           jsiu@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*


s/ *Conte C. Cicala*
Conte C. Cicala (CA Bar No. 173554)
CLYDE & CO US LLP
Four Embarcadero Center
Suite 1350
San Francisco, CA  94111
Tel:  (415) 365-9800
Fax:  (415) 365-9801
E-mail:  conte.cicala@clydeco.us

*Attorneys for Plaintiff Mitsui O.S.K. Lines, Ltd. and MOLAM Legacy, Inc.*

*Midlothian, LP, Chaparral (Virginia) Inc., Sheffield Steel Corporation, Gerdau Macsteel, Inc., International Paper Company, GenOn Energy Management, LLC, GenOn Power Midwest LP, and GenOn REMA, LLC*


s/ *Daniel B. Goldman*
Daniel B. Goldman, Esquire
Steven S. Sparling, Esquire
Daniel Lennard, Esquire
Zachary C. Naidich, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, N.Y.  10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000
E-mail:  dgoldman@kramerlevin.com
           ssparling@kramerlevin.com
           dlennard@kramerlevin.com
           znaidich@kramerlevin.com

*Attorneys for Plaintiffs The Procter & Gamble Company, The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing Company, The Procter & Gamble Paper Products Company, Tronox Inc., and Tronox US Holdings Inc.*


s/ *Ronald J. Aranoff*
Ronald J. Aranoff, Esquire
Fletcher W. Strong, Esquire
William J. Hagan, Esquire
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, N.Y.  10110
Tel:  (212) 382-3300
Fax:  (212) 382-0050
E-mail:  raranoff@wmd-law.com
           fstrong@wmd-law.com
           whagan@wmd-law.com

*Attorneys for Plaintiff Air Products and Chemicals, Inc.*

s/ *Tyrone R. Childress*
Tyrone R. Childress, Esquire
Kelsey S. Bryan (D.C. Bar # 1034352)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Tel:  (213) 489-3939
Fax:  (213) 243-2589
E-mail:  tchildress@jonesday.com
          kbryan@jonesday.com

John M. Majoras (D.C. Bar # 474267)
Kristen Lejnieks (D.C. Bar # 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Tel:  (202) 879-3939
Fax:  (202) 626-1700
E-mail:  jmmajoras@jonesday.com
          kalejnieks@jonesday.com

s/ *Daniel M. Wall*
Daniel M. Wall, Esquire
Timothy L. O'Mara, Esquire
Tyler Young, Esquire
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel:  (415) 391-0600

Allyson M. Maltas (D.C. Bar No. 494566)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C.  20004-1304
Tel:  (202) 637-2200
E-mail:  allyson.maltas@lw.com

s/ *Matthew M. Collette*
Matthew M. Collette (D.C. Bar No. 427167)
Kathryn A. Robinette (D.C. Bar No. 1659218)
MASSEY & GAIL LLP
1000 Maine Avenue, S.W.
Suite 450
Washington, D.C.  20024
Tel:  (202) 795-3326
Fax:  (312) 379-0467
E-mail:  mcollette@masseygail.com
          krobinette@masseygail.com

Leonard A. Gail, Esquire
(Illinois State Bar No. 6199745)
MASSEY & GAIL LLP
50 E. Washington Street
Suite 400
Chicago, Illinois  60602
Tel:  (312) 283-1590
Fax:  (312) 379-0467
E-mail:  lgail@masseygail.com

*Counsel for Defendant Union Pacific Railroad Company pursuant to the Notices of Appearance entered in each case*

s/ *Glenn D. Pomerantz*
Glenn D. Pomerantz, Esquire
E. Martin Estrada, Esquire
Kuruvilla J. Olasa, Esquire
Anne K. Conley, Esquire
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA  90071
Tel:  (213) 683-9100
E-mail:  Glenn.Pomerantz@mto.com
            Martin.Estrada@mto.com
            Kuruvilla.Olasa@mto.com
            Anne.Conley@mto.com

Benjamin J. Horwich, Esquire
MUNGER, TOLLES & OLSON LLP
560 Mission Street
27th Floor
San Francisco, CA  94105
Tel:  (415) 512-4000
E-mail:  Ben.Horwich@mto.com

s/ *Linda S. Stein*
Linda S. Stein (D.C. Bar No. 376217)
Molly Bruder Fox (D.C. Bar No. 981619)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel:  (202) 429-3000
E-mail:  lstein@steptoe.com
            mbfox@steptoe.com

Jacobus P. van der Ven (D.C. Bar No. 1644774)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., N.W.
Suite 500E
Washington, D.C.  20001-5369
Tel:  (202) 220-1100
E-mail:  Jacobus.vanderven@mto.com

*Attorneys for Defendant BNSF Railway Company pursuant to
the Notices of Appearance entered in each case*

s/ *Tara L. Reinhart*
Tara L. Reinhart (D.C. Bar. No. 462106)
John R. Thornburgh II (D.C. Bar No. 1044137)
Thomas R. Gentry (D.C. Bar No. 1617060)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
1440 New York Avenue, N.W.
Washington, D.C.  20005
Tel:  (202) 371-7000
E-mail:  tara.reinhart@skadden.com
            john.thornburgh@skadden.com
            thomas.gentry@skadden.com

Ronald K. Wray II, Esquire
GALLIVAN, WHITE & BOYD P.A.
55 Beattie Place, Suite 1200
Greenville, SC  29601
Tel:  (864) 271-5362
E-mail:  rwray@GWBlawfirm.com

*Counsel for Defendant Norfolk Southern Railway Company pursuant to
the Notices of Appearance entered in each case*

s/ *Kent A. Gardiner*
Kent A. Gardiner (D.C. Bar No. 432081)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  (202) 624-2500
Fax: (202) 628-5116
E-mail:  KGardiner@crowell.com
         LvanHouwelingen@crowell.com

Juan A. Arteaga, Esquire
Mara R. Lieber, Esquire
CROWELL & MORING LLP
590 Madison Avenue
20th Floor
New York, N.Y.  10022
Tel:  (212) 223-4000
Fax: (212) 223-4134
E-mail:  JArteaga@crowell.com
         MLieber@crowell.com

s/ David M. Wells
David M. Wells, Esquire
Anne Coxe Mesrobian, Esquire
GUNSTER, YOAKLEY & STEWART, P.A.
One Independent Drive
Suite 2300
Jacksonville, Florida  32202
Tel:   (904) 354-1980
Primary E-mail:  dwells@gunster.com
Primary E-mail:  amesrobian@gunster.com
Secondary E-mail:  dculmer@gunster.com
Secondary E-mail:  awinsor@gunster.com

*Counsel for Defendant CSX Transportation, Inc. pursuant to*
*the Notices of Appearance entered in each case*

635607.2