UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br>This document relates to:<br><br>*CHS Inc. v. Union Pacific Railroad Company, et al.*, 1:21-cv-2017-BAH | MDL Docket No. 2925<br><br>Misc. No. 20-mc-8 (BAH) |

## UNION PACIFIC RAILROAD COMPANY'S ANSWER
## TO PLAINTIFF'S COMPLAINT

Defendant Union Pacific Railroad Company ("UP"), for itself only, answers the Complaint ("Complaint") of CHS Inc., ("Plaintiff" or "CHS"), as set forth below. UP denies each and every allegation of the Complaint, except as specifically stated, and denies that it violated in any way the antitrust laws under which Plaintiff purports to bring this action.

### RESPONSE TO PLAINTIFF'S ALLEGATIONS

UP responds to the allegations of the Complaint's separately numbered paragraphs as follows:

### NATURE OF THE ACTION

1.      UP admits that Plaintiff filed this action as a purported antitrust action alleging that four United States-based Class I railroads violated Section 1 of the Sherman Act. UP denies that it engaged in a conspiracy or violated Section 1 of the Sherman Act or any other antitrust laws.

2.      UP denies the allegations in this Paragraph.

3.      UP admits there was an unsuccessful class action against Defendants related to the

subject matter of this litigation. UP admits that the *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 32, 102-103 (D.D.C. 2017) ("Rail Freight I") opinion cited by Plaintiff contains the language quoted in this paragraph. UP asserts that the opinion speaks for itself and denies Plaintiff's characterizations of the opinion. UP denies the remaining allegations in this paragraph.

4.     UP admits that it entered into certain private rail freight transportation contracts that included rate escalation provisions tied to various cost indices. UP admits that the All-Inclusive Index ("AII") weighted a variety of cost factors. UP denies that the AII captured its actual increases in fuel costs. UP denies the remaining allegations in this paragraph.

5.     UP admits that the Association of American Railroads ("AAR") published the AII. UP asserts that the AAR's description of itself speaks for itself. UP admits that Defendants' CEOs are members of the board of the AAR. UP denies the remaining allegations in this paragraph.

6.     UP admits that the *Rail Freight* opinion contains the language quoted in the fourth sentence of this paragraph. UP asserts that the opinion speaks for itself and denies Plaintiff's characterizations of the opinion. UP denies the remaining allegations in this paragraph.

7.     UP lacks sufficient information to form an independent belief about the truth of the allegations concerning Plaintiff's spending, and on that basis denies them. UP denies the remaining allegations in this paragraph.

8.     UP denies the existence of a conspiracy. UP further denies that Plaintiff is entitled to any damages.

## PARTIES

9.     UP admits that CHS Inc. purchased certain rail transportation services from UP during the relevant period.  UP denies that it violated the antitrust laws and denies that CHS Inc.

suffered any injury or damages. UP lacks sufficient information to form an independent belief about the truth of the remaining allegations in this paragraph, and on that basis denies them.

10. UP admits that CSX Transportation, Inc. ("CSX") is a major freight railroad with railway lines in the eastern United States. Based on a review of public filings, CSX's principal executive offices are located at 500 Water Street, 15th Floor, Jacksonville, Florida 32202. UP lacks sufficient information to form a belief about the truth of the remaining allegations in this paragraph.

11. UP admits that Norfolk Southern Railway Company ("NS") is a major freight railroad with railway lines in the eastern United States. Based on a review of public filings, NS's principal executive offices are located at Three Commercial Place, Norfolk, Virginia 23510. UP lacks sufficient information to form a belief about the truth of the remaining allegations in this paragraph.

12. UP admits that BNSF Railway Company ("BNSF") is a major freight railroad with railway lines in the western United States. Based on a review of public filings, BNSF's principal executive office is located at 2650 Lou Menk Drive, Fort Worth, Texas 76131. UP lacks sufficient information to form a belief about the truth of the remaining allegations in this paragraph.

