## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: RAIL FREIGHT FUEL
SURCHARGE ANTITRUST LITIGATION
(NO. II)

This document relates to:
ALL CASES

MDL Docket No. 2925
Misc. No. 20-8 (BAH)

## JOINT STATUS REPORT

Pursuant to the Court's July 6, 2021 Memorandum and Order, the parties submit this

Joint Status Report regarding the status of this litigation. 7/6/21 Mem. and Order 5 (ECF No.

676). This report is divided into three sections. The first section provides updates regarding the

topics that the Court previously directed the parties to cover in their status reports. The remaining

two sections separately provide the parties' positions on issues that have arisen regarding

Plaintiffs' written discovery and proposed depositions of Defendants' witnesses, as well as the

current expert discovery schedule.

I.    **Joint Statement Regarding Status of Discovery**

A.    **Status of Depositions**

1.    **Depositions Taken By Defendants**

As noted in prior Joint Status Reports, Defendants are following an agreed-upon schedule

to complete depositions of Plaintiffs' witnesses. The parties assigned the 120 Plaintiffs[1] to nine

---

[1] While there are 106 separate actions in this MDL, two of those actions include separate and
unrelated Plaintiff families—*AK Steel Corp., et al. v. Union Pacific Railway Co., et al.* has eight
and *Cemex Inc. et al. v. BNSF Railway Co., et al.* has eight. For purposes of discovery, the
parties handle the Plaintiff families separately.

1

groups with depositions for each group taking place over six to ten week periods.[2] The groupings are:

- Group 1: July 19, 2021 – August 27, 2021
- Group 2: August 30, 2021 – October 8, 2021
- Group 3: October 11, 2021 – November 19, 2021
- Group 4: November 22, 2021 – January 14, 2021
- Group 5: January 17, 2022 – February 25, 2022
- Group 6: February 28, 2022 – May 6, 2022
- Group 7: May 9, 2022 – June 17, 2022
- Group 8: June 20, 2022 – July 29, 2022
- Group 9: August 1, 2022 – September 9, 2022

***Number of Rule 30(b)(1) Depositions***:  As of the date of this report, Defendants have taken 182 Rule 30(b)(1) depositions of Plaintiffs in Groups 1 through 6. Defendants have another twenty-three Rule 30(b)(1) depositions scheduled, and are working to schedule depositions of witnesses for Plaintiffs in Groups 7 and 8—in addition to witnesses for Plaintiffs in earlier groups that Defendants have not yet deposed due to scheduling difficulties or deferral agreements. There are 14 remaining Plaintiffs in Group 9 for which Defendants have not yet begun to schedule depositions.

Defendants have subpoenaed or are in the processing of trying to subpoena approximately 37 former employee witnesses after being informed that the Plaintiff was unable to locate or elicit a response from the former employee, or where the Plaintiff does not anticipate representing the witness.  This process requires time and effort by both sides.

---

[2] As noted in the September 7, 2021 Joint Status Report, while "the goal is to substantially complete all depositions in a given case by the deadline set for that group, the parties have agreed that due to counsel conflicts, witness conflicts, difficulties in locating a witness, other scheduling difficulties, and the fact that some witness names may not be learned until other depositions are taken or document productions are completed and document review progresses, some deponents may need to be taken outside the scheduled deposition period."

***Number of Rule 30(b)(6) Depositions:***  At Plaintiffs' request, on August 5, 2021, Defendants provided a draft list of 30(b)(6) topics. Defendants have taken two Rule 30(b)(6) depositions and noticed eight additional Rule 30(b)(6) depositions. Defendants have agreed to defer the Rule 30(b)(1) depositions of approximately 18 witnesses who Plaintiffs anticipate will also serve as Rule 30(b)(6) witnesses. Defendants agreed to coordinate the Rule 30(b)(1) and 30(b)(6) depositions of these witnesses in order to minimize the cost and burden for both the parties and witnesses.

### 2.    Depositions Taken By Plaintiffs

Plaintiffs have taken six Rule 30(b)(1) depositions of Defendants' witnesses. Plaintiffs have deferred nearly all of the remaining 30(b)(1) depositions they had sought, either: (i) because Defendants indicated the deponent may also be a 30(b)(6) witness, and Plaintiffs are awaiting coordinated 30(b)(1) and 30(b)(6) dates from Defendants pending completion of the parties' discussions about 30(b)(6) testimony, or (ii) Plaintiffs have offered to defer the 30(b)(1) depositions pursuant to the stipulated Order on deferral of fact witnesses (Dkt. 751). In February 2022, Plaintiffs provided Defendants a draft list of 30(b)(6) topics.

The parties have set forth their respective positions on remaining depositions of Defendants in Sections II and III below.

## II.    Plaintiffs' Separate Statement Regarding Status of Discovery[3]

Defendants spent more than ten years arguing that there were too many individual issues to certify a class in MDL I and that shippers must litigate their cases individually. *E.g. In re: Rail*

---

[3] Defendants declined to exchange drafts of the parties' respective portions of this joint status report in advance, so there may be instances where Defendants raise points that are not addressed in Plaintiffs' statement. The Court should not take Plaintiffs' silence on a point raised by Defendants as an acceptance of Defendants' assertions or positions.

*Freight Fuel Surcharge Antitrust Litig.*, No. 1:07-mc-00489-PLF-GMH, ECF No. 377 at 2, 5 (D.D.C. July 1, 2010). Now they say that the approach they advocated is too burdensome and complain about litigating individual cases. Most of the shipper Plaintiffs have served narrow, targeted interrogatories to ferret out which of the boilerplate defenses pled by Defendants are actually still being asserted against each Plaintiff and the factual basis for those defenses. This is hardly overreaching in any case, and is less so where Defendants themselves persistently argued that they must be allowed to assert individual defenses.

Plaintiffs' goal throughout this process has been to serve efficient, narrowly tailored discovery regarding those plaintiff-specific issues. This goal is grounded in the objective of completing discovery within the schedule established by the Court. In February, Plaintiffs sent Defendants a collective draft of 30(b)(6) topics that Plaintiffs worked diligently together to prepare in order to begin discussions regarding 30(b)(6) depositions. Defendants responded with objections to all of those topics and only agreed to provide "general policy" partial responses to five topics. Defendants' objections included that Plaintiffs should instead serve written discovery. In an effort to compromise, Plaintiffs further reduced their number of Rule 30(b)(6) topics to just eight, on the condition that Defendants provide satisfactory responses to written discovery related to the Rule 30(b)(6) issues. In several meet and confer sessions with defense counsel, Plaintiffs addressed Defendants concerns by developing a hybrid approach to discovery *i.e.*, targeted interrogatories and tailored 30(b)(6) depositions to follow. Defendants now complain about answering the interrogatories they requested.

At present, the parties are trying to negotiate a schedule for Defendants to provide answers to these interrogatories. Plaintiffs have proposed a reasonable schedule, as discussed below. Defendants seem to be taking paradoxical positions: on the one hand, they argue that the

interrogatories were served too soon because (they say) they cannot provide answers to a Plaintiff's interrogatories until depositions are completed in that case, even though they asserted defenses more than two years ago. On the other hand, they say the interrogatories are too late and that the remaining five months of the discovery schedule will be needed to answer interrogatories.

Plaintiffs anticipate that the common denominator of Defendants' statement in this Joint Status Report will be that the schedule must be extended or at least to set up a scenario where that is the predicated outcome. But these cases seeking damages for Defendants' conspiratorial fuel surcharges starting in 2003 have been underway for almost 15 years already. Plaintiffs are pressing the cases forward, and the schedule should not be extended again.

1. <u>Plaintiffs Served Interrogatories to Streamline or Obviate Defendants' Corporate Testimony.</u>

The Court's July 2021 scheduling Order recognized that Plaintiffs would take 30(b)(6) depositions as part of the plaintiff-specific discovery in this case. ECF No. 676 at 4. Plaintiffs first sent Defendants a draft of Rule 30(b)(6) topics on February 2, 2022, eight months before the close of discovery, with 19 potential Rule 30(b)(6) topics targeting the defenses that were being asserted in each case. Pls.' Ex. A. The purpose of the Rule 30(b)(6) topics was to understand Defendants' plaintiff-specific affirmative defenses in each case, and the factual basis for each. Defendants complained that the Rule 30(b)(6) topics were burdensome given the aggregate number of Plaintiffs, and also that certain topics were better suited to interrogatories rather than oral testimony.

