**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br>This document relates to:<br>ALL CASES |

MDL Docket No. 2925
Misc. No. 20-8 (BAH)

## JOINT STATUS REPORT

Pursuant to the Court's May 25, 2022 Minute Order, the parties submit this Joint Status Report regarding the status of their negotiations concerning the interrogatories served by Plaintiffs between April 27 and May 25, 2022 ("Plaintiffs' Interrogatories"), as well as potential 30(b)(6) depositions of Defendants. This report is divided into three sections. The first section provides a joint statement regarding the agreement between the parties on a schedule for Defendants to respond to Plaintiffs' Interrogatories. The remaining two sections separately provide the parties' respective positions on issues regarding the timing of potential 30(b)(6) depositions of Defendants.

## I.    Joint Statement Regarding Status of Plaintiffs' Interrogatories

As noted in the parties' May 17 Joint Status Report (ECF No. 812),[1] 119 MDL II Plaintiff families[2] have served Defendant- and Plaintiff-specific Interrogatories seeking information generally related to each Defendants' negotiations with each Plaintiff to provide rail freight

---

[1] The parties' May 17 Joint Status Report indicated that 118 MDL II Plaintiffs served Interrogatories on Defendants. Since that Joint Status Report was submitted, one additional Plaintiff family—Lansing Ethanol Services, LLC—served Interrogatories on May 25, 2022.

[2] While there are 106 separate actions in this MDL, two of those actions include separate and unrelated Plaintiff families—*AK Steel Corp., et al. v. Union Pacific Railway Co., et al.* has eight and *Cemex Inc. et al. v. BNSF Railway Co., et al.* has eight. For purposes of discovery, the parties handle the unrelated Plaintiff families separately.

transportation services, price authorities under which Plaintiffs shipped traffic with Defendants, and Defendants' defenses.  The Interrogatories are generally divided into two buckets.

The first bucket contains four "common" Interrogatories that were served by all Plaintiffs that served Interrogatories.  The common Interrogatories ask Defendants to identify:

- Any instances, for each individual Plaintiff, in which Defendants made or offered to make adjustments to offset fuel surcharges during the relevant period;

- Any price authorities, with each individual Plaintiff, where Defendants sought to include, but ultimately did not include, a rate-based fuel surcharge during the relevant period;

- Any settlement or other agreements that Defendants believe release claims of any Plaintiff in this litigation; and

- From among those affirmative defenses that Defendants pleaded, identification of which defenses Defendants intend to assert against each Plaintiff.

The second bucket of Plaintiffs' Interrogatories generally ask Defendants to identify the factual basis for Defendants' defenses, including identification of the material facts and Plaintiff-specific facts that Defendants intend to rely upon in support of the defenses that:

- Defendants had legitimate business justifications for their conduct;

- Plaintiffs did not suffer antitrust injury, injury-in-fact, or damages;

- Plaintiffs' claims are barred by the doctrines of estoppel, waiver, or laches;

- Plaintiffs' claims are barred under federal laws granting exclusive jurisdiction to the Surface Transportation Board; and

- The alleged conduct did not lessen competition in any relevant market.

After meet-and-confers in which the parties exchanged differing schedules to respond to Plaintiffs' Interrogatories, an agreement was reached on June 9, 2022, which was memorialized in an e-mail between the parties.  Email from Ben Waldin (Eimer Stahl) to Tommy Gentry (Skadden, Arps) (June 9, 2022), Ex. A.  The agreement provides that:

- Defendants will respond to the four "common" Interrogatories (*i.e.*, bucket 1) for all Plaintiffs in Groups 1-8 by **July 15.**

- Defendants will respond to the remaining Interrogatories (*i.e.*, bucket 2) for Plaintiffs in Groups 1-8 and to all Interrogatories (*i.e.*, buckets 1 and 2) for all Plaintiffs in Group 9 (the final Plaintiff deposition group) by **August 19.**

Some Plaintiffs in Groups 1-8 only served the four common Interrogatories.  For those Plaintiffs, Defendants' responses will be complete on July 15.  The remaining Plaintiffs in Groups 1-8 served additional Interrogatories that seek more information on Defendants' defenses.  For those Plaintiffs in Groups 1-8, Defendants' responses will be complete on August 19.  For Plaintiffs in Group 9, the last Group under the parties' deposition grouping, Defendants will respond to all Interrogatories—the four common Interrogatories and additional Interrogatories, where applicable—on August 19.  Under this schedule, Defendants will complete their responses to the Interrogatories for all Plaintiffs no later than August 19.

## II.    Plaintiffs' Separate Statement

The parties have worked cooperatively and made good progress towards reaching agreement on the sequence and timing for Defendants to answer Plaintiffs' Interrogatories and for Plaintiffs to take 30(b)(6) depositions. Defendants have repeatedly told Plaintiffs that they are working diligently towards providing fulsome and fact-based responses to Plaintiffs' interrogatories, which will hopefully streamline any 30(b)(6) depositions to be taken. The only

discrete issue remaining is when 30(b)(6) depositions can begin.[3] Plaintiffs are mindful of the upcoming October 1, 2022 fact discovery deadline, and in order to ensure that any Plaintiff who wishes to take 30(b)(6) testimony can do so within the deadline, Plaintiffs have proposed that those Plaintiffs who served only the common four Interrogatories begin taking 30(b)(6) depositions after July 15, when Defendants will have served complete interrogatory responses on the majority of Plaintiffs in these cases. Defendants, in contrast, assert that no 30(b)(6) depositions should be taken until late August, leaving around one month to complete 30(b)(6) testimony in all of the cases.

Plaintiffs' proposal makes the most sense for this case for several reasons. First, starting these depositions in July will allow the parties time to review the responses, negotiate 30(b)(6) topics, and begin depositions in late July, providing two months to complete this discovery. Under Defendants' proposal, 30(b)(6) depositions could not realistically start until late August, or even early September. Such a schedule, which would require the parties to conduct all 30(b)(6) discovery in the case in a month, will unnecessarily tax all parties' resources and create artificial pressure to extend the discovery deadline[4] yet again in these already long-running cases. This is reasonably avoidable if the 30(b)(6) depositions begin after July 15th. If Defendants' proposal is adopted, the consequence is that the fact discovery deadline may not hold unless Plaintiffs forego their right to take 30(b)(6) testimony, which appears to be the intended effect of Defendants' proposal.

---

[3] The parties did not exchange their respective portions of this joint status report in advance, so there may be instances where Defendants raise points that are not addressed in Plaintiffs' statement. We respectfully ask the Court to not take Plaintiffs' silence on a point as an acceptance of Defendants' assertions or positions.

