# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br>This document relates to:<br><br>*Environmental Protection & Improvement Company, LLC v. Union Pacific Railroad Company, et al.*, No. 1:22-cv-02587-BAH | MDL Docket No. 2925<br><br>Misc. No. 20-8 (BAH) |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OF ENVIRONMENTAL PROTECTION & IMPROVEMENT COMPANY, LLC

Defendants CSX Transportation, Inc. ("CSXT"), Norfolk Southern Railway Company ("NS"), and Union Pacific Railroad Company ("UP," and together, "Defendants") hereby move to dismiss the Complaint of Environmental Protection & Improvement Company, LLC under Federal Rule of Civil Procedure 12(b)(6). Defendants respectfully submit the accompanying Memorandum in Support of Defendants' Motion to Dismiss.

Dated: September 7, 2022

Respectfully submitted,

*/s/ Luke van Houwelingen*
Kent A. Gardiner (D.C. Bar No. 432081)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
KGardiner@crowell.com
LvanHouwelingen@crowell.com

Juan A. Arteaga
Mara R. Lieber
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Phone: (212) 223-4000
Fax: (212) 223-4134
JArteaga@crowell.com
MLieber@crowell.com

*Attorneys for Defendant CSX Transportation, Inc.*

*/s/ Ronald K. Wray*
Ronald K. Wray II
GALLIVAN, WHITE & BOYD P.A.
55 Beattie Place, Suite 1200
Greenville, SC 29601
Telephone: (864) 271-5362
rwray@GWBlawfirm.com

*Attorneys for Defendant Norfolk Southern Railway Company*

*/s/ Tyrone R. Childress*
Tyrone R. Childress
Kelsey S. Bryan (DC Bar No. 1034352)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:  tchildress@jonesday.com
E-mail:  kbryan@jonesday.com

John M. Majoras (DC Bar No. 474267)
Kristen A. Lejnieks (DC Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
E-mail:  jmmajoras@jonesday.com
E-mail:  kalejnieks@jonesday.com

*Attorneys for Defendant Union Pacific Railroad Company*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br>This document relates to:<br><br>*Environmental Protection & Improvement Company, LLC v. Union Pacific Railroad Company, et al.*, No. 1:22-cv-02587-BAH | MDL Docket No. 2925<br><br>Misc. No. 20-8 (BAH) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I. Introduction ........................................................................................................................ 1

II. Background ........................................................................................................................ 3

III. Argument ........................................................................................................................... 5

    A. Absent tolling, the statute of limitations on EPIC's Complaint has expired. ......... 6

    B. *American Pipe* does not toll EPIC's claims. ............................................................ 6

        1. Courts should make case-specific determinations as to whether an individual plaintiff's suit merits tolling under *American Pipe*. ................... 6

        2. EPIC needlessly waited three years to file suit; allowing the suit to proceed now unfairly prejudices Defendants............................................... 9

IV. The Court should stay discovery relating to EPIC's claim pending a ruling on this Motion to Dismiss................................................................................................................... 11

V. Conclusion ....................................................................................................................... 12

ii

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*American Pipe & Construction Co. v. Utah*,
　414 U.S. 538 (1974).................................................................................................... passim

*Barryman-Turner v. District of Columbia*,
　115 F. Supp. 3d 126 (D.D.C. 2015) ......................................................................................7

*\*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
　137 S. Ct. 2042 (2017)..................................................................................................2, 7, 8

*Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*,
　201 F.R.D. 1 (D.D.C. 2001)................................................................................................12

*\*China Agritech, Inc. v. Resh*,
　138 S. Ct. 1800 (2018)............................................................................................... passim

*Connors v. Hallmark & Son Coal Co.*,
　935 F.2d 336 (D.C. Cir. 1991)...............................................................................................6

*Crown, Cork & Seal Co. v. Parker*,
　462 U.S. 345 (1983)........................................................................................................2, 11

*\*Desmesmin v. City of Bos.*,
　No. CV 19-12170-WGY, 2020 WL 2079389 (D. Mass. Apr. 30, 2020) ................................8

*Klehr v. A.O. Smith Corp.*,
　521 U.S. 179 (1997)..............................................................................................................6

