**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: RAIL FREIGHT FUEL
SURCHARGE ANTITRUST LITIGATION
(NO. II)

This document relates to:
ALL CASES

MDL Docket No. 2925
Misc. No. 20-8 (BAH)

## JOINT STATUS REPORT

Pursuant to the Court's July 18, 2023 Order, the parties respectfully submit this Joint

Status Report "regarding the status of this litigation and the status of the 'potential dispute'

identified by the parties in the [July 14, 2023] Joint Status Report."  7/18/23 Minute Order

(Paperless); *see also* 7/6/21 Mem. and Order 5, ECF No. 676; 1/31/23 Minute Order (Paperless)

(instructing the parties "to continue filing Joint Status Reports every twelve weeks").

### I.    Additional MDL II Actions

Since the parties' July 14, 2023 Joint Status Report (ECF No. 925), no additional actions

have been filed and identified as tag-along cases for potential consolidation with this MDL.

Accordingly, the current number of cases in this MDL remains at 106.

### II.    Status of EPIC Action

On August 8, 2023, the Court entered a Minute Order setting forth the schedule for the

completion of fact and expert discovery in *Environmental Protection & Improvement Company,*

*LLC v. Union Pacific Railroad Company et al.* (the "EPIC Action"), No. 1:22-cv-2587 (BAH),

ECF Nos. 23 & 24.[1]  Consistent with the Court's Scheduling Order, the parties concluded fact

discovery in the EPIC Action on September 15, 2023, with the exception that EPIC agreed to

revise certain responses and objections to Defendants' interrogatories in an attempt to address

---

[1] BNSF Railway Company is not a defendant in the EPIC Action.

concerns raised by Defendants.  EPIC served supplemental responses and objections to

Defendants' interrogatories on October 4, 2023.

Under the Court's Scheduling Order, EPIC's expert disclosures are due October 16, 2023

and Defendants' opposition expert disclosures are due December 11, 2023.

### III.    Status of MDL II Fact Discovery

Fact discovery ended on February 1, 2023, pursuant to the Court's November 8, 2022

minute order.[2]  During fact discovery, Plaintiffs conducted a total of 31 depositions (24 30(b)(6)

depositions and 7 30(b)(1) depositions).  Defendants conducted a total of 342 depositions (24

30(b)(6) depositions and 318 30(b)(1) depositions).

As detailed below, the parties disagree as to whether Defendants improperly produced

material after the close of fact discovery in connection with the current dispute regarding certain

damages claims.

### IV.    Status of MDL II Expert Discovery

In accord with the Court's November 8, 2022 Order, Plaintiffs made expert disclosures in

all actions in this MDL, with the exception of the EPIC Action, on March 1, 2023.  *See* 11/8/22

Minute Order (Paperless).  Plaintiffs' five experts served 61 reports, the vast majority of which

Plaintiffs have indicated include materially identical economic opinions and methodologies.

Plaintiffs made each of their experts available for two-day depositions, and Defendants

completed depositions of Plaintiffs' five experts between June 12, 2023 and August 3, 2023.

---

[2] The parties have also stipulated that certain depositions may be taken after the close of fact discovery if those witnesses are relied upon by opposing parties in connection with expert reports, summary judgment, or trial.  (Joint Stip. Re. Supp. Disclosures and Deferment of Witness Deps., ¶ 3, Nov. 22, 2021, Dkt. No. 751).

Defendants' served opposition expert reports from four joint experts and three individual Defendant experts on August 15, 2023, in accord with the Court's November 8, 2022 Order. *Id.* One of Defendants' experts, Avram Tucker, served a report totaling nearly 23,000 pages, including over 14,000 pages of Plaintiff-specific appendices purporting to describe the shipping experience and negotiating history of every one of the over 100 Plaintiffs.[3]  The parties have agreed to deposition dates for Defendants' experts between October 12 and November 9.

Plaintiffs' rebuttal expert reports are due on November 15, 2023.  *Id.*

## V.    Status of Potential Dispute

**Defendants' Statement**

In the July 14, 2023 Joint Status Report, Defendants informed the Court that various Plaintiffs are improperly seeking approximately $1 billion in the following categories of damages in violation of the Court's prior *American Pipe* rulings: (i) damages under contracts and price authorities that applied mileage-based fuel surcharges;[4] (ii) damages related to transportation services provided by non-*MDL II* defendant (and non-*MDL I* defendant) CSX

---

[3] As to Mr. Tucker, in light of the expansive nature of his report, in order to keep the deposition schedule manageable Plaintiffs have agreed to proceed the two-day deposition offered by Defendants.  However, because that timeline will not allow for Plaintiffs to fully depose Mr. Tucker as to each of his over 100 Plaintiff-specific appendices, to the extent Mr. Tucker later is to testify at trial, Plaintiffs have reserved the right to seek further Plaintiff-specific depositions of Mr. Tucker prior to that trial testimony.  Defendants have reserved their rights to oppose any such request.

[4] *See In re Rail Freight Fuel Surcharge Antitrust Litig. (NO. II)* ("*MDL II*"), 2020 WL 5016922, at *19-*22 (D.D.C. Aug. 25, 2020) (holding that *MDL II* plaintiffs are "time-barred" from asserting claims or damages related to Defendants' application of mileage-based fuel surcharges because the fuel surcharges challenged in *MDL I* "were always rate-based fuel surcharges," and because "[t]he class the *MDL I* plaintiffs moved to certify—the controlling class for *American Pipe* purposes—expressly . . . defin[ed] [ ] the fuel surcharges at issue as rate-based fuel surcharges").

Intermodal, Inc. ("CSXI");[5] and (iii) lingering effects damages that require litigation of post-2008 conduct, such as bilateral, fixed term contracts that were amended after 2008 and rail services purchased after 2008 under open transportation offers or after an evergreen contract's annual renewal in 2009.[6]

Although Defendants were prepared to brief these issues during the fall of 2023, they agreed to Plaintiffs' request to continue the meet and confer process because Plaintiffs claimed that (i) the additional exchange of information could potentially narrow any disputes, and (ii) it would be burdensome for them to brief these issues while preparing their rebuttal expert reports.

Over the last 12 weeks, Defendants have made efforts to meet and confer with Plaintiffs to try to narrow any disputes ultimately brought before the Court.  On July 26, 2023, Defendants provided Plaintiffs with lists of shippers that Defendants identified as improperly seeking damages for transportation services that assessed a mileage-based fuel surcharge or were purchased from CSXI.  Defendants prepared these lists based on their review of Plaintiffs' expert reports at Plaintiffs' request, despite the fact that Plaintiffs already possessed this information. With respect to the Plaintiffs seeking post-2008 damages, Defendants requested that these Plaintiffs explain the process they undertook to confirm that those claimed damages comply with the Court's prior rulings.  Three Plaintiff groups responded in late August and a final group

---

[5] *Id.* at *17-*19 (holding that *MDL II* plaintiffs are "time-barred" from asserting claims and damages related to conduct of three alleged co-conspirators not named as defendants in *MDL I* because "courts consistently hold that *American Pipe* does not apply to entities or individuals not named as defendants by the putative class").