13. UP admits that it has its principal place of business at 1400 Douglas Street, Omaha, Nebraska 68179. UP admits that it operates primarily in the western United States and coordinates lawfully with other rail carriers to handle freight to and from other parts of the country.

## JURISDICTION AND VENUE

14. UP admits that the Complaint purports to plead federal antitrust claims against Defendants under Section 4 of the Clayton Act, 15 U.S.C. § 15, and Section 1 of the Sherman Act, 15 U.S.C. § 1. UP denies it has violated the antitrust laws, or that the Complaint states a claim

under those statutes.

15. This paragraph states a legal conclusion for which no response is necessary. To the extent a response is deemed required, UP denies the allegations in this paragraph.

16. This paragraph states a legal conclusion for which no response is necessary. UP denies the remaining allegations in this paragraph.

17. UP does not contest personal jurisdiction in this case. UP denies the remaining allegations in this paragraph.

### INTERSTATE TRADE AND COMMERCE

18. UP denies the allegations in this paragraph.

19. UP lacks sufficient information to form an independent belief about the truth of the allegations in this paragraph, and on that basis denies them.

20. UP admits that it sells rail transportation services that affect interstate commerce. UP denies the remaining allegations in this paragraph.

### DEREGULATION OF THE RAILROAD INDUSTRY

21. UP admits that the Staggers Rail Act of 1980 (the "Staggers Act") partially deregulated the railroad industry. The third sentence of this paragraph states legal conclusions to which no response is necessary. To the extent a response is deemed required, UP denies those allegations. UP denies the remaining allegations in this paragraph.

22. UP admits that, prior to the Staggers Act, railroads generally charged rates established in published tariffs filed with the Interstate Commerce Commission ("ICC"). The second sentence of this paragraph states legal conclusions to which no response is necessary. To the extent a response is deemed required, UP denies this allegation. UP denies the remaining allegations in this paragraph.

23.     UP lacks sufficient information to form a belief about the truth of the allegation that more than 75 percent of all rail shipments move under private transportation contracts or are otherwise exempt from rate regulation, and on that basis denies it.  UP denies that it has colluded on freight rates.  UP denies the remaining allegations in this paragraph.

24.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' percentage of track operation and revenues, on that basis denies them.  UP denies the remaining allegations in this paragraph.

25.     UP denies the allegations in this paragraph.

### DEFENDANTS [ALLEGEDLY] INTRODUCE FUEL SURCHARGES

26.     UP denies the unnumbered heading preceding this paragraph. UP asserts that the decisions and regulations of the Surface Transportation Board ("STB") speak for themselves and denies Plaintiff's characterizations of them. UP denies the remaining allegations in this paragraph.

27.     UP denies the allegations in this paragraph.

28.     UP admits that the *Rail Freight* opinion cited by Plaintiff contains the unbracketed language quoted in this paragraph, which, in turn, quotes from documents produced in *In re: Rail Freight Fuel Surcharge Antitrust Litig.*, Case No. 07-489 (D.D.C.) ("the Putative Class Action"). UP denies Plaintiff's characterizations of the opinion and the documents it quotes. UP denies the remaining allegations in this paragraph.

29.     UP denies the allegations in this paragraph.

30.     UP denies the allegations in this paragraph.

31.     UP admits that it entered into private rail freight transportation contracts after passage of the Staggers Act and that some of those contracts included rate escalation provisions tied to various cost indices. UP admits that the AII and the Rail Car Adjustment Factor ("RCAF")

23. UP lacks sufficient information to form a belief about the truth of the allegation that more than 75 percent of all rail shipments move under private transportation contracts or are otherwise exempt from rate regulation, and on that basis denies it.  UP denies that it has colluded on freight rates.  UP denies the remaining allegations in this paragraph.

24. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' percentage of track operation and revenues, on that basis denies them.  UP denies the remaining allegations in this paragraph.