In an effort to compromise, Plaintiffs further reduced their number of Rule 30(b)(6) topics to just eight, on the condition that Defendants provide satisfactory responses to written discovery related to the Rule 30(b)(6) issues. Pls.' Ex. B. Still, Defendants objected. Again, they refused to provide answers about facts specific to an individual Plaintiff—even though they intend to assert

plaintiff-specific defenses—and instead stated that they would answer only about the "general policy" applicable to each request.

One of Defendants' stated concerns was that it would be unreasonable for a single witness to answer detailed questions about individual Plaintiffs. To respond to that concern, Plaintiffs accepted Defendants' invitation to use interrogatories.[4] Starting on April 27, 2022, Plaintiffs began serving a limited set of interrogatories targeted to learn about the defenses Defendants intend to assert. The main purpose of these interrogatories is to streamline any corporate testimony Defendants provide in MDL II. Each Plaintiff serving interrogatories has included four interrogatories that are substantially the same, and in the majority of cases, Plaintiffs have served only those four interrogatories. *See, e.g.,* Pls.' Ex. C, D. In approximately two dozen additional cases, Plaintffs have served up to seven additional interrogatories, for a total of up to eleven interrogatories. *See, e.g.,* Pls.' Ex. E-H.

That is a modest number in an antitrust case with billions of dollars at stake and in which Defendants have asserted as many as 21 affirmative defenses against individual Plaintiffs, not counting the affirmative defenses each Defendant incorporated by reference from one another. *See, e.g.* ECF No. 164 (Defendant CSX Transportation, Inc.'s Answer to NorFalco Plaintiffs' Complaint). Defendants have refused to respond to a number of these interrogatories and have indicated that responding only to those to which they do not have objections will require a further extension to the already-extended discovery schedule.

2. <u>Plaintiffs' Interrogatories Are Proper and Seek Relevant Information.</u>

---

[4] Plaintiffs do not mean to suggest that interrogatories and 30(b)(6) deposition testimony are mutually exclusive means of discovering the same information. Plaintiffs expect they may have follow-up questions in deposition regarding the interrogatory answers.

Plaintiffs' interrogatories seek important and relevant discovery into how each Defendant will defend its case against each Plaintiff, and do not retread discovery from MDL I about the existence of the conspiracy. The four interrogatories common to all Plaintiffs who served interrogatories seek, for each requesting Plaintiff: (1) any instance in which Defendants claim they offered reductions, refunds, or other consideration to offset fuel surcharges; (2) any price authorities for which Defendants proposed a fuel surcharge but that price authority ultimately did not include a fuel surcharge; (3) whether there is a settlement agreement Defendants contend releases or waives the Plaintiff's claims; and (4) any affirmative defenses that Defendants believe they have a basis to assert. The remaining six to seven interrogatories, served only in a subset of cases, also seek to understand Defendants' affirmative defenses, including the basis for particular defenses.[5]

Defendants can answer all of these interrogatories with information they already possess. Defendants asserted their defenses more than two years ago. Further, Plaintiffs substantially completed their document productions by June 30, 2021.[6] Defendants have had a year to review the documents, so they should have *already* gathered this information to prepare their defense.

3. <u>Defendants Do Not Need to Complete Offensive Discovery Before Responding to Plaintiffs' Interrogatories.</u>

---

[5] For example, the additional interrogatories seek information about any plaintiff-specific factors that Defendants allegedly relied upon when setting Plaintiffs' rates, the plaintiff-specific facts supporting Defendants' defense that the causal chain between their actions and a Plaintiff's damages was broken, the plaintiff-specific facts that support Defendants' defense that the relevant market for Plaintiffs' purchases is different than the market for rail freight shipments, and the plaintiff-specific facts that support Defendants' defense that certain traffic was regulated by the Surface Transportation Board..

[6] Some Plaintiffs filed their cases later, so they substantially completed their document productions after June 30, 2021.

Defendants say they cannot respond to any individual Plaintiff's interrogatories if the Defendants have not yet completed depositions of that Plaintiff's witnesses. As discussed above, the information to answer these interrogatories is already in Defendants' possession. To the extent Defendants discover additional information that might cause them to supplement their interrogatory responses in the course of remaining depositions of Plaintiffs' witnesses, Plaintiffs have made clear that Defendants would retain the right to supplement their responses under Federal Rule of Civil Procedure 26(e).

Precedent in this District also confirms that Defendants should promptly provide fulsome responses to the interrogatories now, rather than waiting until the end of discovery. In an antitrust MDL similar to this one (and involving some of the same counsel involved here), the Special Master reasoned that "[r]ather than engage in detailed examination of what is or is not a 'contention interrogatory,' the real issue is one of timing; that is, whether answering interrogatories, however denominated, now *will clarify and narrow the issues of the dispute*." *In re Domestic Airline Travel Antitrust Litig.*, No. 15-1404 (CKK), 2018 WL 4381070, at *3 (D.D.C. June 15, 2018) (emphasis added). The Special Master further concluded that "at this juncture, where the cases were filed over two-and-a-half years ago, where counsel has conducted 15 months of discovery, and where core document discovery is complete, this case will benefit from Plaintiffs answering" the interrogatories in dispute. *Id.* at *3-*4 ("Answers to the interrogatories at issue have a high probability of focusing the issues and establishing the significant facts relevant and pertinent to Plaintiffs' claims and allegations."). The Special Master also noted that the plaintiffs in that case, like the parties here, "may amend and/or supplement their interrogatory responses as more evidence is discovered" as required under Federal Rule of Civil Procedure 26(e). *Id.* at *4. The

Special Master's Report and Recommendation was fully adopted by Judge Kollar-Kotelly. *In re Domestic Airline Travel Antitrust Litig.*, No. 15-cv-1404, 326 F.R.D. 43 (D.D.C. July 10, 2018).

    4.  <u>There Is No Need to Extend the Discovery Schedule.</u>

        Defendants are required, under the Federal Rules, to respond to Plaintiffs' interrogatories within 30 days. In light of Defendants' concerns about timing, Plaintiffs have offered to extend that deadline to a reasonably longer time frame. Plaintiffs have proposed that (1) Defendants respond to the four common interrogatories by June 17, 2022, after which Rule 30(b)(6) depositions can begin; and (2) Defendants respond to the remaining interrogatories no later than July 29, 2022. Pls.' Ex. I. This allows Defendants approximately three additional weeks (beyond the 30 days allowed under the Federal Rules) to respond to four interrogatories in most of the cases, and nine additional weeks to respond to six or seven interrogatories in a subset of cases.

        Defendants have refused to entertain Plaintiffs' offered compromise. They instead propose that they begin answering interrogatories 45 days after they were served, but for only the first two groups of cases in which they have completed depositions. Then, they would answer every 30 days for the next two groups, until the last group (group 9) where they would answer 21 days after depositions are concluded. The effect would be to give them ***five additional months*** to respond to interrogatories that seek information Defendants should have already assembled. Defendants' proposal would complete the interrogatory answers only on the final day of discovery, leaving no time for any 30(b)(6) depositions that may be necessary. The intended consequence of Defendants' proposal appears to be that either Plaintiffs would have to entirely give up Rule 30(b)(6) testimony or else the discovery deadline would need to be expanded, further delaying Plaintiffs' day in court. These alternatives are neither warranted by the straightforward and routine discovery requested,

nor fair to Plaintiffs, who first provided these Rule 30(b)(6) topics eight months before the close of discovery.

The Defendants' claim that they need this additional time is also belied by the representations they made to the Court. The parties' February 22, 2022 Status Report discussed Plaintiffs' Rule 30(b)(6) topics and Plaintiffs' intention to use written discovery to streamline or limit the Rule 30(b)(6) topics necessary. ECF No. 775 at 6. The parties told the Court that "[b]ased on the scope of discovery served by each side thus far, the parties anticipate completing fact discovery within the timeframe set in the Court's modified Scheduling Order." *Id*. In fact, some Plaintiffs had already served interrogatories directed at Defendants' affirmative defenses in December 2021, so at the time of the February Status Report, Defendants were well aware of Plaintiffs' desire to take such discovery and their need to answer it within the discovery period.[7] Nothing has materially changed between February 22, 2022 and today, except that Plaintiffs have agreed to defer the majority of their requested Rule 30(b)(1) depositions. Thus, based on the parties' prior representations, there is no need to extend the discovery schedule.