[4] As noted in the Plaintiffs' statement in the May 17 Joint Status Report (ECF No. 812 at 4), Plaintiffs have been trying to take 30(b)(6) depositions of Defendants representatives since February. Defendants have objected every step of the way. Nevertheless, Plaintiffs have continued to work with Defendants to get the Plaintiff-specific information that is needed for these cases.

Second, for the majority of Plaintiffs, Defendants' responses to these interrogatories will be complete by July 15. There is no reason to force those Plaintiffs to wait weeks to even begin 30(b)(6) depositions. Those Plaintiffs are particularly well-suited to go forward with 30(b)(6) testimony in late July and August, alleviating the crush of last-minute discovery and spacing out depositions to relieve Defendants' burden.

Defendants have raised several concerns with beginning depositions in July, none of which justify delay. First, Defendants argue that they cannot conduct 30(b)(6) depositions and respond to written discovery at the same time. But parties in all cases do this all of the time. It is standard procedure to serve and respond to written discovery while also preparing witnesses to sit for 30(b)(6) testimony. Defendants' request to stage discovery has already been rejected by the Court in the past and should be rejected here again.

Defendants also claim that Plaintiffs' proposal will require them to prepare for multiple 30(b)(6) deposition sessions. That will be the case regardless of when depositions are scheduled; certainly no single witness could provide testimony for all Plaintiffs in one session. Plaintiffs' proposal would spread out those sessions over several months, instead of attempting to squeeze all Plaintiffs' 30(b)(6) depositions into the last few weeks of the fact discovery period.

Finally, Defendants argue that the purpose of Plaintiffs' Interrogatories was to streamline 30(b)(6) testimony, and thus Plaintiffs must wait for all responses to meet that goal. But, as noted, the majority of Plaintiffs will have completed written discovery by July 15. At that point, those Plaintiffs will be well-equipped to know whether, and to what extent, they need 30(b)(6) testimony on those issues, and can streamline their topics accordingly. Plaintiffs provided a draft of their 30(b)(6) topics to Defendants four months ago. And, as noted previously, some Plaintiffs may elect

to forego taking 30(b)(6) testimony if Defendants provide fulsome responses, as Defendants have indicated they are intending to do.

In sum, Plaintiffs have always been mindful of the October 1, 2022 fact discovery deadline, and have collaborated and streamlined their discovery to meet this deadline. As Plaintiffs noted in the last Status Report, this set of interrogatories that the Defendants requested only includes 4-11 interrogatories depending on the case—far less than the rules allow and might be expected in a case of this magnitude—and have served a revised draft 30(b)(6) notice of just eight topics. While Defendants prefer to aggregate these numbers across all Plaintiffs in an attempt to make this discovery seem unreasonable, the reality is that Plaintiffs are entitled to understand how Defendants intend to support their defenses, have narrowly tailored their discovery to this end, and the number of individual Plaintiffs is the natural consequence of Defendants' intended strategy to defeat class certification. Accordingly, Plaintiffs respectfully request that the Court allow Plaintiffs to go forward with 30(b)(6) depositions after July 15, 2022 and close out the lengthy discovery period in these cases, so the parties can move forward to expert discovery.

## III.   Defendants' Separate Statement

### A.   <u>Background</u>

#### 1.   *Defendants' Approach to Shipper-Specific Discovery*

Defendants' prior submissions to the Court regarding an appropriate fact discovery schedule reflect their recognition of the time, resources, and planning that shipper-specific discovery would require in this sprawling MDL.  Defendants developed a comprehensive and organized plan for completing the discovery they sought to pursue within the Court's schedule, immediately after the Court entered it early last summer.  Defendants proposed and negotiated with Plaintiffs a schedule to organize all 120 MDL II Plaintiff families into 9 deposition Groups, each with a roughly 6-week period in which Defendants would endeavor to conduct depositions

6

for all Plaintiffs in that Group.  *See* Joint Status Report at 16-17, ECF No. 667 (June 14, 2021).

This approach provided a logical and efficient process that accounted for the practical realities of

conducting discovery in such a large MDL.  Defendants' early organization efforts have borne

fruit, with over 200 Plaintiff depositions taken to date.  Owing to Defendants' diligent and

organized approach, the parties will complete approximately 300 fact witness and 30(b)(6)

depositions of Plaintiffs in over 100 cases by the Courts' October 1 fact discovery deadline.

2.     *Plaintiffs' Approach to Shipper-Specific Discovery*

In sharp contrast, Plaintiffs have shown no similar urgency or diligence vis-à-vis shipper-

specific discovery.  Defendants assumed Plaintiffs' inactivity was due to their prior

representations that they needed little discovery to litigate their cases.  Indeed, it was Plaintiffs

who suggested that fact discovery could be completed by December 31, 2021.  Joint Status

Report at 1-2, ECF No. 667 (June 14, 2021).  In an abrupt shift, Plaintiffs now seek to compress

a full schedule's worth of discovery into the few remaining months, with no consideration for the

practical effort required to accomplish that discovery, nor, indeed, for how such an enormous

effort can be accomplished in light of all of the *other* discovery efforts that remain ongoing.  As

detailed below, rather than develop a comprehensive plan, as Defendants did, Plaintiffs did

virtually nothing for many months of the fact discovery period, and when Plaintiffs *did*

eventually articulate some initiative, those initiatives were ultimately abandoned or morphed into

a different strategy after Defendants had already expended significant efforts on Plaintiffs'

requests.

*30(b)(1) Depositions*.  Plaintiffs' disorganized approach to 30(b)(1) depositions of

Defendants' current and former employees is illustrative of their shifting strategy.  Plaintiffs

waited until November 2021 to request a "first round" of thirty 30(b)(1) depositions of

Defendant witnesses.  In doing so, Plaintiffs demanded that these depositions occur in the first

quarter of 2022 and that these fact witnesses plan on sitting for two days of depositions.  In order to prepare their witnesses (most of whom are former employees), Defendants requested more information about Plaintiffs' plan—including which Plaintiffs had shipper-specific questions for each witness—so that Defendants could ensure these witnesses would be prepared to testify on documents and facts specific to the shippers noticing the deposition and any 30(b)(6) topics for which these witnesses might serve as corporate representatives.  Defendants also requested this information to allow the parties to coordinate 30(b)(1) and any 30(b)(6) depositions, as Defendants have consistently done for Plaintiff witnesses in the limited instances where they have sought 30(b)(6) testimony.