*Larson v. Northrop Corp.*,
　21 F.3d 1164 (D.C. Cir. 1994)...............................................................................................5

*Messerschmidt v. United States*,
　No. 03-cv-2421-EGS, 2005 WL 578174 (D.D.C. Mar. 10, 2005) ........................................5

*\*Phillips v. Heine*,
　984 F.2d 489 (D.C. Cir. 1993)...............................................................................................9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
　934 F.3d 619 (D.C. Cir. 2019).......................................................................................... 1, 3

*\*Testa v. Becker*,
　910 F.3d 677 (2d Cir. 2018)..................................................................................................8

*Vine v. Republic of Iraq*,
  459 F. Supp. 2d 10 (D.D.C. 2006), *rev'd on other grounds by Simon v. Republic of Iraq*, 529 F. 3d 1187 (D.C. Cir. 2008) .................................................................. 2, 9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ........................................................................................................ 6

**Federal Statutes**

15 U.S.C. § 15 .................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 5, 12

Defendants CSX Transportation, Inc. ("CSXT"), Norfolk Southern Railway Company ("NS"), and Union Pacific Railroad Company ("UP" and together, "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss the Complaint ("Complaint") of Environmental Protection & Improvement Company, LLC ("EPIC"), which the Defendants ask the Court to grant under Federal Rule of Civil Procedure 12(b)(6).

## I. Introduction

The D.C. Circuit affirmed denial of class certification in MDL 1869 ("MDL I") in August 2019—*three years ago*. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019). Shippers began pressing individually the claims asserted in MDL I the very next month, and soon after, this second, expansive multi-district litigation ("MDL II") was established to coordinate pre-trial proceedings for the many lawsuits already on file by January 2020. Transfer Order, ECF No. 1 (Feb. 6, 2020). By this Court's first status conference that May, over 300 shippers had filed suit in over 85 separate complaints. *See* Preliminary Rep. of the Parties, ECF No. 78, 8 (May 8, 2020). Defendants have now been litigating in MDL II—and this Court has been managing it—for more than two-and-a-half years and are on the eve of fact discovery's close. *See* Transfer Order, ECF No. 1; Mem. and Order ("July 2021 Scheduling Order"), ECF No. 676, 4 (Jul. 6, 2021).

EPIC, in contrast, inexplicably waited until now to press its claims. *See* Complaint, 1:22-cv-02587-BAH, ECF No. 1 (D.D.C. July 29, 2022) ("Compl."). Like nearly all MDL II shippers, EPIC brings claims for alleged damages based on its purchases of rail freight transportation from Defendants from July 1, 2003 through December 31, 2008. Compl. ¶ 1; *see* Mem. Op., ECF No. 358, 10-11 (Aug. 25, 2020). Absent tolling, all of EPIC's claims were long-ago time-barred, 15 U.S.C. § 15b. Mem. Op., ECF No. 358, 21. And by delaying for nearly three years after the

putative class litigation ended with absolute certainty in MDL I, and for two-and-a-half years into this second MDL, EPIC has "sle[pt] on [its] rights" for far too long to avail itself of class action tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018) ("*American Pipe* . . . observed that tolling was permissible in the circumstances because plaintiffs who later intervened to pursue individual claims had not slept on their rights").

Defendants expect EPIC will argue that its delay is irrelevant at this stage because the Court is bound by *American Pipe* to automatically extend the limitations period for its claims by the amount of time the MDL I putative class litigation was pending. But that is wrong. As the Supreme Court recently has confirmed, *American Pipe* is an equitable doctrine—not a legal or statutory one—and to avail itself of this equity, EPIC "must demonstrate that [it has] been diligent in pursuit of [its] claims." *China Agritech*, 138 S. Ct. at 1808; *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.* ("*CalPers*"), 137 S. Ct. 2042, 2052 (2017). And as case law in this District demonstrates, the Court can use its discretion to deny *American Pipe* tolling to plaintiffs who do not bring suit within a "reasonable period" after the class litigation ends. *Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 24 (D.D.C. 2006), *rev'd on other grounds by Simon v. Republic of Iraq*, 529 F. 3d 1187 (D.C. Cir. 2008) (quotations omitted).