[6] *See MDL II*, 2021 WL 1909777, at *9-*22 (D.D.C. May 12, 2021) (stating that the Court had already "unambiguously held that claims of continuing harm from the conspiracy that would require proof of conduct after December 31, 2008 were time-barred" and concluding that this "bright-line" precludes lingering effects damages under bilateral, fixed term contracts that were amended after 2008, transactions under open offers after December 31, 2008, and transactions under evergreen contracts after the contracts "annual renewal in 2009" as examples of the Court's "categorical conclusions . . . about the availability of lingering effects damages").

responded in mid-September, seven weeks after they received Defendants' correspondence. All Plaintiffs continued to assert that they are entitled to the damages they have claimed despite the Court's clear rulings regarding limitations on damages claims that qualify for *American Pipe* tolling.

On September 22, 2023, Defendants provided Plaintiffs a letter which further explained why Plaintiffs' claims for damages related to price authorities with mileage-based fuel surcharges, CSXI traffic, and certain lingering effects damages violate the Court's prior *American Pipe* rulings. As part of their effort to narrow any disputes, Defendants also provided Plaintiffs with lists of the specific price authorities that fall into each category of improper damages claims. Defendants supplemented their lists of price authorities under which Plaintiffs are improperly seeking lingering effects damages claims on September 28, 2023.

In addition, Defendants identified documentary support for each improper claim to post-2008 damages on these lists. The majority of this cited documentary support consisted of material produced during the fact discovery period. Defendants also provided Plaintiffs with courtesy copies of approximately 95 post-2008 agreements or amendments to price authorities that cut-off lingering effects damages. Given that fact discovery was limited to the period between 2000 and 2008, Defendants had no reason to search for or produce any post-2008 agreements or amendments until Plaintiffs served their March 2023 expert reports claiming over $1 billion in lingering effects damages through 2018 (i.e., more than a decade after the Court has determined that Plaintiffs were on notice of Defendants' alleged conspiracy).[7] Indeed,

---

*Id.* at *10 (stating that the "bright-line" established by the Court for cutting off lingering effects damages claims took "into account that plaintiffs were on notice from 2007, when the [STB] 'determined . . . that defendants' practices of imposing rate-based fuel surcharge for regulated rail freight traffic was an unreasonable practice, and *MDL I* began, advancing the same theory

Defendants would have had no way to know which post-2008 contract amendments and agreements may be implicated by Plaintiffs' eventual improper lingering effects claims before Plaintiffs' March 2023 expert reports. And, Defendants can hardly have been expected to search for and produce all post-2008 amendments and agreements impacting the terms of price authorities entered between 2003 and 2008 given their lack of relevance to properly alleged damages claims.

From the outset of the meet and confer process, Defendants asked Plaintiffs if they had reviewed their files to confirm that they were not asserting lingering effects damages claims under price authorities that were amended or otherwise changed after 2008. Defendants also informed Plaintiffs that they were undertaking such a review of their files to confirm whether these damages claims complied with the Court's rulings. Nonetheless, Plaintiffs are now claiming that Defendants' challenge to their post-2008 damages claims improperly relies on material that was supposedly "produced" after the close of fact discovery. This argument lacks merit for multiple reasons.

*First*, the majority of the material that Defendants have cited to challenge Plaintiffs' improper post-2008 damages claims was produced by the parties during the fact discovery period.[8] *Second*, Defendants have not made any document productions outside the discovery period. Instead, Defendants provided Plaintiffs with courtesy copies of post-2008 agreements and amendments in the hopes that such material would help narrow any disputes brought to the Court. Defendants were forced to provide these courtesy copies because Plaintiffs—who, as the

---

with respect to unregulated rail-freight traffic, that their agreements with defendants might contain artificially high rate-based fuel surcharges").

[8] Indeed, UP's challenge to Plaintiffs' post-2008 damages claims under UP contracts and price authorities does not rely on any material provided after the discovery period.

Court has noted, "carry the burden of proving that their [post-2008 damages claims] qualify for *American Pipe* tolling"[9]—failed to take any steps to ensure that their post-2008 damages claims comply with the Court's rulings.  The absence of such work by Plaintiffs is confirmed by the fact that the discovery record includes post-2008 amendments to contracts and price authorities under which they are improperly claiming hundreds of millions in lingering effects damages.  *Finally*, the Court's rulings establish that material showing that the parties' contractual relationship changed after 2008, such as through an amendment, should and must be considered in order to assess the appropriateness of any post-2008 damages claims.[10]

Plaintiffs also contend that Defendants should not be permitted to rely on the cited post-2008 material because they lack discovery related to these post-2008 agreements and amendments, which, as properly anticipated by the Court's earlier rulings, reflects the inherent problem with Plaintiffs' lingering effects claims:  Plaintiffs are attempting to litigate post-2008 facts and conduct not at issue in *MDL I*.  The Court has already "unambiguously held that claims of continuing harm from the conspiracy that would require proof of conduct after December 31, 2008 [are] time-barred."  *MDL II*, 2020 WL 1909777, at *9 (D.D.C. May 12, 2021).

Throughout the meet and confer process, Defendants have requested that Plaintiffs withdraw their improper damages claims but Plaintiffs have declined to do so.  Consequently, Defendants respectfully request the Court's permission to move to strike Plaintiffs' improper damages claims on the following briefing schedule:

- Defendants' Opening Brief due December 1, 2023

---

[9] *MDL II*, 2021 WL 1909777, at *9.

[10] *Id.* at *11 (holding that Plaintiffs are time-barred from pursuing lingering effects damages after any post-2008 change in the parties' contractual relationship, including a contract amendment, because "such altered agreements would likewise require inquiry into the parties' post-2008 conduct").

- Plaintiffs' Opposition Brief due January 10, 2024

- Defendants' Reply Brief due January 31, 2024

This schedule avoids overlap with the expert discovery schedule, as Plaintiffs requested, but allows the Court to consider these issues, which are relevant to a large number of cases, before taking up other potential motions.  Contrary to Plaintiffs' assertions, these motions will involve the straightforward application of the Court's *American Pipe* rulings.  As noted above, the Court previously ruled on these issues in its August 25, 2020 and May 12, 2021 opinions, and Defendants' motion will simply seek application and enforcement of those legal rulings to Plaintiffs' improper damages claims.  As explained in the July 2023 Joint Status Report, enforcing the Court's rulings prior to other motions practice will greatly promote judicial economy because it will avoid the waste of significant time and resources on clearly time-barred claims across a large number of cases, and will allow the parties and Court to focus on issues that are properly part of this MDL when addressing summary judgment and other dispositive motions.