25. UP denies the allegations in this paragraph.

### **DEFENDANTS [ALLEGEDLY] INTRODUCE FUEL SURCHARGES**

26. UP denies the unnumbered heading preceding this paragraph. UP asserts that the decisions and regulations of the Surface Transportation Board ("STB") speak for themselves and denies Plaintiff's characterizations of them. UP denies the remaining allegations in this paragraph.

27. UP denies the allegations in this paragraph.

28. UP admits that the *Rail Freight* opinion cited by Plaintiff contains the unbracketed language quoted in this paragraph, which, in turn, quotes from documents produced in *In re: Rail Freight Fuel Surcharge Antitrust Litig.*, Case No. 07-489 (D.D.C.) ("the Putative Class Action"). UP denies Plaintiff's characterizations of the opinion and the documents it quotes. UP denies the remaining allegations in this paragraph.

29. UP denies the allegations in this paragraph.

30. UP denies the allegations in this paragraph.

31. UP admits that it entered into private rail freight transportation contracts after passage of the Staggers Act and that some of those contracts included rate escalation provisions tied to various cost indices. UP admits that the AII and the Rail Car Adjustment Factor ("RCAF")

were indices published by the AAR that weighted a variety of cost factors. UP denies that the RCAF or the AII captured its actual increases in fuel costs. UP denies the remaining allegations in this paragraph.

32. UP denies the allegations in this paragraph.

33. UP admits that certain of its rail transportation contracts prior to 2003 included fuel surcharges. UP denies the remaining allegations in this paragraph.

## DEFENDANTS' [ALLEGED] FIRST STEPS OF PRICE COLLUSION

34. UP denies the unnumbered heading preceding this paragraph. UP denies the remaining allegations in this paragraph.

35. UP admits that certain of Defendants' executives attended meetings with each other, including meetings of the AAR and the National Freight Transportation Association ("NFTA"), at which appropriate topics concerning the rail industry were discussed. UP denies the remaining allegations in this paragraph.

36. UP admits that in late 2002 it announced a carload fuel surcharge based upon the West Texas Intermediate ("WTI") index, and that in 2003 it announced a carload fuel surcharge based upon the Highway Diesel Fuel ("HDF") index. UP admits that, prior to 2003, BNSF had fuel surcharges that were based on the HDF index. UP denies the remaining allegations in this paragraph.

37. UP admits that one of UP's carload fuel surcharges applied a surcharge of 0.5 percent for every five-cent increase above $1.35 per gallon in the HDF index, and that this formula resulted in the same percentage surcharge as one of BNSF's published surcharges above a price of $1.35 per gallon in the HDF index. UP denies the remaining allegations in this paragraph.

38. UP admits that the formula for one of its fuel surcharges applied changes to the

surcharge on the second month after a change in the HDF price. UP denies the remaining allegations in this paragraph.

39. UP denies the allegations in this paragraph.

40. UP admits that it announced a change to the calculation of one of its WTI-index based fuel surcharges in April 2003 which it did not implement. UP denies the remaining allegations in this paragraph.

41. UP denies the allegations in this paragraph.

42. UP denies the allegations in this paragraph.

43. UP admits that the AAR announced the All Inclusive Index Less Fuel ("AIILF") in the fall of 2003. UP admits that the AIILF is calculated using the same components and methods as the All-Inclusive Index uses for the Rail Cost Adjustment Factor, with the exception of the exclusion of the fuel component. UP asserts that the AAR's publication speaks for itself. UP denies that the AAR's announcement of the AIILF was pursuant to, or the result of, a conspiracy, or that the decision was unlawful collective action. UP denies the remaining allegations in this paragraph.

44. UP denies the allegations in this paragraph.

45. UP lacks sufficient information to form an independent belief about the truth of the allegations in this paragraph concerning the AAR's historic actions, and on that basis denies them. UP denies the remaining allegations in this paragraph.

46. UP denies the allegations in this paragraph.

47. UP lacks sufficient information to form a belief about the truth of the allegations regarding the activities of the "Eastern Railroads," and on that basis denies them. UP denies the remaining allegations in this paragraph.