*First*, Defendants have ample resources to prepare timely responses. By Plaintiffs' count, each Defendant is represented by at least three separate law firms, and a total of 21 different law firms have appeared for the Defendants. They include some of the largest law firms in the world with thousands of lawyers. It is unlikely they have ever told a prospective client that they lack the resources to litigate a large case. Further, due to conflicts between Defendants' counsel and several

---

[7] Consistent with Defendants' response to the more recently served set of interrogatories, Defendants complained that these interrogatories were too burdensome to answer, as well as too early and somehow also too late. Pls.' Ex. J. Defendants eventually suggested on March 31, 2022 that the Plaintiffs who served these interrogatories should coordinate with the broader Plaintiff group to serve narrowed requests directed at specific affirmative defenses. Pls.' Ex. K. That is exactly what occurred, yet Defendants still raise the same objections.

Plaintiffs, separate counsel have been retained for discovery in a number of cases, further dividing the load. This significantly lessens the burden on the amply staffed lead law firms.

*Second,* the fact that claims are asserted by dozens of individual Plaintiffs, and therefore more work is involved than in other antitrust cases, is not an excuse for delay. The work required for individual cases is the predictable consequence of Defendants' successful argument in MDL I that the cases must be litigated individually rather than as a class. Defendants should not be heard to complain about burdens that are of their own making. Certainly, Defendants should not further delay Plaintiffs' day in Court as a result of the choices they have made and positions they have taken.

*Third*, Defendants do not need any information outside of their control, much less Plaintiffs' fact deposition testimony, to respond to these interrogatories. They have had their own documents for years and to Plaintiffs' documents since last June. They have long had access to their own witnesses. They have access to the factual information they need to identify the defenses they are asserting and the facts known to them. And even if some additional information is learned in the final remaining depositions, Plaintiffs' proposal would allow for Defendants to supplement their responses. Defendants should be able to provide what they currently know in response to these interrogatories and allow discovery to proceed in a timely fashion.

5.  <u>Defendants Have Indicated That They May Also Seek to Extend the Expert Discovery Deadlines.</u>

Two years ago, after considering both sides' proposals regarding the expert schedule, the Court gave Defendants three and a half months to respond to Plaintiffs' initial expert disclosures, setting February 15, 2022 as the disclosure date for Defendants' opposition expert reports. ECF No. 102 at 2. It was known to all that there were about 100 cases at that time. Later, in seeking an extension of the fact discovery period of over a year, Defendants made no mention of any need to

extend this timeframe for expert disclosures, and the Court's July 6, 2021 Order provides that Defendants shall serve opposition expert disclosures in the same timeframe previously ordered. ECF No. 676 at 4. *See also* ECF No. 667 (June 14, 2021 Joint Status Report containing no argument by Defendants regarding moving expert deadlines). The Court ordered that Defendants provide their opposing expert disclosures on February 15, 2023, three and a half months after Plaintiffs serve their initial expert disclosures. ECF No. 676 at 4.

However, shortly before the last status report, Defendants abruptly asked Plaintiffs for early disclosure relating to Plaintiffs' expert reports, including the number of reports Plaintiffs were planning. When Plaintiffs asked if Defendants would make any form of reciprocal advance disclosures regarding their opposition experts, Defendants refused to engage, demanding Plaintiffs give Defendants what amounts to an early disclosure of expert information without any form of reciprocity. After consideration, Plaintiffs told Defendants that they would be willing to provide Defendants with a count of the number of expert witnesses they currently intended to submit reports from, subject to modification if plans were to change as discovery progressed. Plaintiffs told Defendants at this time that they would be serving expert reports in groups, rather than having an individual report for each Plaintiff. Defendants rejected Plaintiffs' offer to provide them with the information they requested and instead demanded additional information about the subject matters and formats of Plaintiffs' expert reports.

Plaintiffs responded to this bait-and-switch by requesting that Defendants provide a "written proposal specifying what information Defendants contend they need." In response, Defendants provided no written proposal, and did not raise the issue again for two months. Then, four business days before this Status Report was due to be filed, Defendants stated they intend to raise expert report issues as a section in their separate statement, but did not explain what they

intend to tell the Court. They also refused to provide a draft of their status report section so Plaintiffs can reasonably respond. In any event, nothing has changed since the Court ordered the expert schedule two years ago.

### III.    Defendants' Separate Statement Regarding Status of Discovery

From the beginning of MDL I and throughout MDL II, Plaintiffs have sought to perpetuate the myth that Defendants, in furtherance of a conspiracy, applied the same standard rate-based fuel surcharge to all shippers without negotiation or exception.[8] The MDL II Plaintiffs filed cookie-cutter complaints simply copying allegations from MDL I complaints apparently without investigating the facts of their contracts and negotiations with Defendants. In many instances, Plaintiffs did not bother to speak to their key negotiators, or locate and review their contracts from the relevant period.

As Defendants anticipated when explaining to the Court the need for depositions of Plaintiffs, testimony elicited during those depositions squarely contradicts Plaintiffs' allegations—and supports Defendants' defenses. For example, many Plaintiffs have testified that:

- Plaintiffs had contracts with Defendants that included fuel surcharges between 2000 and 2002 (i.e., years prior to the alleged formation of the conspiracy in Spring 2003);

---

[8] As part of this fable, Plaintiffs in MDL I have repeatedly paraded certain documents and communications involving proper interline communications in an attempt to establish that a conspiracy existed. Defendants have always maintained that those documents are statutorily protected from an inference of conspiracy under 49 U.S.C. § 10706. After years of litigating this issue, and as the Court may already be aware, the D.C. Circuit issued an opinion today largely in favor of Defendants on this important issue.

- Plaintiffs developed their own fuel surcharge formulas, and proposed them to one or more Defendants during the alleged conspiracy period (indeed, in multiple cases, it was Plaintiffs' fuel surcharge formula that was the basis for the fuel surcharge agreed upon by the parties and included in their contracts);

- Plaintiffs negotiated one or more elements of the fuel surcharge formula during the alleged conspiracy period, including the index to which the fuel surcharge was tied, the trigger price, the rate at which the fuel surcharge changed based on the change in fuel price, and inclusion of negative fuel surcharges when fuel prices dropped below an agreed-upon threshold;

- Defendants negotiated different base rates with Plaintiffs, in lieu of including fuel surcharges, during the alleged conspiracy period;

- One or more Defendants negotiated lower base rates as a result of the inclusion of a fuel surcharge during the alleged conspiracy period;

- Plaintiffs entered into contracts with Defendants during the alleged conspiracy period with fuel surcharges different from the alleged conspiratorial fuel surcharges;

- Plaintiffs entered into contracts *without* fuel surcharges with one or more Defendants during the alleged conspiracy period; and

- Fuel prices were volatile during the alleged conspiracy period, leading to the frequent and consistent use of fuel surcharges by other transportation providers, such as non-defendant railroads and trucks, and to Plaintiffs' own use of fuel surcharges.

The few depositions Plaintiffs have taken of Defendants' witnesses have similarly contradicted Plaintiffs' allegations.

As reflected in the prior reports to the Court, Defendants have long recognized the importance of this shipper-specific discovery to this litigation as well as the time and resources needed to conduct it. Accordingly, Defendants asked the Court a year ago, shortly before substantially completing collection, review, and production of massive numbers of documents and contracts targeted at such shipper-specific issues, to extend the original October 1, 2021 fact discovery deadline by approximately 14 months in order to afford the parties the opportunity to complete discovery in the large number of cases involved. *See* 6/14/21 Joint Status Report at 14-20 (ECF No. 667). To accomplish this within the schedule adopted by the Court, Defendants prepared an organized plan (resulting in the deposition Groups listed in Section I.A.1. above), and began taking depositions last July. Defendants have now completed almost 200 depositions.

Plaintiffs, on the other hand, represented that they intended to take relatively little discovery (including a single Rule 30(b)(6) deposition of each Defendant, *see* 6/14/21 Joint Status Report at 2; 7/6/21 Memorandum and Order at 2 (ECF No. 676)), and told the Court that the parties could complete discovery by December 2021. 6/14/21 Joint Status Report at 12-13. Plaintiffs have taken only six depositions since the parties substantially completed document production over ten months ago. But now, with only five months left in the current fact discovery period, Plaintiffs are seeking extensive and very time-consuming discovery that Plaintiffs did not raise when the Court was considering the current schedule. For example, in the past few weeks, Plaintiffs served more than 650 shipper-specific interrogatories on each Defendant: 661 on BNSF, 659 on UP, 706 on CSXT, and 710 on NS.

Additionally, Plaintiffs now claim that <u>each</u> Plaintiff may seek a Rule 30(b)(6) deposition of <u>each</u> Defendant, which would amount to hundreds of hours of 30(b)(6) depositions. These depositions would apparently be in addition to the Rule 30(b)(1) depositions that Plaintiffs have requested.