Rather than engage in productive efforts that might aid Defendants in preparing their witnesses (to both sides' benefit), Plaintiffs responded in late-December 2021 by simply categorizing each Defendant witness by broad commodity group, and told Defendants to assume that every Plaintiff in that commodity group or groups, some of which have upwards of 30 shippers, could theoretically ask questions of that witness during the deposition.  Ltr. from Travis Wheeler (Nexsen Pruet) to Defs. at Attach. A (Dec. 17, 2021), Defs.' Ex. 1.[5]

Defendants provided deposition dates for 23 of the requested 30 witnesses, and explained why the remaining 7 were not appropriate for the shipper-specific discovery that is the focus of this MDL.  Plaintiffs took weeks—sometimes upwards of 2 months—to confirm the offered dates, and when they did respond, it was often only a few days before the date Defendants

---

[5] Reflective of Plaintiffs' failure to engage in a constructive dialogue is the fact that Plaintiffs listed shippers that voluntarily dismissed their claims months earlier as potentially asking questions at Defendant depositions.  Defs.' Ex. 1, *supra* (identifying Brady McCasland and Northdown/Normerica as Chemicals/Petroleum/Phosphates/Fertilizer Plaintiffs that will ask questions at depositions, even though their claims were dismissed on June 1 and August 3, 2021, respectively).

offered, and, frequently, it was to reject that date and request deferral of the deposition instead. In many instances, after Defendants undertook significant cost and effort to prepare their witnesses, they heard from Plaintiffs that the deposition was no longer needed. In total, Plaintiffs have only conducted 6 of the 30 requested depositions, and for the majority of those, often only 1 or 2 Plaintiffs asked shipper-specific questions of the witness—despite their assertion that Defendants should assume every shipper in the commodity group might ask questions. Plaintiffs' disorganized approach to 30(b)(1) depositions has resulted in a significant waste of time and resources.

*Interrogatories*. Beginning in late April and continuing as recently as May 25, Plaintiffs served more than 660 Defendant- and Plaintiff-specific Interrogatories on each Defendant, many of which were for the claimed purpose of streamlining any potential 30(b)(6) depositions of Defendants. As noted above, the parties have now agreed on a schedule to provide written responses to these Interrogatories, (*See* Section 1, *supra*.), with Defendants making a substantial concession by adopting Plaintiffs' preferred interrogatory-based-phasing notwithstanding the inefficiency and extra effort this will require of Defendants. *See* Ltr. from T. Reinhart (Skadden, Arps) to Pls. (June 3, 2022), Defs.' Ex. 2. Defendants have been preparing substantive responses to these Interrogatories for several weeks, and will serve these responses in all cases by August 19. Defendants will be required to dedicate significant resources toward preparing substantive responses to such a large number of Interrogatories in such a short period.

*30(b)(6) Depositions*. After forcing Defendants to devote resources to preparing for 30(b)(1) depositions, Plaintiffs have now shifted to relying almost entirely on 30(b)(6) depositions. Plaintiffs initially represented to the Court that the limited discovery they would seek in this MDL would include 30(b)(6) depositions of Defendants, but at no time did Plaintiffs

suggest to the Court that they might each seek corporate testimony, much less anything like the hundreds of hours of 30(b)(6) testimony that they now appear intent on pursuing.  *See* Joint Status Report at 2, ECF No. 667 (June 14, 2021); Mem. and Order at 2, ECF No. 676 (July 6, 2021).  Recognizing the substantial additional effort required to prepare corporate representatives, many of whom are likely to be former employees and retirees, Defendants pressed Plaintiffs for a draft 30(b)(6) notice to enable the parties to coordinate 30(b)(1) depositions and any 30(b)(6) testimony, which would help minimize the burden being placed on such witnesses.  This is consistent with Defendants' approach to the depositions of Plaintiff witnesses who might also serve as a corporate witness.  However, Plaintiffs waited until February 2 to provide a draft 30(b)(6) notice, and even then, it came with a protest that Plaintiffs would have waited longer if not for Defendants' insistence.[6]  Pls.' List of Draft 30(b)(6) Topics for Defs. (Feb. 2, 2022), Defs.' Ex. 3.  Despite their prior representation about the limited number of depositions, including 30(b)(6) testimony, they intended to seek, Plaintiffs also unexpectedly announced during a meet-and-confer in late January 2022 that they intended to potentially seek 30(b)(6) depositions of each Defendant in <u>every</u> one of the (120) cases.[7]

Defendants' concerns were further confirmed after reviewing the draft 30(b)(6) notice. The draft notice contained 19 extraordinarily overbroad topics on which no human witness could realistically be prepared to testify.  *See* Defs.' Ex. 3, *supra*.  Defendants promptly expressed

---

[6] In contrast, Defendants provided Plaintiffs with a draft 30(b)(6) notice early last summer, to allow sufficient time for the parties to meet and confer on the topics and coordinate 30(b)(1) and 30(b)(6) depositions as much as possible.

[7] Nowhere in the parties' June 14, 2021 Joint Status Report did Plaintiffs state that they anticipated 120 30(b)(6) depositions *of each Defendant*, as they do now.  Defendants expect that information would have been valuable to the Court, particularly when the Court was considering Plaintiffs' suggestion that discovery end in less than 7 months from the time the parties filed the June 14 Joint Status Report (ECF No. 667).

concerns about the number, breadth, level of minutiae, and improper contention nature of the

topics in Plaintiffs' initial draft 30(b)(6) notice.  Instead of addressing Defendants' concerns,

Plaintiffs appeared to change tack, stating that they intended to withdraw some of their 30(b)(6)

topics, serve interrogatories covering those topics instead (the aforementioned Plaintiffs'

Interrogatories), and thereafter narrow the issues for 30(b)(6) depositions, potentially enabling

some Plaintiffs to forgo 30(b)(6) depositions entirely.  Yet Plaintiffs inexplicably took almost *ten*

*additional weeks* to serve the first set of these Interrogatories.  *Compare* Email from Swathi

Bojedla (Hausfeld) to Defs. (Feb. 17, 2022), Defs.' Ex. 4 *with* Interrogatories Served by

Plaintiffs Represented by Eimer Stahl (April 27, 2022), Defs.' Ex. 5.  Moreover, Plaintiffs have

done nothing in the interim to address Defendants' justified concerns about the breadth of

information and level of granularity Plaintiffs' draft 30(b)(6) notice would seek, the improper

and burdensome focus of many of its topics on Defendants' *legal contentions*, and the inability

of any human witness to prepare for such testimony.  Defendants expressed these concerns to

Plaintiffs back on March 3, 2022.  Email from T. Gentry (Skadden, Arps) to S. Bojedla

(Hausfeld) (Mar. 3, 2022), Defs.' Ex. 6.  Plaintiffs have yet to respond to these concerns.[8]

In parallel to engaging with Plaintiffs on the substance of the 30(b)(6) topics, Defendants

also requested that Plaintiffs propose a plan to complete any 30(b)(6) depositions during the

remaining time in the discovery period.  Plaintiffs responded on March 24, 2022, with an

unworkable proposal for conducting 30(b)(6) depositions of Defendants.  *See* Ltr. from Ben

Waldin (Eimer Stahl) to Defs. at 2-3 (Mar. 24, 2022), Defs.' Ex. 7.  Under Plaintiffs' March 24

---

[8] Consequently, Plaintiffs still have a lot of work to do to develop topics of a nature and scope
that are actually appropriate for 30(b)(6) testimony, and to engage with Defendants to resolve
any potentially remaining dispute about those topics.  Given that the parties' discussions about
the appropriateness of Plaintiffs' potential 30(b)(6) topics are ongoing, there is not yet a dispute
that would be ripe for the Court's consideration.

proposal—which Plaintiffs recently indicated is *still* their operative proposal—Plaintiffs suggest they will group the individual Plaintiffs into cohorts of 2 to 5 "corporate plaintiff families" and issue individualized 30(b)(6) notices to each Defendant for an extended 8-hour day of testimony for each Plaintiff "family."  This process "will repeat approximately every 3-4 weeks until all groups of Plaintiffs who intend to take 30(b)(6) testimony have completed their depositions", and "this process will move in parallel for each of the 7 commodity groups."