EPIC has been far from diligent, and its Complaint comes long past any reasonable period for individual claims. Indeed, EPIC has provided no reason at all for its three-year delay. Nor could it. As evidenced not least by EPIC's own Complaint, the allegations pressed in both MDL I and MDL II have been public knowledge for fifteen years. *See* Compl. ¶ 88 (citing to the MDL I "putative class action" established in 2007). Further, allowing EPIC's claims to proceed at this late date would unfairly prejudice Defendants, who would have to start fact discovery over again

for just one shipper while continuing to defend themselves in expert discovery against hundreds of others. July 2021 Scheduling Order, ECF No. 676, 4. And it is not just Defendants that would bear the cost and burden of EPIC's tardiness; litigating EPIC's claims now would put further strain on judicial resources. After prioritizing the swift completion of pre-trial proceedings in this MDL for two-and-a-half years, this Court should not have to oversee what would in effect be a new, separate track—complete with status reports, potential discovery disputes, and deadline management—just for EPIC. Defendants therefore respectfully request that the Court decline to apply *American Pipe* tolling to EPIC's Complaint, and on that ground to dismiss it as time-barred.

## II. Background

Twelve years after the putative MDL I class representatives first filed suit in mid-2007, the D.C. Circuit affirmed three years ago, on August 16, 2019, the district court's denial of class certification. *See Dust Pro, Inc. v. CSX Transp., Inc.*, No. 2:07-cv-2251-DMC (D.N.J.), ECF No. 1 (May 14, 2007) ("Dust Pro Compl."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019). Previously absent plaintiffs filed complaints the very next month, asserting individually the conspiracy alleged by the former putative class. *See, e.g.*, *Coffeyville Res. Nitrogen Fertilizers, LLC v. BNSF Ry. Co.*, No. 4:19-cv-03762 (S.D. Tex. Sept. 30, 2019), ECF No. 1.[1] On February 6, 2020, the Multidistrict Litigation Panel created this MDL to consolidate pre-trial proceedings in the dozens of individual suits filed by that point. Transfer Order, ECF No. 1. More than 300 shippers had filed over 85 complaints by the Court's first status conference. Preliminary Rep. of the Parties, ECF No. 78, 8; Mem. Op., ECF No. 358, 1-2.

---

[1] Another absent class member filed as early as 2011. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 1:11-cv-01049-PLF (D.D.C June 6, 2011), ECF No. 1.

3

Discovery in MDL II began in June 2020. Scheduling Order, ECF No. 102, 2 (May 20, 2020). Since that time, as the Court is aware from its continuous case management, Defendants have since reviewed and produced hundreds of thousands of documents and contracts, have each responded in detail to more than 660 Defendant- and Plaintiff-specific interrogatories, and have taken hundreds of depositions. *See, e.g.*, Joint Status Rep., ECF No. 841, 3 (Aug. 9, 2022) (tallying 244 depositions of plaintiffs as of August 9); Joint Status Rep., ECF No. 812, 15 (May 17, 2022) (tallying Plaintiff-served interrogatories). The scope of this discovery and the process for conducting it in a coordinated fashion were the subject of intense negotiations between the parties and litigation before this Court. *See, e.g.*, Joint Status Rep., ECF No. 667 (June 14, 2021) (litigating discovery schedule); Joint Status Rep., ECF No. 617, 12-13 (Apr. 22, 2021) (detailing five-month negotiation over custodians, followed by another five-month negotiation over search terms). Now, over two years later, fact discovery is all but closed—the deadline is three weeks away, after which this MDL will continue moving forward into expert discovery. July 2021 Scheduling Order, ECF No. 676, 4.