Three days before this submission—and nearly three months after the parties' July 2023 Joint Status Report—Plaintiffs proposed for the first time that the parties brief the question of whether the challenged damages claims violate the Court's *American Pipe* rulings along with summary judgment and *Daubert* motions pursuant to the following schedule:

- Opening Briefs: January 30, 2024

- Opposition Briefs: April 30, 2024

- Reply Briefs: June 17, 2024

In accordance with the Court's prior Orders, Defendants will meet and confer with Plaintiffs on a briefing schedule and plan for summary judgment, *Daubert* and other pre-trial

motions and will include a proposal in the parties' December 2023 Joint Status Report. However, the parties' discussions on the schedule for these other motions should not prevent them from moving forward with briefing the question of whether the challenged damages claims violate the Court's *American Pipe* rulings because, as noted above, the Court's early enforcement of these rulings will resolve an important preliminary issue applicable to numerous cases—enforcement of the Court's prior rulings—thereby allowing the parties to focus their summary judgment, *Daubert* and other pre-trial motions on issues that are properly part of this MDL.[11] These significant efficiencies will be lost under Plaintiffs' proposal.

Finally, Defendants are willing to continue to meet and confer with Plaintiffs to try to narrow the damages disputes involving the application of the Court's *American Pipe* rulings that would be addressed in the December 2023 motion proposed by Defendants, but Plaintiffs have indicated no openness to making progress on these issues despite being presented with clear rulings and documentary proof establishing the inappropriateness of the challenged damages claims.

To assist the Court's assessment of their request, Defendants provide below a brief summary of their positions regarding each category of improper damages claims. Defendants will fully set forth their basis for challenging Plaintiffs' improper damages claims in their motion papers.

---

[11] Plaintiffs suggest that Defendants' requested briefing should be delayed because Judge Friedman may rule on the pending summary judgment motion in *MDL I* between now and January 30, 2024, and that ruling may "shap[e] the issues to be determined at summary judgment in MDL II." This argument misses the mark because, as noted above, Defendants requested briefing schedule does not involve a summary judgment motion. Instead, Defendants intend to move to strike Plaintiffs' improper damages claims based upon the Court's prior *American Pipe* rulings. This Court is undoubtedly best positioned to interpret and apply its own rulings. Moreover, the summary judgment motions pending before Judge Friedman do not implicate this Court's *American Pipe* rulings.

1. ***Defendants' Application of Mileage-Based Fuel Surcharges***:  In its decision addressing Defendants' motion to dismiss, the Court ruled that Plaintiffs are time-barred from pursuing claims related to Defendants' application of mileage-based fuel surcharges because the fuel surcharges challenged in the *MDL I* putative class proceedings "were always rate-based fuel surcharges," and because "[t]he class the *MDL I* plaintiffs moved to certify—the controlling class for *American Pipe* purposes—expressly . . . [defined] the fuel surcharges at issue as rate-based fuel surcharges[.]"  *MDL II*, 2020 WL 5016922, at *21.

Despite these clear rulings, some Plaintiffs claim they are entitled to damages related to price authorities with mileage-based fuel surcharges, as opposed to rate-based fuel surcharges, because they seek damages related to purportedly inflated base rates (i.e., rates before any application of a fuel surcharge) to which mileage-based fuel surcharges were applied, but not the mileage-based fuel surcharges themselves.  As Defendants explained during the meet and confer process, these lawyer instructions to economic experts do not permit Plaintiffs to evade this Court's unambiguous rulings because this Court has already determined that claims and damages based on the assertion that Defendants' manipulated a contract or price authority's overall rail rates through the application of mileage-based fuel surcharges are time-barred.  For example, in its decision addressing Defendants' motion to dismiss, this Court ruled that:

> The *MDL I* putative class proceedings did not provide defendants with adequate notice of omnibus plaintiffs' allegations that defendants manipulated overall freight prices through the use of mileage-based fuel surcharges.  To the extent these allegations are included in omnibus plaintiffs' complaints to support a damages demand, they are time-barred.

*Id.* at *22.

> The two types of fuel surcharges alleged by omnibus plaintiffs, as two distinct methods of price fixing, represent two different factual theories "predicated" on different acts of defendants.  Both were

> allegedly implemented with the goal of increasing overall rail freight rates, but otherwise do not appear rooted in the same conduct. Omnibus plaintiffs claim that defendants imposed rate-based fuel surcharges in 2003 and, after "differentiating" their conspiracy, first introduced mileage-based fuel surcharges in 2007.  The claims therefore likely do not turn on "the same evidence, memories, and witnesses," and change the scope of defendants' liability to former putative class members. . . . Tolling of these claims would therefore create undue prejudice to defendants.

*Id.*

Plaintiffs also assert that this "rebasing" theory allows them to seek damages under contracts and price authorities that applied mileage-based fuel surcharges because "rebasing conduct was explicitly part of the proposed class definition in MDL since March 2010."  This assertion conveniently ignores the fact that the *MDL I* representatives' class certification motion papers expressly limited the traffic with supposedly "rebased" base rates to instances where Defendants applied non-standard ***rate***-based fuel surcharges and purportedly sought to recapture any lost fuel surcharge revenue through higher base rates that "baked in" at a least portion of the standard ***rate***-based fuel surcharge.

Indeed, Judge Friedman's class certification decision confirms that the *MDL I* class representatives' "rebasing" assertions were limited to instances where Defendants applied non-standard ***rate***-based fuel surcharges rather than mileage-based fuel surcharges:

> As plaintiffs describe it, at some point during the alleged conspiracy NS engaged in something that has come to be known in this case as rebasing; namely folding at least part of the fuel surcharge into the base rate. . . .
>
> Plaintiffs assert that shippers who paid a rebased rate simply paid a new base rate with a portion of the previous supra-competitive fuel surcharge bake[d] in.  As [plaintiffs' expert] explains it, NS' rebasing strategy effectively made permanent a surcharge based on a WTI of $64 by folding that amount into base rates, and supplemented that with a new stand-alone fuel surcharge anytime WTI exceeded $64.

*In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*MDL I*"), 287 F.R.D. 1, 30 (D.D.C. 2012) (quotation marks and citations omitted), *rev'd on other grounds*, 725 F.3d 244 (D.C. Cir. 2013).

The fact that the *MDL I* class representatives' "rebasing" assertions did not include Defendants' application of mileage-based fuel surcharges is further confirmed by the decision of the Quinn Emanuel firm—which served as Co-Class Counsel in *MDL I*—not to seek these damages on behalf of the nearly 200 Plaintiffs that it represents in this MDL.