48. UP lacks sufficient information to form a belief about the allegations regarding the

activities of the "Eastern Railroads," and on that basis denies them. UP denies the remaining allegations in this paragraph.

49. UP lacks sufficient information to form a belief about the allegations regarding the activities of the "Eastern Railroads," and on that basis denies them. UP denies the remaining allegations in this paragraph.

50. UP denies the allegations in this paragraph.

51. UP admits that the AII and the RCAF both included a fuel cost component and that UP used both indices from time to time. UP denies that the RCAF or the AII captured its actual increases in fuel costs. UP denies the remaining allegations in this paragraph.

52. UP denies the allegations in this paragraph.

53. UP denies the allegations in this paragraph.

## THE [ALLEGED] RAIL FUEL SURCHARGE SCHEME

54. UP denies the unnumbered heading preceding this paragraph. UP denies the allegations in this paragraph.

55. UP denies the allegations in this paragraph.

56. UP lacks sufficient information to form a belief about the allegations regarding the activities of the "Eastern Railroads," and on that basis denies them. UP denies the remaining allegations in this paragraph.

57. UP denies the allegations in this paragraph.

58. UP denies the allegations in this paragraph.

59. UP lacks sufficient information to form an independent belief about the truth of the allegations concerning other defendants' fuel efficiency, and on that basis denies them. UP denies the remaining allegations in this paragraph.

60. UP denies the allegations in this paragraph.

61. UP denies the allegations in this paragraph.

### OTHER ELEMENTS OF THE [ALLEGED] CONSPIRACY

62. UP denies the unnumbered heading preceding this paragraph. UP denies the allegations in this paragraph.

63. UP denies the allegations in this paragraph.

64. UP denies the allegations in this paragraph.

65. UP admits that a document produced in the Putative Class Action and quoted by the Rail Freight opinion included the language quoted in the last two sentences of this paragraph. UP denies Plaintiff's characterizations of the opinion and document. UP denies the remaining allegations in this paragraph.

66. UP admits that documents produced in the Putative Class Action and quoted by the Rail Freight opinion included the language quoted in the first and second sentences of this paragraph. UP denies Plaintiff's characterizations of these documents. UP denies the remaining allegations in this paragraph.

67. UP denies the allegations in this paragraph.

68. UP denies the allegations in this paragraph.

### DEFENDANTS' [ALLEGED] SUPRACOMPETITIVE PROFITS

69. UP denies the unnumbered heading preceding this paragraph. UP denies the allegations in this paragraph.

70. UP denies the allegations in this paragraph.

71. UP lacks sufficient information to form an independent belief as to the truth of the allegations in this paragraph concerning Defendants' market capitalization, and on that basis

denies them. UP denies the remaining allegations in this paragraph.

72. UP denies the allegations in this paragraph.

73. UP denies the allegations in this paragraph.

## COUNT I

### [Alleged] Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act

74. UP denies the unnumbered heading preceding this paragraph. UP incorporates by reference its responses to the preceding numbered paragraphs.

75. UP denies the allegations in this paragraph.

76. UP denies the allegations in this paragraph.

77. UP denies the allegations in this paragraph.

78. UP denies the allegations in this paragraph, including all of its subparts.

79. UP denies the allegations in this paragraph.

## PLAINTIFF'S PRAYER FOR RELIEF

UP denies that Plaintiff is entitled to any of the relief it seeks.

## DEMAND FOR JURY TRIAL

Defendant Union Pacific Railroad Company hereby demands trial by jury on all issues so triable.

## UNION PACIFIC'S AFFIRMATIVE DEFENSES

UP asserts the following defenses without in any way alleging it has the burden of proof with respect to any of the defenses or that Plaintiff is relieved of its burden to prove each and every element of its claims and damages, if any, to which Plaintiff claims it is entitled. The defenses apply to each and every cause of action alleged.

## FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

80. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations, including 15 U.S.C. § 15b. Plaintiff's claims are also barred in whole or in part by limitations on the time for bringing claims specified in particular contracts between Plaintiff and UP.