If Plaintiffs sought to accomplish such extensive discovery within the Court-ordered schedule, they should have commenced it long ago. This is especially true given the fact that a large majority of the likely deponents are former employees. At the very least, the Plaintiffs who were deposed in the early deposition groupings could and should have served written discovery when their depositions were complete.

Nonetheless, as Defendants have told Plaintiffs during the meet and confer process, Defendants will try to provide substantive responses to the non-objectionable portions of Plaintiffs' interrogatories, and have proposed a reasonable schedule to Plaintiffs for doing so. However, it is abundantly clear that it will take the remainder of the current fact discovery period (if not longer) to complete this monumental amount of written discovery—particularly when coupled with the ongoing depositions of both Plaintiff and Defendant witnesses, at which information needed to respond to the interrogatories is still being developed. And this does not address the hundreds of (or potentially more than 1,000) hours of 30(b)(6) testimony that Plaintiffs have stated they now may seek.

If the parties are to complete fact discovery within the current October 1, 2022 deadline, Plaintiffs will need to make choices about the scope and volume of discovery that can realistically be accomplished.  The Court has made this point abundantly clear when Plaintiffs have previously sought overly broad discovery.  *See, e.g.*, 9/9/20 Tr. at 13 ("[MR. ATKINS]: [W]e do think it's important to set a date at some point because we need to meet the . . . close of

discovery deadline that the Court has established. THE COURT: Well, then you need to really focus on the scope issues.").

A.     **Written Discovery**

As noted above, Plaintiffs started to serve interrogatories seeking an enormous amount of information in late April, with some Plaintiffs serving their interrogatories as late as May 11. Setting aside the overbreadth of some of the interrogatories, even responding to a more appropriately tailored set will require months. In a March 24 proposal stating their intention to serve interrogatories, Plaintiffs also stated that each Plaintiff may seek 30(b)(6) testimony from each Defendant following receipt of Defendants' interrogatory responses. *See* Defs' Ex. 1, Plfs' 3/24/2022 Letter. Plaintiffs' attempt to compress such an enormous amount of discovery with little over four months left in the fact discovery period is unworkable.

***Time to Respond to Interrogatories:*** Plaintiffs represented in a February 17, 2022 letter that they intended to serve additional written discovery.[9] On March 24, Plaintiffs wrote that they would serve the interrogatories within 2 weeks—by April 7. *See* Defs' Ex. 1. In that letter, Plaintiffs asked that Defendants raise objections to the interrogatories within 14 days of receipt and provide full responses to all Plaintiffs' interrogatories within 30 days. Defendants explained their concerns about responding substantively with Plaintiff-specific information for 120 Plaintiffs within that time during meet and confer discussions on March 31, in their April 11 letter, *see* Defs' Ex. 2, and again during meet and confer discussions on April 21, while continuing to await actual receipt of any interrogatories.

---

[9] Plaintiffs previously served two interrogatories in September 2020. In May and June 2021, five later-filing Plaintiffs (represented by the Faegre Drinker firm) served individual first sets of four interrogatories to each Defendant. In December 2021, Plaintiffs in eleven other cases each served three additional interrogatories. Defendants responded to all of the aforementioned interrogatories.

Several weeks after Plaintiffs said they would, between April 27 and May 11, Plaintiffs in **over 100 matters served over 650 interrogatories—between three and eleven each—on each Defendant seeking extensive information**. This discovery purports to require each Defendant to prepare approximately 118 separate, Plaintiff-specific, sets of responses. And that number does not account for the many matters that have multiple Plaintiff shippers, as well as related entities, that negotiated and contracted with Defendants separately, necessitating responses involving separate facts related to each shipper.

The massive number of interrogatories served by Plaintiffs raise significant concerns. While not all Plaintiff law firms served the same number of interrogatories on behalf of their clients, and while there are differences between some of the sets served by different Plaintiff law firms,[10] the interrogatories include both fact and contention interrogatories, and a significant number of them[11] generally seek:

(1) Identification and quantification of each instance where Defendants adjusted or offered to adjust price components because of its application of a rate-based fuel surcharge;

(2) Identification of price authorities for which Defendants proposed a rate-based fuel surcharge but one was not included, or a rate-based fuel surcharge was triggered but not invoiced or collected;

(3) For each price authority with freight charges equal to or greater than $5,000,000, identification of facts sufficient to show the factors relied upon in setting rates and rate-

---

[10] In this set of interrogatories, the Vinson & Elkins / Slover & Lotus, Thompson Hine, Sperling & Slater, Sheppard Mullin, and Kenny Nachwalter Plaintiffs served 10 or 11 (depending on the Defendant), the Eimer Stahl Plaintiffs served 9 (except as to BNSF, on which they served 10), the Debevoise & Plimpton Plaintiffs served 8 (except as to BNSF, on which they served 9), the Kramer Levin Plaintiffs served 5 (except as to BNSF, on which they served 3), and the Hausfeld / Susman Godfrey, Quinn Emanuel, Berger Montague, Nexsen Pruet, Wollmuth Maher, Cohen Milstein, Faegre Drinker and Boies Schiller Plaintiffs served 4. Attached as Defs' Ex. 3 is the Vinson & Elkins / Slover & Loftus Plaintiffs' Second Set of Interrogatories to Defendant BNSF and attached as Defs' Ex. 4 is the Nexsen Pruet Plaintiffs' Set of Interrogatories to Defendant Union Pacific.

[11] The firms that served 4 interrogatories generally did not include the interrogatories summarized in points 3 or 6 on pages 18 and 19 of this report.

based fuel surcharges, including Defendants' calculation of movement-specific costs, including fuel, for the origin-destination pairs, and specific market conditions or competitors, including interline-specific factors;

(4) Identification of each settlement agreement, release, waiver, or other contract or agreement evidencing resolution of a dispute with Plaintiffs, or that Defendants assert impacts Plaintiffs' claims in this case, and the material facts that support application of such agreement to Plaintiffs' claims;

(5) Identification of affirmative defenses that Defendants intend to assert against Plaintiffs; and

(6) Identification of the material facts, including Plaintiff-specific facts, that Defendants intend to rely upon in support of the defenses that: (i) Defendants had legitimate business justifications for their conduct, (ii) Plaintiffs did not suffer antitrust injury, injury-in-fact, or damages, (iii) Plaintiffs' claims are barred by the doctrines of estoppel, waiver, or laches, (iv) Plaintiffs' claims are barred under federal laws granting exclusive jurisdiction to the STB, and (v) the alleged conduct did not lessen competition.

Meaningfully responding to this discovery with respect to each Plaintiff will fairly require most, if not all, of the remaining fact discovery schedule.[12]

On May 5, a week after receiving the first of Plaintiffs' interrogatories, Defendants asked for clarification regarding several of the interrogatories, in order to begin the meet and confer process. Recognizing the time and work required to respond, on May 6, Defendants proposed a schedule for providing the now 118 separate sets of substantive responses. *See* Defs' Ex. 5, Defs' 5/6/2022 Letter. Defendants proposed:

- Defendants will serve interrogatory responses for Plaintiffs in deposition Groups 1 and 2 within 45 days from May 4, 2022—the day the last Plaintiff in Groups 1 and 2 served their interrogatories.

---

[12] For example, just the interrogatories summarized in points 1 and 2 (which almost all Plaintiffs served on all Defendants) will require enormous time and effort to gather instances where each of the Defendants negotiated the terms of price authorities with 118 Plaintiff families or their related entities. The first and second of the interrogatories summarized in point 6 will also require enormous effort. Though framed as directed at Defendants' "affirmative" defenses, these interrogatories actually ask Defendants to gather facts relevant to the key elements of Plaintiffs' prima facie claims—i.e., there was a conspiracy, and it caused injury to each Plaintiff. Defendants cannot simply "staff up" at this late stage of discovery to prepare over a hundred sets of responses to these interrogatories—attorneys with knowledge of the case must prepare them.

- Defendants will then serve interrogatory responses for Plaintiffs in two Group tranches every 30 days thereafter (i.e., every 30 days, Defendants will respond to the next two Groups of Plaintiffs), except for Group 9 Plaintiffs. (Each deposition Group contains between six and eighteen Plaintiffs.) Defendants will respond to interrogatories served by Group 9 Plaintiffs within 21 days of the last deposition for each Group 9 Plaintiff or corporate family of Plaintiffs.

- With the exception of any witnesses the parties have agreed to defer in accordance with the deposition deferral stipulation, if a Plaintiff's fact depositions are not complete by the time it is in the window for Defendants to respond to its interrogatories, Defendants will respond to those interrogatories within 21 days after the last fact deposition for that Plaintiff is completed.