Plaintiffs' plan has no relationship to what can be accomplished in the real world: Under Plaintiffs' plan, each Defendant would receive, every 3 to 4 weeks, one 30(b)(6) notice *per* commodity group (each including 2 to 5 Plaintiff families within that commodity)—for a total of seven 30(b)(6) notices per Defendant in that short period.  Within 3 weeks of receiving these notices, Defendants are expected, for each, to (i) identify a corporate representative, (ii) provide Plaintiffs with dates for 8 hours of deposition testimony, (iii) prepare these corporate representatives to testify about Plaintiff-specific facts on behalf of the company, for each of the 2 to 5 Plaintiff families encompassed by each notice, and (iv) appear fully prepared for each of these depositions.  That is, each Defendant is supposed to schedule, prepare, and appear for 7 extended days of knowledgeable corporate testimony within as little as 3 weeks, and then do so again and again every 3 to 4 weeks with new groups of 2-5 Plaintiffs until all 120 MDL II Plaintiffs in all commodity groups have completed their desired depositions.  Plaintiffs recently indicated that a Defendant's corporate representative (many of whom likely will be former employees) for a particular commodity group could be required to sit for as many as 8 full days under their proposal, for a total of potentially several dozens of deposition-days *per Defendant*.

Plaintiffs' proposal that Defendants identify, prepare, and make available a corporate representative for a 30(b)(6) deposition within three weeks of receiving the 30(b)(6) notice

stands in sharp contrast to the timeframe that Plaintiffs' requested (and Defendants' agreed to) just to locate Plaintiff deponents. Defendants organized Plaintiffs into manageable deposition groupings and agreed to identify the individuals they wished to depose weeks before the start of the deposition group—at which point Plaintiffs have 3 weeks merely to locate those individuals and determine whether Plaintiffs' outside counsel will represent them at the deposition. Under the program in place, Plaintiffs then have weeks thereafter to prepare the witness and schedule the deposition. Plaintiffs offer no explanation as to why they expect Defendants to operate on a significantly more aggressive schedule than applies to Plaintiffs' own witnesses, particularly where many of the witnesses who will likely serve as Defendants' corporate witnesses are former, and often retired, employees.

Plaintiffs' 30(b)(6) proposal is plainly an entire schedule's worth of discovery, which they want to cram into what is now a matter of weeks. This is both extremely burdensome and unrealistic, and reflects no consideration for the substantial work that must be performed to prepare knowledgeable corporate witnesses about hundreds of negotiations that occurred 15 or more years ago.

**B.**     **Plaintiffs' Proposal Regarding the Timing of 30(b)(6) Depositions is Simply Unworkable**

Defendants do not object, as Plaintiffs have wrongly suggested, to discovery on shipper-specific issues. Indeed, those issues have been the primary subject of expansive discovery in this MDL, including substantial additional custodial discovery, contract and data productions, and hundreds of depositions to date. And Defendants are now occupied with preparing substantive responses to many hundreds of Interrogatories on such issues. However, Plaintiffs' constantly changing positions, delays in beginning this discovery until this late stage, and unrealistic expectations about what is humanly possible to accomplish from corporate witnesses and in what

timeframe, result in the need for significant adjustments to Plaintiffs' expectations if the parties are to finish discovery by the Court's October 1 deadline.

Plaintiffs maintain that they will consider Defendants' Interrogatory responses to the four "common" Interrogatories received on July 15, and propose to proceed immediately with 30(b)(6) depositions for Plaintiffs in Groups 1-8, before Defendants have responded to the remaining Interrogatories (most of which are detailed contention interrogatories, per Defendant).[9]  For Plaintiffs in Group 9, and those Plaintiffs that served more than the four common Interrogatories in Groups 1-8, Plaintiffs would begin 30(b)(6) depositions on August 19 once Defendants serve their remaining Interrogatory responses.  However, despite Defendants' agreement to respond to many hundreds of Interrogatories in a condensed period, and the limited time remaining in the schedule, Plaintiffs have apparently not yet scaled back their expectations about the total number of 30(b)(6) depositions they propose to take, or the manner in which they expect to take them.  Of course, the above-described process for noticing and taking 30(b)(6) depositions is simply untenable even if the parties start on July 15 as Plaintiffs now suggest. Aside from the limitations that can be ascertained by doing basic math,[10] it is simply unrealistic

---

[9] During a meet and confer the day before the submission of this status report, Plaintiffs told Defendants, for the first time, that 30(b)(6) depositions would begin July 15 only for Plaintiffs in Groups 1-8 that solely served the four common Interrogatories.  This qualification was not previously made clear through Plaintiffs' written correspondence or during the parties' meet and confers.  Regardless, this does not change the outcome that it will still require Defendants' 30(b)(6) witnesses to appear for depositions many times over multiple months nor does it change the reality that Defendants would have to prepare knowledgeable corporate representatives while they also devote significant resources to complete responses to Plaintiffs' Interrogatories due on August 19.

[10] Plaintiffs' proposal could result in over 1,600 hours—more than 200 days—of 30(b)(6) depositions if each Plaintiff group elects to take a deposition of each Defendant and they notice those depositions in groups of 2, as Plaintiffs reserve the right to do.  Even in the best case scenario where Plaintiffs notice these depositions in groups of 5, Plaintiffs would require 640 hours—over 80 days—of depositions between late-July and September.  Of course, this does not

for Plaintiffs to expect corporate representatives to be able to prepare for hundreds of hours of depositions covering shipper-specific facts in a mere two-and-a-half months.  And while such preparation would be a daunting task standing alone, Defendants are also simultaneously preparing substantive responses to hundreds of Interrogatories and continuing to take depositions of Plaintiffs' witnesses on the schedule that the parties agreed to nearly a year ago.