EPIC waited until this moment—three years after the D.C. Circuit's denial of class certification in MDL I and two and a half years after the creation of this MDL, and in the fading twilight of fact discovery—to file its Complaint, on July 29, 2022. *See* Compl. It did not serve Defendants until three weeks later, on August 16 and 17, 2022. *See* 1:22-cv-02587-BAH (D.D.C.), ECF No. 6 (docket entry for executed summonses to CSXT, NS, and UP). Like nearly all of the other shippers in this MDL, EPIC's Complaint alleges that Defendants conspired over rate-based fuel surcharges from July 1, 2003 through December 31, 2008, and brings claims for damages based on its purchases of rail freight transportation from Defendants during that time period. Compl. ¶ 1. EPIC borrows heavily in its Complaint—often word-for-word—both from complaints

4

publicly filed over two years ago in this MDL as well as the fifteen-year-old allegations in MDL I. *Compare* Compl. *to*, *e.g.*, *CONSOL Energy, Inc. v. CSX Transp., Inc.*, No. 19-cv-03475 (D.D.C. Nov. 18, 2019), ECF No. 1 ("CONSOL Compl."); *U.S. Silica Co. v. CSX Transp., Inc.*, No. 20-cv-00275 (D.D.C. Feb. 1, 2020), ECF No. 1 ("U.S. Silica Compl."); Second Consol. Am. Class Action Compl. ("Class Compl."), MDL 1869, ECF 324 (Feb. 3, 2010); Dust Pro Compl.  The Complaint alleges that the limitations period for its claims were tolled "based on the putative class action filed against Defendants and the stipulation of the parties therein in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 1:07-mc-0498 (D.C. Dist.)." Compl. ¶ 88.[2]

### III.   Argument

Dismissal of late-filed lawsuits under Rule 12(b)(6) is appropriate where, as here, the running of the statute of limitations is "apparent on the face on the complaint." *Messerschmidt v. United States*, No. 03-cv-2421-EGS, 2005 WL 578174, at *2, 7 (D.D.C. Mar. 10, 2005) (dismissing complaint on limitations grounds under Rule 12(b)(6)).  Through EPIC's own years-long delay in filing suit, as well as the prejudice that its delay would cause if the suit were allowed to proceed, EPIC has given up any benefit of *American Pipe* tolling.  EPIC's claims are therefore

---

[2] The Complaint also alleges in just three paragraphs that EPIC's claims were also tolled because of fraudulent concealment. Compl. ¶¶ 89-91. Fraudulent concealment must be pleaded with particularity under Federal Rule of Civil Procedure 9(b), and EPIC's conclusory allegations fall woefully short. *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994). Mindful of the Court's guidance in its Memorandum Opinion of August 25, 2020, these allegations may not warrant striking or dismissal at this stage if the Court concludes that EPIC's Complaint otherwise survives this Motion, but Defendants note that: (1) fraudulent concealment allegations were not pleaded or litigated in MDL I and so cannot be subject to *American Pipe* tolling (and so are untimely), and indeed, no other MDL II shipper has alleged fraudulent concealment; and (2) the Complaint says nothing about the knowledge available to EPIC in the three years after August 2019, or the past fifteen years in which the allegations that EPIC now restates have been on full public display.

time-barred, and should be dismissed.

### A. Absent tolling, the statute of limitations on EPIC's Complaint has expired.

Without the benefit of tolling, EPIC's Complaint was time-barred many years ago. EPIC brings claims for damages based on purchases of rail freight transportation from Defendants from July 1, 2003 through December 31, 2008. Compl. ¶ 1. Clayton Act claims have a four-year statute of limitations and accrue when the plaintiff is first injured, so EPIC would have needed to file its lawsuit by mid-2007 for all of its claims to be timely, and well over a decade ago for any of its claims to be timely. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190–91 (1997) (using the Clayton Act statute of limitations to explain that the limitations period begins "at the point the act first causes injury"); *see also* Mem. Op., ECF No. 358, 21 (same). As a result, absent tolling EPIC's Complaint is time-barred.[3] *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971) (quoting 15 U.S.C. § 15b).

### B. *American Pipe* does not toll EPIC's claims.

#### 1. Courts should make case-specific determinations as to whether an individual plaintiff's suit merits tolling under *American Pipe*.