Defendants will further explain in their motion papers why the *MDL I* record and the Court's rulings bar Plaintiffs' improper attempt to seek approximately $300 million in damages under contracts and price authorities where Defendants applied mileage-based surcharges.[12]

2. ***CSXI Damages***:  In its decision addressing Defendants' motion to dismiss, the Court held that Plaintiffs are time-barred from asserting claims and damages related to the supposed conspiratorial conduct of three non-*MDL I* defendants because *American Pipe* tolling "does not apply to entities or individuals not named as defendants by the putative class." *MDL II*, 2020 WL 5016922, at *18.

Despite this clear ruling, Plaintiffs contend they are entitled to seek damages related to transportation services purchased from CSXI because they claim "CSXI shipments have always been part of this litigation (MDL I and MDL II)[.]"  During the meet and confer process, Defendants repeatedly explained that this contention lacks merit because, as Judge Friedman concluded in *MDL I*, "[CSXI] was a separate company from CSX[T] during the class period and is not a party to this case.  ***CSXI shippers therefore are not class members.***"  *MDL I*, 292 F. Supp. 3d 14, 123 n.37 (D.D.C. 2017) (emphasis added), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019).

---

[12] This damages figure is based on Defendants' work to date and thus could be adjusted based on additional work.

Defendants also explained in the meet and confer process that Judge Friedman's conclusion is fully supported by the fact that the *MDL I* class representatives chose not to include CSXI or CSXI shippers within the class they moved to certify, which, as this Court has ruled, is "the controlling class for *American Pipe* purposes[.]"  *MDL II*, 2020 WL 5016922, at *21.

Defendants further explained that the fact that CSXT and CSXI were subsidiaries of the same corporate parent does not save Plaintiffs' untimely claims because courts have held that corporate "affiliation with a named defendant is not sufficient to trigger *American Pipe* tolling." *Allianz Global Investors GmbH v. Bank of Am.*, 463 F. Supp. 3d 409, 428 (S.D.N.Y. 2020). Moreover, Defendants explained that this Court has already rejected the argument that joint and several liability under the antitrust laws permits Plaintiffs to pursue claims and damages based on the supposed conspiratorial conduct of a non-*MDL I* defendant.[13]

When Plaintiffs wrongly requested CSXI document custodians in this MDL, Defendants objected on the grounds that any CSXI-related claims were time-barred and proposed bringing this issue to Court at the outset of discovery.  However, Plaintiffs declined to do so and thereafter withdrew any requests for CSXI document custodians and deponents.

Defendants will further explain in their motion papers why the *MDL I* and *II* records and the Court's rulings bar Plaintiffs' improper attempt to seek approximately $40 million in damages arising out of transportation services purchased from CSXI.[14]

---

[13] *MDL II*, 2020 WL 5016922, at *18 ("Plaintiffs' [joint and several liability argument] confuses the issue: the question is not whether, under the antitrust laws, defendants are or could be liable for [non-*MDL I* defendants'] involvement in the conspiracy alleged by omnibus plaintiffs. Instead, the question is whether omnibus plaintiffs' otherwise time-barred claims with respect to these three [non-*MDL I* defendants] are in fact timely because of *American Pipe* tolling.").

[14] This damages figure is based on Defendants' work to date and thus could be adjusted based on additional work.

3.  ***Post-2008 Damages Claims***:  In its May 2021 decision, the Court held that Plaintiffs are time-barred from pursuing "lingering-effects damages that . . . would require litigation of post-2008 conduct."  *MDL II*, 2021 WL 1909777, at *9.  Thereafter, the Court applied this "bright-line" to specific categories of contracts and price authorities, holding that Plaintiffs are time-barred from pursuing lingering effects damages claims for (i) "purchases made under an evergreen contract after its annual renewal in 2009 or later;" (ii) purchases made under open offers after December 31, 2008; and (iii) purchases under bilateral, fixed-term contracts that were made after any post-2008 change in the parties' contractual relationship, such as a contract amendment.  *Id.* at *11-*12.  The Court held that these lingering effects damages claims do not qualify for *American Pipe* tolling because they would require litigation of the parties' post-2008 conduct, which was not the subject of *MDL I*.  *Id.*

Despite these clear rulings, numerous Plaintiffs are seeking hundreds of million in lingering effects damages claims for transportation purchases that fall into the above time-barred categories.[15]  For example, some Plaintiffs are seeking damages during 2009 for shipments that were made pursuant to open offers, where the Plaintiff had no obligation to ship under that price authority.  Other Plaintiffs are seeking post-2008 damages after the term for the contract entered during the alleged conspiracy period ended.  Another Plaintiff is seeking hundreds of millions in damages through 2018 even though the material produced during the discovery period establishes that the relevant contracts were repeatedly amended after 2008.

These Plaintiffs are continuing to seek such improper damages claims even though in the meet and confer process Defendants have either identified evidence in the discovery record or

---

[15] This damages figure is based on Defendants' work to date and thus could be adjusted based on additional work.

14

provided courtesy copies of post-2008 material (i.e., post-2008 contract amendments) confirming that these claims violate the Court's rulings.  (Notably, the nearly 200 Plaintiffs represented by the Quinn Emanuel firm—which served as *MDL I* Co-Class Counsel—have also correctly chosen not to seek post-2008 damages.)

One group of Plaintiffs (the Thompson Hine Plaintiffs)—which are seeking approximately $900 million in post-2008 damages through 2018—have argued that the Court's rulings do not preclude them from pursuing damages claims after a post-2008 contract amendment because their expert supposedly concluded that the contracts continued to have "the same all-in price" after the amendment.  During the meet and confer process, in addition to pointing out that the "same all-in price" did not apply after some post-2008 amendments at issue,[16] Defendants explained that this argument finds no support in the Court's rulings because at no point has the Court adopted a "price change" standard for determining whether post-2008 damages claims qualify for *American Pipe* tolling.  To the contrary, the Court has made clear that lingering effects damages claims under all "altered agreements would likewise require inquiry into the parties' post-2008 conduct" and thus are "time-barred."  *Id.* at *10.  Of course, even litigating the question of whether a post-2008 amendment effected a "price change" would require post-2008 evidence and litigation of the parties' post-2008 conduct.  Plaintiffs appear not to address this category of improper lingering effects damages claims in their position statement.

Defendants will further explain in their motion papers why the challenged post-2008 damages claims fail to comply with this Court's unambiguous rulings.

---

[16] For example, the Defendants identified Thompson Hine Plaintiffs such as Alabama Power and Georgia Power that had post-2008 amendments that modified the rate structure.