## SECOND AFFIRMATIVE DEFENSE
### (Estoppel, Waiver)

81. Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and waiver.

## THIRD AFFIRMATIVE DEFENSE
### (10706 Statutory Protections)

82. Defendants' alleged conduct with respect to communications concerning interline railroad services and other railroad services was privileged under law, including, but not limited to, the statutory privileges described in 49 U.S.C. § 10706.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

83. Plaintiff is barred from recovery by reason of their failure to mitigate, minimize or avoid the damages alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE
### (Laches)

84. Plaintiff's claims are barred by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE
### (Exclusive Jurisdiction)

85. Plaintiff's claims are barred under federal laws granting exclusive jurisdiction to the STB, including 49 U.S.C. § 10501, et seq., to the extent those claims are based on conduct that

is subject to the jurisdiction of the STB.

## SEVENTH AFFIRMATIVE DEFENSE
### (Set-Off)

86.     Any alleged claim for damages by Plaintiff is subject to set-off against any money that Plaintiff owes to UP for rail services provided by UP.

## EIGHTH AFFIRMATIVE DEFENSE
### (Standing)

87.     Plaintiff lacks standing to assert the antitrust claims that they allege.

## NINTH AFFIRMATIVE DEFENSE
### (Pass-On)

88.     Plaintiff's claims are barred in whole or in part by the pass-on defense.

## TENTH AFFIRMATIVE DEFENSE
### (Implied Preemption)

89.     Plaintiff's claims are preempted by virtue of the federal regulatory scheme governing the provision of rail freight services, including under the filed rate doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

90.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim for Relief)

91.     Plaintiff fails to state facts or claims against UP sufficient to state a claim upon which relief may be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Arbitration)

92.     Plaintiff's claims against UP are barred, in whole or in part, to the extent that

Plaintiff agreed to arbitrate claims related to their relevant contracts with UP.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (49 U.S.C. § 11101)

93. Plaintiff's claims are barred, in whole or in part, because those claims improperly infer the existence of a conspiracy based on UP's common carrier obligation to disclose rates and provide shippers with advance notice of rate changes pursuant to 49 U.S.C. § 11101.

## FIFTEENTH AFFIRMATIVE DEFENSE

94. UP incorporates any other affirmative defenses pleaded by other Defendants that do not conflict with UP's affirmative defenses.

## PRAYER FOR RELIEF

WHEREFORE, UP prays for relief from judgment as follows:

1. That judgment be entered in favor of UP and against Plaintiff on all its claims;

2. That Plaintiff takes nothing by its Complaint;

3. That the Complaint be dismissed with prejudice;

4. That UP recover all attorneys' fees, costs, and expenses incurred in defense of this action; and,

5. That the Court grant UP such further relief as the Court deems just and proper.

Dated: August 31, 2021                     Respectfully submitted,

*/s/ Matthew M. Collette*
Matthew M. Collette
D.C. Bar No. 427167
Kathryn A. Robinette
D.C. Bar No. 1659218
Alethea Anne Swift
D.C. Bar No. 1644929
MASSEY & GAIL LLP
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Phone: (202) 795-3326
Fax: (312) 379-0467
mcollette@masseygail.com
krobinette@masseygail.com
aswift@masseygail.com

Leonard A. Gail
Illinois State Bar No. 6199745
MASSEY & GAIL LLP
50 E. Washington Street, Suite 400
Chicago, IL 60602
Phone: (312) 283-1590
Fax: (312) 379-0467
lgail@masseygail.com

*Attorneys for Union Pacific Railroad Company*

**CERTIFICATE OF SERVICE**

I, Matthew M. Collette, certify that on August 31, 2021, I caused a true and correct copy of the foregoing **Defendant Union Pacific Railroad Company's Answer to Plaintiff's Complaint** to be served upon all CM/ECF registrants of record in this action using the Court's CM/ECF system.

/s/ Matthew M. Collette
Matthew M. Collette