While potentially still overly ambitious, Defendants' plan at least acknowledges the reality of the vast amount of information that will need to be collected, reviewed, and incorporated in order to prepare substantive responses in an organized fashion. It also accounts for the fact that much of the underlying discovery necessary to fully and efficiently respond to the contention interrogatories for Plaintiffs in later Groups is still being conducted.

On the eve of the filing of this status report, Plaintiffs made a purported counterproposal that simply tries to reshuffle the same burdensome discovery in the same limited period. Specifically, Plaintiffs' revised proposal seeks to have Defendants respond to the four interrogatories served by all 118 Plaintiffs (those summarized in points one, two, four, and five on pages 18 and 19 above) by June 17 (only 38 days after receiving the last of Plaintiffs' interrogatories), and respond to the remaining interrogatories served by 34 Plaintiffs by July 29 (42 days later). Plaintiffs then state that they would simultaneously take Rule 30(b)(6) depositions after receiving responses on June 17. Plaintiffs' plan provides no real solution, as it would require each Defendant to respond to 472 interrogatories with Plaintiff-specific information regarding 118 Plaintiff families and their related entities in less than two months, and provide responses to another 187 interrogatories with additional Plaintiff-specific information shortly thereafter while also preparing an unknown number of corporate

20

representatives to provide Rule 30(b)(6) testimony regarding an unknown number of Plaintiff shippers. In short, Plaintiffs continue to try to force a massive amount of discovery into too small a window—regardless of how they try to rearrange it, it simply does not fit.[13]

Defendants previously expressed to the Court their concern regarding the possible overwhelming amount and scope of written discovery if served by each Plaintiff. *See* 5/22/20 Tr. at 57:10-60:6. At the time, the parties requested that the Court defer setting limits on interrogatories, suggesting that, once discovery began, they would be in a better position to meet and confer and present any disputes regarding this issue. *Id.* at 59:10-60:18, 62:7-63:11. Defendants now face the challenge of responding to more than 650 interrogatories (on top of the interrogatories they have already responded to) with extensive shipper-specific information. The parties continue to negotiate regarding Defendants' objections to Plaintiffs' interrogatories and the timing for responses, but Court intervention will likely become necessary on these issues unless Plaintiffs narrow the discovery requested or recognize the time required to respond.

## B.    Depositions

### 1.    Fact Witness Depositions Taken By Defendants

Owing to Defendants' comprehensive plan to take depositions of Plaintiffs, which they started last July, Defendants fully expect that they will complete the fact depositions they need by the current October 1, 2022 fact discovery deadline.

---

[13] To highlight the practical impossibility of Plaintiffs' proposed schedule, it took Plaintiffs ten weeks to prepare this set of interrogatories after first raising their intent to do so, and two additional weeks for all Plaintiffs to actually serve them. Yet Plaintiffs' proposal would require Defendants to prepare and serve full substantive responses, including extensive Plaintiff-specific information to hundreds of interrogatories, just a month from now.

### 2. Fact Witness Depositions Taken By Plaintiffs

Plaintiffs waited until November 2021 to begin a dialogue regarding the depositions they were seeking from Defendants, and from that point on have repeatedly changed their own plans and demands. Initially, Plaintiffs identified a first wave of 30 Rule 30(b)(1) depositions. After Defendants provided dates for many of these witnesses, however, Plaintiffs balked and either abandoned their request for these depositions or proposed that the depositions be deferred under the parties' Deposition Deferral Stipulation, (ECF No. 752), with few exceptions. Plaintiffs then indicated, in their March 24 letter, Defs' Ex. 1, that they would be requesting hundreds of hours of Rule 30(b)(6) depositions. Plaintiffs failed to account for the time both parties require to complete the depositions they now represent they need, and have proposed an unworkable plan for taking them.

*Rule 30(b)(1) Depositions:* On November 18, 2021, Plaintiffs sent Defendants an "initial" "first round" list of 30 Defendant deponents. At that time, Plaintiffs did not provide any information regarding which of the 120 Plaintiffs sought to notice or depose each of the witnesses. On December 17, in response to Defendants' repeated requests that Plaintiffs identify which shippers sought to depose each witness about their commercial negotiations, Plaintiffs responded that all Plaintiffs would notice each deposition, categorized each of the 30 deponents by commodity group, listed the Plaintiffs in each commodity group, and told Defendants that, for each deposition, they should "assume that every shipper in those commodity groups [. . .] intends to participate in and/or ask questions in that deposition." Defs' Ex. 6, Plfs' 12/17/2021 Letter. Because Plaintiffs refused to be more specific regarding which Plaintiffs actually intended to ask questions, Defendants were forced to prepare individual witnesses for effectively dozens of depositions given the potential of so many shippers to ask questions. Only one or two Plaintiffs ultimately asked substantive questions at most of these depositions.

Despite the lack of information regarding which shippers sought to depose Defendants' witnesses about their commercial negotiations, Defendants thereafter provided deposition dates for 23 of the requested deponents, and identified concerns about the appropriateness of, or health issues regarding, the remaining requested deponents. After having insisted that Defendants provide those dates immediately, Plaintiffs then went silent for weeks regarding most of them, requiring multiple follow up inquiries from Defendants' counsel. In many instances, when Plaintiffs did respond—often only days in advance of the proposed deposition date—they rejected the offered date and deferred the deposition. In some instances, Plaintiffs did not respond at all. For example, on February 10, counsel for BNSF proposed April 21 for the deposition of a former BNSF employee. Having heard no response, BNSF's counsel wrote Plaintiffs again on March 21, March 28, April 1, and April 7 asking for confirmation of the April 21 deposition. Plaintiffs never responded. *See* Defs' Ex. 7, K. Olasa Email Correspondence.

To date, Plaintiffs have taken only six Rule 30(b)(1) depositions. Plaintiffs now have zero depositions scheduled, and have deferred or requested to defer nine of the thirty depositions they originally requested.

***Rule 30(b)(6) Depositions:*** Consistent with the parties' shared efforts to coordinate scheduling of Rule 30(b)(1) and 30(b)(6) depositions of Plaintiffs where a Plaintiff anticipated the same witness would serve in both capacities, Defendants' requested as early as December 2021 that Plaintiffs share draft Rule 30(b)(6) topics—as Defendants had with Plaintiffs back in August 2021. After continued requests from Defendants, on February 2, 2022, Plaintiffs provided a draft list of 19 Rule 30(b)(6) topics, the majority of which were overbroad and inappropriate for corporate testimony, to which Defendants promptly explained their objections. *See* Defs' Ex. 8, 2/2/2022 S. Bojedla Email and Plaintiffs' List of Draft 30(b)(6) Topics.

Plaintiffs subsequently provided a shorter, though still overbroad and improper, list of Rule 30(b)(6) topics, which they represented they may narrow depending on responses to interrogatories they now intended to serve. *See* 2/17/2022 Defs' Ex. 9, S. Bojedla Email and Plaintiffs' Revised 30(b)(6) Topics.

Plaintiffs purported to lay out a new plan for taking Rule 30(b)(6) depositions in their March 24 letter, stating their intention to "move forward with" Rule 30(b)(6) depositions (without identifying the topics) in early June, with groups of two to five "corporate plaintiff families" from each of the seven commodity groups issuing separate tailored notices to each Defendant, and requesting dates for extra-long (eight hour) Rule 30(b)(6) depositions related to those corporate Plaintiff families within three weeks of receiving the notice. *See* Defs' Ex. 1. The process would repeat itself every three to four weeks until all groups of Plaintiffs who intend to take Rule 30(b)(6) testimony have completed their depositions. *Id.* On multiple occasions, Plaintiffs have stated that every Plaintiff may seek a Rule 30(b)(6) deposition of each Defendant, while on other occasions Plaintiffs have stated that it is possible that not all Plaintiffs would seek Rule 30(b)(6) depositions. As noted above, on May 12, Plaintiffs stated that they intended to proceed with Rule 30(b)(6) testimony, apparently on the same improper topics to which Defendants have objected, soon after receiving the first of Defendants' responses to Plaintiffs' interrogatories on June 17.

As Defendants explained in their April 11 letter to Plaintiffs, *see* Defs' Ex. 2, their proposed timeline and process are wholly unworkable. This is demonstrated by simple math: If Plaintiffs conduct eight hour depositions of each Defendant in groups of two Plaintiffs, assuming all Plaintiffs seek Rule 30(b)(6) depositions as Plaintiffs have stated is possible, their process would result in 1,600 hours—*more than 200 days*—of Rule 30(b)(6) testimony. And Plaintiffs'

best case scenario, in which groups of five Plaintiffs conduct eight hour depositions of each Defendant, would require 640 hours—*more than 80 days*—of deposition time from late June through September 2022.