Plaintiffs' claim that they now need this voluminous discovery from Defendants cannot be reconciled with their prior representations of needing only very limited discovery and their previous advocacy to the Court to have fact discovery finish last year.  Those representations aside, if Plaintiffs did indeed want this discovery, such intentions required far more diligence and recognition of the Court's schedule and the practical demands of such discovery; they should have begun that process many months ago, in parallel with the Defendants' depositions of Plaintiffs, so that the parties could have planned for this discovery within the existing fact discovery schedule.

C.      **Any Potential 30(b)(6) Depositions Should Begin After August 19 When Defendants Complete Responding to Plaintiffs' Interrogatories**

Defendants request at a minimum that any 30(b)(6) depositions of Defendants should not take place until after Defendants have served their responses to Plaintiffs' Interrogatories according to the agreed-upon schedule for serving responses (*i.e.*, 30(b)(6) depositions should not begin until after August 19).  This approach is necessary because (1) it is consistent with Plaintiffs' statement in the May 17 status report that the purpose of their Interrogatories was to "streamline or obviate Defendants' corporate testimony"; (2) it actually allows Plaintiffs to appropriately tailor any potential 30(b)(6) notices once they have had a chance to review

---

account for the multiples of such time that would be required to properly prepare witnesses with a corporation's knowledge for any such on-the-record deposition time.

Defendants' Interrogatory responses—the original premise on which those Interrogatories were served; (3) perhaps most significantly, it reduces the burden on Defendants' witnesses by promoting consolidation as much as possible, enabling Defendants to coordinate scheduling of any such testimony without imposing on individual witnesses—many of which would be former employees and retirees—to have to appear multiple separate times[11]; and (4) it accounts for the practical reality that any other proposal requires Defendants to continue to take depositions of Plaintiffs, prepare shipper-specific substantive Interrogatory responses, and prepare knowledgeable corporate witnesses for 30(b)(6) depositions, all at the same time.  And, if Plaintiffs meant what they said about the purpose of the hundreds of Interrogatories they served, Plaintiffs must take time to review Defendants' July 15 responses, adapt any 30(b)(6) notices in response, do the work necessary to conform their draft topics to ones actually appropriate for corporate testimony and negotiate those topics with Defendants, and allow time to prepare witnesses on such topics and schedule depositions.  Thus, 30(b)(6) depositions that actually account for July 15 Interrogatory responses could not realistically begin until August 19 as Defendants proposed.[12]

Defendants expect Plaintiffs to argue that beginning 30(b)(6) depositions in August does not give them enough time to complete such depositions.  For the reasons explained above, the problems with Plaintiffs' current unrealistic 30(b)(6) plan are far too large and fundamental too

---

[11] Under Plaintiffs' plan, in which 30(b)(6) depositions could start for Plaintiffs in Groups 1-8 after July 15, Defendants would lose the ability to designate an appropriate knowledgeable employee who is also knowledgeable about topics related to a Group 9 shipper without imposing on that employee to return for multiple, separate depositions.

[12] While Defendants firmly believe that 30(b)(6) depositions should not begin while they are still preparing Interrogatory responses, they are ready and willing to engage with Plaintiffs after July 15 in the hopes of negotiating appropriate 30(b)(6) deposition topics so the parties may make efficient use of the period after the remaining responses are served on August 19.

be solved merely by adding the four extra weeks that separates Defendants' proposal from Plaintiffs' proposal.[13]  Defendants respectfully submit that the Court should not permit Plaintiffs to convert their own unreasonable discovery delays and lack of diligence into such an impossible and unwarranted burden on Defendants and their corporate witnesses.

Defendants also anticipate that Plaintiffs—as they did in the parties' May 17 Joint Status Report—will seek to portray Defendants as somehow seeking to avoid shipper-specific discovery after having successfully resisted class certification, and that Defendants purportedly have unlimited resources to complete this immense project in Plaintiffs' desired timeframe. Neither argument reflects reality.

*First*, Defendants have long recognized the need for shipper-specific discovery and have spent nearly a year taking such discovery.  As Defendants explained in the last status report, this shipper-specific discovery has revealed remarkable contradictions between the boilerplate allegations made by the Plaintiffs and witness testimony and contemporaneous documents reflecting the actual negotiation of fuel surcharges in their transportation contracts.  Thus, far from seeking to avoid shipper-specific discovery, Defendants believe that such discovery will continue to bolster their defenses and undermine Plaintiffs' baseless allegations.

*Second*, pointing to the number of lawyers and law firms working on this litigation—as Plaintiffs did in the last status report—is no answer, because the information Plaintiffs seek via deposition testimony and the Interrogatories must still be gathered Plaintiff-by-Plaintiff and

---

[13] The approximately six weeks available for 30(b)(6) depositions under Defendants' proposal would, however, likely permit corporate testimony on the scale Plaintiffs originally indicated they intended to seek.  And, to the extent it is necessary to complete a reasonable amount of appropriate 30(b)(6) testimony, Defendants note that they have offered, in response to Plaintiffs' stated timing concerns, not to oppose a request by Plaintiffs for a brief extension of the fact discovery period, if necessary to complete a reasonable amount of appropriate 30(b)(6) testimony.  Plaintiffs rejected this suggestion.

Defendant-by-Defendant.[14]  Also corporate witnesses must be available for preparation and

deposition.  Simply put, Plaintiffs should not be permitted to squeeze Defendants on timing, just

because Plaintiffs now belatedly want to take a host of 30(b)(6) depositions that they did not ask

the Court to consider when setting the discovery schedule.  Moreover, Plaintiffs' argument begs

the question of why Plaintiffs, which are represented by a far greater number of law firms and

lawyers, took so long to begin seeking such a massive volume of discovery.

*        *        *

Defendants are prepared to have a status conference to seek early guidance regarding

these issues if the Court believes it would be helpful.

Dated:  June 17, 2022

*[Signatures on following pages]*

---

[14] Plaintiffs have even more recently suggested that the fact that Defendants will ultimately only take about 300 depositions, rather than the five to six-hundred they purportedly projected were possible, means Defendants must have the necessary resources in place to accommodate Plaintiffs' late-hour plan.  Of course, Defendants always planned, and represented to the Court that they would work diligently to reduce the number of depositions of Plaintiffs ultimately required.  Defendants can represent they do not have the small army of extra lawyers sitting idle who are already knowledgeable about the case to prepare and defend corporate witnesses.