EPIC would have the Court believe that because it was allegedly a member of the putative class in MDL I, *American Pipe* automatically and mechanically extends the statute of limitations

---

[3] EPIC alleges that it "did not discover its injury until after the putative class action was filed despite its exercise of due diligence." Compl. ¶ 89. EPIC does not allege when it discovered its claims or what "exercise of reasonable diligence" it undertook. Inadequacy of this allegation aside, it is irrelevant because EPIC's claims accrued on the dates it purchased the rail freight transportation covered by its Complaint, not when it "discovered" it had a claim. *See Klehr*, 521 U.S. at 188 (contrasting "pure injury accrual rule . . . [as] it applies in traditional antitrust cases" from the possible "discovery rule" in civil RICO); *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 n.10 (D.C. Cir. 1991) ("an exception" to the proposition that "the discovery rule is the general accrual rule in federal courts" is "the area of antitrust, where the Supreme Court has held, as a matter of statutory interpretation, that a cause of action accrues at the time of injury").

for four years beyond the D.C. Circuit's affirmation of certification denial in August 2019, to August 2023.[4]  EPIC's position will be that the Court has no choice but to overlook EPIC's choice to wait three full years after dead certainty that no class would be pressing its claims—and two-and-a-half years into this second MDL—to file suit.  And EPIC will no doubt cite to various courts that have effectively granted a later-filing individual plaintiff "an automatic extension of the statute of limitations by the length of time that the class certification issue is pending."[5]  However, the teachings from two recent Supreme Court decisions show that the reasoning in those cases is incorrect.

In the first opinion, *CalPers*, the Supreme Court held in 2017 that *American Pipe* can never toll statutes of repose (in contrast to statutes of limitations) because repose "displaces the traditional power of courts to modify statutory time limits in the name of equity."  *CalPers*, 137 S. Ct. at 2055.  The Clayton Act's four-year limitations period is not a statute of repose, but *CalPers'* confirmation that "the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity" applies with full force here.  *CalPers*, 137 S. Ct. at 2051-52.  The takeaway is that courts should use "their traditional equitable powers" to apply *American Pipe* not blanketly, but rather to "modify a statutory time bar *where its rigid application would create injustice*."  *CalPers*, 137 S. Ct. at 2052 (emphasis added).

---

[4]   Defendants previously agreed, "for claims previously tolled by pendency of the class action," to "exclude from future statutes of limitations calculations" the period from the court's order denying class certification and the D.C. Circuit's ruling affirming that order.  MDL I, ECF Nos. 851, 2 and 856, 3.

[5]   *See, e.g.*, *Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 132-33 (D.D.C. 2015) (describing *American Pipe* tolling as "categorical and mechanical," explaining that "the Supreme Court simply counted the days that remained on the statute of limitations and did not hint at the possibility that a further equitable inquiry might be necessary").

7

The second opinion, *China Agritech*, shows that the equitable (as opposed to legal or statutory) nature of *American Pipe* tolling in the limitations context is not merely an academic distinction, but rather one with profound consequences for its application. In *China Agritech*, the Supreme Court held in 2018 that *American Pipe* tolling cannot apply to later-filed class actions (as opposed to later-filed individual suits) in part because "[a] would-be class representative who commences suit after expiration of the limitation period . . . can hardly qualify as diligent[.]" *China Agritech*, 138 S. Ct. at 1808. To arrive at this conclusion, the *China Agritech* court made two points about equitable *American Pipe* tolling that are fully applicable in the context of later-filed individual lawsuits like EPIC's. The first is that "[p]laintiffs have no substantive right to bring their claims outside the statute of limitations." *Id.* at 1810. The second is that "[o]rdinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims." *Id.* at 1808. As such, courts should determine whether later filers such as EPIC were "diligent" when deciding whether equitable *American Pipe* tolling is appropriate. *See id.*; *see also Testa v. Becker*, 910 F.3d 677, 684 (2d Cir. 2018) (rejecting plaintiff's argument that "the Supreme Court's original rationale for equitable tolling in [*American Pipe*] is equally applicable" to his ERISA denial-of-benefits action in part because he "was not 'diligent' in any sense of the word") (quoting *China Agritech*, 138 S. Ct. at 1808).

Here, because EPIC has been far from diligent, the "injustice", *CalPers*, 137 S. Ct. at 2052, would be allowing EPIC's claims to proceed after it "slept on [its] rights" for nearly three years. *See Desmesmin v. City of Bos.*, No. CV 19-12170-WGY, 2020 WL 2079389, at *4 (D. Mass. Apr. 30, 2020) (declining to apply *American Pipe* tolling to plaintiff's individual discrimination claim in part because plaintiffs must be "'diligent in pursuit of their claims'" and "'diligent' [plaintiff] was not") (quoting *China Agritech*, 138 S. Ct. at 1808). EPIC should not enjoy the benefit of

8

*American Pipe* tolling at this late date.