**Plaintiffs' Statement**

The "potential dispute" raised by Defendants in the parties' July 14, 2023 Joint Status Report, and again in this filing, does not require any action from the Court at this time. Instead, Defendants seek to dispute certain categories of damages that they claim are not recoverable in this MDL. Defendants have described their intended motion as one to "strike" damages, but they have not provided further clarity of the nature of that motion to "strike" (*i.e.*, whether it would be a summary judgment, a *Daubert*, or some other evidentiary motion), nor have they explained why it needs to be addressed separately from any other dispositive and/or pre-trial exclusionary motions. Given that Defendants' damages challenges are, at most, partial summary judgment motions (if not motions *in limine* or damages issues more appropriately reserved for the ultimate factfinder), Plaintiffs have proposed that the parties begin meeting and conferring to develop a schedule for all remaining dispositive and *Daubert* motions, so as not to burden the Court with piecemeal briefing. Indeed, the Court's own operative Scheduling Order requires the parties to, by December 1, 2023, "file a joint status report proposing a schedule for further proceedings, including any anticipated motions." 11/8/22 Minute Order (Paperless).

To that end, and given that Defendants are eager to brief these issues, Plaintiffs have proposed to Defendants the following schedule:

- January 30, 2024 – Opening summary judgment and *Daubert* motions due

- April 30, 2024 – Oppositions to summary judgment and *Daubert* motions due

- June 17, 2024 – Replies in further support of summary judgment and *Daubert* motions due

Plaintiffs' proposed schedule has two benefits over Defendants' proposal to file its motion on December 1, 2023. First, it avoids seriatim motions; given that Defendants will presumably seek

to file other dispositive and/or *Daubert* motions, it is more efficient for the Court to consider all such issues at the same time and on the same record. Second, given Judge Friedman's pending summary judgment decision in MDL I, somewhat later motions may allow all the parties and this Court the benefit of that decision in shaping the issues to be determined at summary judgment in MDL II.[17]

Based on the foregoing, the Court need not do anything further at this time; the parties will submit a briefing schedule for all future motions by December 1, 2023 in accordance with the operative Scheduling Order and taking into account any summary judgment decision in MDL I between now and then.

Defendants write at length about the to and fro surrounding how and when this dispute arose. Plaintiffs do not wish to burden the Court with extensive briefing on process issues but do want to emphasize two points. First, Plaintiffs' consistent position since June 2023 has been that Defendants' motions should be briefed with dispositive and *Daubert* motions, with a proposed schedule to be submitted to the Court on December 1, 2023, as Plaintiffs laid out in the last Joint Status Report. ECF No. 925 at 5. Plaintiffs have asked Defendants since this issue was first raised what, exactly, Defendants intended to file, under what rule of civil procedure or evidence, and why these motions should be excluded from the December 1, 2023 schedule proposal. Defendants still cannot answer those questions, supporting Plaintiffs' original view.

Further, in July, Plaintiffs asked Defendants to identify the Plaintiffs and price authorities for which Defendants claim that certain damages are unrecoverable and asked other questions

---

[17]   Plaintiffs first received Defendants' scheduling proposal for their proposed motions on October 5. That proposal calls for Defendants' motion be filed December 1, 2023, with Plaintiffs' opposition due January 10, 2024 and Defendants' reply due on January 31, 2024, needlessly requiring Plaintiffs to brief their oppositions over the year-end holidays.

about their contentions that Defendants could not answer. Defendants' statement concedes that they first identified these authorities on September 22 and 28, 2023. And while Defendants' statement lists their purported efforts to narrow issues relating to post-2008 damages, they simultaneously admit that they failed to properly address this issue in expert discovery, completely ignoring the August 15, 2023 deadline to file opposition expert reports where disclosure of this information should have been made.

    Given that the Defendants have made certain mischaracterizations of the damages involved in the "dispute" at issue, Plaintiffs are compelled to respond (as briefly as possible). Defendants have categorized these damages as: "(i) damages under contracts and price authorities that applied mileage-based fuel surcharges; (ii) damages related to transportation services provided by non-defendant CSX Intermodal, Inc. ("CSXI"); and (iii) lingering effects damages that require litigation of post-2008 conduct." Each of these categories is discussed briefly below:

    1.  <u>Mileage-Based Fuel Surcharges</u>

    Both in the July 14, 2023 Joint Status Report and in this filing, Defendants have told the Court that certain Plaintiffs are seeking to recover damages for price authorities that applied mileage-based fuel surcharges. This misrepresents Plaintiffs' theory of damages as to the shipments at issue. In 2007, the evidence demonstrates that Defendants UP and CSX shifted certain price authorities or shipments with a rate-based fuel surcharge to a mileage-based fuel surcharge, while simultaneously coupling that shift with a "rebasing" of base rates, to move the conspiratorial rate-based fuel surcharge into the base rate. Certain Plaintiffs have introduced expert evidence concerning damages flowing from those Defendants' practice of rebasing.

These issues have always been part of MDL I, and they have been known to Defendants for many years. As this Court has previously observed, rebasing conduct was explicitly part of the proposed class definition in MDL I since March 2010, ECF. No. 358 at 7-8 (including as alleged conspiratorial fuel surcharges "where some or all of the fuel surcharge was included in the base rate through a method referred to as 'rebasing'"), and was part of the certified class in MDL I.[18]

Defendants have had ample opportunity to fully discover each expert's damages analysis, and the evidence underlying it, during expert discovery of Plaintiffs' experts, and have had a full opportunity to challenge those analyses in Defendants' own opposition expert reports. To the extent Defendants intend to seek exclusion of specific portions of Plaintiffs' damages, such a motion can be made at summary judgment, as a motion *in limine*, or at trial.

2. CSXI Shipments

Defendant CSX claims that Plaintiffs cannot claim damages for shipments by CSXI during the conspiracy period, because CSXI was not a named Defendant in the MDL I action. Plaintiffs have always maintained through discovery, in both MDL I and MDL II, that CSXI shipments are a part of this litigation. During the conspiracy period, CSXI reimbursed CSXT for costs related to intermodal operations; CSXT collected revenue on behalf of CSXI; and individuals at CSXT with responsibility over fuel surcharges also oversaw implementation of fuel surcharges at CSXI. Additionally, CSXI merged into CSXT in June 2010, before briefing on the initial class certification motion in MDL I was even complete. Any damages flowing from CSXI contracts and price authorities are properly recoverable in this litigation, including because

---

[18] *See In re Rail Freight Fuel Surcharge Antitrust Litigation*, 287 F.R.D. 1, 29 (D.D.C. 2012).

of joint and several liability. Naming CSXI as a defendant, which would have been impossible

by the time of MDL II in any event given that it no longer existed as an independent entity, has

never been a requirement to seek damages on CSX's intermodal shipments. If CSX would like to

ask this Court to determine as a matter of law that it is not liable for this subset of shipments,

such a motion can be made during the normal course of dispositive briefing.