Plaintiffs' proposed process contemplates an impossible pace, and fails entirely to account for the substantial effort and time necessary to prepare witnesses to testify with a corporation's knowledge (much less on the overly-detailed and otherwise improper topics Plaintiffs have identified to date). Their proposal would require each Defendant to identify seven Rule 30(b)(6) corporate representatives (one for each commodity group), and to schedule and prepare the witness with the requisite knowledge for their depositions—all within a three to four week window of receiving the notices, and without any forewarning regarding groupings or timing. It would require Defendants to prepare those witnesses to testify regarding two to five corporate Plaintiff families on particular topics revealed by Plaintiffs only upon receiving the notice during that same window.

Illustrating the unreasonableness of Plaintiffs' proposal is the fact that, by agreement, Plaintiffs have had three weeks just to *locate* fact witnesses requested by Defendants. Yet, they expect Defendants to identify, schedule, gather information, and prepare seven corporate representatives on an unknown number and breadth of topics regarding 14 to 35 corporate Plaintiff families (two to five for each of the seven witnesses) in the same amount of time—and then do this again and again, several times over. Plaintiffs' proposed plan also puts an extraordinary and unreasonable burden on Defendants' former employees who are likely to serve as 30(b)(6) representatives regarding multiple groups of Plaintiffs within their relevant commodity groups, potentially having to make themselves available with little notice on multiple occasions over the summer.

Plaintiffs now purport to seek an enormous amount of discovery at this relatively late stage of fact discovery after previously representing to the Court that they needed little discovery (and were prepared to have fact discovery end last year). In addition to the delays, Plaintiffs' discovery plan reflects a "shotgun" approach with little or no recognition of the case management effort required to handle discovery in over 100 cases simultaneously, or of the real-world effort required to prepare for and respond to such discovery. Plaintiffs' discovery plan is in sharp contrast to Defendants' efforts outlined above to organize discovery, recognizing the time and complexity involved.

Defendants are attempting to work with Plaintiffs to see if the parties can agree on a reasonable plan for completing Plaintiffs' Rule 30(b)(6) depositions of Defendant witnesses, in addition to Rule 30(b)(1) depositions and interrogatory responses, by the close of fact discovery. But there is simply not enough time for Plaintiffs' plan to take anything approaching 640 and 1,600 hours of Rule 30(b)(6) testimony—after receiving interrogatory responses and serving and negotiating Rule 30(b)(6) topics—between now and October 1. As noted above, if Plaintiffs want to complete fact discovery by the October 1 deadline, they will need to make choices about the scope and volume of discovery they want to conduct at this late stage in the schedule. Alternatively, Plaintiffs will need to seek the extension that would clearly be required for them to accomplish the massive additional discovery they now say they intend to conduct.

### C.    Expert Discovery

In an effort to anticipate the amount of work and time that will be needed for the MDL II expert phase, Defendants have asked Plaintiffs whether they would be willing to informally provide information about how many experts and expert reports they intend to offer. Defendants have made clear to Plaintiffs that, while they recognize that the Federal Rules do not require Plaintiffs to disclose such information at this juncture, it would be helpful for case management

and planning purposes for the parties to begin having these discussions. Plaintiffs have declined to tell Defendants how many experts they plan to offer—including how many Plaintiffs or groups of Plaintiffs will submit separate reports (which could result in dozens to even over 100 reports), or whether Plaintiffs have a different approach in mind. Plaintiffs have argued that they will only provide such information if Defendants tell Plaintiffs how many experts Defendants plan to use or make other commitments not to seek an extension of their time to respond. Of course, Defendants cannot know how many opposition experts they may have or how much time might be necessary until they know how Plaintiffs intend to address the expert issues.

Pursuant to the Court's prior request that the parties advise the Court in advance of any potential scheduling issues, Defendants wanted the Court to be at least generally aware that there is little question that the expert discovery schedule will need to be extended given the pace at which fact discovery has progressed and the vast amount of Plaintiff-specific evidence that will likely be taken into consideration by experts in these cases. The current Scheduling Order directs that (i) Plaintiffs serve initial expert disclosures by November 1, 2022, (ii) Defendants serve opposition expert disclosures by February 15, 2023, and (iii) Plaintiffs serve rebuttal expert disclosures by May 30, 2023. Opposing 120 expert reports or, if consolidated, a lower number of reports that address 120 Plaintiff families on an individualized basis, will almost certainly require more than three-and-a-half months. By way of comparison, Plaintiffs in MDL I—which are represented by counsel representing more than half the MDL II Plaintiffs—have sought extensions of time for expert reports on multiple occasions spanning many months, and those reports address only five Plaintiff shippers. Without Plaintiffs' input regarding the number of expert reports at issue, Defendants are not in a position to propose appropriate deadlines, but

want the Court to be aware that additional time for the expert phase of this litigation will most likely be necessary.

*     *     *

While the parties will continue to meet and confer regarding Plaintiffs' interrogatories and a plan to complete depositions, unless the parties can resolve the issues laid out in this report in the next few weeks, they will need to raise them with the Court. Defendants are prepared to have a status conference to seek early guidance regarding these issues if the Court believes it would be helpful.

Dated: May 17, 2022

/s/ Tyrone R. Childress
Tyrone R. Childress
Kelsey S. Bryan (DC Bar No. 1034352)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:  tchildress@jonesday.com
E-mail:  kbryan@jonesday.com

/s/ Timothy L. O'Mara
Timothy L. O'Mara
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

/s/ Matthew M. Collette
Matthew M. Collette (D.C. Bar No. 427167)
Kathryn A. Robinette (D.C. Bar No. 1659218)
MASSEY & GAIL LLP
1000 Maine Ave. SW, Suite 450

John M. Majoras (DC Bar No. 474267)
Kristen A. Lejnieks (DC Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
E-mail:  jmmajoras@jonesday.com
E-mail:  kalejnieks@jonesday.com

Allyson M. Maltas (D.C. Bar No. 494566)
LATHAM & WATKINS, LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
allyson.maltas@lw.com

Leonard A. Gail
Illinois State Bar No. 6199745
Massey & Gail LLP
50 E. Washington Street, Suite 400

Washington, DC 20024
Phone: (202) 795-3326
Fax: (312) 379-0467
mcollette@masseygail.com
krobinette@masseygail.com

Chicago, IL 60602
Phone: (312) 283-1590
Fax: (312) 379-0467
lgail@masseygail.com

*Counsel for Defendant Union Pacific Railroad Company pursuant to the*
*Notices of Appearance entered in each case*

*/s/ Tara Reinhart*
Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 371-7000
Tara.Reinhart@skadden.com
Thomas.Gentry@skadden.com

*/s/ Ronald K. Wray II*
Ronald K. Wray II
GALLIVAN, WHITE & BOYD P.A.
55 Beattie Place, Suite 1200
Greenville, SC 29601
Telephone: (864) 271-5362
rwray@GWBlawfirm.com

*Counsel for Defendant Norfolk Southern Railway Company pursuant to the*
*Notices of Appearance entered in each case*

*/s/ Juan A. Arteaga*
Kent A. Gardiner (D.C. Bar No. 432081)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
KGardiner@crowell.com
LvanHouwelingen@crowell.com

Juan A. Arteaga
Mara R. Lieber
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

*/s/ David M. Wells*
David M. Wells
Julia M.I. Holden-Davis
Derek K. Mountford
Ashley J. Englund
GUNSTER, YOAKLEY & STEWART, P.A.
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
Phone: (904) 354-1980
dwells@gunster.com
jholdendavis@gunster.com
dmountford@gunster.com
aenglund@gunster.com

Phone: (212) 223-4000
Fax: (212) 223-4134
JArteaga@crowell.com
MLieber@crowell.com

*Counsel for Defendant CSX Transportation, Inc. pursuant to the
Notices of Appearance entered in each case*

*/s/ Linda S. Stein*
Linda S. Stein (D.C. Bar No. 376217)
Molly Bruder Fox (D.C. Bar No. 981619)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Phone:  (202) 429-3000
lstein@steptoe.com
mbfox@steptoe.com

*/s/ Glenn D. Pomerantz*
Glenn D. Pomerantz
E. Martin Estrada
Kuruvilla J. Olasa
Anne K. Conley
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Phone: (213) 683-9100
Glenn.Pomerantz@mto.com
Martin.Estrada@mto.com
Kuruvilla.Olasa@mto.com
Anne.Conley@mto.com

Benjamin J. Horwich
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Phone: (415) 512-4000
Ben.Horwich@mto.com