18

/s/ Tara Reinhart
Tara L. Reinhart (D.C. Bar No. 462106)
Julia K. York (D.C. Bar No. 478001)
Thomas R. Gentry (D.C. Bar No. 1617060)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 371-7000
Tara.Reinhart@skadden.com
Julia.York@skadden.com
Thomas.Gentry@skadden.com

/s/ Ronald K. Wray II
Ronald K. Wray II
GALLIVAN, WHITE & BOYD P.A.
55 Beattie Place, Suite 1200
Greenville, SC 29601
Telephone: (864) 271-5362
rwray@GWBlawfirm.com

*Counsel for Defendant Norfolk Southern Railway Company pursuant to the
Notices of Appearance entered in each case*

/s/ Juan A. Arteaga
Kent A. Gardiner (D.C. Bar No. 432081)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
KGardiner@crowell.com
LvanHouwelingen@crowell.com

Juan A. Arteaga
Mara R. Lieber
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Phone: (212) 223-4000
Fax: (212) 223-4134
JArteaga@crowell.com
MLieber@crowell.com

/s/ David M. Wells
David M. Wells
GUNSTER, YOAKLEY & STEWART, P.A.
225 Water Street, Suite 1750
Jacksonville, FL 32202
Phone: (904) 354-1980
Primary Email: dwells@gunster.com
Secondary Email: dculmer@gunster.com
Secondary Email: awinsor@gunster.com

*Counsel for Defendant CSX Transportation, Inc. pursuant to the
Notices of Appearance entered in each case*

*/s/ Tyrone R. Childress*
Tyrone R. Childress
Kelsey S. Bryan (DC Bar No. 1034352)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:  tchildress@jonesday.com
E-mail:  kbryan@jonesday.com

John M. Majoras (DC Bar No. 474267)
Kristen A. Lejnieks (DC Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
E-mail:  jmmajoras@jonesday.com
E-mail:  kalejnieks@jonesday.com

*/s/ Timothy L. O'Mara*
Timothy L. O'Mara
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

Allyson M. Maltas (D.C. Bar No. 494566)
LATHAM & WATKINS, LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
allyson.maltas@lw.com

*/s/ Matthew M. Collette*
Matthew M. Collette (D.C. Bar No. 427167)
Kathryn A. Robinette (D.C. Bar No. 1659218)
MASSEY & GAIL LLP
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Phone: (202) 795-3326
Fax: (312) 379-0467
mcollette@masseygail.com
krobinette@masseygail.com

Leonard A. Gail
Illinois State Bar No. 6199745
Massey & Gail LLP
50 E. Washington Street, Suite 400
Chicago, IL 60602
Phone: (312) 283-1590
Fax: (312) 379-0467
lgail@masseygail.com

*Counsel for Defendant Union Pacific Railroad Company pursuant to the
Notices of Appearance entered in each case*

20

*/s/ Linda S. Stein*
Linda S. Stein (D.C. Bar No. 376217)
Molly Bruder Fox (D.C. Bar No. 981619)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Phone:  (202) 429-3000
lstein@steptoe.com
mbfox@steptoe.com

*/s/ Glenn D. Pomerantz*
Glenn D. Pomerantz
E. Martin Estrada
Kuruvilla J. Olasa
Anne K. Conley
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Phone: (213) 683-9100
Glenn.Pomerantz@mto.com
Martin.Estrada@mto.com
Kuruvilla.Olasa@mto.com
Anne.Conley@mto.com

Benjamin J. Horwich
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Phone: (415) 512-4000
Ben.Horwich@mto.com

Jacobus P. van der Ven (D.C. Bar No. 1644774)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001-5369
Phone: (202) 220-1100
Jacobus.vanderven@mto.com

*Counsel for Defendant BNSF Railway Company pursuant to the
Notices of Appearance entered in each case*

*/s/ Alden L. Atkins*
Craig P. Seebald (D.C. Bar No. 438968)
Alden L. Atkins (D.C. Bar No. 00393922)
Lindsey R. Vaala (D.C. Bar No. 974770)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*/s/ John H. LeSeur*
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854)
Daniel M. Jaffe (D.C. Bar No. 461185)
SLOVER & LOFTUS LLP
1224 Seventeenth Street NW
Washington, D.C. 20036
(202) 347-7170
(202) 347-3619 (Facsimile)
jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel
Corporation; Bel-Ray Company, LLC;
Calumet Branded Products, LLC; Calumet
Cotton Valley Refining, LLC; Calumet
Dickinson Refining, LLC; Calumet Karns
City Refining, LLC; Calumet Montana
Refining, LLC; Calumet Operating, LLC;
Calumet Princeton Refining; LLC; Calumet
Refining, LLC; Calumet Shreveport
Refining, LLC; Calumet Specialty Products
Partners, L.P.; CF Industries, Inc.;
Dairyland Power Cooperative; Dyno Nobel,
Inc.; Entergy Arkansas, LLC; Entergy
Louisiana, LLC; Exelon Generation
Company, LLC; Kurlin Company, LLC;
NorFalco LLC; NorFalco Sales; North Star*

22

BlueScope Steel LLC; Steelscape, LLC; and Wisconsin Electric Power Company

/s/ Michael D. Hausfeld
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo
Halli E. Spraggins
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com
hspraggins@hausfeld.com

Seth R. Gassman
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
sgassman@hausfeld.com

*Attorneys for American Honda Motor Co., Inc.*; *BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C.; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte*

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
Sami H. Rashid
Viola Trebicka
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Plaintiffs Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa World Alumina, LLC; Alumax Mill Products, Inc.; The Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird Incorporated' CertainTeed Canada, Inc.; CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation;*

23

*Global Logistics (North America), Inc.;
Louisiana-Pacific Corporation; Lyondell
Chemical Company; LyondellBasell Acetyls,
LLC; Equistar Chemicals, LP; MillerCoors,
LLC; Newell Recycling Southeast, LLC;
Peabody Investments Corporation, Peabody
Energy Corporation, Peabody Natural
Resources Company, Peabody Midwest Mining
LLC, Peabody Powder River Mining LLC,
Peabody Coulterville Mining, LLC, Peabody
Coalsales, LLC f/k/a Coalsales, LLC, Coalsales
II, LLC f/k/a Peabody Coalsales Company,
Peabody Coaltrade, LLC f/k/a Coaltrade, LLC
and Peabody Coaltrade, Inc., Twentymile Coal,
LLC f/k/a Twentymile Coal Company;
American Land Holdings of Illinois, LLC;
American Land Holdings of Indiana, LLC;
Peabody Electricity, LLC; Roseburg Forest
Products Co.; Sims Group USA Holdings
Corporation (f/k/a Sims Hugo Neu
Corporation), Metal Management, Inc.,
Simsmetal East LLC (f/k/a Sims Hugo Neu East
LLC and Hugo Neu Schnitzer East), Metal
Management Northeast, Inc., Metal
Management Pittsburgh, Inc., SMM New
England Corporation (f/k/a Metal Management
Connecticut, Inc.), SMM Southeast LLC, Metal
Management Midwest, Inc., Metal Management
Indiana, Inc., Metal Management Ohio, Inc.,
Sims Southwest Corporation (f/k/a Proler
Southwest LP and Proler Southwest
Corporation), SMM South Corporation (f/k/a
Metal Management Alabama, Inc.), Metal
Management Memphis, L.L.C., Sims Group
USA Corporation, Simsmetal West LLC (f/k/a
Sims Hugo Neu West LLC), and Schiabo
Larovo Corporation; Suzuki Motor of America,
Inc., Suzuki Motor USA, LLC; TMS
International, LLC; Total Petrochemicals &
Refining USA, Inc.; Trammo, Inc.; Transrail,
Inc.; Tropicana Products, Inc., Frito-Lay, Inc.,
and Bottling Group, LLC operating as Pepsi
Beverages Company; U.S. Silica Co.*