This District's 2006 decision in *Vine*, which undertook the case-specific analysis now contemplated by the Supreme Court even in the doctrinally murkier era predating *CalPers* and *China Agritech*, is illustrative. In *Vine*, the Court explained that controlling D.C. Circuit law on equitable tolling—which holds that "'equitable tolling . . . merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a 'reasonable time' in which to file suit'— applies with full force to the equitable doctrine of *American Pipe*." *Vine*, 459 F. Supp. 2d at 24 (quoting *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003)). "Instead, the deadline is tolled only 'by a reasonable period after the tolling circumstance is mended.'" *Id.* (quoting *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993) ("If the plaintiff doesn't need [extra time] there is no basis for depriving the defendant of the protection of the statute of limitations.")). Applying that standard, the *Vine* court held that plaintiffs' decision to file suit two years after class certification was denied (and one year after the judge disallowed more plaintiffs to join the earlier litigation) "exceeds what was reasonably necessary and, therefore, precludes the application of equitable tolling." *Vine*, 459 F. Supp. 2d at 25.

### 2.    EPIC needlessly waited three years to file suit; allowing the suit to proceed now unfairly prejudices Defendants.

As the court concluded in *Vine*, EPIC has far exceeded any "reasonable period" within which to file their claim after the D.C. Circuit affirmed denial of class certification three years ago. *See Phillips*, 984 F.2d at 492 ("It does not follow, however, that appellant was entitled to three years from [the end of tolling] to bring the action."). The allegations at issue in the putative class litigation in MDL I have been widely publicized for the last fifteen years. *See* Dust Pro Compl.; Railroads Face Combined Price-Fixing Complaint, The Wall Street Journal (Mar. 31, 2008), *available at* https://www.wsj.com/articles/SB120692768436275279. Following denial of class

9

certification, this successor MDL was created in early 2020 and then also widely publicized. *See supra*, Section II. No grand effort was required to file an MDL II complaint; indeed, most shippers—including those not represented by MDL I counsel—copied heavily from both the putative class allegations and other complaints filed in this MDL. *Compare N. Ind. Pub. Serv. Co., LLC v. Union Pac. R.R. Co.*, No. 1:19-cv-02927 (D.D.C. Sept. 30, 2019), ECF No. 1 ("NIPSCO Compl.") *to Cemex, Inc. v BNSF Ry. Co.*, No. 20-cv-00269 (D.D.C. Jan. 21, 2020), ECF No. 1 ("Cemex Compl.") *to* Dust Pro Compl.; Class Compl.

EPIC alleges no reason why it alone needed to wait three years to file its suit, particularly when its complaint borrows heavily from the public complaints filed in MDL I and II. *See supra*, Section II. Indeed, given the facts and publicity of this MDL, the Court observed over a year ago that shipper complaints filed in mid-2021 were "late." Mem. Op., ECF No. 676, 2 (July 6, 2021) ("At present, this multidistrict litigation includes over 100 individual actions, with still more cases being filed and added at this late date."). EPIC has not even been diligent with the little time that remained in fact discovery after it filed its Complaint on July 29: it waited until August 16 and 17 to serve Defendants, and so frittered away nearly three of the (then) last remaining eight weeks.

EPIC's inexcusable delay is in itself sufficient to bar EPIC from the benefits of *American Pipe* tolling. But further supporting dismissal is that allowing EPIC's claims to proceed at this juncture would both unfairly prejudice Defendants, and make inefficient use of the judicial resources that have been devoted to managing MDL II. The parties in MDL II are already litigating claims that are far older than what was anticipated in the *American Pipe* ruling. *American Pipe*, 414 U.S. at 562 (class certification decisions "will normally be made expeditiously."). That aside for purposes of this Motion, Defendants have marshalled an enormous effort to litigate the claims of hundreds of plaintiffs over the last two-and-a-half-years. Defendants have already undergone

(and completed) an extensive document review and production, served shipper-specific written discovery, prepared for and taken hundreds of depositions, and responded to numerous shipper-specific interrogatories in painstaking detail.  *See supra*, Section II.