     3.   <u>Post-2008 Damages</u>

More than three years ago, in 2020, this Court held that Plaintiffs can recover from

damages on rates paid after 2008 so long as the governing price authorities were negotiated

during the class period. ECF. No. 358 at 53-54. Since at least that time, Defendants have been on

notice that Plaintiffs sought post-2008 damages flowing from conduct during the class period

(*i.e.* price authorities that were negotiated during the class period). In 2021, the parties brought a

dispute to the Court's attention concerning the time frame for Defendants' data production so

that Plaintiffs could prove their post-2008 damages. The Court clarified its prior ruling,

distinguishing between lingering effects damages that "would require litigation of post-2008

conduct"—which would not be tolled under *American Pipe*—and lingering effects damages

flowing from underlying conduct that would have occurred during the 2003-2008 putative MDL

I class period. ECF No. 631 at 20-21.

Here, Plaintiffs seek only those damages falling into the latter category. Plaintiffs'

experts have reviewed the documentary evidence and transactional data produced in this

litigation, and they have identified in their reports exactly which price authorities, negotiated and

made effective during the class period, resulted in damages incurred after 2008.  Defendants had

ample opportunity in each expert's two-day deposition to ask specific questions or challenge the

categorization of any price authorities that they believed were not appropriately classified. Defendants' experts have also had the opportunity to do the same in their opposition reports.

Rather than doing any of this work, on September 28 and 29, 2023, *eight months after the close of fact discovery*, and over a month after their own expert disclosures were due, Defendants surprised Plaintiffs with productions of documents that they claim relate to post-2008 damages. Incredibly, Defendants have provided no information about where these documents came from, why they were not produced earlier in litigation (particularly because Defendants have been on notice since at least August 2020 that lingering effects damages were part of this case), how the documents were selected, and what other relevant documents may exist that were not produced. Plaintiffs have had no opportunity to depose Defendants' witnesses on these late-produced and cherry-picked documents. While Defendants claim in their statement that Plaintiffs are seeking discovery relating to post-2008 conduct, it is exactly the opposite; Defendants have initiated such discovery, and Plaintiffs object to it. It is all the more shocking that Defendants were able to locate and produce these documents now given how adamantly opposed Defendants were to making additional document productions in MDL II—including *any* document productions that would require Defendants to collect documents post-dating their MDL I collection, which ended in 2007.

The purpose of having a date certain for the close of fact and expert discovery is to avoid exactly this sort of situation. Plaintiffs intend to move to exclude these untimely, self-serving, and cherry-picked documents at the appropriate time.

As to Defendants' factual dispute over the extent to which Plaintiffs can recover post-2008 damages, such a dispute can be resolved in due course through summary judgment or at trial, and requires no additional, piecemeal briefing.

Dated: October 6, 2023

*/s/ Tara Reinhart*
Tara L. Reinhart (D.C. Bar No. 462106)
Julia K. York (D.C. Bar No. 478001)
Thomas R. Gentry (D.C. Bar No. 1617060)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 371-7000
Tara.Reinhart@skadden.com
Julia.York@skadden.com
Thomas.Gentry@skadden.com

*/s/ Ronald K. Wray II*
Ronald K. Wray II
GALLIVAN, WHITE & BOYD P.A.
55 Beattie Place, Suite 1200
Greenville, SC 29601
Telephone: (864) 271-5362
rwray@GWBlawfirm.com

*Counsel for Defendant Norfolk Southern Railway Company pursuant to the
Notices of Appearance entered in each case*

*/s/ Juan A. Arteaga*
Kent A. Gardiner (D.C. Bar No. 432081)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
KGardiner@crowell.com
LvanHouwelingen@crowell.com

*/s/ David M. Wells*
David M. Wells
GUNSTER, YOAKLEY & STEWART, P.A.
225 Water Street, Suite 1750
Jacksonville, FL 32202
Phone: (904) 354-1980
Primary Email: dwells@gunster.com

Juan A. Arteaga
Mara R. Lieber
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Phone: (212) 223-4000
Fax: (212) 223-4134
JArteaga@crowell.com
MLieber@crowell.com

*Counsel for Defendant CSX Transportation, Inc. pursuant to the
Notices of Appearance entered in each case*

*/s/ Tyrone R. Childress*
Tyrone R. Childress
Kelsey S. Bryan (DC Bar No. 1034352)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:  tchildress@jonesday.com
E-mail:  kbryan@jonesday.com

John M. Majoras (DC Bar No. 474267)
Kristen A. Lejnieks (DC Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
E-mail:  jmmajoras@jonesday.com
E-mail:  kalejnieks@jonesday.com

*/s/ Timothy L. O'Mara*
Timothy L. O'Mara
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

Allyson M. Maltas (D.C. Bar No. 494566)
LATHAM & WATKINS, LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
allyson.maltas@lw.com

*/s/ Matthew M. Collette*
Matthew M. Collette (D.C. Bar No. 427167)
Kathryn A. Robinette (D.C. Bar No. 1659218)
MASSEY & GAIL LLP
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Phone: (202) 795-3326
Fax: (312) 379-0467
mcollette@masseygail.com
krobinette@masseygail.com

Leonard A. Gail
Illinois State Bar No. 6199745
Massey & Gail LLP
50 E. Washington Street, Suite 400
Chicago, IL 60602
Phone: (312) 283-1590
Fax: (312) 379-0467
lgail@masseygail.com

*Counsel for Defendant Union Pacific Railroad Company pursuant to the*
*Notices of Appearance entered in each case*

/s/ Linda S. Stein
Linda S. Stein (D.C. Bar No. 376217)
Molly Bruder Fox (D.C. Bar No. 981619)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Phone:  (202) 429-3000
lstein@steptoe.com
mbfox@steptoe.com

/s/ Glenn D. Pomerantz
Glenn D. Pomerantz
Kuruvilla J. Olasa
Anne K. Conley
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Phone: (213) 683-9100
Glenn.Pomerantz@mto.com
Kuruvilla.Olasa@mto.com
Anne.Conley@mto.com

Benjamin J. Horwich
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Phone: (415) 512-4000
Ben.Horwich@mto.com

Lauren Ross (D.C. Bar No. 1659620)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001-5369
Phone: (202) 220-1100
Lauren.Ross@mto.com

*Counsel for Defendant BNSF Railway Company pursuant to the
Notices of Appearance entered in each case*

*/s/ Alden L. Atkins*
Craig P. Seebald (D.C. Bar No. 438968)
Alden L. Atkins (D.C. Bar No. 00393922)
Lindsey R. Vaala (D.C. Bar No. 974770)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*/s/ John H. LeSeur*
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854)
Daniel M. Jaffe (D.C. Bar No. 461185)
SLOVER & LOFTUS LLP
1224 Seventeenth Street NW
Washington, D.C. 20036
(202) 347-7170
(202) 347-3619 (Facsimile)
jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel
Corporation; Bel-Ray Company, LLC;
Calumet Branded Products, LLC; Calumet
Cotton Valley Refining, LLC; Calumet
Dickinson Refining, LLC; Calumet Karns
City Refining, LLC; Calumet Montana
Refining, LLC; Calumet Operating, LLC;
Calumet Princeton Refining; LLC; Calumet
Refining, LLC; Calumet Shreveport
Refining, LLC; Calumet Specialty Products
Partners, L.P.; CF Industries, Inc.;
Dairyland Power Cooperative; Dyno Nobel,
Inc.; Entergy Arkansas, LLC; Entergy
Louisiana, LLC; Exelon Generation
Company, LLC; Kurlin Company, LLC;
NorFalco LLC; NorFalco Sales; North Star*