Jacobus P. van der Ven (D.C. Bar No. 1644774)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001-5369
Phone: (202) 220-1100
Jacobus.vanderven@mto.com

*Counsel for Defendant BNSF Railway Company pursuant to the
Notices of Appearance entered in each case*

*/s/ Alden L. Atkins*
Craig P. Seebald (D.C. Bar No. 438968)
Alden L. Atkins (D.C. Bar No. 00393922)
Lindsey R. Vaala (D.C. Bar No. 974770)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*/s/ John H. LeSeur*
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854)
Daniel M. Jaffe (D.C. Bar No. 461185)
SLOVER & LOFTUS LLP
1224 Seventeenth Street NW
Washington, D.C. 20036
(202) 347-7170
(202) 347-3619 (Facsimile)
jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel
Corporation; Bel-Ray Company, LLC;
Calumet Branded Products, LLC; Calumet
Cotton Valley Refining, LLC; Calumet
Dickinson Refining, LLC; Calumet Karns
City Refining, LLC; Calumet Montana
Refining, LLC; Calumet Operating, LLC;
Calumet Princeton Refining; LLC; Calumet
Refining, LLC; Calumet Shreveport
Refining, LLC; Calumet Specialty Products
Partners, L.P.; CF Industries, Inc.;
Dairyland Power Cooperative; Dyno Nobel,
Inc.; Entergy Arkansas, LLC; Entergy
Louisiana, LLC; Exelon Generation
Company, LLC; Kurlin Company, LLC;
NorFalco LLC; NorFalco Sales; North Star*

*BlueScope Steel LLC; Steelscape, LLC; and Wisconsin Electric Power Company*

 /s/ Michael D. Hausfeld
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo
Halli E. Spraggins
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com
hspraggins@hausfeld.com

Seth R. Gassman
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
sgassman@hausfeld.com

*Attorneys for American Honda Motor Co., Inc.; BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C.; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte*

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
Sami H. Rashid
Viola Trebicka
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Plaintiffs Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa World Alumina, LLC; Alumax Mill Products, Inc.; The Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird Incorporated' CertainTeed Canada, Inc.; CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation;*

*Global Logistics (North America), Inc.;
Louisiana-Pacific Corporation; Lyondell
Chemical Company; LyondellBasell Acetyls,
LLC; Equistar Chemicals, LP; MillerCoors,
LLC; Newell Recycling Southeast, LLC;
Peabody Investments Corporation, Peabody
Energy Corporation, Peabody Natural
Resources Company, Peabody Midwest Mining
LLC, Peabody Powder River Mining LLC,
Peabody Coulterville Mining, LLC, Peabody
Coalsales, LLC f/k/a Coalsales, LLC, Coalsales
II, LLC f/k/a Peabody Coalsales Company,
Peabody Coaltrade, LLC f/k/a Coaltrade, LLC
and Peabody Coaltrade, Inc., Twentymile Coal,
LLC f/k/a Twentymile Coal Company;
American Land Holdings of Illinois, LLC;
American Land Holdings of Indiana, LLC;
Peabody Electricity; Roseburg Forest
Products Co.; Sims Group USA Holdings
Corporation (f/k/a Sims Hugo Neu
Corporation), Metal Management, Inc.,
Simsmetal East LLC (f/k/a Sims Hugo Neu East
LLC and Hugo Neu Schnitzer East), Metal
Management Northeast, Inc., Metal
Management Pittsburgh, Inc., SMM New
England Corporation (f/k/a Metal Management
Connecticut, Inc.), SMM Southeast LLC, Metal
Management Midwest, Inc., Metal Management
Indiana, Inc., Metal Management Ohio, Inc.,
Sims Southwest Corporation (f/k/a Proler
Southwest LP and Proler Southwest
Corporation), SMM South Corporation (f/k/a
Metal Management Alabama, Inc.), Metal
Management Memphis, L.L.C., Sims Group
USA Corporation, Simsmetal West LLC (f/k/a
Sims Hugo Neu West LLC), and Schiabo
Larovo Corporation; Suzuki Motor of America,
Inc., Suzuki Motor USA, LLC; TMS
International, LLC; Total Petrochemicals &
Refining USA, Inc.; Trammo, Inc.; Transrail,
Inc.; Tropicana Products, Inc., Frito-Lay, Inc.,
and Bottling Group, LLC operating as Pepsi
Beverages Company; U.S. Silica Co.*

*CertainTeed Gypsum and Ceilings USA, Inc.;
Coffeyville Resources Nitrogen Fertilizers,
LLC; ConAgra Brands, Inc. f/k/a/ ConAgra
Foods, Inc.; Virginia Electric and Power
Company,; Dominion Energy Fuel Services,
Inc.; Dominion Energy South Carolina, Inc.;
Duke Energy Carolinas, LLC; Duke Energy
Florida, LLC; Duke Energy Progress, LLC;
Duke Energy Indiana, LLC; Duke Energy
Kentucky, LLC; Duke Energy Ohio, LLC;
Progress Fuels, LLC; DEGS of Narrows,
LLC; Duke Energy Generation Services, Inc.;
Eastman Chemical Company; Solutia Inc.;
Taminco Corporation; Exxon Mobil
Corporation; ExxonMobil Oil Corporation;
ExxonMobil Global Services Company;
Imperial Oil; Imperial Oil Limited; Canada
Imperial Oil Limited; Grain Craft, Inc.;
Southeastern Mills, Inc.; Hyundai Motor
America, Inc.; IPSCO Tubulars Inc.; IPSCO
Koppel Tubulars, LLC; IPSCO Tubulars
(KY), LLC; TMK NSG, LLC; Keystone Fuels,
LLC; Conemaugh Fuels, LLC; Kia Motors
America, Inc.; Lafarge North America, Inc.,
Holcim (US) Inc.; Aggregate Industries
Management, Inc.; Aggregate Industries -
SWR, Inc.; Aggregate Industries Northeast
Region, Inc.; Aggregate Industries - MWR,
Inc.; Bardon, Inc. (dba Aggregate Industries
Mid-Atlantic Region); Cement Transport,
LTD; Geocycle LLC; Systech Environmental
Corporation; Lafarge PNW, Inc.; Lattimore
Materials Corp.; Mercedes-Benz USA, LLC;
Motiva Enterprises LLC; NLMK USA, Inc.;
NLMK Pennsylvania, LLC; Sharon Coating,
LLC; NOVA Chemicals, Inc.; NOVA
Chemicals Corporation; NOVA Chemicals
(Canada) Ltd.; Old World Industries, LLC;
PCS Sales (USA), Inc.; Agrium (U.S.), Inc.;
PCS Phosphate Company, Inc.; White
Springs Agricultural Chemicals, Inc; PCS
Nitrogen, Inc.; Phillips 66 Company; Shell
Chemical LP, Shell Chemicals Canada (f/k/a
Shell Chemicals Canada Ltd.) by its
managing partner Shell Canada Ltd.;
Pennzoil-Quaker State Company (formerly
d/b/a SOPUS Products); Shell Trading (US)*

/s/ William J. Blechman
Robert D. W. Landon, III
Richard Alan Arnold
William J. Blechman
Douglas H. Patton
Samuel J. Randall
Michael A. Ponzoli
Joshua B. Gray
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail: rlandon@knpa.com
raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com
jgray@knpa.com

Attorneys for Plaintiffs Cemex, Inc.,
Clearwater Paper Corporation, The Goodyear
Tire & Rubber Company, Kraft Heinz Foods
Company, Lehigh Hanson, Inc., PotlatchDeltic
Corporation, Rayonier Advanced Materials
Inc., Sterling Steel Company LLC., UPM-
Kymmene, Inc., and Unilever ASCC AG