*CertainTeed Gypsum and Ceilings USA, Inc.;
Coffeyville Resources Nitrogen Fertilizers,
LLC; ConAgra Brands, Inc. f/k/a/ ConAgra
Foods, Inc.; Virginia Electric and Power
Company,; Dominion Energy Fuel Services,
Inc.; Dominion Energy South Carolina, Inc.;
Duke Energy Carolinas, LLC; Duke Energy
Florida, LLC; Duke Energy Progress, LLC;
Duke Energy Indiana, LLC; Duke Energy
Kentucky, LLC; Duke Energy Ohio, LLC;
Progress Fuels, LLC; DEGS of Narrows,
LLC; Duke Energy Generation Services, Inc.;
Eastman Chemical Company; Solutia Inc.;
Taminco Corporation; Exxon Mobil
Corporation; ExxonMobil Oil Corporation;
ExxonMobil Global Services Company;
Imperial Oil; Imperial Oil Limited; Canada
Imperial Oil Limited; Grain Craft, Inc.;
Southeastern Mills, Inc.; Hyundai Motor
America, Inc.; IPSCO Tubulars Inc.; IPSCO
Koppel Tubulars, LLC; IPSCO Tubulars
(KY), LLC; TMK NSG, LLC; Keystone Fuels,
LLC; Conemaugh Fuels, LLC; Kia Motors
America, Inc.; Lafarge North America, Inc.,
Holcim (US) Inc.; Aggregate Industries
Management, Inc.; Aggregate Industries -
SWR, Inc.; Aggregate Industries Northeast
Region, Inc.; Aggregate Industries - MWR,
Inc.; Bardon, Inc. (dba Aggregate Industries
Mid-Atlantic Region); Cement Transport,
LTD; Geocycle LLC; Systech Environmental
Corporation; Lafarge PNW, Inc.; Lattimore
Materials Corp.; Mercedes-Benz USA, LLC;
Motiva Enterprises LLC; NLMK USA, Inc.;
NLMK Pennsylvania, LLC; Sharon Coating,
LLC; NOVA Chemicals, Inc.; NOVA
Chemicals Corporation; NOVA Chemicals
(Canada) Ltd.; Old World Industries, LLC;
PCS Sales (USA), Inc.; Agrium (U.S.), Inc.;
PCS Phosphate Company, Inc.; White
Springs Agricultural Chemicals, Inc; PCS
Nitrogen, Inc.; Phillips 66 Company; Shell
Chemical LP, Shell Chemicals Canada (f/k/a
Shell Chemicals Canada Ltd.) by its
managing partner Shell Canada Ltd.;
Pennzoil-Quaker State Company (formerly
d/b/a SOPUS Products); Shell Trading (US)*

24

/s/ William J. Blechman
Robert D. W. Landon, III
Richard Alan Arnold
William J. Blechman
Douglas H. Patton
Samuel J. Randall
Michael A. Ponzoli
Joshua B. Gray
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail: rlandon@knpa.com
raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com
jgray@knpa.com

*Attorneys for Plaintiffs Cemex, Inc.,
Clearwater Paper Corporation, The Goodyear
Tire & Rubber Company, Kraft Heinz Foods
Company, Lehigh Hanson, Inc., PotlatchDeltic
Corporation, Rayonier Advanced Materials
Inc., Sterling Steel Company LLC., UPM-
Kymmene, Inc., and Unilever ASCC AG*

*Company; Equilon Enterprises LLC (d/b/a
Shell Oil Products US or SOPUS); Talen
Energy Supply, LLC f/k/a PPL Energy
Supply, LLC, on behalf of itself and its
subsidiaries and affiliates; Talen Energy
Marketing, LLC f/k/a PPL EnergyPlus, LLC;
Talen Generation, LLC f/k/a PPL
Generation, LLC (successor in interest to
PPL Coal Supply, LLC); Talen Montana,
LLC f/k/a PPL Montana, LLC; Martins
Creek, LLC f/k/a PPL Martins Creek, LLC;
Brunner Island, LLC f/k/a PPL Brunner
Island, LLC; Montour, LLC f/k/a PPL
Montour, LLC; United Parcel Service, Inc.,
an Ohio Corporation; UPS Ground Freight,
Inc.; Vulcan Materials Company; Legacy
Vulcan, LLC; Florida Rock Industries, Inc.;
Atlantic Granite LLC; CalMat Co.; Vulcan
Aggregates Company, LLC; Vulcan
Construction Materials, LLC; Fulton
Concrete Company, LLC; McCartney
Construction Company, Inc.; Calhoun
Asphalt Company, Inc.; Harper Brothers,
LLC; Virginia Concrete Company, LLC;
Azusa Rock, LLC; Triangle Rock Products,
LLC; Aggregates USA, LLC; Chem-Marine
Corporation of South Carolina; DMG
Equipment Company, LLC; R. C. Smith
Companies, LLC; Aggregates USA (Macon),
LLC; Aggregates USA (Savannah), LLC;
Aggregates USA (Sparta), LLC; WestRock
Company; WestRock Coated Board, LLC;
WestRock Virginia, LLC; WestRock Texas,
L.P.; WestRock CP, LLC; WestRock
Southeast, LLC; WestRock Northwest, LLC;
WestRock Mill Company, LLC; WestRock –
Solvay, LLC; WestRock Minnesota
Corporation; WestRock Kraft Paper, LLC;
WestRock Container, LLC; WestRock
Longview, LLC; Smurfit-Stone Container
Canada Inc.; The J.M. Smucker Company;
General Motors LLC; Kennecott Utah
Copper LLC; U.S. Borax Inc.; and Rio
Tinto Energy America Inc.*

/s/ David C. Eddy
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
deddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com

*Attorneys for Plaintiffs Domtar Corporation;
Ford Motor Company; South Carolina Public
Service Authority; Anheuser-Busch, LLC;
Anheuser-Busch Companies, LLC; Nestlé
Purina PetCare Company; and Nestlé USA,
Inc.*

/s/ Adam Carlis
Geoffrey L. Harrison
Shawn Raymond
Adam Carlis
Alexandra Foulkes Grafton
Scott T. Glass
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
afoulkesgrafton@susmangodfrey.com
sglass@susmangodfrey.com