Beginning only now to litigate EPIC's claim at this late date and at this juncture in the MDL proceedings would force Defendants—and the Court—to start this entire process over again, and would effectively create a second track in this MDL for just one shipper.  That is because while EPIC would start with fact discovery for its claim, the rest of the MDL would presumably continue apace, with fact discovery complete by October 1, and expert discovery commencing after that.  *See supra*, Section II.  The Court has prioritized swift and efficient progress of the now-very-old cases in this MDL, and to that end, has emphasized the importance of promptly completing fact discovery.  *See* Mar. 26, 2021 Hearing Tr. at 72 ("This case has been pending for 14 years; I can't say that enough times.  I want . . . to avoid prolonging pretrial proceedings in this case.").  Having put substantial judicial resources into driving this MDL forward, the Court should not have to manage yet another, second track with all the status reports, status conferences, and disputes that that could entail.  Indeed, allowing EPIC to create its own track frustrates the entire purpose of an MDL, which exists in the context of "multiple actions in multiple forums once a class has been decertified" precisely so that "the burdens of multiple lawsuits may be avoided." *Crown, Cork*, 462 U.S. at 353.  Such a result would hardly further the "watchwords of *American Pipe*": "efficiency and economy of litigation."  *China Agritech*, 138 S. Ct. at 1811.  It would instead "invit[e] abuse."  *Crown, Cork*, 462 U.S. at 354 ("The tolling rule of *American Pipe* is a generous one, inviting abuse") (Powell, J., concurring).

IV.  **The Court should stay discovery relating to EPIC's claim pending a ruling on this Motion to Dismiss.**

Defendants respectfully request that the Court stay discovery relating to EPIC's claim

11

pending its ruling on this Motion to Dismiss. *See Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined[,]"; "[i]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.") (quotations omitted). A stay would protect Defendants and the Court from the very prejudice at issue here: being forced into a new round of discovery (and discovery management) for a case that was filed so late that it cannot be litigated on the same schedule as the rest of this MDL. EPIC, on the other hand, would experience no prejudice if discovery is stayed. There is no way, as a practical matter, that full fact discovery into EPIC's individual claim can be conducted and completed in the few weeks remaining. If the Motion to Dismiss is granted, EPIC will have saved time and money by not beginning discovery into its time-barred claim, and if EPIC is allowed to proceed, its ability to conduct and respond to discovery thereafter would be unaffected.

## V.     Conclusion

For the reasons stated above, EPIC's Complaint is time-barred on its face, and should be dismissed with prejudice under Rule 12(b)(6).

Dated:  September 7, 2022

*/s/ Luke van Houwelingen*
Kent A. Gardiner (D.C. Bar No. 432081)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
KGardiner@crowell.com
LvanHouwelingen@crowell.com

Juan A. Arteaga
Mara R. Lieber
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Phone: (212) 223-4000
Fax: (212) 223-4134
JArteaga@crowell.com
MLieber@crowell.com

*Attorneys for Defendant CSX Transportation, Inc.*


*/s/ Ronald K. Wray*
Ronald K. Wray II
GALLIVAN, WHITE & BOYD P.A.
55 Beattie Place, Suite 1200
Greenville, SC 29601
Telephone: (864) 271-5362
rwray@GWBlawfirm.com

*Attorneys for Defendant Norfolk Southern Railway Company*

*/s/ Tyrone R. Childress*
Tyrone R. Childress
Kelsey S. Bryan (DC Bar No. 1034352)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:  tchildress@jonesday.com
E-mail:  kbryan@jonesday.com

John M. Majoras (DC Bar No. 474267)
Kristen A. Lejnieks (DC Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
E-mail:  jmmajoras@jonesday.com
E-mail:  kalejnieks@jonesday.com

*Attorneys for Defendant Union Pacific Railroad Company*

13

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document on all counsel of record by Notice of Electronic Filing on September 7, 2022.

*/s/ Luke van Houwelingen*
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
LvanHouwelingen@crowell.com