*BlueScope Steel LLC; Steelscape, LLC; and Wisconsin Electric Power Company*

/s/ Michael D. Hausfeld
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo

HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com

*Attorneys for American Honda Motor Co., Inc.; BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C.; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte Global Logistics (North America), Inc.; Louisiana-Pacific Corporation; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Newell Recycling Southeast, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC,*

/s/ Sami H. Rashid
Sami H. Rashid
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
samirashid@quinnemanuel.com

Viola Trebicka
Jennifer English
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
violatrebicka@quinnemanuel.com
jenniferenglish@quinnemanuel.com

*Attorneys for Plaintiffs Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa World Alumina, LLC; Alumax Mill Products, Inc.; The Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird*

Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.

Incorporated' CertainTeed Canada, Inc.; CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation; CertainTeed Gypsum and Ceilings USA, Inc.; Coffeyville Resources Nitrogen Fertilizers, LLC; ConAgra Brands, Inc. f/k/a/ ConAgra Foods, Inc.; Virginia Electric and Power Company,; Dominion Energy Fuel Services, Inc.; Dominion Energy South Carolina, Inc.; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Progress, LLC; Duke Energy Indiana, LLC; Duke Energy Kentucky, LLC; Duke Energy Ohio, LLC; Progress Fuels, LLC; DEGS of Narrows, LLC; Duke Energy Generation Services, Inc.; Eastman Chemical Company; Solutia Inc.; Taminco Corporation; Exxon Mobil Corporation; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; Imperial Oil; Imperial Oil Limited; Canada Imperial Oil Limited; Grain Craft, Inc.; Southeastern Mills, Inc.; Hyundai Motor America, Inc.; IPSCO Tubulars Inc.; IPSCO Koppel Tubulars, LLC; IPSCO Tubulars (KY), LLC; TMK NSG, LLC; Keystone Fuels, LLC; Conemaugh Fuels, LLC; Kia Motors America, Inc.; Lafarge North America, Inc., Holcim (US) Inc.; Aggregate Industries Management, Inc.; Aggregate Industries - SWR, Inc.; Aggregate Industries Northeast Region, Inc.; Aggregate Industries - MWR, Inc.; Bardon, Inc. (dba Aggregate Industries Mid-Atlantic Region); Cement Transport, LTD; Geocycle LLC; Systech Environmental Corporation; Lafarge PNW, Inc.; Lattimore Materials Corp.; Mercedes-Benz USA, LLC; Motiva Enterprises LLC; NLMK USA, Inc.; NLMK Pennsylvania, LLC; Sharon Coating, LLC; NOVA Chemicals, Inc.; NOVA Chemicals Corporation; NOVA Chemicals (Canada) Ltd.; Old World Industries, LLC; PCS Sales (USA), Inc.; Agrium (U.S.), Inc.; PCS Phosphate Company, Inc.; White

/s/ William J. Blechman
Robert D. W. Landon, III
Richard Alan Arnold
William J. Blechman

Douglas H. Patton
Samuel J. Randall
Michael A. Ponzoli
Joshua B. Gray
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail: rlandon@knpa.com
raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com
jgray@knpa.com

*Attorneys for Plaintiffs Cemex, Inc.,
Clearwater Paper Corporation, The Goodyear
Tire & Rubber Company, Kraft Heinz Foods
Company, Lehigh Hanson, Inc., PotlatchDeltic
Corporation, Rayonier Advanced Materials
Inc., Sterling Steel Company LLC., UPM-
Kymmene, Inc., and Unilever ASCC AG*

*Springs Agricultural Chemicals, Inc; PCS
Nitrogen, Inc.; Phillips 66 Company; Shell
Chemical LP, Shell Chemicals Canada (f/k/a
Shell Chemicals Canada Ltd.) by its
managing partner Shell Canada Ltd.;
Pennzoil-Quaker State Company (formerly
d/b/a SOPUS Products); Shell Trading (US)
Company; Equilon Enterprises LLC (d/b/a
Shell Oil Products US or SOPUS); Talen
Energy Supply, LLC f/k/a PPL Energy
Supply, LLC, on behalf of itself and its
subsidiaries and affiliates; Talen Energy
Marketing, LLC f/k/a PPL EnergyPlus, LLC;
Talen Generation, LLC f/k/a PPL
Generation, LLC (successor in interest to
PPL Coal Supply, LLC); Talen Montana,
LLC f/k/a PPL Montana, LLC; Martins
Creek, LLC f/k/a PPL Martins Creek, LLC;
Brunner Island, LLC f/k/a PPL Brunner
Island, LLC; Montour, LLC f/k/a PPL
Montour, LLC; United Parcel Service, Inc.,
an Ohio Corporation; UPS Ground Freight,
Inc.; Vulcan Materials Company; Legacy
Vulcan, LLC; Florida Rock Industries, Inc.;
Atlantic Granite LLC; CalMat Co.; Vulcan
Aggregates Company, LLC; Vulcan
Construction Materials, LLC; Fulton
Concrete Company, LLC; McCartney
Construction Company, Inc.; Calhoun
Asphalt Company, Inc.; Harper Brothers,
LLC; Virginia Concrete Company, LLC;
Azusa Rock, LLC; Triangle Rock Products,
LLC; Aggregates USA, LLC; Chem-Marine
Corporation of South Carolina; DMG
Equipment Company, LLC; R. C. Smith
Companies, LLC; Aggregates USA (Macon),
LLC; Aggregates USA (Savannah), LLC;
Aggregates USA (Sparta), LLC; WestRock
Company; WestRock Coated Board, LLC;
WestRock Virginia, LLC; WestRock Texas,
L.P.; WestRock CP, LLC; WestRock
Southeast, LLC; WestRock Northwest, LLC;
WestRock Mill Company, LLC; WestRock –
Solvay, LLC; WestRock Minnesota
Corporation; WestRock Kraft Paper, LLC;
WestRock Container, LLC; WestRock
Longview, LLC; Smurfit-Stone Container*

*Canada Inc.; The J.M. Smucker Company; General Motors LLC; Kennecott Utah Copper LLC; and U.S. Borax Inc.*

*/s/ David C. Eddy*
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
deddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com

*Attorneys for Plaintiffs Domtar Corporation; Ford Motor Company; South Carolina Public Service Authority; Anheuser-Busch, LLC; Anheuser-Busch Companies, LLC; Nestlé Purina PetCare Company; and Nestlé USA, Inc.*