Company; Equilon Enterprises LLC (d/b/a
Shell Oil Products US or SOPUS); Talen
Energy Supply, LLC f/k/a PPL Energy
Supply, LLC, on behalf of itself and its
subsidiaries and affiliates; Talen Energy
Marketing, LLC f/k/a PPL EnergyPlus, LLC;
Talen Generation, LLC f/k/a PPL
Generation, LLC (successor in interest to
PPL Coal Supply, LLC); Talen Montana,
LLC f/k/a PPL Montana, LLC; Martins
Creek, LLC f/k/a PPL Martins Creek, LLC;
Brunner Island, LLC f/k/a PPL Brunner
Island, LLC; Montour, LLC f/k/a PPL
Montour, LLC; United Parcel Service, Inc.,
an Ohio Corporation; UPS Ground Freight,
Inc.; Vulcan Materials Company; Legacy
Vulcan, LLC; Florida Rock Industries, Inc.;
Atlantic Granite LLC; CalMat Co.; Vulcan
Aggregates Company, LLC; Vulcan
Construction Materials, LLC; Fulton
Concrete Company, LLC; McCartney
Construction Company, Inc.; Calhoun
Asphalt Company, Inc.; Harper Brothers,
LLC; Virginia Concrete Company, LLC;
Azusa Rock, LLC; Triangle Rock Products,
LLC; Aggregates USA, LLC; Chem-Marine
Corporation of South Carolina; DMG
Equipment Company, LLC; R. C. Smith
Companies, LLC; Aggregates USA (Macon),
LLC; Aggregates USA (Savannah), LLC;
Aggregates USA (Sparta), LLC; WestRock
Company; WestRock Coated Board, LLC;
WestRock Virginia, LLC; WestRock Texas,
L.P.; WestRock CP, LLC; WestRock
Southeast, LLC; WestRock Northwest, LLC;
WestRock Mill Company, LLC; WestRock –
Solvay, LLC; WestRock Minnesota
Corporation; WestRock Kraft Paper, LLC;
WestRock Container, LLC; WestRock
Longview, LLC; Smurfit-Stone Container
Canada Inc.; The J.M. Smucker Company;
General Motors LLC; Kennecott Utah
Copper LLC; U.S. Borax Inc.; and Rio
Tinto Energy America Inc.

*/s/ David C. Eddy*
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
deddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com

*Attorneys for Plaintiffs Domtar Corporation;
Ford Motor Company; South Carolina Public
Service Authority; Anheuser-Busch, LLC;
Anheuser-Busch Companies, LLC; Nestlé
Purina PetCare Company; and Nestlé USA,
Inc.*

*/s/ Adam Carlis*
Geoffrey L. Harrison
Shawn Raymond
Adam Carlis
Alexandra Foulkes Grafton
Scott T. Glass
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
afoulkesgrafton@susmangodfrey.com
sglass@susmangodfrey.com

Raj Mathur
SUSMAN GODFREY, L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
(212) 729-2051
rmathur@susmangodfrey.com

*Attorneys for Arkema Inc.; ArrMaz Products
Inc.; Boise Cascade Company; CONSOL
Energy, Inc.; CRH Americas, Inc., Preferred
Materials, Inc., Ash Grove Cement Company,*

*/s/ Joseph M. Vanek*
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin Amaro (*pro hac vice* forthcoming)
SPERLING & SLATER, P.C.
55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
mamaro@sperling-law.com

*Attorneys for Plaintiffs Kellogg Company
and Mitsubishi Motors North America, Inc.*

*/s/ Sandra L. Brown*
Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP
1919 M Street N.W. Suite 700
Washington, D.C. 20036
Tel: (202) 331-8800
Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
rob.ware@thompsonhine.com
jennifer.roach@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power
Company, Georgia Power Company and*

*The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*Mississippi Power Company; Northern Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

/s/ Kristopher S. Davis
Kristopher S. Davis (CA #193452)
George T. Caplan (CA #043821)
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel:  (310) 203-4000
Fax:  (310) 229-1285
kristopher.davis@faegredrinker.com
george.caplan@faegredrinker.com

William L. Roberts (MN # 0212763)
Jonathan W. Dettmann (MN # 0265032)
Craig S. Coleman (MN # 0325491)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel:  (612) 766-7000
Fax:  (612) 766-1600
william.roberts@faegredrinker.com
jon.dettmann@faegredrinker.com
craig.coleman@faegredrinker.com

*Attorneys for Plaintiffs American Zinc Recycling Corp., Ascend Performance Materials Operations LLC, Ingredion Incorporated, The Heritage Group dba Asphalt Refining Company, Asphalt Materials, Inc., Bituminous Materials and Supply, L.P., Emulsicoat, Inc., Laketon Refining Corporation, Heritage Environmental Services, LLC, Rineco Chemical Industries, LLC, Heritage*

*Transport, LLC, Pizo Operating Company, LLC, and CHS Inc.*

/s/Kirk T. May
Kirk T. May
William D. Beil
GM LAW PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@ gmlawpc.com
Email: billb@ gmlawpc.com

David B. Helms
GM LAW PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@gmlawpc.com

*Attorneys for Plaintiffs*
*Lansing Ethanol Services, LLC, et al.*

/s/ Eric S. Hochstadt
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com
luna.barrington@weil.com
sarah.ryu@weil.com

Carrie C. Mahan (D.C. Bar No. 459802)
WEIL, GOTSHAL & MANGES LLP
2001 M. Street NW #600
Washington, DC 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
carrie.mahan@weil.com

*Attorneys for Plaintiffs Cleveland-Cliffs*
*Steel LLC (f/k/a ArcelorMittal USA LLC)*
*and ArcelorMittal Dofasco G.P.*

/s/ Benjamin D. Brown
Benjamin D. Brown (D.C. Bar. No. 495836)
Robert A. Braun (D.C. Bar No. 1023352)
Leonardo Chingcuanco (D.C. Bar No. 1719708)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
lchingcuanco@cohenmilstein.com

/s/ Edward D. Hassi
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper, Esquire
DEBEVOISE & PLIMPTON LLP

37

*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., Yang Ming Marine Transport Corp., Yang Ming (America) Corp., Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., Mitsui O.S.K. Lines, Ltd., and MOLAM Legacy, Inc.*

/s/ James P. Denvir
James P. Denvir (D.C. Bar No. 284554)
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131
jdenvir@bsfllp.com
sgant@bsfllp.com

Stuart H. Singer (*pro hac vice*)
James Grippando (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc., E.I. du Pont de Nemours and Company, and The General Electric Company*

/s/ Frank M. Lowrey IV
Frank M. Lowrey IV (*pro hac vice*)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (*pro hac vice*)
mykkeltvedt@bmelaw.com
Matthew R. Sellers
sellers@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E., Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

919 Third Avenue
New York, NY 10022
Tel: (212) 909 6000
Fax: (212) 909 6836
mschaper@debevoise.com

*Attorneys for Plaintiffs Toyota Motor Sales, U.S.A., Inc. and Toyota Canada Inc.*

/s/ Nathan P. Eimer
Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
dbirk@eimerstahl.com
srazzano@eimerstahl.com
bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical Company, Union Carbide Corporation, Amerchol Corporation, Umetco Minerals Corporation, Gerdau Ameristeel Corporation, Gerdau Ameristeel US Inc., Gerdau Ameristeel Perth Amboy Inc., Gerdau Ameristeel Sayreville Inc., Chaparral Steel Company, Chaparral Steel Midlothian, LP, Chaparral (Virginia) Inc., Sheffield Steel Corporation, Gerdau Macsteel, Inc., International Paper Company, GenOn Energy Management,*

*Attorneys for Plaintiff The General Electric Company*

/s/ Michael C. Dell'Angelo
Michael C. Dell'Angelo
Michael J. Kane
H. Laddie Montague, Jr.
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
hlmontague@bm.net
mwallin@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
(202) 559-9745
dwalker@bm.net

Sophia Rios
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiffs High Level Management Venturers, Century Aluminum Company, Century Aluminum of Kentucky, GP, NSA, GP, Century Aluminum of West Virginia, Inc., Century Aluminum of South Carolina, Inc., Andre M. Toffel, Trustee, on behalf of New Wei, Inc., et al., jointly administered bankruptcy estates, and ABF Freight System Inc.*

*LLC, GenOn Power Midwest LP, and GenOn REMA, LLC*

/s/ Daniel B. Goldman
Daniel B. Goldman
Steven S. Sparling
Daniel Lennard
Zachary C. Naidich
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com
ssparling@kramerlevin.com
dlennard@kramerlevin.com
znaidich@kramerlevin.com

*Attorneys for Plaintiffs The Procter & Gamble Company, The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing Company, The Procter & Gamble Paper Products Company, Tronox Inc., and Tronox US Holdings Inc.*

*/s/ Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

Helen C. Eckert
Joy O. Siu
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
heckert@sheppardmullin.com
jsiu@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

*/s/ Ronald J. Aranoff*
Ronald J. Aranoff
Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

*Attorneys for Plaintiff Air Products
and Chemicals, Inc.*

*/s/ Conte C. Cicala*
Conte C. Cicala (CA Bar No. 173554)
Clyde & Co US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
conte.cicala@clydeco.us

*Attorneys for Plaintiff Mitsui O.S.K. Lines,
Ltd. and MOLAM Legacy, Inc.*

40

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Joint Status Report was filed electronically with the

United States District Court for the District of Columbia through the Court's ECF System on

May 17, 2022.


/s/ *Tyrone R. Childress*
Tyrone R. Childress