Raj Mathur
SUSMAN GODFREY, L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
(212) 729-2051
rmathur@susmangodfrey.com

*Attorneys for Arkema Inc.; ArrMaz Products
Inc.; Boise Cascade Company; CONSOL
Energy, Inc.; CRH Americas, Inc., Preferred
Materials, Inc., Ash Grove Cement Company,*

/s/ Joseph M. Vanek
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin Amaro (*pro hac vice* forthcoming)
SPERLING & SLATER, P.C.
55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
mamaro@sperling-law.com

*Attorneys for Plaintiffs Kellogg Company
and Mitsubishi Motors North America, Inc.*

/s/ Sandra L. Brown
Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP
1919 M Street N.W. Suite 700
Washington, D.C. 20036
Tel: (202) 331-8800
Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
rob.ware@thompsonhine.com
jennifer.roach@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power
Company, Georgia Power Company and*

*The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*Mississippi Power Company; Northern Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

*/s/ Kristopher S. Davis*
Kristopher S. Davis (CA #193452)
George T. Caplan (CA #043821)
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel:  (310) 203-4000
Fax:  (310) 229-1285
kristopher.davis@faegredrinker.com
george.caplan@faegredrinker.com

William L. Roberts (MN # 0212763)
Jonathan W. Dettmann (MN # 0265032)
Craig S. Coleman (MN # 0325491)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel:  (612) 766-7000
Fax:  (612) 766-1600
william.roberts@faegredrinker.com
jon.dettmann@faegredrinker.com
craig.coleman@faegredrinker.com

*Attorneys for Plaintiffs American Zinc Recycling Corp., Ascend Performance Materials Operations LLC, Ingredion Incorporated, The Heritage Group dba Asphalt Refining Company, Asphalt Materials, Inc., Bituminous Materials and Supply, L.P., Emulsicoat, Inc., Laketon Refining Corporation, Heritage Environmental Services, LLC, Rineco Chemical Industries, LLC, Heritage*

/s/Kirk T. May
Kirk T. May
William D. Beil
GM LAW PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@ gmlawpc.com
Email: billb@ gmlawpc.com

David B. Helms
GM LAW PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@gmlawpc.com

*Attorneys for Plaintiffs*
*Lansing Ethanol Services, LLC, et al.*

*Transport, LLC, Pizo Operating Company,*
*LLC, and CHS Inc.*

/s/ Eric S. Hochstadt
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com
luna.barrington@weil.com
sarah.ryu@weil.com

Carrie C. Mahan (D.C. Bar No. 459802)
WEIL, GOTSHAL & MANGES LLP
2001 M. Street NW #600
Washington, DC 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
carrie.mahan@weil.com

*Attorneys for Plaintiffs Cleveland-Cliffs*
*Steel LLC (f/k/a ArcelorMittal USA LLC)*
*and ArcelorMittal Dofasco G.P.*

/s/ Benjamin D. Brown
Benjamin D. Brown (D.C. Bar. No. 495836)
Robert A. Braun (D.C. Bar No. 1023352)
Leonardo Chingcuanco (D.C. Bar No. 1719708)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
lchingcuanco@cohenmilstein.com

/s/ Edward D. Hassi
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper, Esquire
DEBEVOISE & PLIMPTON LLP

*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., Yang Ming Marine Transport Corp., Yang Ming (America) Corp., Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., Mitsui O.S.K. Lines, Ltd., and MOLAM Legacy, Inc.*


/s/ James P. Denvir
James P. Denvir (D.C. Bar No.  284554)
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131
jdenvir@bsfllp.com
sgant@bsfllp.com


Stuart H. Singer (*pro hac vice*)
James Grippando (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida  33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc., E.I. du Pont de Nemours and Company, and The General Electric Company*


/s/ Frank M. Lowrey IV
Frank M. Lowrey IV (*pro hac vice*)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (*pro hac vice*)
mykkeltvedt@bmelaw.com
Matthew R. Sellers
sellers@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E., Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

919 Third Avenue
New York, NY 10022
Tel: (212) 909 6000
Fax: (212) 909 6836
mschaper@debevoise.com

*Attorneys for Plaintiffs Toyota Motor Sales, U.S.A., Inc. and Toyota Canada Inc.*


/s/ Nathan P. Eimer
Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
dbirk@eimerstahl.com
srazzano@eimerstahl.com
bwaldin@eimerstahl.com


Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical Company, Union Carbide Corporation, Amerchol Corporation, Umetco Minerals Corporation, Gerdau Ameristeel Corporation, Gerdau Ameristeel US Inc., Gerdau Ameristeel Perth Amboy Inc., Gerdau Ameristeel Sayreville Inc., Chaparral Steel Company, Chaparral Steel Midlothian, LP, Chaparral (Virginia) Inc., Sheffield Steel Corporation, Gerdau Macsteel, Inc., International Paper Company, GenOn Energy Management,*

*Attorneys for Plaintiff The General Electric Company*

*LLC, GenOn Power Midwest LP, and GenOn REMA, LLC*

*/s/ Michael C. Dell'Angelo*
Michael C. Dell'Angelo
Michael J. Kane
H. Laddie Montague, Jr.
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
hlmontague@bm.net
mwallin@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
(202) 559-9745
dwalker@bm.net

Sophia Rios
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiffs High Level Management Venturers, Century Aluminum Company, Century Aluminum of Kentucky, GP, NSA, GP, Century Aluminum of West Virginia, Inc., Century Aluminum of South Carolina, Inc., Andre M. Toffel, Trustee, on behalf of New Wei, Inc., et al., jointly administered bankruptcy estates, and ABF Freight System Inc.*

*/s/ Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)

*/s/ Daniel B. Goldman*
Daniel B. Goldman
Steven S. Sparling
Daniel Lennard
Zachary C. Naidich
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com
ssparling@kramerlevin.com
dlennard@kramerlevin.com
znaidich@kramerlevin.com

*Attorneys for Plaintiffs The Procter & Gamble Company, The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing Company, The Procter & Gamble Paper Products Company, Tronox Inc., and Tronox US Holdings Inc.*

*/s/ Ronald J. Aranoff*
Ronald J. Aranoff

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

Helen C. Eckert
Joy O. Siu
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
heckert@sheppardmullin.com
jsiu@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

*Attorneys for Plaintiff Air Products
and Chemicals, Inc.*

*/s/ Conte C. Cicala*
Conte C. Cicala (CA Bar No. 173554)
Clyde & Co US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
conte.cicala@clydeco.us

*Attorneys for Plaintiff Mitsui O.S.K. Lines,
Ltd. and MOLAM Legacy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Joint Status Report was filed electronically with the

United States District Court for the District of Columbia through the Court's ECF System on

June 17, 2022.

*/s/ Tara L. Reinhart*     
Tara L. Reinhart