*/s/ Adam Carlis*
Geoffrey L. Harrison
Shawn Raymond
Adam Carlis
Alexandra Foulkes Grafton
Scott T. Glass
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
afoulkesgrafton@susmangodfrey.com
sglass@susmangodfrey.com

Raj Mathur
SUSMAN GODFREY, L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
(212) 729-2051

*/s/ Joseph M. Vanek*
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin Amaro (*pro hac vice* forthcoming)
SPERLING & SLATER, P.C.
55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
mamaro@sperling-law.com

*Attorneys for Plaintiffs Kellogg Company and Mitsubishi Motors North America, Inc.*

*/s/ Sandra L. Brown*
Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP
1919 M Street N.W. Suite 700
Washington, D.C. 20036
Tel: (202) 331-8800
Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500

rmathur@susmangodfrey.com

*Attorneys for Arkema Inc.; ArrMaz Products Inc.; Boise Cascade Company; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo*

Fax: (216) 566-5800
rob.ware@thompsonhine.com
jennifer.roach@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power Company, Georgia Power Company and Mississippi Power Company; Northern Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

/s/ Kristopher S. Davis
Kristopher S. Davis (CA #193452)
George T. Caplan (CA #043821)
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel:  (310) 203-4000
Fax:  (310) 229-1285
kristopher.davis@faegredrinker.com
george.caplan@faegredrinker.com

William L. Roberts (MN # 0212763)
Jonathan W. Dettmann (MN # 0265032)
Craig S. Coleman (MN # 0325491)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel:  (612) 766-7000
Fax:  (612) 766-1600
william.roberts@faegredrinker.com
jon.dettmann@faegredrinker.com
craig.coleman@faegredrinker.com

*Attorneys for Plaintiffs American Zinc Recycling Corp., Ascend Performance Materials Operations LLC, Ingredion Incorporated, The Heritage Group dba Asphalt Refining Company, Asphalt Materials, Inc., Bituminous Materials and*

*Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

/s/Kirk T. May
Kirk T. May
William D. Beil
GM LAW PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@ gmlawpc.com
Email: billb@ gmlawpc.com

David B. Helms
GM LAW PC
8000 Maryland Avenue, Suite 1060
Clayton, Missouri 63105
PH: 314-474-1750
FX: 816-471-2221
Email: davidh@gmlawpc.com

*Attorneys for Plaintiffs*
*Lansing Ethanol Services, LLC, et al.*

/s/ Benjamin D. Brown
Benjamin D. Brown (D.C. Bar. No. 495836)
Robert A. Braun (D.C. Bar. No. 1023352)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com

*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., Yang Ming Marine Transport Corp., Yang Ming (America) Corp., Nippon Yusen Kabushiki*

*Supply, L.P., Emulsicoat, Inc., Laketon Refining Corporation, Heritage Environmental Services, LLC, Rineco Chemical Industries, LLC, Heritage Transport, LLC, Pizo Operating Company, LLC, and CHS Inc.*

/s/ Eric S. Hochstadt
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com
luna.barrington@weil.com
sarah.ryu@weil.com

*Attorneys for Plaintiffs Cleveland-Cliffs Steel LLC (f/k/a ArcelorMittal USA LLC) and ArcelorMittal Dofasco G.P.*

/s/ Edward D. Hassi
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper, Esquire
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909 6000

*Kaisha, NYK Line (North America) Inc.,
Mitsui O.S.K. Lines, Ltd., and MOLAM
Legacy, Inc.*

Fax: (212) 909 6836
mschaper@debevoise.com

*Attorneys for Plaintiffs Toyota Motor
Sales, U.S.A., Inc. and Toyota Canada Inc.*

/s/ James P. Denvir
James P. Denvir (D.C. Bar No. 284554)
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131
jdenvir@bsfllp.com
sgant@bsfllp.com

Stuart H. Singer (*pro hac vice*)
James Grippando (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc.,
E.I. du Pont de Nemours and Company, and
The General Electric Company*

/s/ Frank M. Lowrey IV
Frank M. Lowrey IV (*pro hac vice*)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (*pro hac vice*)
mykkeltvedt@bmelaw.com
Matthew R. Sellers
sellers@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E., Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for Plaintiff The General Electric
Company*

/s/ Nathan P. Eimer
Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
dbirk@eimerstahl.com
srazzano@eimerstahl.com
bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical
Company, Union Carbide Corporation,
Amerchol Corporation, Umetco Minerals
Corporation, Gerdau Ameristeel
Corporation, Gerdau Ameristeel US Inc.,
Gerdau Ameristeel Perth Amboy Inc.,
Gerdau Ameristeel Sayreville Inc.,
Chaparral Steel Company, Chaparral Steel
Midlothian, LP, Chaparral (Virginia) Inc.,
Sheffield Steel Corporation, Gerdau
Macsteel, Inc., International Paper
Company, GenOn Energy Management,
LLC, GenOn Power Midwest LP, and
GenOn REMA, LLC*

/s/ Michael C. Dell'Angelo
Michael C. Dell'Angelo
Michael J. Kane
H. Laddie Montague, Jr.
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
hlmontague@bm.net
mwallin@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
(202) 559-9745
dwalker@bm.net

Sophia Rios
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiffs High Level
Management Venturers, Century Aluminum
Company, Century Aluminum of Kentucky,
GP, NSA, GP, Century Aluminum of West
Virginia, Inc., Century Aluminum of South
Carolina, Inc., Andre M. Toffel, Trustee, on
behalf of New Wei, Inc., et al., jointly
administered bankruptcy estates, and ABF
Freight System Inc.*

/s/ Leo D. Caseria
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100

/s/ Daniel B. Goldman
Daniel B. Goldman
Nathan Schwartzberg
Martin M. McSherry
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com
nschwartzberg@kramerlevin.com
mmcsherry@kramerlevin.com

*Attorneys for Plaintiffs The Procter &
Gamble Company, The Procter & Gamble
Distributing LLC, The Procter & Gamble
Manufacturing Company, The Procter &
Gamble Paper Products Company, Tronox
Inc., and Tronox US Holdings Inc.*

/s/ Ronald J. Aranoff
Ronald J. Aranoff
Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP

Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

Helen C. Eckert
Joy O. Siu
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
heckert@sheppardmullin.com
jsiu@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

*Attorneys for Plaintiff Air Products
and Chemicals, Inc.*

*/s/ Conte C. Cicala*
Conte C. Cicala (CA Bar No. 173554)
Clyde & Co US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
conte.cicala@clydeco.us

*Attorneys for Plaintiff Mitsui O.S.K. Lines,
Ltd. and MOLAM Legacy, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify that a copy of the Joint Status Report was filed electronically with the

United States District Court for the District of Columbia through the Court's ECF System on

October 6, 2023.

          <u>*/s/ Juan A. Arteaga*   </u>